James S. Christian (SBN 023614)
**CHRISTIAN GOODMAN PLC**
5050 North 40th Street, Suite 320
Phoenix, Arizona 85018
Telephone: (602) 899-8033
James@Christian-Goodman.com

*Proposed Liaison Counsel for the Class*

Jonathan Gardner*
Alfred L. Fatale III*
Marco A. Duenas*
Lisa Strejlau*
* *pro hac vice forthcoming*
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
jgardner@labaton.com
afatale@labaton.com
mduenas@labaton.com
lstrejlau@labaton.com

*Counsel for Proposed Lead Plaintiff City
of Pittsburgh Comprehensive Municipal
Pension Trust Fund*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> V. <br><br> Mesa Air Group, Inc.; Jonathan G. Ornstein; Michael J. Lotz; Daniel J. Altobello; Ellen N. Artist; Mitchell Gordon; Dana J. Lockhart; G. Grant Lyon; Giacomo Picco; Harvey Schiller; Don Skiados; Raymond James & Associates, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Cowen and Company, LLC; Stifel, Nicolaus & Company, Incorporated; and Imperial Capital, LLC, <br><br> Defendants. | Case No. 2:20-cv-00648-DLR <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF CITY OF PITTSBURGH COMPREHENSIVE MUNICIPAL PENSION TRUST FUND FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL** <br><br> ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

PROCEDURAL BACKGROUND ................................................................................. 1

PRELIMINARY STATEMENT ..................................................................................... 3

OVERVIEW OF THE PENDING ACTION ................................................................... 5

ARGUMENT ................................................................................................................. 7

I.    CITY OF PITTSBURGH CMPTF SHOULD BE APPOINTED LEAD
      PLAINTIFF ......................................................................................................... 7

      A.    The PSLRA Standard For Appointing Lead Plaintiff .................................. 8

      B.    City of Pittsburgh CMPTF Is the "Most Adequate Plaintiff" ...................... 9

            1.    City of Pittsburgh CMPTF Timely Moved for Appointment
                  as Lead Plaintiff ................................................................................ 9

            2.    City of Pittsburgh CMPTF Has the Largest Financial Interest
                  in the Outcome of the Action ............................................................. 9

            3.    City of Pittsburgh CMPTF Otherwise Satisfies Rule 23's
                  Typicality and Adequacy Requirements ........................................... 10

            4.    City of Pittsburgh CMPTF Is the Archetypal PSLRA Lead
                  Plaintiff ........................................................................................... 11

II.   THE COURT SHOULD APPROVE CITY OF PITTSBURGH CMPTF'S
      CHOICE OF COUNSEL .................................................................................... 13

CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrade v. Am. Apparel, Inc.*,
   No. 10-06352 MMM, 2011 WL 13130706 (C.D. Cal. Mar. 15, 2011) ...................... 12

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .............................................................. 8, 9, 13

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ........................................................................... 2

*City of Royal Oak Ret. Sys. v. Juniper Networks Inc.*,
   No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ...................... 11

*Cohen v. U.S. District Court*,
   586 F.3d 703 (9th Cir. 2009) ........................................................................ 13

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) ............................................................ 12

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D 427 (S.D. Tex. 2002)....................................................................... 12

*In re Extreme Networks Inc. Sec. Litig.*,
   No. 15-cv-04883-BLF, 2016 WL 3519283 (N.D. Cal. June 28, 2016)...................... 10

*Greene v. Granite Constr. Inc.*,
   No. C 19-04744 WHA, 2019 WL 6327229 (N.D. Cal. Nov. 26, 2019)...................... 2

*Krieger v. Atheros Commc'ns, Inc.*,
   No. 11-CV-00640-LHK, 2011 WL 6153154 (N.D. Cal. Dec. 12, 2011) ................... 10

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10–CV–03451–LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ................... 12

**Rules & Statutes**

Fed. R. Civ. P. 23 ............................................................................................*passim*

15 U.S.C. § 77z-1 *et seq* ..................................................................................*passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   No. 04-cv-8141 (S.D.N.Y.)............................................................................ 13

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   No. 08-md-1963 (S.D.N.Y.) .......................................................................... 13

*In re Broadcom Corp. Class Action Litig.*,
   No. 06-cv-5036 (C.D. Cal.) ........................................................................... 14

ii

*In re Countrywide Fin. Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal.) .................................................................................. 13, 14

*In re Mercury Interactive Corp. Sec. Litig.*,
    No. 05-cv-3395 (N.D. Cal.) ....................................................................................... 14

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730.............. 11, 13

iii

Proposed Lead Plaintiff City of Pittsburgh Comprehensive Municipal Pension Trust Fund ("City of Pittsburgh CMPTF"), a sophisticated institutional investor, respectfully submits this Memorandum of Points and Authorities in support of its Motion, made pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for the entry of an Order: (i) appointing City of Pittsburgh CMPTF as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired Mesa Air Group, Inc.'s ("Mesa" or the "Company") securities pursuant and/or traceable to the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with Mesa's August 2018 initial public offering (the "IPO" or "Offering"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act (the "Class"); (ii) approving City of Pittsburgh CMPTF's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Christian Goodman PLC ("Christian Goodman") as Liaison Counsel for the Class (the "Motion"); and (iii) granting such other and further relief as the Court may deem just and proper.

## PROCEDURAL BACKGROUND

On March 24, 2020, approximately a week prior to the filing of the above-captioned action (the "Action" or "Federal Action"), City of Pittsburgh CMPTF filed a substantively identical complaint against Defendants in the Superior Court of the State of Arizona, Maricopa County (the "State Action"). *See* Declaration of James S. Christian (the "Christian Decl."), Ex. A. The State Action, just as the action currently before the Court, alleges that Defendants violated the Securities Act by making false and misleading statements and omissions in the Registration Statement. *See infra*, Overview of the Pending Action.

Following the filing of the State Action, City of Pittsburgh CMPTF and Defendants agreed to a scheduling stipulation—which stipulation was granted on April 20, 2020—governing the response time of all Defendants to respond to the operative

complaint in the State Action.  *See* Christian Decl. Ex. B.  On April 28, 2020, Defendants filed a Motion for an Extension of the Deadline to Respond to the Complaint (the "Extension Motion") (Christian Decl. Ex. C) and a Motion for a Temporary Stay (the "Stay Motion") (Christian Decl. Ex. D).  The Stay Motion requests a stay of the State Action until July 31, 2020, at which time the parties would meet and confer regarding whether a stay should remain in place beyond July 31, 2020.  *See id*.  City of Pittsburgh CMPTF filed its opposition to each of these motions on May 8, 2020 (Christian Decl. Exs. E, F), and Defendants filed a reply to the Extension Motion on May 11, 2020 (Christian Decl. Ex. G) and a reply to the Stay Motion on May 20, 2020 (Christian Decl. Ex. H).  On May 14, 2020, the state court granted the Extension Motion and oral argument on the Stay Motion is scheduled for June 19, 2020.

In their reply to the Stay Motion, Defendants stated that "once a lead plaintiff is appointed in the Federal Action, the Mesa Defendants will be able to seek a stay of longer duration in one of the two courts."  *Id.*  Defendants assert that they will make this determination upon assessment of, *inter alia*, "which plaintiff in which court will more adequately represent the class . . . ."  *Id*.  This request is not only confounding seeing as Defendants' interests are irreconcilably adverse to those of the Class, but contrary to the PSLRA. Under the PSLRA, the lead plaintiff is charged with protecting the interests of the Class—not Defendants.  *Cf. Greene v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2019 WL 6327229, at *3 (N.D. Cal. Nov. 26, 2019) (noting that the "lead plaintiff is a fiduciary for the investor class").  Moreover, Defendants are without standing to address the adequacy of any proposed Lead Plaintiff at this stage in the litigation, let alone make the determination which representative would best serve the Class.  *See, e.g.*, 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) (presumption of most adequate plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nly class members may seek to rebut the presumption [of most adequate plaintiff], and the court should not permit or consider any arguments by defendants or non-class members").

Therefore, it does not strain credulity to think that Defendants instead want the opportunity to select the representative who would *least* protect the interests of the Class, thereby turning the Class' interests into a proxy for their own. Thus, in light of the invariable risk of prejudice to the Class, City of Pittsburgh CMPTF determined to move for Lead Plaintiff in this case as a protective measure. City of Pittsburgh CMPTF has, and will continue to, advocate for the true best interests of the Class in any venue.

## PRELIMINARY STATEMENT

City of Pittsburgh CMPTF, a sophisticated institutional investor, respectfully submits that it should be appointed as Lead Plaintiff on behalf of the Class, and its choice of Labaton Sucharow as Lead Counsel for the Class and Christian Goodman as Liaison Counsel to the Class be approved.

Pursuant to the PSLRA's sequential lead plaintiff appointment process, the Court is directed to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

City of Pittsburgh CMPTF respectfully submits that it should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA. As set forth in detail below, City of Pittsburgh CMPTF incurred ***$137,606.66*** in losses on its transactions pursuant and/or traceable to Mesa's Registration Statement.[1] In light of this significant loss, City of Pittsburgh CMPTF has a substantial financial interest in the

---

[1] A copy of the PSLRA-required Certification, signed by Margaret Lanier as Executive Director of City of Pittsburgh CMPTF (the "Certification"), which sets forth all relevant transactions of City of Pittsburgh CMPTF in Mesa securities is attached as Exhibit I to the Christian Decl. In addition, a chart reflecting the calculation of the City of Pittsburgh CMPTF's Securities Act losses as a result of its transactions in Mesa securities is attached as Exhibit J to the Christian Decl.

3

relief sought in this litigation—an interest believed to be greater than that of any competing movant.

In addition to asserting the largest financial interest in this litigation, City of Pittsburgh CMPTF also meets the typicality and adequacy requirements of Rule 23 as required by the PSLRA, because its claims are typical of those of absent Class members, and because it will fairly and adequately represent the interests of the Class.  On this point, City of Pittsburgh CMPTF has already demonstrated its ability to represent the interests of the Class through its work to date in the State Action.

Further, City of Pittsburgh CMPTF is a sophisticated institutional investor with a substantial financial stake in the litigation, and therefore has the incentive, resources, and experience necessary to vigorously represent the Class and oversee counsel.   Indeed, City of Pittsburgh CMPTF is precisely the type of sophisticated institutional investor that Congress intended to empower to lead securities class actions.  City of Pittsburgh CMPTF fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and has already dutifully executed its core statutory responsibility to select and retain counsel, and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the continued vigorous prosecution of this Action.

City of Pittsburgh CMPTF has also demonstrated its adequacy through its retention of Labaton Sucharow as proposed Lead Counsel on behalf of the Class. Labaton Sucharow is a nationally recognized securities class action law firm with an established track record of achieving substantial recoveries for the benefit of injured investors and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, based on City of Pittsburgh CMPTF's significant financial interest and its demonstrated commitment and ability to oversee the conduct of this action, it respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its Motion.

**OVERVIEW OF THE PENDING ACTION**

Mesa purports to operate as the holding company for Mesa Airlines, Inc. ("Mesa Airlines"), which provides regional air carrier services under capacity purchase agreements ("CPA") with American Airlines ("American") and United Airlines ("United"). Mesa is incorporated in Nevada and maintains its principal executive offices in this District.

Mesa derives all of its operating revenues from Mesa Airlines' CPAs with its major airline partners. In exchange for Mesa providing regional commercial flights on behalf of American and United, the CPAs provide the Company with guaranteed revenue for each aircraft under contract, fixed fees for block hours—computed as of the time aircraft engines are turned on for departure and turned off after landing—and flights flown, and reimbursement of certain operating expenses. At the time of the Offering, Mesa kept an operational spare aircraft as a backup for when aircraft assigned under the CPAs are out of service due to maintenance, repairs, or other issues.

On or about July 13, 2018, Mesa filed with the Securities and Exchange Commission ("SEC") a Registration Statement on Form S-1, which in combination with subsequent amendments of Forms S-1/A and filed pursuant to Rule 424(b)(2), would be used for the IPO. On August 10, 2018, Mesa filed with the SEC its final prospectus for the IPO on Form 424B4, which forms part of the Registration Statement. The Company closed its IPO on August 14, 2018, offering 9,630,000 shares of its common stock, at a public offering price of $12.00 per share, raising gross proceeds of $115,560,000. Following the IPO, the Company's shares have traded on the NASDAQ under the ticker symbol "MESA."

The Registration Statement made a series of positive representations about the Company's business and financial prospects, including: (i) its "competitive cost structure" and "track record of reliable performance;" (ii) its ability to focus its efforts on safety and reliability; (iii) portraying itself as a low-cost operator with key efficiencies, including maintenance, additionally citing to its 411 mechanics and employees generally

as a key to its success; and (iv) its "cost discipline, strong operational performance and financial resources [which would] provide additional opportunities to expand." The Registration Statement further made several boilerplate risk disclosures, including those related to labor and maintenance cost increases, as well the Company's reliance on third party manufacturers and service providers.

The Action alleges that the Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation. Specifically, that the Registration Statements made misleading statements concerning and/or failed to disclose that: (i) Mesa's operational performance was poor and below industry standards; (ii) Mesa had a shortage of qualified mechanics and maintenance personnel; (iii) Mesa had an inadequate number of spare aircraft and parts; (iv) Mesa did not have a strong track record of reliable performance; (v) then-existing "risks" had already materialized; (vi) Mesa knew of undisclosed adverse trends and uncertainties at the time of the IPO; and (vii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

Within months of Mesa's IPO, the Company and its own executives disclosed adverse information concerning the Company's operational performance that *pre-dated* the Offering. On May 9, 2019, Mesa reported its Q2 2019 financial and operating results, reporting adjusted earnings per share ("EPS") of $0.46, below analysts' consensus of $0.55, and total operating revenues of $177 million, below analysts' consensus of $178.5 million. During the related earnings call with investors held on May 10, 2019, Defendants admitted that Mesa had been experiencing maintenance and other issues for months preceding the IPO: "We knew in the last year, 18 months, . . . we were hamstrung by the fact that we had expanded a lot, [and] . . . maintenance became more difficult in terms of qualified maintenance people."

6

Then, on August 8, 2019, Mesa reported its Q3 2019 financial and operating results, reporting adjusted EPS of just $0.30, well below analysts' consensus of $0.55, and total operating revenues of $180 million, below analysts' consensus of $183 million. Mesa also reported increased maintenance expenses of $54 million, more than analyst estimates of $47 million, and total operating expenses of $163 million, more than analyst estimates of $149 million.

The related press release issued that same day described how Mesa "experienced significant operational challenges in [its] American operation, . . . result[ing] in [Mesa] operating with an insufficient number of spare aircraft" and "[Mesa] failing to meet . . . new performance criteria, and American elect[ing] to remove two aircraft from the [CPA] effective November 2, 2019." During the related earnings call with investors held on August 9, 2019, Defendants admitted that, in fact, Mesa had failed to maintain an adequate number of operational spare aircraft for years: "[W]e had 3 spares, historically, with American. There was [sic] literally years of discussions in regard to what was the adequate spare count versus . . . other operators, okay? I was a very strong advocate that Mesa was being . . . disadvantaged because we did not have the adequate spare count."

As a result of the Registration Statement's undisclosed facts and the false and misleading statements, the price of Mesa Air's common stock precipitously declined and City of Pittsburgh CMPTF and other Class members suffered significant losses and damages as a result.

## **ARGUMENT**

### I.    **CITY OF PITTSBURGH CMPTF SHOULD BE APPOINTED LEAD PLAINTIFF**

City of Pittsburgh CMPTF respectfully submits that it is the presumptively "most adequate plaintiff" because it has complied with the PSLRA's procedural requirements, holds the largest financial interest of any qualified movant, and otherwise satisfies Rule 23's typicality and adequacy requirements.

7

## A. The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a sequential procedure for selecting lead plaintiff for "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 77z-1(a)(l); *see also* 15 U.S.C. § 77z-1(a)(3)(B). The Ninth Circuit has described this mechanism as "provid[ing] a simple three-step process for identifying the lead plaintiff" in a securities fraud case. *In re Cavanaugh,* 306 F.3d 726, 729 (9th Cir. 2002).

*First*, Section 27(a)(3)(A)(i) of the Securities Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 77z-1(a)(3)(A)(i).

*Second*, the district court must then determine which timely movant "has the largest financial interest in the relief sought by the class" who also "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cavanaugh*, 306 F.3d at 729–30. At this stage, the movant claiming the largest financial interest need only make a preliminary showing of typicality and adequacy. *Cavanaugh*, 306 F.3d at 729–30. If the plaintiff with the largest financial stake in the controversy meets its *prima facie* burden, they become the presumptively most adequate plaintiff. Otherwise, the district courts must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23. *Id.* at 730–31.

*Third*, once the presumption is established, it "'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff [] will not fairly and adequately protect the interests of the class'" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).  At the third stage, the process turns adversarial and other class members may present evidence that disputes the lead plaintiff's *prima facie* showing of typicality and adequacy.  The district court may need to hold an evidentiary hearing, and to make a renewed determination of typicality and adequacy.  *In re Cavanaugh*, 306 F.3d at 730–31.  Should this presumptions not be rebutted by the requisite proof, then the presumed most adequate plaintiff is entitled to appointment.

## B.   City of Pittsburgh CMPTF Is the "Most Adequate Plaintiff"

### 1.   City of Pittsburgh CMPTF Timely Moved for Appointment as Lead Plaintiff

City of Pittsburgh CMPTF filed its motion to serve as Lead Plaintiff in a timely manner.  Counsel in the above-captioned action caused notice regarding the lead plaintiff process to be published on *PRNewswire*, a widely circulated, national, business-oriented news reporting service, on April 1, 2020.  *See* Christian Decl., Ex. K, Notice.  Thus, as permitted by the PSLRA, any person or group of persons may apply to be appointed Lead Plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before June 1, 2020.  City of Pittsburgh CMPTF filed its motion within the required period, and has therefore timely moved for appointment as Lead Plaintiff.

### 2.   City of Pittsburgh CMPTF Has the Largest Financial Interest in the Outcome of the Action

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

Since the Offering, City of Pittsburgh CMPTF suffered substantial losses of *$137,606.66* on its transactions in Mesa  securities pursuant and/or traceable to the

9

Registration Statement.  *See* Christian Decl., Ex. J, Loss Analysis.  City of Pittsburgh CMPTF is presently unaware of any other movant with a larger financial interest in the outcome of the Action.  Consequently, and because it also satisfies Rule 23's typicality and adequacy requirements, City of Pittsburgh CMPTF is entitled to the legal presumption that it is the "most adequate plaintiff."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

### 3.    City of Pittsburgh CMPTF Otherwise Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, City of Pittsburgh CMPTF also satisfies the applicable requirements of Rule 23.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, the moving plaintiff must make a "preliminary showing that it satisfies the typicality and adequacy requirements of [Rule] 23."  *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 6153154, at *3 (N.D. Cal. Dec. 12, 2011) (citation omitted).  Here, City of Pittsburgh CMPTF unquestionably satisfies both requirements.

### (a)    City of Pittsburgh CMPTF's Claims Are Typical of Those of the Class

City of Pittsburgh CMPTF's claims are typical of the claims of the Class.  "The putative lead plaintiff satisfies the typicality requirement when it has suffered the same injuries as absent class members, as a result of the same conduct by the defendants."  *In re Extreme Networks Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2016 WL 3519283, at *3 (N.D. Cal. June 28, 2016).  Here, the claims of City of Pittsburgh CMPTF and all other Class members arise from the same course of events, and the legal arguments to prove Defendants' liability are identical.  Like all other Class members, City of Pittsburgh CMPTF: (i) purchased Mesa securities pursuant and/or traceable to the Registration Statement; (ii) at prices artificially inflated by Defendants' misstatements and/or omissions; and (iii) was damaged thereby.  *See id.* (finding typicality requirement met when proposed lead plaintiff "purchased shares of [defendant company] during the specified class period, when the company's share prices were alleged to have been artificially inflated by Defendants' misrepresentations . . . [and] suffered damages when

10

those misrepresentations came to light."). Moreover, City of Pittsburgh CMPTF has standing to assert both Section 11 and Section 12(a)(2) claims since it purchased shares in the Offering. Thus, City of Pittsburgh CMPTF satisfies the typicality requirement.

### (b)    City of Pittsburgh CMPTF Will Fairly and Adequately Protect the Interests of the Class

Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy is whether the class representative and [its] counsel 'have any conflicts of interest with other class members' and whether the class representative and [its] counsel will 'prosecute the action vigorously on behalf of the class.'" *City of Royal Oak Ret. Sys. v. Juniper Networks Inc.,* No. 5:11-CV-04003-LHK, 2012 WL 78780, at *5 (N.D. Cal. Jan. 9, 2012) (citation omitted). Here, no antagonism exists between City of Pittsburgh CMPTF's interests and those of the absent Class members; rather, the interests of City of Pittsburgh CMPTF and Class members are squarely aligned. Indeed, there are no facts to suggest any actual or potential conflict of interest or other antagonism between City of Pittsburgh CMPTF and other Class members. City of Pittsburgh CMPTF, by pursuing the State Action and filing this protective motion, is undoubtedly acting in the best interests of the Class. Moreover, because of its substantial financial stake in the litigation, Class members can be assured that City of Pittsburgh CMPTF has the incentive to vigorously represent the Class' interests.

### 4.    City of Pittsburgh CMPTF Is the Archetypal PSLRA Lead Plaintiff

In addition to satisfying the requirements of Rule 23, City of Pittsburgh CMPTF—as a large, sophisticated institutional investor—is precisely the type of investor Congress sought, through passage of the PSLRA, to empower to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see supra* Section IV.A.1. Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial

stake are more apt to effectively manage complex securities litigation.  *Id.*  To this end, many courts, including courts in this Circuit, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See Perlmutter v. Intuitive Surgical, Inc*., No. 10–CV–03451–LHK, 2011 WL 566814, at *13 (N.D. Cal. Feb. 15, 2011) ("appoint[ing] an institutional investor, . . . comports with the PSLRA's goal to increase the likelihood that institutional investors would serve as lead plaintiffs"); *In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) ("[W]hile it may be true that losing a high percentage of one's net worth due to an alleged fraud contributes to one's desire to prosecute a lawsuit against the wrongdoer, that desire is no substitute for the experience and resources of an institutional investor with, presumably, an in-house legal team and experience in the securities business.").  Here, City of Pittsburgh CMPTF is well suited to fulfill this Congressional intent.

"'A class action representative serves as a fiduciary to advance and protect the interests of those whom he purports to represent; their interests are entrusted to the fiduciary's diligence.'"  *Andrade v. Am. Apparel, Inc.*, No. 10-06352 MMM (PJWx), 2011 WL 13130706, at *11 (C.D. Cal. Mar. 15, 2011) (quoting *Landry v. PriceWaterhouse Chartered Accountants*, 123 F.R.D. 474, 477 (S.D.N.Y. 1989).  Founded in 1984, City of Pittsburgh CMPTF is a municipal pension fund with approximately $750 million in assets under management.  Therefore, there can be no doubt that City of Pittsburgh CMPTF has the resources and institutional sophistication required to effectively manage and supervise counsel in complex securities class actions.  *See In re Enron Corp. Sec. Litig.*, 206 F.R.D 427, 457 (S.D. Tex. 2002) (rejecting a motion to be appointed as lead plaintiff filed by an investor with "fractured attention and resources" because the *Enron* "litigation [was] probably the largest and most complex of its kind in the history of this country and . . . will demand the full focus of Lead Plaintiff(s) and Lead Counsel").

12

## II.    THE COURT SHOULD APPROVE CITY OF PITTSBURGH CMPTF'S CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa); *see also Cohen v. U.S. District Court*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citing *Cendant*, 264 F.3d at 276); *Cavanaugh*, 306 F.3d at 733. Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. at 734; *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs.").

Here, City of Pittsburgh CMPTF has selected Labaton Sucharow, highly-qualified counsel, to serve as Lead Counsel for the proposed Class. Labaton Sucharow is among the preeminent securities class action law firms in the country and has a proven track record of litigating actions resulting in significant recoveries for investors. For example, Labaton Sucharow has significant experience in prosecuting securities class actions and has excelled as lead counsel in numerous landmark securities class actions throughout the United States on behalf of defrauded investors. Labaton Sucharow served as a lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and separately secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which it served as co-lead counsel. In addition, Labaton Sucharow was a lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which achieved a settlement of $624 million—one of the largest securities fraud settlements

13

arising from the financial crisis of 2007 and 2008.  Other significant examples in which courts in this Circuit have recognized Labaton Sucharow as adequate and qualified class counsel in securities class actions include: *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-5036 (C.D. Cal.) (recovering $173 million for investors); and *In re Mercury Interactive Corp. Securities Litigation*, No. 05-cv-3395 (N.D. Cal.) (recovering $117.5 million for investors).  Labaton Sucharow also presently serves as lead or co-lead counsel in numerous significant investor class actions.  *See* Christian Decl., Ex. L, firm resume of Labaton Sucharow.

Likewise, Christian Goodman is well qualified to represent the Class as Liaison Counsel.  Christian Goodman maintains an office in this District, is thus well qualified to represent the Class as Liaison Counsel.  *See* Manual for Complex Litigation (Fourth) § 10.221 (2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have offices in the same locality as the court.").

Accordingly, the Court may be assured that by granting this Motion and approving City of Pittsburgh CMPTF's selection of Labaton Sucharow as Lead Counsel and Christian Goodman as Liaison Counsel, the Class will receive the highest caliber of legal representation.

14

## CONCLUSION

For the foregoing reasons, City of Pittsburgh CMPTF respectfully requests that the Court: (i) appoint it as Lead Plaintiff; (ii) approve its selection of Labaton Sucharow as Lead Counsel for the Class and of Christian Goodman as Liaison Counsel for the Class; and (iii) grant such further relief as the Court may deem just and proper.

DATED:  June 1, 2020                          Respectfully submitted,

*/s/ James S. Christian*

James S. Christian (SBN 023614)
**CHRISTIAN GOODMAN PLC**
5050 North 40th Street, Suite 320
Phoenix, Arizona 85018
Telephone: (602) 899-8033
James@Christian-Goodman.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Jonathan Gardner (*pro hac vice forthcoming*)
Alfred L. Fatale III (*pro hac vice forthcoming*)
Marco A. Duenas (*pro hac vice forthcoming*)
Lisa Strejlau (*pro hac vice forthcoming*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
jgardner@labaton.com
afatale@labaton.com
mduenas@labaton.com
lstrejlau@labaton.com

*Counsel for Proposed Lead Plaintiff City of Pittsburgh Comprehensive Municipal Pension Trust Fund*

15

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 1, 2020, I was authorized to electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ James S. Christian
James S. Christian