Gary F. Urman (AZ 11748)
gurman@dmyl.com
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 500
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585

Nadeem Faruqi (*Pro hac vice to be made*)
Lubna Faruqi (*Pro hac vice to be made*)
Robert W. Killorin (*Pro hac vice to be made*)
James M. Wilson, Jr. (*Pro hac vice to be made*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: nfaruqi@faruqilaw.com
        lfaruqi@faruqilaw.com
        rkillorin@faruqilaw.com
        jwilson@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff DeKalb County
Pension Fund and Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> V. <br><br> Mesa Air Group, Inc.; Jonathan G. Ornstein; Michael J. Lotz; Daniel J. Altobello; Ellen N. Artist; Mitchell Gordon; Dana J. Lockhart; G. Grant Lyon; Giacomo Picco; Harvey Schiller; Don Skiados; Raymond James & Associates, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Cowen and Company, LLC; Stifel, Nicolaus & Company, Incorporated; and Imperial Capital, LLC, <br><br> Defendants. | Case No. 2:20-cv-00648-DLR <br><br> **DEKALB COUNTY PENSION FUND'S RESPONSE IN OPPOSITION TO THE COMPETING MOTIONS FOR (1) APPOINTMENT AS LEAD PLAINTIFF AND (2) APPROVAL OF LEAD AND LIAISON COUNSEL** <br><br> **CLASS ACTION** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.      DEKALB IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF AS
        A RESULT OF THE PSLRA'S MOST ADEQUATE PLAINTIFF
        PRESUMPTION ........................................................................................................ 3

        A.      DeKalb Possesses The Largest Financial Interest In The Relief
                Sought By The Class ....................................................................................... 4

        B.      DeKalb Satisfies The Relevant Requirements For A Lead Plaintiff
                Under Rule 23 .................................................................................................. 6

        C.      The Other Movants Would Not Make Adequate Lead Plaintiffs
                Under Rule 23 .................................................................................................. 8

CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) ........................................................................... 8, 9

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) ...................................................................... 7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ................................................................. 2, 3, 4, 6

*In re Century Aluminum Co. Sec. Litig.*,
    No. C 09-1001 SI, 2009 WL 2905962 (N.D. Cal. Sept. 8, 2009)...................... 7

*In re Cloudera, Inc. Sec. Litig.*,
    No. 19-CV-03221-LHK, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) ........... 4

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004) ....................................................................... 3

*Feyko v. Yuhe Int'l Inc.*,
    No. CV 11-05511 DDP, 2012 WL 682882 (C.D. Cal. Mar. 2, 2012) ............... 8

*Gluck v. Cellstar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ................................................................... 7

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................. 9

*Hessefort v. Super Micro Computer, Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ......................................................... 2, 3

*Leevan v. Credit Suisse Int'l*,
    No. C 13-2783 SBA, 2013 WL 6490269 (N.D. Cal. Dec. 5, 2013) ................... 4

*Markette v. XOMA Corp.*,
    No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016) ............. 4

*Mendoza v. Amalgamated Transit Union Int'l*,
    No. 2:18-CV-959(JCM)(DJA),
    2020 WL 2112121 (D. Nev. May 4, 2020)........................................................ 9

*Puente v. Chinacast Educ. Corp.*,
    No. CV 12-4621-JFW, 2012 WL 3731822 (C.D. Cal. Aug. 22, 2012)............. 3

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ................................................................ 5

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
    495 F. Supp. 2d 1052 (S.D. Cal. 2007) ................................................................. 8

*In re SiRF Tech. Holdings, Inc. Sec. Litig.*,
    No. C 08-0856 MMC, 2008 WL 2220601 (N.D. Cal. May 27, 2008) .............. 6

*Yi Xiang v. Inovalon Holdings, Inc.*,
    327 F.R.D. 510 (S.D.N.Y. 2018) ........................................................................... 6

**Statutes**

15 U.S.C. § 77k(e) ..............................................................................................4, 5

15 U.S.C. § 77l(a) ....................................................................................................4

15 U.S.C. § 77z-1(a)(3)(B)(i) .................................................................................3

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) .........................................................................2

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(aa), (bb), (cc)..............................................3

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) ..................................................................6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) ..................................................................5

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc) ...................................................................6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) .....................................................................2, 9

**Other Authorities**

Gibson, Dunn & Crutcher LLP,
    *Securities Litigation – A Practitioner's Guide* 2d Ed., Release No. 1
    (Meryl L. Young, *et al.*, ed., Practising Law Institute Oct. 2017)..................4, 5

DeKalb County Pension Fund ("DeKalb") respectfully submits this memorandum of points and authorities in further support of its motion for appointment as Lead Plaintiff pursuant to § 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B), approval of DeKalb's selection of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel, DeConcini McDonald Yetwin & Lacy, P.C. (the "DeConcini Firm") as Liaison Counsel, and in opposition to all other competing motions.[1]

## PRELIMINARY STATEMENT

Presently pending before this Court are three motions by class members who seek appointment as Lead Plaintiff in the above-captioned action (the "Action" or the "Federal Action"), which asserts claims for violations of the Securities Act against Mesa Air Group, Inc. ("Mesa" or the "Company") and certain of its officers, directors, and underwriters of Mesa's initial public offering ("IPO"). The competing movants are DeKalb (ECF No. 22), City of Pittsburgh Comprehensive Municipal Pension Trust Fund ("Pittsburgh CMPTF") (ECF Nos. 15, 16, 20) and Bennet R. Glover ("Glover") (ECF Nos. 10-12).[2] As discussed below, DeKalb is by far the most adequate movant under the PSLRA and should be appointed Lead Plaintiff and its chosen counsel appointed as Lead Counsel and Liaison Counsel.

Under Section 27 of the Securities Act, as amended by the PSLRA, when multiple class members seek appointment as Lead Plaintiff, Congress has established a rebuttable presumption favoring the appointment of the movant—the so-called "most adequate plaintiff"—who possesses the largest financial interest in the litigation provided the movant

[1]   Unless stated otherwise, the following conventions are used herein: (1) all defined terms have the same meanings as they did in DeKalb's opening brief, *see* ECF No. 22 ("Opening Br."); (2) all internal citations and quotation marks are omitted; (3) all emphases are added; and (4) unless stated otherwise, all references to "Ex. __" are to the exhibits annexed to the Declaration of Gary F. Urman, dated June 1, 2020 (ECF No. 22-1), filed in support hereof.

[2]   Marc D. Behr ("Behr") (ECF Nos. 13-14) filed a Notice of Withdrawal of his motion for appointment as lead plaintiff on June 9, 2020. ECF No. 23. Charles Gates ("Gates") (ECF Nos. 19, 21) filed a Notice of Withdrawal of Lead Plaintiff and Lead Counsel Motion on June 15, 2020. ECF No. 24.

makes a *prima facie* showing that the movant satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018) ("Once a movant has demonstrated that it has the largest financial interest, it need only make a *prima facie* showing of its typicality and adequacy."). The statutory scheme "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). After the Court identifies the movant with the largest financial stake in the litigation, the Court must then determine whether the movant "satisfies the other statutory requirements." *Id.*

With statutory damages of approximately $308,151.00, DeKalb possesses the largest financial interest in the Action among the four remaining Lead Plaintiff movants. *See* Opening Br. at 5. Additionally, DeKalb has shown that it satisfies the typicality and adequacy requirements of Rule 23(a) because it timely moved for appointment as Lead Plaintiff, its interests are aligned with the proposed class as evidenced by the PSLRA-required certification, and it is subject to no conflicts or unique defenses. Further, DeKalb is by far the most experienced movant before the Court in this matter and has retained counsel experienced in successfully prosecuting complex securities class actions who are not subject to a conflict in this case. *See* Opening Br. at 6-9.  This Court therefore should adopt the presumption provided by the PSLRA that DeKalb is the most adequate plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). As there is no proof rebutting the presumption in favor of DeKalb's appointment, 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II), DeKalb is entitled to be appointed Lead Plaintiff and its selection of Lead Counsel and Liaison Counsel should be approved.

For the reasons summarized above and explained further below, DeKalb therefore respectfully requests that the Court grant its motion to be appointed Lead Plaintiff and approve its selection of the Faruqi Firm as Lead Counsel and the DeConcini Firm as

Liaison Counsel.

## ARGUMENT

### I. DEKALB IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF AS A RESULT OF THE PSLRA'S MOST ADEQUATE PLAINTIFF PRESUMPTION

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 77z-1(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable "presumption that the most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that . . . ." filed a timely motion to be appointed lead plaintiff, has the largest financial interest in the relief sought by the class, and otherwise satisfies Rule 23's criteria for class representatives. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(aa), (bb), (cc).

The Ninth Circuit has outlined the steps the Court must take in appointing a lead plaintiff. First, the Court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. Second, the Court "must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* Notably, at the lead plaintiff stage, only a *prima facie* showing of typicality and adequacy is necessary. *See Hessefort*, 317 F. Supp. 3d at 1060-61. A "wide ranging analysis" of whether Rule 23's typicality and adequacy requirements are met is inappropriate at this stage and "should be left for consideration on a motion for class certification." *Puente v. Chinacast Educ. Corp.*, No. CV 12-4621-JFW (PLAx), 2012 WL 3731822, at *3 (C.D. Cal. Aug. 22, 2012); *Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004) (same). Third, "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the

3

requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730. Once the presumptive lead plaintiff is chosen, other plaintiffs are afforded an opportunity to present evidence to rebut the presumptive lead plaintiff's Rule 23(a) showing. *Id.*

### A.    DeKalb Possesses The Largest Financial Interest In The Relief Sought By The Class

While the PSLRA does not prescribe a methodology for calculating each movant's financial interest, courts in this district typically evaluate movants using either the economic loss method (*i.e.*, actual economic losses suffered) or the potential recovery method (*i.e.*, recoverable damages). *See In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL 6842021, at *4 (N.D. Cal. Dec. 16, 2019) (discussing the two methods); *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *5 (N.D. Cal. May 13, 2016) ("Methods in the first category equate financial interest with actual economic losses suffered. In contrast, a second category of methods equates largest financial interest with potential recovery."); *Leevan v. Credit Suisse Int'l*, No. C 13-2783 SBA, 2013 WL 6490269, at *3 (N.D. Cal. Dec. 5, 2013) ("District Courts have equated financial interest with actual economic losses suffered or with potential recovery, *i.e.*, recoverable damages.").

The Complaint in this Action asserts claims under Sections 11, 12 and 15 of the Securities Act.  *See* ECF No. 1, Class Action Complaint ("Complaint"), Counts I - III at ¶¶ 58-77 (listing claims).[3] Section 11 of the Securities Act provides a statutory measure of damages that is easy to calculate and can be "consistently applied," as required by the Ninth Circuit in *Cavanaugh*. *See Cavanaugh*, 306 F.3d at 730 n.4 (providing that the "accounting methods" to be used for calculating a lead plaintiff's financial interest should be "both rational and consistently applied"); 15 U.S.C. § 77k(e) (setting forth Section 11's "[m]easure of damages"); *see also* Gibson, Dunn & Crutcher LLP, *Securities Litigation – A*

---

[3]    Section 12(a)(2) of the Securities Act provides for a remedy of rescission, that is, "the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon tender of the security" and "[Rescissory] damages, if the plaintiff no longer owns the security." 15 U.S.C. § 77l(a).

4

*Practitioner's Guide*, 2d Ed., Release No. 1, §7.2.2 at 7-5 (Meryl L. Young, *et al.*, ed., Practising Law Institute Oct. 2017) ("Practitioner's Guide") (providing that "[t]he formula in section 11(e) is the sole methodology to be used to calculate section 11 damages[]"). Because the PSLRA requires that the most adequate lead plaintiff is the one with the "largest financial interest in the relief sought by the class," 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb), and Section 11(e) of the Securities Act sets forth how to calculate each movant's damages, DeKalb respectfully submits that potential recovery (*i.e., recoverable damages*) is the appropriate methodology in this Action.

A plaintiff's potential recovery (*i.e.*, damages) under Section 11 depends upon "whether and when a plaintiff sold his shares prior to entry of judgment in the case." Practitioner's Guide at § 7.2.2 at 7-5. That is, the measure of each plaintiff's damages is the difference between the price paid for the security (not to exceed the price at which the securities were offered to the public—in this case $12 per share) and (1) the value thereof as of the time such suit was brought—in this case $3.03 per share,[4] or (2) the price at which such security was disposed of in the market before the action was filed, or (3) the price at which such security was disposed of after the action was filed but before judgment if such damages are less than the difference between the purchase price and the value of the security at the time of suit—$3.03 per share. 15 U.S.C. § 77k(e). *See* Urman Opp. Decl., Ex. B (DeKalb's Loss Chart).

Each movant's claimed potential recovery under Section 11 of the Securities Act is set forth in the table below:

---

[4]    DeKalb respectfully requests that the court take judicial notice that the closing price of Mesa stock on the day before the Action was filed, April 1, 2020, was $3.03. *See* Decl. of Gary F. Urman in Opp'n to Competing Movants and in Further Supp. of DeKalb County Pension Fund's Mot. for (1) Appointment as Lead Plaintiff and (2) Approval of its Selection of Lead Counsel and Liaison Counsel ("Urman Opp. Decl."), Ex. A (chart of Mesa's historical trading prices); *see ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1232 (C.D. Cal. 2015) ("Because publicly traded companies historical stock prices can be readily ascertained and those prices are not subject to reasonable dispute, courts routinely take judicial notice of them.").

| Movant | Potential Recovery[5] |
|---|---|
| DeKalb | $308,151.00 |
| Pittsburgh CMPTF | $137,606.66 |
| Glover | $46,725.00 |

As the table above demonstrates, DeKalb indisputably possesses the largest financial interest in the relief sought by the Class under the potential recovery method as DeKalb's damages are more than twice as great as the damages of the next closest movant, Pittsburgh CMPTF, and well over six times as great as the other individual movants. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

**B.    DeKalb Satisfies The Relevant Requirements For A Lead Plaintiff Under Rule 23**

Having established that it possesses the largest financial interest, DeKalb is entitled to invoke the PSLRA's "most adequate plaintiff" presumption because it made a *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); *Cavanaugh*, 306 F.3d at 730; *see also In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 WL 2220601, at *2 (N.D. Cal. May 27, 2008) ("Because the Court has found [movant] has the largest loss and could satisfy the requirements set forth in Rule 23(a), [movant] is the presumptively most adequate plaintiff.").

As evidenced by its certification, ECF No. 22-3, Ex. B, DeKalb's claims are typical of the Class's claims because it acquired Mesa stock pursuant and/or traceable to the IPO and suffered damages as a result of Defendants' Securities Act violations. *See Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 523 (S.D.N.Y. 2018) (typicality satisfied for

---

[5]    The movants' potential recovery is derived from their respective lead plaintiff certifications and/or loss charts. *See* ECF No. 22-3 (DeKalb); ECF Nos. 20-9 & 20-10 (Pittsburgh CMPTF); ECF Nos. 12-2, 12-3 (Glover).

Section 11 claims when investors purchased stock pursuant and/or traceable to defendant corporation's IPO); *In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2009 WL 2905962, at *5 (N.D. Cal. Sept. 8, 2009) (movant's certification evidenced adequacy to serve as the lead plaintiff).

Additionally, DeKalb demonstrated that it satisfies Rule 23's adequacy requirement. DeKalb is an experienced class representative, having helped to recover many millions of dollars for class members as a Lead Plaintiff in prior cases. DeKalb was a Co-Lead Plaintiff in *In re Maxim Integrated Products Securities Litigation*, in which $173 million was recovered for the class. *In re Maxim Integrated Prods., Inc., Sec. Litig.*, Civil Action No. C-08-00832-JW (N.D. Cal.); *see* Opening Br. at 7.   DeKalb was also sole Lead Plaintiff in *In re ArthroCare Securities Litigation*, in which $74 million was recovered for the class. *In re Arthrocare Corp. Sec. Litig.*, Civil Action No. C-08-00574-SS (W.D. Tex.); *see id*. Indeed, DeKalb has also acted as class representative in a Section 11 case alleging the dissemination of a false and misleading IPO prospectus. *See In re FireEye, Inc., Sec. Litig.*, No. 14-cv-266866 (Cal. Super. Ct., Santa Clara Cty.). No other movant claims to have any prior experience acting as lead plaintiff in a large nation-wide class action such as this.

DeKalb is a transparent public institution governed by a board of trustees with a website.   Courts have recognized that public pension funds, such as DeKalb, are particularly favored as lead plaintiffs: "The Court also notes that the members of the aptly-named Pension Fund Group are *public institutional investors*, which comports with *the PSLRA's expressed preference for such lead plaintiffs*." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305-06 (S.D. Ohio 2005). Furthermore, a public pension fund is "accustomed to acting in the role of a fiduciary, and its experience with investing and financial matters will only benefit the class." *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997).

DeKalb also has selected counsel—the Faruqi Firm—with the requisite skills, experience, and competence to prosecute the Action vigorously and efficiently in the best interest of the class. *See Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 WL 682882, at \*3 (C.D. Cal. Mar. 2, 2012) (The adequacy "prong is satisfied where the lead plaintiff's attorneys are qualified and where its interest are not antagonistic to those of the class."). *See* Ex. C.

### C.    The Other Movants Would Not Make Adequate Lead Plaintiffs Under Rule 23

In addition to not possessing the largest interest, the other movants do not meet the Rule 23 adequacy requirement.  None of the individual movants claim to have the experience in managing large complex class actions that DeKalb has.

Pittsburgh CMPTF is disqualified under Rule 23 because it is simultaneously serving as a Plaintiff in a competing state court class action based on the same underlying facts. By commencing a state court case for nearly identical claims, opposing Defendants' motion to stay the state case until the lead plaintiff is appointed in this Federal Action (*see* Mem. of Points and Authorities in Supp. of Mot. of City of Pittsburgh Comprehensive Municipal Pension Tr. Fund for Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Pittsburgh CMPTF Motion"), ECF No. 16 at 2, and now appearing here and asking this Court to appoint it lead plaintiff in this Action, Pittsburgh CMPTF is subject to the defense of claim splitting. The claim splitting doctrine bars a party from subsequent, duplicative litigation where the "same controversy" exists. *See, e.g., Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1058 (S.D. Cal. 2007) (quoting *Nakash v. Super. Ct.*, 196 Cal. App. 3d 59 (1987)). To determine whether a suit is duplicative, courts in the Ninth Circuit borrow from the test for claim preclusion. *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007) ("'[T]he normal claim preclusion analysis applies and the court must assess whether the second suit raises issues that should have been brought in the first.' . . . . Thus, in assessing whether the second action is duplicative

8

of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same") (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139–40 (2d Cir. 2000), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008); *Mendoza v. Amalgamated Transit Union Int'l,* No. 2:18-CV-959(JCM)(DJA), 2020 WL 2112121, at *10 (D. Nev. May 4, 2020).  This defense is unique to Pittsburgh CMPTF and may threaten or delay class certification if asserted by Defendants. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Thus, Pittsburgh CMPTF is subject to a unique defense that renders it incapable of adequately representing the class under the PSLRA. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

Pittsburgh CMPTF also appears to be conflicted. It has stated that it has moved for appointment as Lead Plaintiff in this Action as a "protective measure." *See* Pittsburgh CMPTF Motion, ECF No. 16 at 3.  Putting aside its own self-interest, at this point the only thing Pittsburgh CMPTF could be "protecting" the putative class from is the Court appointing the most adequate Lead Plaintiff as defined by Federal law, which requires early nationwide notice followed by an open vetting process.[6]

## CONCLUSION

For the foregoing reasons, DeKalb respectfully requests that the Court (1) appoint DeKalb as Lead Plaintiff; (2) approve its selection of the Faruqi Firm as Lead Counsel and the DeConcini Firm as Liaison Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: June 15, 2020                    By: */s/ Gary F. Urman*
                                        Gary F. Urman

                                        **DECONCINI MCDONALD YETWIN & LACY, P.C.**
                                        2525 East Broadway, Suite 500
                                        Tucson, Arizona 85716
                                        Telephone:520-322-5000
                                        Facsimile: 520-322-5585

---

[6]    There is no comparable state law that requires a Plaintiff who files a securities class action in Arizona State Court to provide putative class members with notice of the initial filing of the action and an opportunity to be heard regarding their claims of adequacy to act as lead plaintiff.

Email: gurman@dmyl.com

*Attorneys for Proposed Lead Plaintiff DeKalb County Pension Fund and Proposed Liaison Counsel for the Class*

Nadeem Faruqi (*Pro hac vice to be made*)
Lubna Faruqi (*Pro hac vice to be made*)
Robert W. Killorin (*Pro hac vice to be made*)
James M. Wilson, Jr. (*Pro hac vice to be made*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: nfaruqi@faruqilaw.com
          lfaruqi@faruqilaw.com
          rkillorin@faruqilaw.com
          jwilson@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff DeKalb County Pension Fund and Proposed Lead Counsel for the Class*

10