**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
Nina F. Locker (*pro hac vice*)
nlocker@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Laurie B. Smilan (*pro hac vice*)
lsmilan@wsgr.com
1700 K St. NW, 5th Fl.
Washington, DC 20006
Telephone: (202)-973-8800
Facsimile: (202)-973-8899

**SACKS, RICKETTS & CASE LLP**
Cynthia A. Ricketts, SBN 012668
cricketts@srclaw.com
Andrew C. Stanley, SBN 029789
astanley@srclaw.com
2800 North Central Avenue, Suite 1910
Phoenix, AZ 85004
Telephone: (602) 385-3370
Facsimile: (602) 385-3371

*Attorneys for Defendants Mesa Air Group, Inc.,*
*Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello,*
*Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart,*
*G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Mesa Air Group, Inc., et al.,<br><br>Defendants. | CASE NO.:  CV-20-648-PHX-MTL<br><br>**MESA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..............................................................................................................1

I.   APPLICABLE LAW AND PLEADING STANDARDS .......................................2

II.  ARGUMENT.........................................................................................................3

   A.   Plaintiff's Claims Based on Statements Characterizing the CPA as "Stable" and "Long-Term" and Mesa's Performance as "Strong" Must Be Dismissed—For Many Reasons ........................................................3

      1.   Plaintiff's Claims Based on Characterizations of the CPA and Mesa's Operational Performance Are Based on Implausible Distortions ...................................................................................3

      2.   Plaintiff's Claims Based on Characterizations of the CPA and Mesa's Operational Performance Are Time Barred.........................4

      3.   Mesa Had No Duty to Disclose Informal Discussions with American ...................................................................................5

      4.   Mesa's Accurate Descriptions of the CPA as "Stable" and "Long-Term" And Its Operational Performance as "Strong" Are Too Vague to Be Actionable And "Bespoke Caution"...............7

   B.   Plaintiff's Claims About Purported Insufficient Spare Aircraft and Mechanics Also Must Be Dismissed—Also For Many Reasons .................9

      1.   Plaintiff's Allegations About Insufficient Spare Planes Do Not Plead a Claim...........................................................................9

      2.   Mesa's Statements Concerning Its Maintenance Personnel and Contracts Are Forward-Looking Opinions Couched in Caution ...................................................................................10

   C.   No Violations of Item 303 or 503 Are Shown ...........................................13

   D.   Plaintiff Has Not Sufficiently Alleged Standing or That Any Defendant Was A Statutory Seller Under Section 12(a)(2) ........................14

III. CONCLUSION ...................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abdo v. Fitzsimmons*,
2018 WL 11220494 (N.D. Cal. May 22, 2018) ..................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. 2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 2

*Booth v. Strategic Realty Tr., Inc.*,
2014 WL 3749759 (N.D. Cal. July 29, 2014) ........................................................ 5

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) .................................................... 7, 8

*Cai v. Switch, Inc.*,
2019 WL 3065591 (D. Nev. July 12, 2019) ......................................................... 14

*Capri v. Murphy*,
856 F.2d 473 (2d Cir. 1988) ............................................................................... 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.
    Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ......................................................................... 8, 11

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................. 14

*Hertzberg v. Dignity Partners, Inc.*,
191 F.3d 1076 (9th Cir. 1999) ............................................................................ 14

*In re Alliance Pharm. Corp. Sec. Litig.*,
279 F. Supp. 2d 171 (S.D.N.Y. 2003) ................................................................... 6

*In re Amylin Pharm., Inc. Sec. Litig.*,
2003 WL 21500525 (S.D. Cal. May 1, 2003) ...................................................... 13

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) .......................................................... 8

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ................................................................. 5

*In re Countrywide Fin. Corp. Deriv. Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ............................................................... 12

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*
932 F. Supp. 2d 1095 (C.D. Cal. 2013) ............................................................... 14

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) .............................................................................. 8

*In re Daou Systems, Inc. Sec. Litig.*,
    411 F.3d 1006 (9th Cir. 2005) ................................................................................ 12

*In re Facebook, Inc. IPO Sec.& Deriv. Litig.*,
    986 F. Supp. 2d 428 (S.D.N.Y. 2013) ........................................................................ 9

*In re Hypercom Corp. Sec. Litig.*,
    2006 WL 1836181 (D. Ariz. July 5, 2006) ............................................................... 12

*In re InfoSonics Corp. Sec. Litig.*,
    2007 WL 2301757 (S.D. Cal. Aug. 7, 2007) ............................................................ 13

*In re Metro. Sec. Litig.*,
    532 F. Supp. 2d 1260 (E.D. Wash. 2007) ................................................................ 13

*In re Quality Sys. Inc. Sec. Litig.*,
    865 F.3d. 1130 (9th Cir. 2017) .................................................................................. 8

*In re Rexplore, Inc. Sec. Litig.*,
    685 F. Supp. 1132 (N.D. Cal. 1988) ........................................................................... 5

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ...................................................................................... 6

*In re Violin Memory Sec. Litig.*,
    2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) .......................................................... 14

*In re Vivendi Universal, S.A. Sec. Litig.*,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003) ...................................................................... 15

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) .................................................................................... 13

*Karinski v. Stamps.com, Inc.*,
    2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ............................................................... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018),
    *cert. denied*, 139 S. Ct. 2615 (2019) .......................................................................... 3

*Kronfeld v. Trans World Airlines, Inc.*,
    832 F.2d 726 (2d Cir. 1987) ....................................................................................... 6

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
    501 U.S. 350 (1991) .................................................................................................... 5

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    2011 WL 4389689 (C.D. Cal. May 5, 2011) ............................................................ 15

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) .................................................................................................... 5

*Mulligan v. Impax Labs., Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) .......................................................................... 8

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ................................................................................. 8

*Pirani v. Slack Techs., Inc.*,
   445 F. Supp. 3d 367 (N.D. Cal. 2020) .................................................................. 14

*Rafton v. Rydex Series Funds*,
   2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ............................................................... 5

*Rieckborn v. Jefferies LLC*,
   81 F. Supp. 3d 902 (N.D. Cal. 2015) ...................................................................... 5

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) .................................................................. 7

*Yanek v. Staar Surgical Co.*,
   388 F. Supp. 2d 1110 (C.D. Cal. 2005) ................................................................ 13

**STATUTES**

15 U.S.C. § 77m .............................................................................................................. 4

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| "American" | American Airlines, Inc. |
| "Complaint" or "¶" | Amended Class Action Complaint for Violations of the Federal Securities Laws, filed August 17, 2020, ECF No. 52 |
| "CPA" | Capacity Purchase Agreement |
| "CW" | Confidential Witness |
| "DOT" | Department of Transportation |
| "Ex." | Exhibits attached to the Stanley Decl. |
| "Individual Mesa Defendants" | Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados |
| "IPO" | Initial Public Offering |
| "Mesa" or "Company" | Mesa Air Group, Inc. |
| "Defendants" | Mesa Air Group, Inc. Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados |
| "Offering Documents" | Registration Statement and Prospectus |
| "Open. Br." | Mesa Defendants' Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof, filed October 1, 2020 (ECF No. 56) |
| "Opp." | Memorandum of Points and Authorities in Opposition to Mesa Defendants' Motion to Dismiss, filed November 16, 2020 (ECF No 60) |
| "Prospectus" | Mesa's Form 424B4, filed with the Securities and Exchange Commission ("SEC") on August 10, 2018 and excerpts attached as Ex. 1 to Stanley Decl. |
| "Stanley Decl." | Declaration of Andrew C. Stanley in Support of Mesa Defendants' Motion to Dismiss Amended Class Action Complaint for Violations of the Federal Securities Laws, filed October 1, 2020 (ECF No. 57) |
| "United" | United Airlines, Inc. |

**INTRODUCTION**

As shown in the Opening Brief, Plaintiff's Complaint fails to demonstrate that any of the challenged statements in Mesa's August 2018 Offering Documents—describing the Company's strong operating history and expressing optimism that its long-term capacity purchase agreements ("CPAs") with American and United and cost-effective maintenance solutions positioned it for continued success—were false or misleading. As also shown, the challenged statements were tempered with caution. Mesa warned that: (1) its dependence on its CPA agreements, the source of all of its revenue, carried significant business risks, including that either carrier could change its levels of utilization of Mesa's fleet or the terms of its CPA agreement with Mesa, (2) past challenges (such as labor shortages) could recur, and (3) there were many risks endemic to the regional airline industry (e.g., weather, airport delays, accidents, and health crises)—all of which could adversely affect Mesa's future operational and financial performance. Defendants also showed that contrary to Plaintiff's conclusory contentions, these risks had not "materialized" at the time of the IPO but instead (1) occurred well after the IPO (e.g., a 2019 amendment to the American CPA, and outsourced maintenance delays, accidents, and bad weather later that year), (2) were resolved well before the IPO (past labor shortages), or (3) simply did not exist (the allegedly inadequate number of spares).

Nonetheless, in its Opposition, Plaintiff persists in asserting that these past, future, and/or non-existent circumstances were known and were required to be disclosed in the Offering Documents. Plaintiff's Opposition relies solely on implausible distortions of out-of-context quotes from Mesa's post-IPO statements, which are belied by the full actual statements themselves. For instance, Plaintiff continues to implausibly twist Mesa's post-IPO acknowledgement that, prior to the IPO, American had informally complained about the below-industry performance standards to which it was bound under the parties' 17-year-old CPA—and falsely argues that, prior to the IPO, American was both dissatisfied with Mesa's actual industry-leading performance and forced the renegotiation of the CPA's performance terms. Similarly, Plaintiff continues to implausibly mischaracterize

-1-

Mesa's explanation that it negotiated for additional spare aircraft to meet the 2019 amended CPA's heightened performance requirements, as an "admission" that Mesa's spare count was not adequate to meet the lower agreed-upon performance standards in the CPA at the time of the IPO. Plaintiff has not identified any documents, witness accounts, or other purported facts to support any of these claims. All that is offered is Plaintiff's distortions of Mesa's post-IPO statements which are implausible on their face and anecdotes from low level CWs, all insufficient to save their fatally defective claims.

Plaintiff has also failed to refute Defendants' additional arguments. Indeed, the Opposition barely addresses Defendants' many cases that demonstrate as a matter of law that the challenged statements in Mesa's Offering Documents are also not actionable because they are (1) mere puffery and/or (2) reasonable opinions that are not actionable under *Omnicare* and/or (3) forward-looking statements immunized under the "bespeaks caution" doctrine, and/or (4) barred by the statute of limitations. For each of these reasons, the Complaint must be dismissed in its entirety.

## I.    APPLICABLE LAW AND PLEADING STANDARDS

While Plaintiff agrees that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) set forth the applicable pleading standards, it contends that these cases require this Court to accept all of its allegations as true—a standard each of these cases expressly *rejected*. Opp. at 5-6. *Twombly, Iqbal*, and their Ninth Circuit progeny in securities cases (*none* of which Plaintiff addresses) instruct that when deciding a motion to dismiss:

- "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not to be considered;

- "Where the facts as pleaded indicate that there are . . . alternative explanations, only one of which would result in liability, 'plaintiffs cannot offer allegations that are merely consistent with their favored explanation;'"

- "Something more is needed, such as <u>facts</u> tending to exclude the possibility that the alternative [non-culpable] explanation is true;"

- Such <u>facts</u> must show that the Offering Documents were misleading <u>*at the time of the IPO*</u>, not merely that circumstances changed due to later events;

- Challenged statements must be read "in light of all [the] surrounding text, including hedges, disclaimers, and apparently conflicting information;" and

-2-

- Allegations contradicted by matters deemed part of the Complaint or properly subject to judicial notice must be rejected.

Open Br. at 6-7 (citing cases).  As shown in the Opening Brief and below, Plaintiff's allegations fail to satisfy these fundamental pleading standards.

## II.    ARGUMENT

### A.    Plaintiff's Claims Based on Statements Characterizing the CPA as "Stable" and "Long-Term" and Mesa's Performance as "Strong" Must Be Dismissed—For Many Reasons

#### 1.    Plaintiff's Claims Based on Characterizations of the CPA and Mesa's Operational Performance Are Based on Implausible Distortions

In its Opposition, Plaintiff cannot make up its mind if Mesa's Offering Documents were allegedly misleading because they failed to disclose that at the time of the IPO the renegotiation of the American CPA was *proposed or in progress* or at least *known to be inevitable*.  Opp. at 2, 10-12, 22.  Plaintiff's vacillation underscores that its allegations are pure speculation.  Open. Br. at 8-9 (citing ¶¶ 77-78, 94); Opp. at 10-12.  As Defendants showed, *no* facts exist—and accordingly none are alleged—to support Plaintiff's suggestion that American's pre-IPO expressions of displeasure with the CPA's performance terms meant that there were actual or even anticipated renegotiations with American prior to the IPO.  Similarly, the plain words of the full statement announcing the CPA amendment, acknowledging that the agreed-upon performance levels were "below that [sic] which the industry is currently operating" was *not* an admission that Mesa's *actual* operational performance (as opposed to the CPA's 17-year-old performance terms) was below current industry standards.  Open. Br. at 15; ¶ 94.

In response, the Opposition merely repeats the distortions and speculation as if they were fact.  Opp. at 14-15, 21.  Plaintiff also ignores the Ninth Circuit's decision denouncing the very gamesmanship in which Plaintiff engages: "select[ively citing] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2615 (2019); Open. Br. at 7.

Because Plaintiff's claimed "omissions" of alleged pre-IPO negotiations or subpar performance are based on implausible distortions of statements taken out of context and are *devoid of any supporting factual allegations,* Plaintiff's claims must be dismissed.

### 2. Plaintiff's Claims Based on Characterizations of the CPA and Mesa's Operational Performance Are Time Barred

As also shown in the Opening Brief, Plaintiff's claims about the CPA's amendment and about Mesa's pre-IPO performance are time barred. Open. Br. at 8-10. The Complaint itself alleges that the CPA Amendment and its key terms—including the new performance criteria, additional spares, and penalties that could result in the removal of aircraft from the CPA—were disclosed on January 31, 2019. Open. Br. at 9; ¶¶ 78(b),(c),(d), 94; Exs. 4, 6. The Complaint also alleges that a few days later, on February 5, 2019, Mesa's CEO both provided further details about the amendment and "revealed" that, a year earlier, American had expressed its dissatisfaction with the 17-year-old CPA's contractual performance levels. ¶¶ 78(b),(c), 94; Ex. 6. Thus, as is clear from Plaintiff's own allegations, more than a year before this case was filed and after the Securities Act's one-year statute of limitations expired, Plaintiff knew all the information on which its claims relating to the CPA amendment and Mesa's pre-IPO operating performance are based. Open. Br. at 9; 15 U.S.C. § 77m.

Plaintiff attempts to evade the statute of limitations by asserting that it did not discover its claims until December 2019 when the *fully executed* Amendment was filed as an exhibit to Mesa's Annual Report. Open. Br. at 9-10; Opp. at 7-8; ¶ 78(f). Plaintiff's "discovery" charade cannot save its time-barred claims because (1) according to the Complaint itself, *the February 2019 disclosures* put Plaintiff on notice of its purported claims that the Offering Documents falsely characterized Mesa's relationship with American as "stable" (¶¶ 13, 78, 93-94) and, regardless, (2) Plaintiff does not identify *any* material term in the executed Amendment that was not included in the January and February 2019 disclosures. As shown in the Opening Brief, the Securities Act's "one-year time period does not reset simply because additional information is revealed that could make for a stronger claim." Open. Br. at 10. Similarly, here, the one-year statute of

limitations was not reset in December 2019 when the Amendment was attached as an exhibit to Mesa's Annual Report.

None of the cases on which Plaintiff relies change this well-established law or the conclusion that Plaintiff's claims are time barred.  Instead, each of Plaintiff's cases is inapt because, unlike here, the statute of limitations arguments made by defendants in those matters (1) required piecing together several incomplete partial disclosures (*In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1080-81 (N.D. Cal. 2010)); or (2) were predicated on non-definitive disclosures about merely "possible" issues (*Booth v. Strategic Realty Tr., Inc.*, 2014 WL 3749759, at *5-6 (N.D. Cal. July 29, 2014)); or (3) were based on non-obvious arcana in financial statements (*Rafton v. Rydex Series Funds*, 2011 WL 31114, at *9-10 (N.D. Cal. Jan. 5, 2011)); *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 915-16 (N.D. Cal. 2015)).  Opp. at 7-8.  Here, by contrast, all of the facts on which Plaintiff bases its claim of falsity were plainly stated and fully apparent more than a year before this action was filed.

Plaintiff's reliance on the equitable tolling doctrine (Opp. at 7 n.6, citing *In re Rexplore, Inc. Sec. Litig.*, 685 F. Supp. 1132, 1137-38 (N.D. Cal. 1988)) also does not save its time-barred claims.  The Supreme Court held long ago that "the equitable tolling doctrine is fundamentally inconsistent with" the time limitation structure of the Securities Act.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (citation omitted); *accord Merck & Co. v. Reynolds*, 559 U.S. 633, 647 (2010) (noting Congress' subsequent adoption of statutory language consistent with *Lampf*).

Accordingly, Plaintiff's claims concerning the CPA amendment and alleged subpar performance are time barred and must be dismissed for this independent reason.

### 3. Mesa Had No Duty to Disclose Informal Discussions with American

As Defendants also showed, even assuming *arguendo* that Plaintiff's claims based upon the American CPA Amendment were timely (they are not) and there are facts to support that renegotiation discussions pre-dated the IPO (there are not), there is "no obligation at the time of the public offering to disclose the status of ongoing negotiations,"

much less relay informal comments from a business partner, "*until the outcome [was] known.*" Open. Br. at 10. Moreover, the Ninth Circuit has held that there is no duty to disclose that a business partner will take detrimental actions, even if it has expressly stated such intentions, because "another company's plans cannot be known to a certainty."[1] *Id.* at 11 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1406-07 (9th Cir. 1996)).

Plaintiff ignores all of Defendants' authorities on this point. Instead, it cites wholly distinguishable cases, including *summary judgment* decisions in which courts found that *specific affirmative* representations about key business relationships were completely at odds with *evidence* of near-completed discussions that *completely altered those relationships*. Further, one of these out-of-circuit cases actually granted summary judgment for *defendants* on the Section 11 claim, finding that the Registration Statement's disclosure that a competitor as threatening business-limiting infringement claims was *not* misleading where plaintiff failed to establish that licensing negotiations with the competitor began prior to the offering. *In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 196-97 (S.D.N.Y. 2003); *cf. Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 735-37 (2d Cir. 1987) (prospectus' disclosure of "no assurance" of continued positive relationship with parent company misleading where *evidence showed* decision to spin off TWA altogether, reached soon after the offering, was being actively considered). By contrast, Mesa's soft, affirmative characterizations of its 17-year-old CPA Agreement (which had been amended 18 times) as "strong" and "stable" were not rendered false or misleading by American's expression of dissatisfaction with certain contract terms—not a disclosable event that altered the parties' entire relationship. Open. Br. at 11-12.

Plaintiff's other cited cases turned on allegations of undisclosed negative *facts* about a company's own business operations (not a company's relationship with a business partner) "that differ[ed] in a material way" from defendants' affirmative disclosures. *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at 5-6 (N.D. Cal. Aug. 7, 2020) (citation

---

[1] Certainly, American's plans were not known to a certainty by two low-level mechanics, one of whom left before the IPO, which Plaintiff now claims "establish" that "American was dissatisfied with Mesa's performance." Opp. at 17. *See* Section_B.2, *infra*.

omitted) (describing illegal conduct as "past" despite facts demonstrating it continued); *Abdo v. Fitzsimmons*, 2018 WL 11220494, at \*2-3 (N.D. Cal. May 22, 2018) (describing failed purchasing technology as successful where investigation revealed "sales" were to employees); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1135 (N.D. Cal. 2017) (statements touting monthly active user growth misleading absent disclosure that daily active user trends were negative).  None of Plaintiff's cases save its claims.

### 4. Mesa's Accurate Descriptions of the CPA as "Stable" and "Long-Term" And Its Operational Performance as "Strong" Are Too Vague to Be Actionable And "Bespoke Caution"

As shown in the Opening Brief, Mesa's statements describing the CPA as "stable"[2] and "long-term," characterizing its operational performance as "strong, "reliable," and "cost-competitive" and that its regional jets had "best-in-class operating efficiencies" are non-actionable "puffery."[3]  Open. Br. at 10-11, 14-16.  As shown, courts routinely hold that such "mildly optimistic, subjective assessment[s]" do not amount to securities violations because investors "'know how to devalue the optimism of corporate executives.'"  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (citation omitted); Open. Br. at 11.  This is true even where the optimism is not borne out by

---

[2] Plaintiff's Opposition concedes that it cannot credibly contend that "stable" meant "not subject to change."  Opp. at 11.  Nonetheless, Plaintiff argues that any forward-looking characterization of the term "stable" would not be protected under the "bespeaks caution" doctrine because Mesa's risk disclosures—which specifically warned that the CPAs could be terminated prior to their expiration, that there were no minimum utilization levels in the CPAs, and that any reduction from then-current levels "*would* adversely impact [Mesa's] financial results"—were "mere boilerplate."  Opp. at 12-13; *see* Open. Br. at 13-14, citing Ex. 1 at 20-22).  This conclusory objection fails to show how these blunt cautionary disclosures did not meaningfully warn investors of the very risks Plaintiff claims were not disclosed.

[3] Plaintiff's Opposition appears to seek to change the nature of its related challenge to Mesa's description of the CPA as providing "guaranteed" revenue, now arguing that as a result of the amended penalty provisions, the amount guaranteed would necessarily vary if aircraft were removed from the CPA.  Opp at 11-12; Open. Br. at 11-12.  As an initial matter, Plaintiff cannot amend its allegations in a brief.  Further, Plaintiff ignores that the Prospectus accurately disclosed that: "Although we receive guaranteed monthly revenue for each aircraft under contract and a fixed fee for each block hour or flight actually flown, *there are no minimum levels of utilization specified in our capacity purchase agreements [CPAs]*" and that "*[r]educed utilization levels* of our aircraft or other changes to our schedules under our capacity purchase agreements [CPAs] *would adversely impact our financial results*."  Open. Br. at 13 (citing Ex. 1 at 20-22).

-7-

subsequent events, including where allegedly "positive" business relationships become more contentious or are even terminated soon after a favorable description in offering documents. Open. Br. at 11. Again, the Opposition does not attempt to distinguish a single one of Defendants' cases, although it curiously affirmatively cites one of them, *DOT*, which *dismissed* puffing statements, as well as a Ninth Circuit case *affirming the dismissal* of "business puffing" statements (*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 602, 606 (9th Cir. 2014)), and another Ninth Circuit case that does not address "puffery" at all (*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017)). *See* Opp. at 10, 14.

Only one of Plaintiff's "puffing" cases relates to the characterization of a business relationship, and it is clearly distinguishable. *See* Opp. at 10 (citing *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *5, *10-11 (C.D. Cal. Jan. 17, 2020)). In *Karinski*, the company affirmatively represented that USPS was "very happy" with the parties' relationship when, in fact, USPS had allegedly accused it of "manipulative" and abusive practices in an ongoing investigation that led to the termination of the agreement on which the company's entire business was based. No such facts are alleged here.

Plaintiff's other cases involved representations that "went beyond 'feel good' optimis[m]" and "subjective or emotive terms," and described material aspects of the company's *own business* in favorable terms at odds with known negative facts. *See* Opp. at 10 (citing *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d. 1130, 1143-44 (9th Cir. 2017) (touting company's known-to-be diminishing sales pipeline as "deep" and "not[] drying up . . . [or] slowing down"); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *14-15 (N.D. Cal. June 2, 2020) (touting sales as "off to a really great start" days before a disappointing new product was scheduled to be pulled from production); *Uber*, 2020 WL 4569846, at *7 (touting company's legal compliance despite knowledge of continuing violations); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966-67 (N.D. Cal. 2014) (same, concerning regulatory compliance); *In re Facebook, Inc. IPO Sec.& Deriv. Litig.*, 986 F. Supp. 2d 428, 465 (S.D.N.Y. 2013) (touting NASDAQ's ability to handle the demand for

-8-

Facebook's IPO despite issues with its trading systems days before the IPO). Mesa's general statements that its relationship with American under a contract spanning decades was "strong" or "stable," when American had allegedly expressed dissatisfaction with some of the terms of the binding CPA, are in stark contrast to the facts in these cases.

**B.    Plaintiff's Claims About Purported Insufficient Spare Aircraft and Mechanics Also Must Be Dismissed—Also For Many Reasons**

**1.    Plaintiff's Allegations About Insufficient Spare Planes Do Not Plead a Claim**

As shown in the Opening Brief, the Complaint's assertion that the Offering Documents were misleading because in August 2019 Mr. Ornstein supposedly "admitted" that Mesa "did not have the adequate spare count" at the time of the IPO (¶¶ 7, 85(c), 105-111) fails for at least two reasons. First, Mesa *did not* characterize (and *was under no obligation* to disclose) the *adequacy* of its spare count in the Offering Documents and, thus, there was no actionable misstatement or omission. Open. Br. at 16-17. Second, Mr. Ornstein's August 2019 statement related to the number of spares Mesa thought would be optimal to meet the *amended CPA's elevated performance requirements*, not the binding requirements under the CPA in place at the time of the IPO. Indeed Mr. Ornstein's statement actually *affirmed* that, at the time of the IPO, the spare count in the American CPA *was more than adequate*, noting that "we had 3 spares, historically, with American" and "operat[ed] for literally over a decade with 3 spares." ¶ 109; Ex. 7 at 15. It was in this context that Mr. Ornstein explained that when American pushed for elevated performance standards in connection with the Amendment, he advocated for two more spares—for a total of five—"*in return for the ability for us to operate at a higher level.*"[4] ¶ 94; Ex. 6 at 6; *see* Open. Br. at 17.

---

[4] Mr. Ornstein also indicated that there was no "right" number of spares, something subject to ongoing debate at Mesa and *in the industry* for "literally years." ¶ 109. In its Opposition, as in its Complaint, Plaintiff distorts this "no right number" statement to suggest it was an acknowledgement that Mesa did not have the "right" number of spares. Opp. at 15-16. This is an implausible distortion, which, like all the others, cannot be credited.

In its Opposition, Plaintiff does not directly address the clear import (nor the Complaint's implausible distortion) of Mr. Ornstein's statements. Instead, it argues that his statement that there were *three* spares under the American CPA shows that the Prospectus was false when stating that there was only one "operational spare *not assigned for service under either of its CPAs with American or United.*" Opp. at 15 (Ex. 1 at 4 (emphasis added)). As explained in the Opening Brief, and as is plain from the Prospectus, there is a distinction between operational spares "assigned" under the American or United CPAs and operational spares "*not assigned*" under the CPAs (Open. Br. at 4, n.2) and Mesa had both as the Registration Statement and its exhibits disclosed. Ex. 3 at 6. Plaintiff cannot plead a securities claim by ignoring the Offering Documents' plain language (i.e., the plain meaning of the words "not assigned"), and its incorporated exhibits. Open. Br. at 4, n.2; *see also* Ex. 1 at 4.

> **2.    Mesa's Statements Concerning Its Maintenance Personnel and Contracts Are Forward-Looking Opinions Couched in Caution**

As Defendants showed in their Opening Brief, Mesa's statements about its "belief" and "expectation" that its on-staff mechanics and outsourced heavy maintenance contractors "will provide predictable high-quality and cost effective solutions for most maintenance categories over the next several years" are both (1) non-actionable opinions under the Supreme Court's decision in *Omnicare*, and (2) forward-looking statements accompanied by meaningful risk disclosures, immunized from liability under the bespeaks caution doctrine. Open. Br. at 18-21. Plaintiff asserts that these opinions fall within *Omnicare*'s narrow exceptions because (1) they contain an embedded statement of untrue fact—allegedly that Mesa was not "operationally efficient" at the time of the IPO—and (2) they were not the product of a reasonable inquiry. Opp. at 16.

Plaintiff is wrong. On the first point, the opinion statements say nothing about Mesa's "operational efficiency" and instead only speak to the expected cost-effectiveness and reliability going forward of Mesa's maintenance solutions. Moreover, Plaintiff's bare allegation of a "lack of inquiry" concerning this opinion lacks *any* factual support. *See*

*Align*, 856 F.3d at 615 (requiring particularized facts "about the inquiry [defendants] did or did not conduct or the knowledge [they] did or did not have.") (citation omitted).

On the second point, as shown in the Opening, there are no facts that undermine Mesa's opinion that it had reliable and cost-effective solutions in place as there are no *facts* indicating that *at the time of the IPO*, Mesa's operational performance had been affected (1) by a lack of mechanics (a past challenge),[5] or (2) problems with third-party maintenance contractors (a post-IPO problem). Open. Br. at 18-21. Moreover, Plaintiff does not dispute the many facts *supporting* Mesa's optimistic opinions about its maintenance solutions: (i) Mesa entered into long-term parts procurement and maintenance contracts with reputable aircraft manufacturers and maintenance providers; (ii) it invested in engine overhauls prior to the IPO; (iii) the FAA approved its maintenance; and (iv) it employed more than 400 qualified mechanics. *Id.* at 19; ¶¶ 68, 73, 74; Ex. 1 at 91, 97, 99.

The only purported "facts" to which Plaintiff points to support its allegations of widespread maintenance problems affecting operations are the anecdotes of two unnamed mechanics (the CWs). Opp. at 17 (citing ¶¶ 112-120). As shown in the Opening Brief, these former employees' personal frustrations about *parts availability* "on any given day" either predate the IPO (one mechanic left Mesa before then) or are untethered in time and, in any event, are wholly insufficient to support a plausible inference that company-wide maintenance problems existed at the time of the IPO. Open. Br. at 19; ¶¶ 112-120. Moreover, although Plaintiff argues that these mechanics' statements establish that "American was dissatisfied with Mesa's performance," (Opp. at 17) there are no facts supporting any plausible inference that these mechanics were privy to American's senior managements' views about Mesa's operations. As the Ninth Circuit expressly stated in the very case Plaintiff cites, confidential witnesses cannot be credited where, as here, Plaintiff fails to plead "'with sufficient particularity to support the *probability that a person in the position occupied by the source would possess the information alleged*.'" *In re Daou*

---

[5] Opp. at 17-18 (noting Ornstein's May 2019 statements that prior to, but not continuing through, the IPO, Mesa had been hamstrung by pilot and mechanic shortages); *see* Open. Br. at 20.

*Systems, Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (emphasis added); *see also In re Hypercom Corp. Sec. Litig.*, 2006 WL 1836181, at *5 (D. Ariz. July 5, 2006) (low level "confidential witnesses' unreliable or conclusory allegations will not be considered"); Open. Br. at 19-20.  Plaintiff's only other case, *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1058-59, n.10 (C.D. Cal. 2008), alleged detailed and corroborative statements from *fourteen* confidential witnesses, including several executives, from many locations and corporate functions over a long time period.  The *Countrywide* CW allegations thus merely underscore the paucity of the two low-level mechanics' accounts offered here, which are clearly insufficient to plead a claim.

Apart from the mechanics, Plaintiff's "inadequate maintenance solutions" allegations depend on yet another implausible distortion of another statement by Mr. Ornstein: his acknowledgment that *long before the IPO*, Mesa had experienced periods of understaffing, primarily relating to pilot shortages.  Open. Br. at 18-20; *compare* ¶¶75(b), 85(b), *with* ¶ 99 and Ex. 12 at 9; *see also* Ex. 1 at 99-100.  Neither the Complaint nor the Opposition identifies any facts suggesting that *at the time of the IPO* Mesa was experiencing mechanic shortages.  Open. Br. at 20.

Finally, in the Opening Brief, Defendants showed that Mesa's opinions about its maintenance solutions were (1) forward looking, relating to Mesa's *future* ability to obtain predictable, high-quality and cost-effective maintenance, and (2) "bespoke caution," warning of the risks that (i) mechanic shortages could recur, (ii) outside contractors might be unreliable, and (iii) either of these eventualities could affect Mesa's financial and operational performance.  Open. Br. at 18-21 (citing ¶¶ 82, 84, 102; Ex. 1 at 27-28, 99-100).  Plaintiff's cited cases rejecting the application of the "bespeaks caution" doctrine are inapposite because they involved (1) statements that were not in fact forward-looking but were instead "assertions of present fact" and/or (2) risks that had already materialized when the statements were made,[6] and/or (3) risk "factors that are so broad that they apply

---

[6] Plaintiff's bare assertion that these risks had materialized at the time of the IPO is at odds with the fact that *no* operational issues related to ongoing mechanic shortages were reported in any of the SEC filings or other documents Plaintiff cites and the only issue

to any business" generic. Opp. at 19 (citing *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1123 (C.D. Cal. 2005)). Here, by contrast, Mesa's forward-looking opinion statements in the Prospectus were *not misleading* in light of "specific" disclosed risk factors "'relat[ing] directly to that to which plaintiff[] claim[s] to have been misled'"— recurring labor shortages and potential maintenance contractor delays. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1415-16 (9th Cir. 1994) (citation omitted) (cited in Opp. at 12-13).

Because Mesa's statements concerning its maintenance solutions are non-actionable forward-looking opinions couched in caution and the allegations of falsity are based on (1) unreliable witnesses and (2) out-of-context statements about past labor shortages, Plaintiff's "inadequate maintenance" claims must be dismissed.

## C.    No Violations of Item 303 or 503 Are Shown

As shown above and in the Opening Brief, there are no facts supporting a plausible inference that at the time of the IPO (1) Mesa's operational performance (as opposed to its CPA's standards) lagged the industry, (2) Mesa's maintenance solutions were inadequate, or (3) Mesa's spare count was insufficient. Open. Br. at 22; Opp. at 20-23. Thus, there were no "known trends" nor "risks" related to these matters which Items 303 and 503 required to be disclosed.[7] In contrast, Plaintiff's cited cases each involved undisclosed specific alleged risks. *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 386 (N.D. Cal. 2020) (failure to disclose risk of contractual obligations to pay customers huge

relating to outsourced maintenance contractors did not occur until the delay at Bombardier in the Spring of 2019 (months *after* the IPO). Open. Br. at 21. *Cf.* Opp. at 12 (citing, e.g., *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1291-92 (E.D. Wash. 2007) (cautionary language insufficient because it suggested "that an event [was] a possibility when it [was], in fact, a certainty"); *In re InfoSonics Corp. Sec. Litig.*, 2007 WL 2301757, at *11 (S.D. Cal. Aug. 7, 2007) (largest customer already lost when issuer warned of general risk of such losses); *In re Amylin Pharm., Inc. Sec. Litig.*, 2003 WL 21500525, at *7-8 (S.D. Cal. May 1, 2003) (FDA had already identified deficiencies when issuer warned that negative FDA action *might* occur). Moreover, as Defendants showed, while the Complaint alleges that the risk of increased maintenance costs had purportedly materialized prior to the IPO (¶ 81), the Prospectus states that "aircraft maintenance costs *decreased* by $14.4 million, or 6.4%, from Mesa's FY2016 to FY2017." Open Br. at 18; ¶¶ 50, 51; Ex. 1 at 64.

[7] Mesa disclosed various trends and uncertainties including pilot shortages, unionized labor issues, and the timing and costs of maintenance. Ex. 1 at 54-57.

credits in the case of outages) (Item 303); *Cai v. Switch, Inc.*, 2019 WL 3065591, at \*5-6 (D. Nev. July 12, 2019) (failure to disclose risks inherent in "new" sales initiative or that the initiative had in fact already been implemented) (Item 503); *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 427 (S.D.N.Y. 2011) (warning of "risk" that proposal *might* be rejected while omitting to disclose that similar proposals had been rejected in the past) (Item 503).  While Plaintiff asserts that Defendants' Item 303 cases are inapt because they involved circumstances where the alleged trends were not shown to exist, that is precisely why they are applicable and require that Plaintiff's Item 303 and 503 claims to be rejected.  Opp. at 21, n.7; Open. Br. at 22.

**D.    Plaintiff Has Not Sufficiently Alleged Standing or That Any Defendant Was A Statutory Seller Under Section 12(a)(2)**

As demonstrated in the Opening Brief, Section 12(a)(2) "[l]iability extends only to the 'immediate sellers' of securities and 'those who solicit purchasers'" (*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig*. 932 F. Supp. 2d 1095, 1118 (C.D. Cal. 2013) (citation omitted)) and "permits suit against a seller [or solicitor] of a security by prospectus only by 'the person purchasing such security *from him*.'"  *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999) (citation omitted).  Because this was a firm commitment offering, Plaintiff did not purchase directly from any of the Mesa Defendants, and there are no allegations establishing that any of the defendants (including the underwriter defendants[8]) made a direct sale to the Plaintiff or directly solicited Plaintiff's purchase.  Open. Br. at 22-23.  While Plaintiff concedes that a court in the Ninth Circuit has required that Plaintiff "must include very specific allegations of solicitation, including direct communication [by the particular defendant] with [the particular] Plaintiffs" (*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at \*10 (C.D. Cal. May 5, 2011), it suggests that older cases from courts in New York, which do

---

[8] "'Generally, issuers and underwriters are not sellers [under] Section 12 unless they actively participate in the negotiations with the plaintiff/purchaser.'" *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at \*18-19 (N.D. Cal. Oct. 31, 2014) (dismissing Section 12 claim where plaintiffs did not allege they "obtained title to the securities directly from any of the [u]nderwriters" or that the underwriters specifically solicited the plaintiffs' purchase of the securities for their own financial gain).

-14-

not impose such a requirement, are "better reasoned." Opp. at 24-25 (citing *Capri v. Murphy*, 856 F.2d 473, 479 (2d Cir. 1988); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 186-87 (S.D.N.Y. 2003)). However, even if such cases controlled here (they do not), New York courts concur that mere signing of offering documents is insufficient to show direct solicitation, *Vivendi*, 381 F. Supp. 2d at 187, and regardless, the New York cases are distinguishable because, unlike here, they involved specific allegations of specific executives' participation in specific roadshows. *Id.* No such allegations are made here. Accordingly, the Section 12(a)(2) claims must be dismissed.[9]

## III.   CONCLUSION

Plaintiff's claims, predicated on implausible distortions of post-IPO statements recounting long past or subsequent challenges, fail to state a claim that the Offering Documents were false or misleading in any material respect or at all. Moreover, many of Plaintiff's claims are time barred and/or inactionable for the many other reasons discussed in the Opening Brief and herein. Accordingly, the Complaint must be dismissed in its entirety.

Dated: December 16, 2020

**WILSON SONSINI GOODRICH & ROSATI, PROFESSIONAL CORPORATION**
/s/ *Nina F. Locker*
Nina F. Locker (*pro hac vice*)
Laurie B. Smilan (*pro hac vice*)

**SACKS, RICKETTS & CASE LLP**
/s/ *Andrew C. Stanley*
Cynthia A. Ricketts (Arizona Bar No. 012668)
Andrew C. Stanley (Arizona Bar No. 029789)

*Attorneys for Defendants Mesa Air Group, Inc., Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, Don Skiados*

---

[9] Because Plaintiff fails to establish liability under Section 11 or Section 12, its Section 15 "controlling person" claims also fail and must be dismissed. Open. Br. at 23-24.