**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

David G Lowthorp,

           Plaintiff,

v.

Mesa Air Group Incorporated, et al.,

           Defendants.

No. CV-20-00648-PHX-MTL

**ORDER**

Plaintiffs bring this federal securities class action pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77a *et seq.*, on behalf of themselves and all others who purchased Mesa Air Group, Inc. ("Mesa Air") securities "pursuant and/or traceable to" the company's initial public offering ("IPO"). (Doc. 52 at ¶ 1.) Plaintiffs also assert claims against several Mesa Air officers and board members, as well as the financial institutions that underwrote the IPO. (*Id.*) Defendants Mesa Air, Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados's (collectively, the "Mesa Defendants") have moved to dismiss all of Plaintiffs' claims. (Doc. 56.) Defendants Raymond James & Associates, Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Cowen and Company, LLC, Stifel, Nicolaus & Company, Inc., and Imperial Capital, LLC (collectively, the "Underwriter Defendants") have joined the Mesa Defendants' motion. (Doc. 59.) The motion is fully briefed. (Docs. 60, 63.) For the reasons given below, the Court will grant the motion in part.

# I.   BACKGROUND

This case arises out of offering documents that Mesa Air filed with the Securities and Exchange Commission ("SEC") in connection with the company's IPO. The First Amended Class Action Complaint (the "Amended Complaint") (Doc. 52) alleges the following facts, which the Court takes as true for purposes of resolving the pending motion. *See Everest & Jennings, Inc. v. Am. Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).

Mesa Air is a regional air carrier. (Doc. 52 ¶ 2.) It operates flights for American Airlines, Inc. ("American") and United Airlines, Inc. ("United") pursuant to terms detailed in respective capacity purchase agreements ("CPA"). (*Id.*) Mesa Air derives all its operating revenue from the CPAs. (*Id.*) As of March 2018, the American CPA accounted for 54% of Mesa Air's total revenue; the United CPA supplied the remaining 46%. (*Id.*)

In August 2018, Mesa Air conducted its IPO, selling nearly 11 million shares of common stock to the investing public at $12 per share. (*Id.* ¶ 59.) The Securities Act generally requires companies to file registration statements with the SEC before selling securities in interstate commerce. *See* 15 U.S.C. §§ 77d, 77e; *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 178 (2015). Thus, ahead of the IPO, Mesa Air filed a registration statement and prospectus with the SEC. (Doc. 52 ¶¶ 57–58.) Of significance here, the registration statement touted Mesa Air's relationship with American and the company's operational performance.[1] (*Id.* ¶¶ 66–74, 77.) It indicated that Mesa Air possessed 145 aircraft, including one unassigned operational spare. (*Id.* ¶ 69.) And the offering documents cautioned investors about risks that may adversely affect Mesa Air's prosperity. (*Id.* ¶¶ 79–84.)

Soon after the IPO, market analysts initiated coverage of Mesa Air's financial condition. (*Id.* ¶ 88.) In an equity research report published by Cowen in September 2018, analysts stated that "Mesa faced a significant amount of maintenance and engine expenses on owned aircraft in the past few years," but the "maintenance cost bubble is now behind them, which should lead to a stable maintenance outlook for the next few years." (*Id.*) In a

---

[1] The specific statements challenged by the Pension Fund are discussed in addressing the parties' arguments.

1   separate report published by Raymond James, analysts explained that Mesa Air's earnings
2   per share ("EPS") was "set to grow sharply in FY19/FY20 due to," inter alia, a "fall-off in
3   heavy maintenance cost." (*Id.* ¶ 89.)

4       On January 31, 2019, Mesa Air filed a Form 8-K with the SEC, announcing that its
5   board of directors had ratified the company's entry into a term sheet with American, which
6   amended the American CPA. (*Id.* ¶¶ 77, 92.) The Form 8-K described the CPA
7   amendments as follows: (1) "the conversion of two aircraft under the CPA to operational
8   spares, resulting in a decrease in the number of guaranteed revenue-generating aircraft
9   operated by Mesa for American from 64 to 62, effective April 1, 2019;" (2) new and revised
10  operational performance criteria; and (3) if Mesa Air "failed to comply with the new and
11  revised operational performance criteria, American would have the unilateral right to
12  permanently withdraw one aircraft from the CPA, up to two aircraft from the CPA in any
13  calendar month, and up to six aircraft in total."[2] (*Id.* ¶ 92.) Mesa Air's chief executive
14  officer, Jonathan Ornstein, discussed the American CPA amendment with investors during
15  a quarterly earnings call in February 2019. (*Id.* ¶ 94.) He explained: "About a year ago,
16  American talked [to] us about raising our performance levels" because the pre-amendment
17  criteria "were certainly far below" the industry standard. (*Id.*)

18      In May 2019, Mesa Air reported disappointing quarter two financial and operating
19  results. (*Id.* ¶ 96.) The company reported adjusted net income of $16 million and adjusted
20  EPS of $0.46, which fell below analysts' estimates of $0.55 per share. (*Id.*) As to total
21  operating revenue, Mesa Air reported $177 million, $1.5 million less than analysts'
22  estimates. (*Id.*) During a corresponding earnings call, Mr. Ornstein stated: "We knew that
23  in the last year, 18 months, I mean, we were hamstrung by the fact that we had expanded a
24  lot, we needed more pilots, we got hung up a little bit in pilot training, maintenance became
25  more difficult in terms of qualified maintenance people. And we're just sort of finally
26  putting all that together." (*Id.* ¶ 99.)

27      The company's financial woes continued through quarter three. (*Id.* ¶ 101.) It

28

---

[2] The actual Term Sheet was disclosed on December 17, 2019, when Mesa Air filed it with the SEC as an attachment to the company's Form 10-K. (Doc. 52 ¶ 78.)

reported an adjusted EPS of only $0.30, and the company's total operating revenue was $3 million less than analysts' estimates. (*Id.*) Mesa Air also reported "increased maintenance expenses of $54 million, more than analyst estimates of $47 million," and "total operating expenses of $163 million," nearly $14 million more than analysts projected. (*Id.*) During a third quarter earnings call, Mesa Air's chief operating officer, Bradford Rich, explained that, sometime after May 1, 2019, the company had one aircraft rendered unavailable due to ground damage and two additional aircraft pulled due to "labor shortages at our heavy maintenance provider." (*Id.* ¶ 102.) Given this reduction in aircraft, Mesa Air failed to meet the revised performance metrics under the American CPA, and American exercised its right to remove two aircraft. (*Id.* ¶ 103.) Mr. Rich stated that, once Mesa Air was "properly spared," it would "add the mechanics to deal with some of the more intensive maintenance issues, and [the company] should be able to operate the fleet very reliably and meet [American's] expectations." (*Id.* ¶ 107.) Mr. Ornstein, in response to an analyst question, added that "[t]here were literally years of discussions in regard to what was the adequate spare count." (*Id.* ¶ 109.) He further noted that "clearly, this quarter, we've seen a sort of confluence of issues that have really put us in a difficult position." (*Id.*) In the days following the earnings call, Mesa Air's stock price dropped to $5.84 per share. (*Id.* ¶ 78.)

By April 1, 2020, Mesa Air's stock plummeted to $3.03 per share. (*Id.* ¶ 14.) The same day, Plaintiff David G. Lowthorp initiated this action. (Doc. 1.) After reviewing three lead plaintiff motions as required under the Private Securities Litigation Reform Act ("PSLRA"), the Court appointed DeKalb County Pension Fund (the "Pension Fund") as lead plaintiff and Faruqi & Faruqi, LLC as lead counsel. (Doc. 33.) The Pension Fund purchased just over 30,000 shares of Mesa Air common stock "pursuant and/or traceable to the IPO." (Doc. 52 ¶ 19, Ex. A at 2.)

On August 17, 2020, the Pension Fund filed the Amended Complaint, asserting claims for relief under Sections 11, 12(a)(2), and 15 of the Securities Act. (Doc. 52 at 44–47.) The Mesa Defendants, joined by the Underwriter Defendants, have moved to dismiss

1   the Pension Fund's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil

2   Procedure. (Docs. 56, 59.) They also move the Court to either incorporate by reference or

3   take judicial notice of 13 documents. (Doc. 58.) Both motions are ripe for ruling. (Docs. 56,

4   58, 60, 62, 63, 64.) The Court first resolves the motion pertaining to the doctrine of

5   incorporation by reference and judicial notice.

**II.    INCORPORATION BY REFERENCE AND JUDICIAL NOTICE**

      **A.    Legal Standard**

Generally, when assessing the sufficiency of a complaint under Rule 12(b)(6), the Court may not consider material outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also* Fed. R. Civ. P. 12(d). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Recently, the Ninth Circuit acknowledged "a concerning pattern in securities cases," whereby defendants improperly "exploit[]" the incorporation-by-reference doctrine and judicial notice to "defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja*, 899 F.3d at 998. Mindful that "[t]he overuse and improper application of [these procedures] . . . can lead to unintended and harmful results," the Ninth Circuit "clarif[ied] when it is proper to take judicial notice of facts in documents, or to incorporate by reference documents into a complaint, and when it is not." *Id.* at 998–99. Because the two procedures "permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways," the Court will address them in turn. *Id.* at 998.

Rule 201 of the Federal Rules of Evidence permits courts to take judicial notice of

"adjudicative fact[s]" that are "not subject to reasonable dispute," meaning the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b). Courts, however, cannot take judicial notice of disputed facts contained in documents susceptible to judicial notice. *See Khoja*, 899 F.3d at 999. Thus, courts must "clearly specify" the fact or facts being judicially noticed. *Id.*

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. The doctrine is designed to prevent plaintiffs "from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* A document may be incorporated by reference into a complaint if it either "forms the basis of [a] plaintiff's claim" or is referred to "extensively" by the plaintiff. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). For a reference to be sufficiently "extensive," a document should be referred to "more than once." *Khoja*, 899 F.3d at 1003. But "a single reference" could, in theory, satisfy the standard if the reference is "relatively lengthy." *Id.*

Generally, and unlike judicial notice, district courts "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Ritchie*, 342 F.3d at 908). It is improper, however, for courts "to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. Thus, courts must be cautious when drawing inferences from incorporated documents. *Id.*

## B.    Discussion

To support their motion to dismiss, the Mesa Defendants ask the Court to incorporate by reference or take judicial notice of 13 documents, labelled as exhibits for ease of reference. (Doc. 58.) The Pension Fund "does not object to the court recognizing the existence of [the] offered documents and the statements made within." (Doc. 62 at 1.) The Pension Fund does, however, "object[] to the Court accepting as true any of the

1  statements or information contained in" the at-issue documents. (*Id.* at 1–2.) The Court will

2  address the procedures seriatim.

3  **1.    Incorporation by Reference**

4  Defendants seek to have Exhibits 1, 2, 3, 4, 5, 6, 7, 9, and 12 incorporated into the

5  Amended Complaint. (Doc. 58 at 4–5.) Exhibit 1 contains excerpts from Mesa Air's

6  prospectus, as filed with the SEC on Form 424B4 on August 10, 2018. (Doc. 57-1.) Exhibit

7  2 is an index of exhibits identified in Mesa Air's Form S-1/A, as filed with the SEC on July

8  30, 2018. (Doc. 57-2.) Both exhibits are part of Mesa Air's registration statement, which

9  forms the basis of the Pension Fund's claims, and the registration statement is referenced

10  extensively in the Amended Complaint. (*See* Doc. 52 ¶¶ 1, 8–10, 13, 44, 45, 50, 51, 53,

11  56–58, 60, 65–74, 77, 79–84, 131, 133.) Accordingly, the Court will incorporate Exhibits 1

12  and 2 into the Amended Complaint. *See Ritchie*, 342 F.3d at 908 (noting the doctrine is

13  applicable if "a plaintiff's claim about stock fraud is based on the contents of SEC filings").

14  Exhibits 3, 4, and 5 are related to the American CPA. Exhibit 3 is the CPA itself,

15  which was attached as an exhibit to Mesa Air's Form S-1/A. (Doc. 57-3.) The Amended

16  Complaint references the American CPA extensively, and thus the Court will incorporate

17  the document. (*See* Doc. 52 at ¶¶ 2, 3, 12, 13, 20, 45–47, 53, 54, 67, 69, 75, 77, 78, 85, 92–

18  94, 97, 98, 102–05, 109.) Exhibit 4 is Mesa Air's Form 8-K, as filed with the SEC on

19  January 31, 2019. (Doc. 57-4.) The Form 8-K is referenced in two paragraphs in the

20  Amended Complaint. (Doc. 52 ¶¶ 78, 92.) In paragraph 78(d), the Pension Fund quotes one

21  of three paragraphs in the Form 8-K pertaining to the CPA amendment. (*Compare* Doc. 52

22  ¶ 78(d), *with* Doc. 57-4 at 4.) Though this may be a closer question than Exhibit 3, the

23  Court finds the references to Exhibit 4 sufficiently extensive to incorporate the document

24  into the Amended Complaint. Exhibit 5 is the "Nineteenth Amendment to Code Share and

25  Revenue Sharing Agreement," which was filed with the SEC as an exhibit to Mesa Air's

26  Form 10-K on December 17, 2019. (Doc. 57-5.) This document, which is referred to by the

27  parties as the "American Term Sheet" or "American CPA amendment," is referenced

28  extensively in the Amended Complaint. (Doc. 52 ¶¶ 78, 92–94, 97, 98, 102, 103, 105.) The

1  Court will thus incorporate the document.

2          Exhibits 6, 7, 9, and 12 are transcripts of Mesa Air's quarterly earnings conference

3  calls. Exhibit 6 is S&P Global's Transcript of Mesa Air's FQ1 2019 Earnings Call, dated

4  February 5, 2019. (Doc. 57-6 at 2.) The Court will incorporate this transcript into the

5  Amended Complaint because it is referenced extensively therein. (Doc. 52 ¶¶ 13, 75, 78,

6  85, 94.) Exhibit 7 is S&P Global's Transcript of Mesa Air's FQ3 2019 Earnings Call, dated

7  August 9, 2019. (Doc. 57-7.) The Amended Complaint refers to Exhibit 7 extensively, and

8  the Court will incorporate the document. (Doc. 52 ¶¶ 7, 12, 102–10.) Exhibit 9 is S&P

9  Global's Transcript of Mesa Air's FQ4 2019 Earnings Call, dated December 11, 2019.

10  (Doc. 57-9.) Although this document is referenced only once in the Amended Complaint

11  (Doc. 52 ¶ 78), the reference is "relatively lengthy" and the Pension Fund does not oppose

12  Mesa Air's request. (Doc. 62 at 4.) *Khoja*, 899 F.3d at 1003 ("In theory, a reference may

13  be sufficiently 'extensive' if a single reference is relatively lengthy."). Accordingly, the

14  Court finds the reference sufficiently extensive under *Khoja* and *Ritchie*. Exhibit 12 is S&P

15  Global's Transcript of Mesa Air's FQ2 2019 Earnings Call, dated May 10, 2019. (Doc. 57-

16  12.) This transcript is extensively referenced in the Amended Complaint. (Doc. 52 ¶¶ 7,

17  11, 97–100.) The Court will therefore incorporate the transcript. Accordingly, the Court

18  will grant the Mesa Defendants' request to incorporate Exhibits 1, 2, 3, 4, 5, 6, 7, 9, and 12

19  into the Amended Complaint in its entirety.

20                          **2.      Judicial Notice**

21          Defendants ask the Court to take judicial notice of Exhibits 8, 10, 11, and 13.

22  (Doc. 58 at 6–9.) Exhibit 8 is a February 10, 2020 press release, which was filed with the

23  SEC as an exhibit to Mesa Air's Form 8-K. (Doc. 57-8.) An SEC filing generally qualifies

24  as a "source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2);

25  *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir.

26  2008) (citing *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (SEC

27  filings subject to judicial notice)). Accuracy, however, "is only one part of the inquiry

28  under Rule 201(b)." *Khoja*, 899 F.3d at 999. Thus, this Court must "consider—and

identify—which fact or facts it is noticing" from the SEC filing. *Id.* For purposes of resolving the motion to dismiss, the Court will judicially notice that Mesa Air filed a press release with the SEC on February 10, 2020 and that Mesa Air made the statements contained therein.

Exhibit 10 is S&P Global's Transcript of Mesa Air's FQ1 2020 Earnings Call, dated February 10, 2020. (Doc. 57-10.) "An investor call transcript submitted to the SEC generally qualifies as a 'source[] whose accuracy cannot reasonably be questioned.'" *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b), and *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 495 (W.D. Wash. 2009), and then *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1100 (N.D. Cal. 2006)). The Court will judicially notice that there was an investor call on February 10, 2020. The Court will also take judicial notice that the speakers made the statements included in the transcript. The Court will not take judicial notice of the substance of the statements because those facts may be subject to reasonable dispute.

Exhibit 11 is a Department of Transportation bulletin titled "Preliminary Air Traffic Data, April 2020: 96% Reduction in U.S. Airline Passengers from 2019." (Doc. 57-11.) Courts have taken judicial notice of Department of Transportation publications. *See Veliz v. Cintas Corp.*, No. C 03-1180 RS, 2009 WL 1107702, at *3 n.2 (N.D. Cal. Apr. 23, 2009) (taking judicial notice of various Department of Transportation publications and notices). The Court finds the Department of Transportation bulletin is appropriately subject to judicial notice. Thus, the Court will take judicial notice that on June 10, 2020, the Department of Transportation issued the bulletin.

Exhibit 13 is a news article published by the Consumer News and Business Channel ("CNBC") on June 9, 2019. (Doc. 57-13.) The Court will take judicial notice of the CNBC article "only to 'indicate what was in the public realm at the time, not whether the contents of [the] article[] [was] in fact true.'" *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) (quoting *Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)). Having resolved the Mesa Defendants'

1  requests under the doctrine of incorporation by reference and Rule 201 of the Federal Rules

2  of Evidence (Doc. 58), the Court now turns to the pending motion to dismiss (Doc. 56).

3  **III.  MOTION TO DISMISS**

4      **A.    Legal Standard**

5          A complaint must allege a "short and plain statement of the claim showing that the

6  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a

7  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

8  that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

9  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff

10  pleads factual content that allows the court to draw the reasonable inference that the

11  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

12  550 U.S. at 556). A complaint should only be dismissed if it fails to state a cognizable legal

13  theory or fails to provide sufficient facts to support a claim. *Shroyer v. New Cingular*

14  *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In deciding a Rule 12(b)(6)

15  motion, the Court must construe all allegations of material fact in the light most favorable

16  to the nonmoving party. *Marcus v. Holder*, 574 F.3d 1182, 1184 (9th Cir. 2009). The Court,

17  however, is "not bound to accept as true a legal conclusion couched as a factual allegation."

18  *Twombly*, 550 U.S. at 555 (internal quotations omitted).

19      **B.    Discussion**

20          The Pension Fund alleges that Mesa Air's registration statement contained material

21  misstatements and omissions, giving rise to liability under Sections 11, 12(a)(2), and 15 of

22  the Securities Act. (Doc. 52 at 43–46.) The Mesa Defendants move to dismiss each claim.

23  (Doc. 56.) The Court first determines whether the Pension Fund has sufficiently pleaded

24  the elements of a Section 11 claim.

25          **1.    Section 11**

26          Section 11 promotes compliance with the Securities Act "by giving purchasers a

27  right of action against an issuer or designated individuals (directors, partners, underwriters,

28  and so forth) for material misstatements or omissions in registration statements."

1  *Omnicare, Inc.*, 575 U.S. at 179. In relevant part, the text of the statute provides:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security . . . may . . . sue.

15 U.S.C. § 77k(a). Section 11 therefore "creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out." *Omnicare, Inc.*, 575 U.S. at 179.

To prevail on a Section 11 claim, a plaintiff must demonstrate that (1) "the registration statement contained an omission or misrepresentation," and (2) "the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403–04 (9th Cir. 1996) (hereinafter "*Stac Elecs.*")). Scienter is not required for liability under Section 11. *Id.* A defendant "will be liable for innocent or negligent material misstatements or omissions." *Id.* Thus, where, as here, fraudulent conduct is not alleged, the plaintiff "need satisfy only the ordinary notice pleading standard of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). (Doc. 52 ¶ 130.)

In this case, the Pension Fund challenges several statements in Mesa Air's offering documents concerning the American CPA, as well as Mesa Air's operational performance, spare count, and maintenance solutions. The Court will address the factual predicates in turn, starting with the American CPA.

### a.  American CPA

The Pension Fund takes issue with two statements relating to the American CPA. First, the registration statement indicates that Mesa Air's "long-term capacity purchase agreements provide [the company] with guaranteed monthly revenue for each aircraft under contract." (*Id.* ¶ 77.) Second, it describes the American CPA as a "[s]table, [l]ong-

[t]erm [r]evenue-[g]uarantee." (*Id.*) The Mesa Defendants move the Court to dismiss the claims relating to the American CPA on several grounds. (Doc. 56 at 8–14.) As detailed below, the Court will dismiss the Section 11 claim insofar as it arises from the American CPA statements because the claim is barred by the statute of limitations and the statements at issue are non-actionable puffery.

### i.   Statute of Limitations

Section 11 claims are subject to a one-year statute of limitations. 15 U.S.C. § 77m. The limitations period begins to run when an untrue statement or omission is either discovered or should have been discovered by exercise of reasonable diligence.[3] *Id.*; *see Stac Elecs.*, 89 F.3d at 1411 ("The statute of limitations governing Section 11 requires filing a complaint within . . . one year of actual notice or inquiry notice of an untrue or misleading statement."). "The determination of inquiry notice is fact-intensive." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1080 (N.D. Cal. 2010). A fact is "'discovered' when 'a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 915 (N.D. Cal. 2015) (quoting *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)). Thus, a defendant who argues that Section 11 claims are time-barred at the pleading stage faces an "especially high hurdle." *Id.* (citation omitted).

Here, the Mesa Defendants argue that claims concerning the American CPA are time barred based on two disclosures. (Doc. 56 at 8.) First, the Mesa Defendants contend that a Form 8-K, filed on January 31, 2019, disclosed the CPA amendment, including its allegedly key terms. (*Id.* at 9) In relevant part, the Form 8-K indicated that the CPA amendment (1) converted two aircrafts into operational spares, (2) imposed new operational performance criteria, and (3) gave American the right to permanently withdraw up to six aircraft if Mesa Air failed to comply with the new operational performance

---

[3] In no event, however, may a Section 11 claim be brought "more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. Unlike the one-year statute of limitations at issue in this Order, the three-year bar is a statue of repose. *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017).

metrics. (*Id.*; Doc. 57-4 at 4.) Second, during a February 5, 2019 earnings call, Mr. Ornstein revealed that six months before the IPO, American expressed a desire to review the CPA's terms. (Doc. 56 at 9.) Thus, according to the Mesa Defendants, Plaintiffs knew all the information on which its claims relating to the CPA amendment are based. (Doc. 63 at 4.) The Pension Fund does not dispute whether such disclosures occurred. Instead, it argues that those disclosures "were insufficient to put shareholders on notice of the demanding new performance terms in the new American CPA." (Doc. 60 at 7.) Thus, in the Pension Fund's view, the claim related to the American CPA did not accrue until December 2019, when Mesa Air filed the Term Sheet with the SEC. (*Id.* at 8.)

As presently plead, the Court finds that the Pension Fund's claims concerning the American CPA are time barred. The Pension Fund has not identified any provisions in the Term Sheet that were not previously disclosed by Mesa Air in the Form 8-K. (*See* Doc. 52 ¶ 78(g).) Indeed, the Amended Complaint only identifies the terms stated in the Form 8-K as the pertinent provisions of the amendment. (*Compare id.*, *with* Doc. 57-4 at 4.) The Court therefore disagrees with the Pension Fund's assertion that shareholders did not obtained the information needed to allege a Section 11 claim until Mesa Air filed the American Term Sheet. Thus, the Court will dismiss the claims related to the American CPA because, as presently alleged, the claims are barred by the statute of limitations.

### ii.      Non-Actionable Puffery

Even if the Section 11 claim concerning the American CPA was timely, the Pension Fund fails to allege a plausible claim for the independent reason that the challenged statements are non-actionable puffery. "In the Ninth Circuit, vague, generalized assertions of corporate optimism or statements of mere puffing are not actionable material misrepresentations under federal securities laws because no reasonable investor would rely on such statements." *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019) (internal quotations and citations omitted). "When valuing corporations, . . . investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th

Cir. 2010) (hereinafter "*Cutera*"); *see also In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1481 (N.D. Cal. 1992) ("Professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives, who have a personal stake in the future success of the company."). That said, "general statements of optimism, when taken in context, may form a basis for a securities fraud claim when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) (internal quotations omitted); *see also Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) ("Statements by a company that are capable of objective verification are not 'puffery' and can constitute material misrepresentations.").

The Pension Fund here challenges statements that characterize the American CPA as "long-term" and "stable." (Doc. 52 ¶ 77.) These generic statements amount to nothing more than non-actionable puffery. *See In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1159–60 (S.D. Cal. 2008) (finding statements such as "excellent relationship" and "highly positive and mutually beneficial" to be non-actionable corporate puffery). The Pension Fund does not dispute that, at the time of the IPO, the American CPA had been in place for nearly 17 years. (Doc. 52 ¶¶ 78, 94.) Instead, the Pension Fund argues that, "[a]t the time Mesa claimed the American CPA was 'stable' and 'long-term,' it knew that American was dissatisfied with the [CPA] . . . and had initiated negotiations to raise the performance levels to current industry standards." (Doc. 60 at 10.) The Amended Complaint, however, is devoid of allegations suggesting that Mesa Air and American were "renegotiating" the terms of the CPA at the time of the IPO. Rather, the lone allegation is that American "expressed a desire to revise the terms of the CPA" in February 2018. (Doc. 52 ¶ 78.) This allegation, without more, is not enough to transform generic descriptions, like "long-term" or "stable," into actionable statements. *See Stac Elecs.*, 89 F.3d at 1407 (finding "a company is not required to forecast future events" because "another company's plans cannot be known to a certainty"). Accordingly, the Court finds the complained-of statements to be non-actionable puffery. The Court will therefore

dismiss the Pension Fund's Section 11 claim arising from statements that the American CPA was "stable" and "long-term" on this separate and independent ground.

### b.  Operational Performance

The Pension Fund's Section 11 claim also derives from statements concerning Mesa Air's operational performance. (Doc. 52 ¶¶ 70, 72.) As the Amended Complaint notes, "operational performance" is a term of art in the airline industry, referring to "completion of flights, on-time performance, and other operating metrics." (*Id.* ¶ 44.) The Pension Fund takes issue with statements describing the company's operational performance as "strong," "reliable," "cost competitive," and "best-in-class." (*Id.* ¶¶ 66, 69, 70, 72.) The Mesa Defendants move to dismiss this claim because, in their view, the claim "is time-barred, the challenged statements are immaterial puffery, and [the Pension Fund] relies on blatant mischaracterizations of post-IPO statements." (Doc. 56 at 16.)

### i.  Statute of Limitations

As noted, the limitations period "governing Section 11 requires filing a complaint within . . . one year of actual notice or inquiry notice of an untrue or misleading statement." *Stac Elecs.*, 89 F.3d at 1411. The Amended Complaint alleges that the statements concerning Mesa Air's operational performance were false and misleading because, during a February 2019 earnings call, Mr. Ornstein "revealed that 'all' of Mesa's performance levels were 'significantly below' industry standards, or 'far below [the levels at] which the industry is currently operating." (Doc. 52 ¶ 75(a).) The Mesa Defendants argue that any Section 11 claim arising from the statements at issue is barred by the statute of limitations because Mr. Ornstein's disclosure occurred more than one year before this lawsuit was filed. (Doc. 56 at 14.) The Court agrees.

To start, the Court provides a more complete depiction of Mr. Ornstein's remarks. During the February 2019 earnings call, Mr. Ornstein stated: "As many of you know, [the American CPA] was negotiated initially almost 17 years ago. It's been through some modifications, but the performance levels were certainly far below that which the industry is currently operating." (*Id.* ¶ 78(c); Doc. 57-6 at 7.) The Court now considers the Pension

Fund's rebuttal. The Pension Fund contends that Mr. Ornstein "admitt[ed] that prior to the IPO, Mesa was only obligated to operate at below industry standards." (Doc. 60 at 13 (emphasis omitted).) Regardless of whether that is true, Mr. Lowthorp waited until April 2020—almost 14 months after the alleged admission—to bring this action. (Doc. 1.) To avoid the statute of limitations, the Pension Fund claims that the challenged statements "were even more obviously false and misleading after Mesa's calendar year 2019 performance." (Doc. 60 at 13.) But the limitations period "does not reset simply because additional information is revealed that could make for a stronger claim." *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1054 (N.D. Cal. 2016); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1137 (C.D. Cal. 2011) ("A statute which does not begin to run until every possible phrasing or permutation of the defendant's wrongdoing has been publicly reported would never run.").

Thus, based on the Amended Complaint's allegations, the Court finds Plaintiffs had actual knowledge of potential Securities Act claims related to Mesa Air's operational performance. The limitations period expired one year later, in February 2020. *See* 15 U.S.C. § 77m. Because Mr. Lowthorp waited to file this lawsuit until two months after the statute of limitations expired, the Court will dismiss the Section 11 claim insofar as it is premised on statements concerning Mesa Air's operational performance.

## ii.      Non-Actionable Puffery

In addition to being time barred, statements describing Mesa Air's operational performance as "strong," "reliable," "cost-competitive," and "best-in-class" are non-actionable puffery, which cannot give rise to liability under Section 11. *See Cutera*, 610 F.3d at 1111; *In re Pivotal Sec. Litig.*, No. 3:19-CV-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020) ("Statements classifying [a company's] products and business as 'uniquely position[ed],' 'strong across sectors,' 'best-in-class,' and 'industry-leading' are not actionable because they represent the feel good speak that characterizes 'non-actionable puffing.'"). The Pension Fund argues that the at-issue statements are not mere puffery. (Doc. 60 at 13.) But, because the Pension Fund admits that Mr. Ornstein's "full statement"

pertains to "only the performance requirements set forth in the old American CPA," the crux of its argument focuses on post-IPO events. (*Id.* at 14.) The Pension Fund "cannot use post-IPO developments to claim statements in [Mesa Air's registration statement] were untrue at the time they were made." *See Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-CV-063610-RS, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020). The Court therefore rejects the Pension Fund's argument and dismisses the Section 11 claims arising from the at-issue statements because they amount to no more than corporate puffery.

### c.   Spare Aircrafts

The Pension Fund challenges one statement in the offering documents pertaining to the quantity of Mesa Air's spare aircrafts. (Doc. 52 ¶ 69.) That statement reads: "CRJ-200 is an operational spare not assigned for service under our capacity purchase agreements." (*Id.*) In the Amended Complaint, the Pension Fund alleges that Mesa Air misled investors because the company lacked an adequate number of operational spare aircraft. (*Id.* ¶¶ 6, 54.) To support its claim, the Pension Fund contends Mr. Ornstein revealed, during an August 2019 earnings call, that Mesa Air was "'disadvantaged' because . . . the Company 'did not have the adequate spare count.'" (*Id.* ¶ 75(c).)

The Mesa Defendants give two reasons why, in their view, a claim related to operational spares must dismissed. They first argue the Pension Fund does "not point to any statement in the offering documents characterizing the adequacy of Mesa's spares." (Doc. 56 at 16 (emphasis omitted).) Second, the Pension Fund contends that Mr. Ornstein's statement addressed "the number of spares Mesa thought it needed to meet the elevated performance requirements under the CPA's nineteenth [a]mendment, not the agreement in place at the time of the IPO." (*Id.* (emphasis omitted).) The Court finds both arguments persuasive.

To the extent the claim is premised on an omission, the Pension Fund "must allege how the omitted fact negates the truth of or renders misleading the statements actually made" to state a plausible claim. *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1289 (E.D. Wash. 2007) (hereinafter "*Metro.*"). The statement identified by the Pension Fund does not

address the adequacy of Mesa Air's operational spares at the time of the IPO. (Doc. 52 ¶ 69.) Nor does the Amended Complaint otherwise identify any affirmative statement regarding the spare count's adequacy. Thus, because the Pension Fund has not identified an affirmative misstatement in the registration statement, the Pension Fund has failed to state a claim upon which relief can be granted. *See Metro.*, 532 F. Supp. at 1289 (dismissing a Section 11 claim because the plaintiff failed to "identify any affirmative statement in the [r]egistration [s]tatements that was rendered misleading by the alleged omissions.").

Equally problematic, the Pension Fund selected only the portion of the August 2019 earnings call that supported its claim while omitting the portions that weakened it. *Khoja*, 899 F.3d at 1002. The transcript reveals that Mr. Ornstein's statements were made in response to a question concerning whether the company needed more spare aircraft to meet the increased utilization in the amended American CPA. (Doc. 52 ¶ 109; Doc. 57-7 at 16.) As relevant here, Mr. Ornstein stated: "I was a very strong advocate that Mesa was being -- what's the right word, disadvantaged because we did not have the adequate spare count. We put the 2 spares in." (*Id.*) Those spares are what Mesa Air "traded" for "increased performance requirements" in the amended CPA. (Doc. 57-6 at 7.) Mr. Ornstein's statements thus concern negotiations of the post-IPO CPA amendment, not the adequacy of the spare count at the time of the IPO.

Perhaps realizing these deficiencies, the Pension Fund asserts, for the first time in its response, that Mesa Air misrepresented the number of operational spares it possessed at the time of the IPO. (Doc. 60 at 15.) It argues Mesa Air "actually had three operational spares at the time of the IPO," not one. (*Id.*) Thus, in the Pension Fund's view, the "plain text" of the registration statement misrepresents the number of Mesa Air's operational spares. (*Id.*) The Court rejects the Pension Fund's attempt to reframe the claim presented in its Amended Complaint on two grounds. First, the legal theory is not alleged in the Pension Fund's pleading. *See Dovenberg v. U.S. ex rel. U.S. Forest Serv.*, No. CV 08–0889–MO, 2009 WL 3756370, at *3 (D. Or. Nov. 5, 2009). Second, the argument ignores statements in the offering documents that undermine its efficacy. As the Mesa Defendants

point out, the offering documents distinguish between "operational spares 'assigned' under the American or United CPAs and operational spares 'not assigned' under the CPAs." (Doc. 63 at 10.) For example, the registration statement indicates that 64 aircraft were assigned under the American CPA, 80 aircraft were assigned under the United CPA, and 1 aircraft was not assigned for service under the CPAs. (Doc. 52 ¶ 69.) While the registration statement indicates that the unassigned aircraft was an operational spare, other portions of the offering documents indicate that three additional spare aircraft were assigned under the American CPA. (Doc. 57-3 at 9.) The Pension Fund's reframed claim ignores this distinction. Accordingly, the Court will dismiss the Pension Fund's Section 11 claim to the extent it arises from Mesa Air's operational spares.

### d. Aircraft Maintenance

As to aircraft maintenance, the Amended Complaint alleges that three statements are materially false or misleading:

(1) Low-Cost Operator. We believe that we are among the lowest cost operators of regional jet service in the United States. There are several key elements that contribute to our cost efficiencies:

- Efficient Fleet Composition. . . . Larger regional aircraft require less fuel and crew resources per passenger carried, and may also have maintenance cost efficiencies.

\* \* \*

- Competitive Procurement of Certain Operating Functions. We have long-term maintenance agreements . . . to provide parts procurement, inventory and engine, airframe and component overhaul services. We expect that our long-term agreements with these and other strategic vendors will provide predictable high-quality and cost-effective solutions for most maintenance categories over the next several years. In prior periods, we also invested in long-term engine overhauls on certain aircraft, which we believe will reduce related

- 19 -

maintenance obligations in future periods.

(2)     Maintain Low-Cost Structure. . . . We intend to continue our disciplined cost control approach through responsible outsourcing of certain operating functions, by flying large regional aircraft with associated lower maintenance costs . . . . These efficiencies, coupled with the low average seniority of our pilots, has enabled us to compete aggressively on price in our capacity purchase agreement negotiations.

(3)     As of March 31, 2018, we employed approximately . . . 411 mechanics . . . . Our continued success is partly dependent on our ability to continue to attract and retain qualified personnel.

(Doc. 52 ¶¶ 68, 71, 74.) The Mesa Defendants argue the Pension Fund has not plausibly alleged a Section 11 claim because these statements are non-actionable opinions and immunized from liability under the bespeaks caution doctrine. (Doc. 56 at 18.)

### i.     Opinion Statements

Section 11 gives purchasers a right of action against an issuer or designated individuals for misstatements or omissions of "material *fact*." 15 U.S.C. § 77k (emphasis added). Thus, statements of opinion generally do not give rise to liability under Section 11. *See Omnicare, Inc.*, 575 U.S. at 183–85. But there are three exceptions to this rule, which the Ninth Circuit summarized in *City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*, 856 F.3d 605 (9th Cir. 2017). That opinion reads:

. . . *Omnicare* establishes three different standards for pleading falsity of opinion statements. First, when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that "the speaker did not hold the belief she professed" and that the belief is objectively untrue. Second, when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that "the supporting fact [the speaker] supplied [is] untrue." Third, when a plaintiff relies on a theory of omission, the plaintiff must allege "facts going to the basis

- 20 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.

*Id.* at 615–16 (internal citations omitted) (quoting *Omnicare*, 575 U.S. at 186, 194).

Here, the Mesa Defendants contend that the challenged statements "are quintessential opinions" because they begin with "we believe" or "we expect."[4] (Doc. 56 at 18.) The Pension Fund disagrees, arguing the statements are actionable because they contain an embedded statement of untrue fact and were misleading in context. (Doc. 60 at 16.) Thus, in the Pension Fund's view, the statements are actionable under *Omnicare*. (*Id.*) For support, the Pension Fund proffers a portion of an earnings call from May 2019. (*Id.* at 17–18.) During that call, Mr. Ornstein said: "We knew that in the last year, 18 months, I mean, we were hamstrung by the fact that we had expanded a lot, we needed more pilots, we got hung up a little bit in pilot training, maintenance became more difficult in terms of qualified maintenance people." (Doc. 52 ¶ 99; Doc. 57-12 at 10.)

The parties dispute the import of Mr. Ornstein's words. The Pension Fund argues his statement "is an admission that Mesa's qualified mechanics and qualified maintenance personnel were significantly understaffed at the time of the IPO." (Doc. 60 at 18.) The Mesa Defendants contend that Mr. Ornstein's statement concerned a mechanic shortage "prior to, but not continuing through, the IPO." (Doc. 63 at 11 n.5.) They further allege that "pilot shortages," not mechanic shortages, was "the primary challenge Mesa faced prior to the IPO." (Doc. 56 at 26.) Construing Mr. Ornstein's statements in the Pension Fund's favor, as is required at this stage of the litigation, the Court finds the Pension Fund's characterization of Mr. Ornstein's remarks plausible. *Marcus*, 574 F.3d at 1184. That is, a reasonable person could interpret Mr. Ornstein's statements to mean that, from May 2018 to May 2019, Mesa Air faced a shortage of qualified mechanics, and that shortage was one

---

[4] The Court notes that not all of the challenged statements include this language. For example, one statement reads: "Our continued success is partly dependent on our ability to continue to attract and retain qualified personnel." (Doc. 52 ¶74.) The Pension Fund does not contest whether that statement is a statement of opinion. (*See* Doc. 60 at 18.) Thus, and only for purposes of resolving this motion, the Court assumes, without deciding, that the each of challenged statements pertaining to maintenance are opinion statements.

1   of four factors that "hamstrung" the company. Accordingly, the Court finds the Pension
2   Fund has plausibly alleged that Mr. Ornstein's assertion rendered Mesa Air's statement
3   that its success depended on its "ability to *continue* to attract and retain qualified personnel"
4   misleading to a reasonable person. *See Align Tech., Inc.*, 856 F.3d at 616 (quoting
5   *Omnicare*, 575 U.S. at 194.) The Court therefore rejects Defendants' argument that the
6   statements at issue are non-actionable opinions.[5]

7                          **ii.      Bespeaks Caution Doctrine**

8           To the extent the maintenance-related statements are forward looking, the bespeaks
9   caution doctrine does not aid the Mesa Defendants at this stage of the case. "The bespeaks
10  caution doctrine protects affirmative, forward-looking statements from becoming the basis
11  for a securities fraud claim when they are accompanied by cautionary language or risk
12  disclosure." *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1088 (C.D. Cal.
13  2003) (citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994)).
14  "[I]nclusion of some cautionary language is not enough to support a determination as a
15  matter of law that defendants' statements were not misleading." *Stac Elecs.*, 89 F.3d at
16  1408 (internal quotations omitted). Rather, "[d]ismissal on the pleadings under the
17  bespeaks caution doctrine . . . requires a stringent showing: There must be sufficient
18  cautionary language or risk disclosure [such] that reasonable minds could not disagree that
19  the challenged statements were not misleading." *Livid Holdings Ltd. v. Salomon Smith*
20  *Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005) (internal quotations omitted). As noted
21  above, reasonable minds could differ as to whether the challenged statements were
22  misleading in this case. *See supra* Part III.B.1.d.i. Accordingly, the Mesa Defendants have
23  not made the "stringent showing" needed for the Court to find, as a matter of law, that the
24  bespeaks caution doctrine bars the Pension Fund's claim at the pleading stage. Therefore,
25  the Court will deny the Mesa Defendants' motion to dismiss insofar as it relates to the

26  ---
    [5] In support of its claims, the Pension Fund offers information from two former Mesa Air
27  employees, identified as confidential witnesses. (Doc. 52 ¶¶ 112–20.) The Mesa
    Defendants argue the Court should disregard the allegations attributed to the confidential
28  witnesses because the allegations lack credibility. (Doc. 56 at 19.) Because the Court did
    not rely on the confidential witnesses' allegations, the Court need not address the Mesa
    Defendants' argument at this stage.

1    statements concerning Mesa Air's maintenance solutions.

2                    **2.      Item 303 and Item 503**

3              Under Item 303 of Regulation S-K, a company is obligated to "[d]escribe any

4    known trends or uncertainties that the registrant reasonably expects will have a material

5    favorable or unfavorable impact on net sales or revenues or income from continuing

6    operations." 17 C.F.R. § 229.303(b)(2)(ii). An Item 303 violation thus has three elements:

7    (1) a defendant knew of an adverse trend, (2) the trend would have a material impact, and

8    (3) the material impact is reasonably likely to occur. *Steckman v. Hart Brewing, Inc.*, 143

9    F.3d 1293, 1296–97 (9th Cir. 1998). Although the Pension Fund has not alleged a separate

10   claim under Item 303, "[a]llegations which state a claim under Item 303(a) . . . sufficiently

11   state a claim under Sections 11 and 12(a)(2)." *Id.* at 1296.

12             Only two paragraphs in the Amended Complaint expressly reference Item 303.

13   (Doc. 52 ¶¶ 63, 76.) The alleged violations mirror the Section 11 claims already discussed.

14   (*Id.*) They relate to Mesa Air's operational performance, the adequacy of operational

15   spares, and Mesa Air's maintenance solutions. (*Id.*) The Amended Complaint is devoid of

16   allegations that the Pension Fund knew of adverse trend regarding Mesa Air's operational

17   performance or spare aircraft count at the time of the IPO. *See supra* Part III.B.1.b–c.

18   Accordingly, the allegations under Item 303 are dismissed insofar as the alleged violation

19   stems from Mesa Air's operational performance or spare aircraft.

20             The Court, however, finds that the Pension Fund has plausibly alleged a violation

21   of Item 303 with respect to Mesa Air's maintenance operations. The Amended Complaint

22   alleges the company "knew that in the last year, 18 months, . . . maintenance became more

23   difficult in terms of qualified maintenance people." (Doc. 52 ¶ 99 (emphasis omitted).) As

24   to materiality, the Amended Complaint includes Mesa Air's statement that the company's

25   "continued success [] partly depend[ed] on [its] ability to continue to attract and retain

26   qualified personnel." (*Id.* ¶ 74.) And, the Pension Fund alleges "a shortage of qualified

27   mechanics" would lead to "increased maintenance expenses, decreased revenues, and weak

28   earnings." (*Id.* ¶ 87.) Accordingly, the Pension Fund's alleged Item 303 violation survives

1    the motion to dismiss to the extent it arises from Mesa Air's maintenance operations.

2        Similarly, Item 503 of Regulation S-K requires disclosure of "the most significant

3    factors that make [an] offering speculative or risky." *Mingbo Cai v. Switch, Inc.*, No. 2:18-

4    CV-01471-JCM-VCF, 2019 WL 3065591, at *6 (D. Nev. July 12, 2019) (quoting 17 C.F.R.

5    § 229.503(c)). "The registration statement must include an explanation of 'how the risk

6    affects the issuer or the securities being offered.'" *Id.* (quoting 17 C.F.R. § 229.503(c)).

7    The Pension Fund's allegations concerning Item 503 relate to Mesa Air's operational

8    performance, spare aircraft, and maintenance solutions. (Doc. 52 ¶ 86.) As already noted,

9    the Pension Fund has not adequately alleged that significant risks involving Mesa Air's

10   operational performance or spare aircraft existed at the time of the IPO. But the alleged

11   Item 503 violation will survive the motion to dismiss insofar as it stems from Mesa Air's

12   maintenance solutions.

13                    **3.    Section 12(a)(2)**

14       The Mesa Defendants contend that the Pension Fund lacks standing to bring claims

15   under Section 12(a)(2). (Doc. 56 at 22–23.) The Court agrees. Although "Section 11 and

16   Section 12 are indeed parallel statutes, their wording is significantly different as to who

17   can bring a suit." *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999).

18   Section 12 "permits suit against a seller of a security by prospectus only by 'the person

19   purchasing such security *from him*,' thus specifying that a plaintiff must have purchased

20   the security directly from the issuer of the prospectus." *Id.* (quoting 15 U.S.C. § 77*l*(a)(2))

21   (emphasis in original).

22       The Amended Complaint alleges that the Pension Fund purchased securities

23   "pursuant and/or traceable to the IPO." (Doc. 52 ¶ 19.) This "conclusory allegation[] [is]

24   insufficient to establish standing under Section 12(a)(2)." *In re Century Aluminum Co. Sec.*

25   *Litig.*, 749 F. Supp. 2d 964, 977 (N.D. Cal. 2010); *see also In re Wells Fargo Mortg.-*

26   *Backed Certificates Litig.*, 712 F. Supp. 2d 958, 966 (N.D. Cal. 2010) ("Unlike Section 11,

27   which permits an action by a plaintiff who has purchased a security that is merely 'traceable

28   to' the challenged misstatement or omission, Section 12(a)(2) requires a plaintiff to plead

1    and prove that it purchased a security directly from the issuer as part of the initial

2    offering . . . .") (hereinafter "*Wells Fargo*"). If the Pension Fund did in fact purchase stock

3    directly from the IPO, it should have said so. "An evasive circumlocution does not suffice

4    as a substitute." *Wells Fargo*, 712 F. Supp. 2d at 966 (citation omitted). Thus, the Pension

5    Fund's Section 12(a)(2) claim is dismissed for failing to allege facts giving rise to

6    standing.[6]

7                   **4.    Section 15**

8           A claim under Section 15 is a derivative claim: it "require[s] [an] underlying

9    primary violation[] of the securities laws." *See In re Rigel Pharms., Inc. Sec. Litig.*, 697

10   F.3d 869, 886 (9th Cir. 2012); *see also* 15 U.S.C. § 77o. The Mesa Defendants argue that

11   the Pension Fund's Section 15 claim must be dismissed because it failed to state plausible

12   claims under Sections 11 and 12. (Doc. 56 at 23.) Because the Court finds that the Pension

13   Fund has plausibly stated a claim under Section 11, the Court will deny the motion to

14   dismiss as to the Pension Fund's Section 15 claim.

15   **IV.    CONCLUSION**

16          In sum, the Court will grant the Mesa Defendants' motion to dismiss in part. The

17   Court will dismiss the Pension Fund's Section 11 claim to the extent it arises from

18   statements concerning the American CPA, Mesa Air's operational performance, and Mesa

19   Air's operational spares. The Court will dismiss the Pension Fund's Section 12(a)(2) claim

20   because the Pension Fund has not alleged facts giving rise to standing. The Pension Fund's

21   Section 11 claim survives Defendants' motion to dismiss insofar as it is premised on

22   statements concerning Mesa Air's maintenance solutions. The alleged Item 303 and

23   Item 503 violations survive the motion to dismiss to the extent they relate to Mesa Air's

24   maintenance solutions. The Section 15 claim also survives the motion to dismiss.

25          At oral argument the Pension Fund requested leave to amend if the Court found any

26   of the allegations in the Amended Complaint deficient. This request was not made in the

27   moving papers, and the Court finds the Pension Fund's request inadequate to meet the

28   ───────────────
[6] Because the Pension Fund has not yet established standing under Section 12, the Court need not address whether Defendants were statutory "sellers."

requirements of a motion to amend under Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure. Thus, the Pension Fund's request is denied without prejudice to the Pension Fund filing a written motion to amend if it believes it can cure the deficiencies identified in this Order. The Court is mindful that the Pension Fund is a newly appointed lead plaintiff, who has filed only one complaint to date. And, in considering any motion to amend, the Court will be guided by Rule 15's directive that it "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Any motion to amend must be filed within the deadline set at the upcoming scheduling conference.

Accordingly,

**IT IS ORDERED granting in part** and **denying in part** the Mesa Defendants' Motion to Dismiss (Doc. 56) as described herein.

**IT IS FURTHER ORDERED granting** the Mesa Defendants' request for incorporation by reference and judicial notice (Doc. 58) to the extent described herein.

**IT IS FINALLY ORDERED** that, by separate order, the Court will set a Rule 16 Scheduling Conference in this matter.

Dated this 22nd day of July, 2021.

Michael T. Liburdi
United States District Judge