**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
NINA F. LOCKER (*pro hac vice*)
nlocker@wsgr.com
LAURIE B. SMILAN (*pro hac vice*)
lsmilan@wsgr.com
CHARLES A. TALPAS (*pro hac vice*)
ctalpas@wsgr.com
DOUGLAS W. MCMANAWAY (*pro hac vice*)
dmcmanaway@wsgr.com
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300

**SACKS, RICKETTS & CASE LLP**
CYNTHIA A. RICKETTS (AZ 012668)
cricketts@srclaw.com
2800 N. Central Avenue, Suite 1920
Phoenix, Arizona 85004
Telephone: (602) 385-3370

*Attorneys for Defendants Mesa Air Group, Inc.,*
*Jonathan G. Ornstein, Michael J. Lotz, Daniel*
*J. Altobello, Ellen N. Artist, Mitchell Gordon,*
*Dana J. Lockhart, G. Grant Lyon, Giacomo*
*Picco, Harvey Schiller and Don Skiados*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Mesa Air Group, Incorporated, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-00648-MTL<br><br>**MESA DEFENDANTS' MOTION FOR LEAVE TO FILE AN EARLY MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Paragraph 7(b) of the Court's Scheduling Order (ECF No. 101), Defendants Mesa Air Group, Inc. ("Mesa" or the "Company"), Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller and Don Skiados (collectively, the "Individual Defendants"; together with Mesa, the "Mesa Defendants") hereby move the Court for leave to file an early motion for summary judgment on the issue of negative loss causation, without prejudice to filing a subsequent dispositive motion on any ground following the close of discovery.  The Mesa Defendants also hereby move for leave to file a motion for summary judgment that exceeds the seventeen-page limit under Local Rule 7.2(e).

## BACKGROUND

This securities class action arises out of Mesa's August 9, 2018 initial public offering ("IPO").  Plaintiff alleged that Mesa's offering documents contained false or misleading statements concerning a broad range of subjects, including Mesa's: (i) Capacity Purchase Agreement ("CPA") with American Airlines, (ii) operational performance, (iii) spare aircraft count and (iv) maintenance solutions.  *See* MTD Order (ECF No. 81) at 11. Plaintiff brought claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. § 77a *et seq.*) on behalf of investors who purchased Mesa stock pursuant or traceable to the Registration Statement.  *See* Amended Complaint (ECF No. 52) ¶¶ 1, 5.

On July 22, 2021, the Court granted in part and denied in part the Mesa Defendants' Motion to Dismiss (ECF No. 56), leaving only Plaintiff's Section 11 and 15 claims based on an alleged undisclosed shortage of maintenance personnel that pre-dated the IPO.  *See* MTD Order (ECF No. 81) at 20-22.  Plaintiff's surviving claims suffer from a fatal deficiency: even assuming this alleged personnel shortage existed at the time of the IPO, the omission of this information did not cause Mesa's post-IPO losses and, thus, Defendants have an absolute negative causation defense.

The Court should not wait to address this fully-dispositive issue because it is readily apparent based on Plaintiff's own allegations *and*—importantly—can be established

conclusively as a matter of law through expert analysis of undisputed facts and information in the public domain.  Moreover, as described *infra* p. 5, the particular form of expert analysis, known as an "event study," is "widely accepted" as "standard operating procedure in federal securities litigation."

The Mesa Defendants raised this negative loss causation issue during the October 14, 2021 Scheduling Conference (ECF No. 100), and the Court indicated that it was willing to consider a motion by the Mesa Defendants "seeking leave of Court" to file an "early summary judgment motion" on this narrow issue.  Hr'g Tr. (ECF No.  105) at 25-28.[1]  The Court advised the Mesa Defendants—should they request leave—to focus on the propriety of deciding an early summary judgment motion on negative loss causation before the completion of fact discovery.  *Id.* at 26.  Accordingly, the Mesa Defendants do so now.

## LEGAL STANDARD

The Supreme Court "has long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (citation omitted).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted).  "Federal Rule of Civil Procedure 56 does not limit the number of motions that may be filed," and district courts have discretion to "control the timing of motions for summary judgment" and "to permit successive motions for summary judgment[.]"  *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).

---

[1] Hr'g Tr. attached hereto as Exhibit B.  As discussed at the Scheduling Conference, the Court entered a Scheduling Order the following day, October 15, 2021, which provided that, by default, no party "shall file more than one motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure without leave of this Court."  ECF No. 101 ¶ 7(b).

Courts in this District have granted leave to file "an early dispositive motion [for summary judgment]" even where the "'Court made clear in its case management order that the parties shall only file one summary judgment motion[.]'" *Santan Crossing Prof'l Plaza Condo. Ass'n v. Westfield Ins. Co.*, 2020 U.S. Dist. LEXIS 226339, at \*5-6 (D. Ariz. Oct. 30, 2020) (citation omitted).  Such an early disposition is appropriate where, as here, resolution of the early motion "is a purely legal issue." *Id.* at \*6.  As Judge Logan ruled, in such a case, "[t]he Court is well-positioned to decide" the issue on summary judgment "before and separately from—the other claims, particularly when the outcome" of the early motion "may inform how the parties proceed" with any remaining aspects of the case, including the assessment of damages. *Id.*  So too here.

## ARGUMENT

Following the Court's dismissal of the vast majority of claims in the Amended Complaint (ECF No. 81), Plaintiff's only remaining basis for liability concerns its allegation that, prior to the August 2018 IPO and through May 2019, Mesa was "hamstrung" by a "shortage of qualified mechanics."  *See* ECF No. 81 at 21-22; ECF No. 52 ¶¶ 75(b), 85(b), 99.

As Plaintiff alleged, on May 10, 2019—approximately nine months after the IPO— Jonathan Ornstein (Mesa's CEO) made the following remark during the Q&A portion of an earnings call with analysts:

> "We knew that in the last year, 18 months, I mean, we were hamstrung by the fact that we had expanded a lot, we needed more pilots, we got hung up a little bit in pilot training, maintenance became more difficult in terms of qualified maintenance people."

ECF No. 52 ¶ 99.  Plaintiff alleged that on May 10, 2019 Ornstein thereby "revealed" to the market that "Mesa's qualified mechanics and qualified maintenance personnel [had been] significantly understaffed" since "about November 10, 2017—*i.e.*, **nine months before the offering**."  ECF No. 52 ¶¶ 75(b), 85(b), 99.  According to Plaintiff, "Mesa was not equipped with proper maintenance personnel at the time of the IPO" and "should have disclosed they were facing mechanic issues or that the industry was facing a shortage of

mechanics." Opp. to MTD (ECF No. 60) at 18.

However, when this alleged pre-IPO mechanics shortage was revealed on May 10, 2019, there was no statistically significant stock price movement. That is, the fluctuations of a few cents per share did not deviate from general market movements and, thus, there are simply no losses legally attributable to the single remaining alleged omission.

Mesa's proposed motion for summary judgment (the "Proposed Motion"; attached hereto as Ex. A) merely confirms, through expert statistical analysis, what is already obvious based on logic and application of straightforward legal principles of causation to Plaintiff's remaining allegations and undisputed information in the public domain (Mesa's public statements, records of Mesa's stock prices, various stock market indices and market analysts' reports). Specifically, the Proposed Motion argues three corollaries that demonstrate their dispositive negative causation defense.

*First*, Plaintiff alleged that the purported mechanic shortage issue was "revealed" to the market on May 10, 2019. ECF No. 52 ¶¶ 75(b), 85(b), 99. As a matter of law, courts routinely hold that price declines prior to when the truth was revealed cannot be charged to defendants in a Section 11 case. *See* Ex. A at 14-15.

*Second*, when Mesa allegedly admitted that it faced mechanic staffing problems prior to the IPO, the market did not react. *See* Ex. A at 16-20.

The Mesa Defendants' loss causation expert, Dr. David Tabak, shows through a statistical analysis of undisputed publicly available information, known as an "event study," that the minor fluctuations in Mesa's stock price following Ornstein's May 10, 2019 "admission" were indistinguishable from the normal daily fluctuations in the market generally. *See* Ex. A at 16-20. Event studies like Dr. Tabak's are "***standard operating procedure*** in federal securities litigation," and their use to show the existence or absence of loss causation is "widely accepted." *Id.* Courts grant summary judgment in Section 11 cases on negative causation grounds where, as here, expert analysis demonstrates that there is no statistically significant price decline after the revelation of the allegedly concealed or misstated information—even assuming the allegations are true. *Id.*

-4-

*Third*, after Ornstein allegedly revealed the maintenance staffing issues that Plaintiff contends existed "at the time of the IPO" and "Mesa should have disclosed" in the offering documents (ECF No. 60 at 18), the "chain of causation" was broken for loss causation purposes. *See* Ex. A at 20-24. For that reason alone, Plaintiff's newfound theory that the challenged maintenance statements caused stock price declines in August 2019—plainly a reaction to Mesa's announcement that American Airlines elected to withdraw aircrafts for failure to meet new performance standards under the amended CPA—fails. *Id.* In any event, neither Mesa nor—as Dr. Tabak confirms—the market drew any connection between the disappointing news in August 2019 and the circumstances existing at the time of the IPO a year before. *Id.* Nor did the Court in its MTD Order. *Id.* at 23-24 (citing MTD Order (ECF No. 81) at 16, 18).

This dispositive issue is ripe for decision now, and it would be wasteful to defer the question of negative causation until after the completion of discovery.

### A. There Is No Reason to Wait for Plaintiff to Complete Fact Discovery

Plaintiff does not need to conduct *any* discovery in order to oppose an early motion for summary judgment on negative loss causation. For the purposes of the motion, the Court can assume, *arguendo*, that Plaintiff will be able to prove that Mesa faced a shortage of qualified maintenance personnel at the time of the IPO.

Instead, the question is whether any of the decline in Mesa's stock price following the IPO resulted from the omission of the alleged shortage of qualified maintenance personnel from Mesa's Registration Statement: *i.e.*, when did the market learn the truth and how did it react. That turns entirely on undisputed facts and information that are in the public domain. *See* Ex. A at 12-13. As Plaintiff's counsel recognized during the Scheduling Conference, its opposition to the Mesa Defendants' negative loss causation argument would need to be based on its own expert event study. *See* Hr'g Tr. (ECF No. 105) at 7:4-8 ("The damage issue" is decided "in the normal course of business for a Section 11 case with expert reports, which it has to be."); *id.* at 24:13-14 ("We would have to have a responsive event study").

Tellingly, while Plaintiff cannot "imagine anything more miserable" (*id.* at 25:9-10) than conducting limited expert discovery and preparing a responsive event study before the completion of fact discovery, Plaintiff did not—because it cannot—state that such reports could not be completed prior to the close of fact discovery, as the Mesa Defendants have already done.  Were the Court to grant leave, the parties would meet and confer regarding a proposed briefing schedule that builds in adequate time for the limited expert discovery that is required for Plaintiff to oppose the early motion for summary judgment.

Thus, expert discovery, while perhaps viewed by Plaintiff as "miserable," is also conceded by Plaintiff to be inevitable.  *Id.* at 7:4-8 ("The damage issue is going to be a fresh issue to be decided and there's no reason it can't be decided in the normal course of business for a Section 11 case, with expert reports, which it has to be").  Experienced securities litigators such as Plaintiff's are well-equipped to work out a briefing schedule that allows for the type of discovery needed for this oft-litigated issue.

**B.     It Would Be Wasteful to Defer the Loss Causation Issue**

The likely reason for Plaintiff's objection to early resolution of the issue of negative loss causation is clear: *i.e.*, Plaintiff's remaining theory of recovery, predicated on the alleged omission of mechanics shortages at the time of the IPO, is entirely out of sync with Mesa's stock price movements.  As the Ninth Circuit recently observed, when "the price movement of the stock in question is not in sync with the plaintiff's theory of recovery, loss causation will be extremely difficult, if not impossible, to prove."  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021) (affirming dismissal) (citation omitted); *see also* Ex. A at 13 (loss causation in Section 11 cases is the mirror image of loss causation in Section 10(b) cases).

It would be wasteful of the parties' resources to wait until after the completion of full-blown fact discovery when, here, Defendants can demonstrate—now—that even if Plaintiff can prove its theory of liability, Defendants' negative loss causation defense will be impossible to overcome, resulting in no liability or damages.

## CONCLUSION

For the foregoing reasons, the Mesa Defendants request that the Court allow leave to file an early motion for summary judgment (in excess of the seventeen-page limit) in the form attached as Ex. A, and order the parties to meet and confer regarding a briefing schedule that allows for the completion of any expert discovery required by the parties to support or oppose such a motion.

Dated:  January 5, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Nina F. Locker*
     NINA F. LOCKER

Attorneys for the Mesa Defendants