# EXHIBIT B

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| David G. Lowthorp, et al.,                )<br>                                                       )<br>                          Plaintiff,        )<br>                                                       )<br>                          vs.                   )<br>                                                       )<br>Mesa Air Group, Inc. et al,               )<br>                                                       )<br>                          Defendants.    )<br>_____)| CV 20-00648-PHX-MTL<br><br>Phoenix, Arizona<br>October 14, 2021<br>3:58 P.M. |

**BEFORE:   THE HONORABLE MICHAEL T. LIBURDI, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**SCHEDULING CONFERENCE**

**Official Court Reporter:**
**Barbara H. Stockford, CRR, RMR, CRC**
**Sandra Day O'Connor U.S. Courthouse, Suite 312**
**401 West Washington Street, Spc. 39**
**Phoenix, Arizona  85003-2151**
**(602) 322-7247**

**Proceedings Reported by Stenographic Court Reporter**
**Transcript Prepared by Computer-Aided Transcription**

A P P E A R A N C E S

For the Plaintiff:

> Faruqi & Faruqi LLP
> By: ROBERT W. KILLORIN, ESQ.
> 3975 Roswell Road, Suite A
> Atlanta, GA  30342
>
> Faruqi & Faruqi LLP
> By: CHRISTINA PANEQUE, ESQ.
> 685 Third Avenue, 26th Floor
> New York, NY  10017
>
> DeConcini McDonald Yetwin & Lacy, P.C.
> By: GARY F. URMAN, ESQ.
> 2525 East Broadway Boulevard, Suite 200
> Tucson, AZ  85716

For the Defendants:

> Wilson Sonsini Goodrich & Rosati, PC
> By: NINA F. LOCKER, ESQ.
>     LAURIE SMILAN, ESQ.
> 650 Page Mill Road
> Palo Alto, CA  94304
>
> Sacks Ricketts & Case, LLP
> By: CYNTHIA A. RICKETTS, ESQ.
> 2800 North Central Avenue, Suite 1910
> Phoenix, AZ  85004
>
> Lewis Roca Rothgerber Christie LLP
> By: JOHN C. GRAY, ESQ.
> 201 East Washington Street, Suite 1200
> Phoenix, AZ  8585004

THE COURTROOM DEPUTY:  This is Case No. CV20-0648. Lowthorp versus Mesa Air Group, Incorporated, et al.  Before the Court for a scheduling conference.

Counsel in the courtroom, if you would please announce your presence for the record.

MR. KILLORIN:  My name is Robert Killorin from the law firm of Faruqi & Faruqi on behalf of lead plaintiff.  Along with me is Christina Paneque and Gary Urman.

THE COURT:  Thank you.

MS. LOCKER:  Good afternoon, Your Honor. Nina Locker from Wilson Sonsini Goodrich & Rosati on behalf of the Mesa defendants.

MS. SMILAN:  And Laurie Smilan from Wilson Sonsini also on behalf of the Mesa defendants.

MR. GRAY:  Good afternoon, Your Honor.  John Gray from Lewis Roca on behalf of the underwriter defendants.  Also with me on the phone I have counsel from Shearman & Sterling.

THE COURT: Okay.  And ma'am, you are?  Back there?

MS. RICKETTS:  Good afternoon, Your Honor. Cindy Ricketts from Sacks Ricketts & Case also representing the defendants.

THE COURT: All right.  Wonderful.  Thanks.  Does anybody on the phone want to make an appearance?

(No response.)

THE COURT:  Okay, seeing none.

UNITED STATES DISTRICT COURT

Okay.  If you want to take your masks off, you can. Just try and stay reasonably distant from each other.  If you want to leave the mask on, it's fine also.  I just wanted to offer that for your comfort and also, if you're going to be speaking, it might aid you in that task.

So I took a look at the amended -- or pardon me -- the supplemental Rule 26(f) report and I do see there's quite a bit of disagreement on the schedule.  So I think what I'm going to do is I'm just going to take -- take the dates under advisement and issue a scheduling order in the next day or so.

If you'd like to present issues concerning the dates that you've proposed or if you want to provide me your opinion or a position statement on those dates, you're welcome to at this time.  I do want to let you know I understand that, at least from the defendants, they're forecasting discovery issues.  So I get that.

So, Mr. Killorin, do you want to say anything?

MR. KILLORIN:  Yes, Your Honor.  Thank you.  Your Honor, thank you.  We see this as a typical Section 11 case. You have ruled that three statements were adequately alleged to be false or misleading.  We see discovery -- under Rule 26, parties can obtain discovery regarding non-privileged matter that is relevant to any party's claim or defense.  And, to us, it's -- this is a straightforward case.  We've -- there are three statements at issue that have been adequately alleged to

UNITED STATES DISTRICT COURT

be false or misleading and we think the scope of discovery is basically outlined in Rule 26.  We get relevant discovery as to our claim that those statements are false or misleading.  So we don't understand really why there's any genuine reason for special discovery considerations.  We don't understand why there's any reason for this case schedule to drag all the way until June of 2023, I believe it is.  Yeah.  We think this should just go on a normal securities case track.  That's what we've put into our proposed order.

Regarding the notion that this case should also involve a special additional motion for partial summary judgment in addition to just dispositive motions at the end of a normal Section 11 case, we think there's no basis for that. We -- it appears that the construct defendants have in mind is to pretend that the judge, that you, did not cite the entire case or all the allegations that we said support falsity.  You focused in on, you said, plaintiff's proffer, the statement of Ornstein, for the falsity of these statements and then found they were false.  We don't read that to mean you held defendants proffered this statement for evidence of falsity and nothing else.  We believe -- we assume you had reviewed the complaint holistically and took into consideration all of the allegations of falsity with the exception of the confidential witnesses which you said you expressly did not consider.

However, even -- even if you didn't say that, even if

you said -- excuse me -- that the only thing that I considered for evidence of falsity of these statements was the Ornstein hamstrung statement, that still would not give them any less of a duty to prove their affirmative defense on damages than they have right now, even if that was the only statement supporting those false statements.

Section 11 is very, very clear.  It provides a damage calculation for every putative class member.  The damages right now are fixed and calculable.  If a party bought at the $12 IPO price and they sold at $3 just before the complaint was filed and lost $9, right now that party, under the -- under Section 11, has a claim, is entitled to damages of $9 per share if the merits of the allegation are shown, if that statement is shown to be false.

Now, defendants have the opportunity to assert an affirmative defense.  They can and they have raised in their answer -- can attempt to show that factors other than the falsity of those statements caused the losses for those plaintiffs.  However, that's just typical Section 11.  That's a duty they bear for the entire $9 loss up to that point.  There was a large stock drop of approximately $4 per share a few months after the Ornstein statement, and that's what they are trying to, in our opinion, play word games to avoid, to shirk their duty of trying to prove affirmatively that that -- that the $4 in stock losses which came, by the way, upon the

UNITED STATES DISTRICT COURT

revelation that the company had half of its earnings misses -- $7 million out of 14 -- were due to maintenance issues. It's clear from the allegations of the complaint that that was included. But whether it is or not, it doesn't matter. The damage issue is going to be a fresh issue to be decided and there's no reason it can't be decided in the normal course of business for a Section 11 case with expert reports, which it has to be.

And so we see no reasonable defensible grounds for special partial summary judgment motions in addition to the normal dispositive motions at the end of the case. To us, that's just ginning up an excuse for two bites at the apple to try to win the case. And the first one, we believe, is nothing but creative lawyering that has no basis in the law. To say that you didn't cite the other aspects of the complaint as support for the falsity of those statements somehow excuses their affirmative duty to disprove loss causation for all of the large stock drops we think is not supported by anything in the law or Section 11 and would be a tremendous time waster to engage in partial summary judgment motions based on that theory.

Finally, we believe that the normal course of business in all of these cases is to allow plaintiffs to amend the pleadings at the end of discovery, not right now. They have proposed that we have a duty to make our full and final

amendments to the complaint now before the start of discovery. We think that's untenable.  We haven't ever seen that thrown at us before, and we think that's not in the spirit of keeping of the law.  It makes sense to allow plaintiff to amend or make a motion to amend at the end of discovery and not force them to have their one chance to do that right now before the --

THE COURT:  Well, I think -- my practice is, you know, while I've been here at the court, but also in my own personal practice, would be you could move to amend your complaint later, but you don't get a -- it's not a freebie.  So I don't -- so the way I look at it, Mr. Killorin, is you will have a deadline to file -- to amend your complaint, but after that, if you want to amend your complaint, you have to file a motion for leave and satisfy the requirements of the rules.

MR. KILLORIN:  Okay.  Well, you know, Your Honor, that's quite reasonable, but we don't think their proposal that we should have to file any amendment -- the freebie right now immediately makes sense.  We're used to that being at the end of discovery, but be that as it may, we can certainly live with your practice of just filing a motion at the end of discovery.

THE COURT:  Nobody is saying, and I didn't read -- maybe I misread what the defense side said, but I didn't read them to say you would be prohibited from amending your complaint even pursuant to Rule -- I think it's Rule 15.

MR. KILLORIN:  Right.  15(b), Your Honor.

THE COURT:  Yeah.  So I don't know.  Maybe they were saying that and I just didn't catch it.

MR. KILLORIN:  Yeah.  Well, yeah --

THE COURT:  I would feel that would be unreasonable.

MR. KILLORIN:  Right.  So do we.  They put in there this thing that, again, we've never seen before that the pleadings can only be amended to conform to the evidence at the end of discovery and that's -- that's not at all what Rule 15 stands for.

THE COURT:  Well, I don't think you need to spend more time on that.

MR. KILLORIN:  Yeah, okay.  That's fine, Your Honor.

That's our position, Your Honor.  We just see this as a regular case.  We put forward a regular scheduling order that gets things done a number of months quicker than theirs.  We don't see any special needs for partial summary judgment motions to be contemplated at this point.  It would be totally premature anyway.  Right now we just have a typical Section 15 case going.  And, again, we don't think there is any good grounds at this point to dispute the scope of discovery.  We think it's the truth or falsity of the three statements that we've alleged have been adequately pled as false or misleading.

THE COURT:  Okay.

MR. KILLORIN:  Thank you, Your Honor.

THE COURT:  Thank you.

All right, Ms. Locker.

MS. LOCKER:  Thank you, Your Honor.

Let me take amendment right off the table.  Your Honor accurately interpreted our position.  So I think we can --

THE COURT:  So just to be clear, the defense group wasn't proposing that I abrogate Rule 15 and take away their motion, their ability to move for an amendment?

MS. LOCKER:  No.  However, we did interpret the Court's order and statements regarding amendment to say that, although the plaintiffs had requested during oral argument the right to amend, the Court did not think that was adequate under -- adequate and that, if they wanted to amend to plead around the deficiencies identified in the order, they should do so under Rule 15 and you would look upon that liberally.  And the reason we felt that they should, if they intended to correct any of the deficiencies identified in the order, attempt to do so now is because, when the pleadings are closed, that obviously guides discovery.  That's all we were saying.

THE COURT:  I think that's fair.  Okay.  I think we can move past that.

MS. LOCKER:  Thank you, Your Honor.

THE COURT:  All right.  So why don't you explain to me a little bit beyond your -- a little bit about your thinking and the schedule that the defense side has proposed and also you could address the summary judgment matter as well.

MS. LOCKER:  Thank you, Your Honor.

So the plaintiffs have proposed January 31, '22, as the deadline for substantial completion of document discovery for document requests served before October 9, 2021.  And I want to emphasize that last phrase -- "for document requests served before October 9, 2021."  So plaintiffs have not even --

THE COURT:  Hold on.  I'm going to let you have a rebuttal, Mr. Killorin.

MR. KILLORIN:  Thank you.

MS. LOCKER:  So, first, plaintiffs have not satisfied their own requirements for their own proposed deadline of January 31, 2022.  And they could have, of course, served discovery ever since August 18th right after the parties' 26(f) meet-and-confer conference.

Second, it seems that the plaintiff's proposed schedule, particularly for substantial completion of document discovery, is widely -- widely unfair.  For two months, we've been waiting for document requests and they haven't served document requests yet.  We were waiting for a draft protective order, a draft ESI protocol, waiting and waiting.  And when those didn't come, we finally -- usually plaintiffs will get those out because they want to get going.  We just said, okay, here's our draft.  So we've sat here with the plaintiffs having done nothing for months to move the ball for forward and now they want to squeeze the whole process from beginning to end

into three-and-a-half months.  And when you think -- we sat down and mapped out the steps that have to be done for substantial completion of document production.  We need to get the requests.  We need to respond to the requests.  Normally, there's a two-week period where you meet and confer, and there's going to be substantial meet-and-confer -- forgive me, Your Honor -- without some clarity from the Court about the scope of the issues in the case.  Meet and confer about the scope, the relevant time period for the production, and the list of relevant custodians, that all needs to be negotiated. That's an additional two weeks.  Then we need to test search terms.  So you have to load up the data.  That usually takes at least a week.  Then we need to search -- test the search terms which can take anywhere from two to three weeks depending on how many times you have to test the search terms, see the hit list, see if the volume of the hit rate is too high, revise the search term list, apply it again, apply it again, and then you finally have what you think is reasonable.  That can take two to three weeks and, when you're done -- and that's putting aside whether there's any negotiation regarding TAR which is artificial -- the use of an artificial intelligence on top of the search terms.  Usually there's negotiation about that and that takes some time too.

So, if you take that, all that time period, that brings us to December 23rd, leaving us 49 days including

weekends and holidays to review and produce all the documents in this case.  It's simply not realistic or achievable.  I don't believe we can do it unless we are limiting the custodians to five which isn't going to happen.  I mean, it's just we have 10 defendants, individual defendants, in this case.

So that's our position on the discovery schedule.  And then I heard the Court ask about the early motion for summary judgment.

THE COURT:  Right.

MS. LOCKER:  Okay.

THE COURT:  So what are you contemplating?

MS. LOCKER:  So if we used the word "partial motion for summary judgment," then we misspoke.  It is a motion that it would be dispositive.  And let me make it very, very clear, Your Honor.  One, it's not just an excuse for two bites at the apple.  Let me explain the rationale behind the request.

Discovery in securities class actions is very burdensome and very expensive and we're asking for the request for an early motion for summary judgment in order to -- in a case that we believe we can bear our burden.  We know it's our burden on an affirmative defense of negative loss causation, where we believe we can meet that burden to show zero damages, the purpose is to avoid unnecessarily millions of dollars in discovery because that's what it costs these days.  So that's

the purpose.  It's not just to get two bites at the apple.

THE COURT:  Do you need discovery for yourself to get to the point where you could file an early summary judgment motion?

MS. LOCKER:  No.

THE COURT:  So you could file that -- are you saying you could file that based on what exists in the record right now?

MS. LOCKER:  Yes, and let me explain why, Your Honor.

So the motion is narrow and what it's based on is expert testimony.  It's basically all expert testimony, expert testimony about the lack of a statistically significant decline in the stock price of Mesa following that May 10 conference where Mr. Ornstein said we were hamstrung by pilots and mechanics.  And two, an expert analysis of all the other disclosures by Mesa including the disclosures in August of 2019 and all of the analysts' reports during the relevant period showing that none of the other disclosures disclosed any information regarding the status of mechanics or any other aspect of Mesa's maintenance at the time of the IPO.  And that's what our showing is.

Let me address the August 19 disclosure if the Court wants me to.  I don't know -- I can stop where I am now.

THE COURT:  Let me ask you more about the summary judgment strategy.  And you practice in the Ninth Circuit quite

a bit.  So, you know, I'm guided by what the Ninth Circuit says I have to do.  If you file this early summary judgment motion and then plaintiffs come back in their response and say "We need to conduct more discovery on this" how am I going to grapple with that?

MS. LOCKER:  Okay.  So, first, Your Honor let me say you're not going to -- on 56(f), you'll have guidance.  But on the issue of a Section 11 case that's gone all the way to summary judgment, not many.  A Section 11 case where the defendants are saying there's zero damages, pretty rare.  We have found one case, *Barclays*, which we cited.  So you're not going to have much guidance -- it just doesn't exist because it's a Section 11 case that goes to summary judgment where there's no damages, you're not going to find a lot of cases.

56(f) really is -- if plaintiffs are saying they need discovery, they can come to the Court and say "This is the discovery we need."  I mean, discovery is going to go on, right?  We're not asking for bifurcation anymore.  We heard the Court loud and clear.  So if they can come to the Court and say "This is what discovery we need to oppose.  This is why we need the discovery and we're specifying what we need," they have their solution.  We don't believe that they're going to be able to meet that burden because of the nature of what the motion is going to be based on.

THE COURT:  Okay.  Now you mentioned that the motion

is going to rely on expert opinion.  So then are you -- are you going to provide an early expert disclosure and then make your expert available for a deposition prior to filing your early 56 motion?

And here's the reason why I ask that question, is because what if Mr. Killorin comes back in his response and says -- says "Your Honor, they're filing a summary judgment motion that relies heavily on expert -- on an expert witness' analysis.  I haven't even had the chance to depose the expert," in which case I'm going to say he's right.  So --

MS. LOCKER:  That's right, Your Honor.  And I would have said "no" to your answer which is, if that's the way you want it, that's fine.  The way I've seen it before is you build in enough time to the briefing schedule where you say motion filed, obviously, with expert report; enough time to take the expert deposition; file the opposition; enough time to take the deposition of the plaintiff's expert.

THE COURT:  Okay.  I see what you're saying.

MS. LOCKER:  That's how I've seen it before, but...

THE COURT:  Okay.  So I understand.  I haven't seen that before just because I've only been -- I've only been doing this two years.  So --

MS. LOCKER:  I won't tell you how many years because I don't want to age myself.

[Laughter]

THE COURT: So, what I'm just trying to communicate to you is, if you're going to go down this road, I would expect you to anticipate the 56(f) objection and solve for it.

MS. LOCKER: If there's a 56(f) objection that the Court sustains, then the schedule would have to, obviously, be changed. The initial schedule would allow for that -- what I said -- right? -- but, then, obviously, it would change if the Court found the objection appropriate.

THE COURT: All right. So perhaps if you're going to -- if you're going to launch the early summary judgment motion and you're going to include expert -- expert evidence, then perhaps you're going to coordinate with plaintiff's counsel and give -- ahead of time and stipulate to -- I'm repeating what you told me in my own words -- provide a stipulated briefing schedule where you would make the expert or experts available for them for discovery.

MS. LOCKER: It is, Your Honor, very similar to, in securities class actions, there's a motion for certification of the class that normally comes with some -- certainly in 10b-5 cases, it comes with -- and often in 11 cases -- comes with an expert report. They have to. And that's how it works. It's very similar to that process. There's enough time built in for taking the deposition and then properly preparing the next brief.

THE COURT: So just for transparency, a point of

reference that I have is an antitrust class action that I, personally, worked on and there was a class certification phase with expert discovery and then, after the Court decided the class certification motion, then there was -- there was an additional merits phase, but we're not going to do that here.

MS. LOCKER:  Right.

THE COURT:  And that point of reference was why, in our last Rule 16 conference, I asked -- I was -- I had pointed questions about the class certification motion.  But it appears plaintiffs are prepared to simply file their class certification motion without having to do much or any discovery and will just brief -- you'll just brief the class certification issue and then I'll rule on it.

MS. LOCKER:  That is the one thing the parties agreed on, Your Honor.

THE COURT:  I'm proud of you.  I'm proud of all of you for that.  So I don't anticipate there being a problem with that.  I think you both have helped me sort that out.

I don't know if I need you to address anything else, Ms. Locker.  I know that Mr. Killorin is desperately wanting to say something.  Is there anything else you'd like to say about your supplemental submission?

MS. LOCKER:  No.  Just I do, without -- at the risk of repeating myself, I do think that discovery would go more smoothly and I know -- I know the Court is not used to -- or

should not be and does not provide advisory opinions, but we have a huge disagreement about the scope of discovery.

THE COURT:  So I would prefer not to.

MS. LOCKER:  Okay.

THE COURT:  I would -- I would certainly prefer not to here in this setting provide any clarification.  I feel like, if you were to file a motion for clarification, that would require briefing, and who knows when I'll be able to rule on that, but you're certainly welcome to do that.  I suppose the best thing to do would be, if you file a discovery dispute at the earliest time, a real discovery dispute, not an advisory opinion-based discovery dispute, I'll rule on it.

MS. LOCKER:  Okay.  That's fine.

THE COURT:  It was mentioned in the report that a special master might be helpful for discovery issues, and I can't recall if one or both of you mentioned that.  And I've thought about it a little bit and I suppose I'm not inclined to appoint -- well, not a special master.  Maybe a magistrate judge -- delegate discovery issues to a magistrate judge. I feel like, if I handle the discovery issues, then I can do that part and parcel with providing the clarification that the parties may seek rather than just delegating to a magistrate judge.

MS. LOCKER:  I don't believe that we mentioned that, but I assume that would happen once you were tired of us.  But

UNITED STATES DISTRICT COURT

with that, thank you very much.

THE COURT:  Are you kidding me?  I don't think that would ever happen.

Mr. Killorin, our Georgia-based New York lawyer.

[Laughter]

MR. KILLORIN:  Thank you, Your Honor.

Your Honor, I just wanted to correct or point out to learned counsel that October 29th date -- that was simply an error in this document.  When we filed it the second time, we meant to move all dates up by 30 days.  So that should say November 29, not October 29.  So that's --

THE COURT:  Could you reference a page and line for me?

MR. KILLORIN:  I can, Your Honor.  It's on Page 20 of 25 of the filed document under the title "Plaintiff's Proposed Substantial Completion Date."

THE COURT:  You know, let me ask you -- okay, give me that because I do have a question about that.

MR. KILLORIN:  Yes.

THE COURT:  So Plaintiff's Proposed -- and, for some reason, the page numbers are cut off on my --

MR. KILLORIN:  Yeah, on mine, too, Your Honor.  That may be just one --

THE COURT:  I found it; I found it.

So plaintiff proposes that the production of documents

UNITED STATES DISTRICT COURT

responsive to document requests substantially completed by January 31st, 2021.

MR. KILLORIN:  Yeah.  Well, the mistake is it should be for discovery served on or before November 9, not October 9.  That's one of the dates that simply should have gotten rolled forward 30 days with the refiling of this.

THE COURT:  Okay, I understand.

Let me ask you what your thinking is on this substantial completion date concept because that's not something I'm familiar with.

MR. KILLORIN:  Yes.  Your Honor, we are sympathetic to the problems -- this kind of problem and we are not inflexible on the date.  We would not oppose adding two months to that substantial completion date if that would help alleviate pressure on defendants' part because, yeah, we understand that's a big burden.  It's a big problem and it's a big burden for us to receive those documents and process them.  So that is something we're not hard-and-fast on.

THE COURT:  So maybe what I'm about to say has no bearing on this whatsoever, but let me make sure.  When I issue the scheduling order, it will have a fact discovery cutoff date.

MR. KILLORIN:  Yes.

THE COURT:  And, in that, it will say written discovery will need to be served 45 days prior to the cutoff

date and depositions will need to be noticed -- I feel like it's two or three weeks before the cutoff date.  And that's to give the parties the opportunity to respond to the discovery within the cutoff time.

Is that what you're thinking with substantial completion?  Like you're building in the response time?  Or is it something else?

MR. KILLORIN:  I'm not sure I fully understand your question.  What we mean by "substantial completion" -- what we typically mean when we discuss this with defendants is that they will have gone through all the motions, the agreed-upon motions of running the search terms, reviewing, sanitizing the documents and producing them to us and there are no movements of the cycle left to be done.  So, theoretically, we would have everything, but it never works out that way, but they've given us everything after a good faith effort to complete all the tasks and get the documents to us.

THE COURT:  Why can't I set fact discovery cutoff?

MR. KILLORIN:  You can do that.  That's fine; that's fine.  "Substantial" is a loosey-goosey term anyway.  It doesn't have a defined meaning as far as I know.

THE COURT:  Ms. Locker, do you want to speak to that?

MS. LOCKER:  A fact discovery cutoff is just fine, Your Honor.  I would again ask the Court to at least recognize the amount of time it takes to get going, and we've lost months

already.  We do not have even the first document request to provide us guidance on collection.

THE COURT:  You could rest assured I understand how difficult and mind-numbing ESI tasks are.

MS. LOCKER:  Okay.

THE COURT:  And dealing with vendors and dealing with searches and imaging hard drives and coming up with search terms and running the search terms and getting the team of associates, doing the quality control -- I get it.

MS. LOCKER:  Okay.  Been there, done that.

THE COURT:  I'm not going to discount everybody's needs, okay.  And do you understand that, too, Mr. Killorin?

MR. KILLORIN:  I do, Your Honor.  I do.  And if I may speak to that, defendants talk about this or that happening before the commencement of discovery and, in the last proposed order, we were very far apart and it was very uncertain what parameters the commencement of discovery would look like.  We have intentionally -- we have got all our interrogatories, requests for production drafted but we wanted to wait for this hearing, if the Court was going to give us guidance on the scope of discovery or anything else, before we served them.

THE COURT:  I would suggest you get those out in the next day or two.

MR. KILLORIN:  We will, Your Honor.  We will.

THE COURT:  Okay.

MR. KILLORIN:  Your Honor, regarding the motion for summary judgment, I just did a word search.  As far as I can tell, everywhere they referred to it in the order, they call it a partial summary judgment.  And it would be two bites at the apple because they would file a partial summary judgment early and then have a deadline for dispositive motions at the end. And, frankly, Your Honor, I think that the notion of this premature partial summary judgment on damages is -- would be extremely, extremely inefficient and run the cost up to all parties and do nothing but confuse things because I believe what Ms. Locker is referring to is simply an event study on damages.  And you can't do -- an event study is a huge, elaborate, expensive expert procedure.  We would have to have a responsive event study.  These are always done in 10b cases and they're always done at the end of discovery, not at the beginning, because you've got to know what the merits show.

She is saying, well, our experts will say that there's no evidence that the large drop that they're trying to avoid in this case could ever lead to damages.  Well, that's -- it's unrelated to the mechanic problem.  Well, that's a fact-intensive inquiry.  And they can speculate on it, but it would just be gross speculation in the middle of ongoing discovery.  It's calling for a huge waste of time with these experts.  Some of them charge a thousand dollars an hour and these event studies are hugely expensive.  They take a lot of

time, and the idea of starting with a half-baked event study just so they can take a crack at this novel damage theory that they don't have to meet their Section 11 burden of an affirmative defense to all the stock drops and just target one and argue the others don't count because their expert says so, but we're really not done with fact discovery and so it's completely debatable and have to be revisited and then an amended event study done at the end of the case after discovery is completed -- I can't imagine anything more miserable for our side, more wasteful of plaintiff's resources, than to have two full-baked damage summary judgments filed based on expensive expert analysis. And, of course, it would require tremendous amounts of discovery on both sides.

We would -- typically an expert on these event studies produce tens of thousands of pages of documents, or at least many thousands, that then our experts review and prepare their responsive event study. And to have it all happening prematurely based on one or two or just one stock drop that they're going to argue is the only one they have to disprove, which we believe a complete fantasy under Section 11, we think would be utterly wasteful and inefficient and just an approach we've never seen, don't think we ever will see it.

THE COURT: Here's the way I'm going to approach the summary judgment issue. Each side gets one summary judgment motion. It's going to be in the order.

Defendants, if you want to file an early summary judgment motion, you're going to need to seek leave of Court to do it.  So you could file a motion seeking leave of Court with your proposed early summary judgment motion, but I just want you to know I'm going to scrutinize that because I don't want to get reversed by the Ninth Circuit on an issue where I didn't allow plaintiffs to conduct the discovery that they need.  So that's something I'm going to be looking for.  And that's really all I want to say about it at this point, okay.

MR. KILLORIN:  That's all I have to say, Your Honor.

THE COURT:  All right.

MR. KILLORIN:  Thank you.

THE COURT:  So the dates will be taken under advisement.  I'm hoping to get the scheduling order out tomorrow.

Mr. Killorin, I would encourage you to get your discovery launched.

MR. KILLORIN:  We will posthaste, Your Honor, yes.

THE COURT:  Go ahead and get that out.

Let me just go ahead and flip through here and see if there are any questions that I -- any additional questions that I might have.

On the substantial completion date issue, I'm just going to issue a discovery cutoff, a fact discovery cutoff, and I trust all of you to work within that cutoff.

MS. LOCKER:  Your Honor, may I just ask for one clarification?  I'm not sure I understood the Court.  I just want to make sure I understand.

The reason why defendants used the word "partial motion for summary judgment" is because, even though the motion would be dispositive, there are, obviously, other defenses that will be raised at the end of discovery.

THE COURT:  Yeah, I'm not concerned --

MS. LOCKER:  Is the Court saying that, if we file a motion for leave to file an early motion for summary judgment, and the Court grants it, that's our one shot?

THE COURT:  No.

MS. LOCKER:  Okay.

THE COURT:  So what I'm saying is the practice in this district is to -- is to authorize one summary judgment motion per -- I think it's per side.  I can't -- I might be getting -- Mr. Gray, you may know better than me.

MR. GRAY:  I was actually going to ask for clarification on that because there are two groups of defendants here and, to the extent we have separate arguments, I would request at least the opportunity to file two -- we will endeavor as best as possible to file one together, but...

THE COURT:  Okay.  So I'm going to take a look at that, but here's the thing:  I think it's typically one per side and it's limited to 17 pages.  Some judges are very strict

on that 17 pages; I am not as strict on that 17 pages.

But what -- but getting back to your specific question, if you ask for leave of Court to file an early summary judgment motion and, if I grant it, I will not count that toward the summary judgment motion that you are entitled to file at the close of discovery before -- before the dispositive motion deadline because I'm granting you leave of Court.  That's the cleanest way to do it in my estimation.

Does that help?

MS. LOCKER:  Yes.  Thank you, Your Honor.  I thank you for that clarification.

THE COURT:  So I'll have to go back and look to confirm or figure out what the answer is on Mr. Gray's question.  I could actually take a quick look at my draft scheduling order here.  Maybe it's answered.

So the language is:  No party or parties represented by at least one of the same counsel shall file more than one motion for summary judgment under Rule 56 without leave of Court.

So what I think that means is -- and, Mr. Gray, you represent the underwriters?

MR. GRAY:  Correct, along with Shearman & Sterling on the phone, we have one group of defendants called the underwriter defendants.

THE COURT:  All right.  And, Ms. Smilan, you and --

Ms. Smilan and Ms. Locker represent Mesa Air; is that right?

MS. SMILAN:  That's correct.

MS. LOCKER:  Yes, and the Mesa individual defendants. Yes, Your Honor.

THE COURT:  So I would think that what I'll call the Mesa Air Group is represented by -- you will get one motion. The underwriter defendants who are represented by Mr. Gray and his co-counsel will get one motion.  That's how I interpret that.  Do people see it differently?

MR. GRAY:  I agree, Your Honor.  That's standard in my practice as well.

THE COURT:  All right.  Do you want to say anything about that, Mr. Killorin?

MR. KILLORIN:  No, Your Honor.  No objection.

THE COURT:  Okay.  So I think that solves that issue. So you two are satisfied then?

MS. LOCKER:  Yes, Your Honor.

THE COURT:  Mr. Killorin, you can go ahead and sit down.

MR. KILLORIN:  Thank you.

THE COURT:  I just want to go through and make sure there aren't any loose ends that need to be tied up.

Okay, I don't have any other issues.  There are a few other housekeeping matters that I'd like to address, but before I do that, does anybody want to say anything else about the

schedule?

MS. LOCKER:  No.  Thank you, Your Honor.

MR. KILLORIN:  No.  Thank you, Your Honor.

THE COURT:  And you haven't proposed any additions to the discovery rules, for example, any -- I think we're going to do seven hours for witnesses; is that right?

MR. KILLORIN:  That's what plaintiff proposes, Your Honor.

THE COURT:  All right.  So seven hours and there aren't any other limitations on written discovery that one of you wants; is that right?

MS. LOCKER:  No, Your Honor.

THE COURT:  Okay.  All right.  All right.  So I think I've covered summary judgment motions to the extent that I normally do except to say you don't have to file a separate statement of facts.  All you have to do is file one motion -- or file your motion.  You'll have a factual statement in there and then you could refer to declarations, affidavits, deposition excerpts, documents, et cetera, all in one document.  Okay.  It saves you time and administrative burdens and client expense and I just have one document to deal with.

But I do ask that you please provide me with a paper courtesy copy of all summary judgment motions.  I like to use the paper as opposed to iPad and other things.  So please do that.  If you have exhibits that are color, like charts,

graphs, photographs, please -- please ensure that my copy has the color pages in there.

For those of you out of town, which I think are all of you except Ms. Ricketts and Mr. Gray, just -- you don't have to have them delivered the same day. Just -- you could overnight them or whatever, three days -- three-day.

We talked a bit about discovery disputes. You'll see in the order I issue there will be a discovery dispute protocol that I'm going to require that you follow. If you do encounter a discovery dispute, the first step is to provide me with a joint notice that is not to exceed three pages. If there are particular discovery items that you need to attach, just attach it so I could see what you're arguing over. File it. You could call chambers, give somebody on my staff a heads-up. That way, I know it's there; I'll look at it right away. If I feel like we need supplemental briefing, I'll ask for supplemental briefing. Be prepared, it might be on an expedited basis or at least on a basis that's quicker than the two-week response time, one-week reply. And if I could resolve it without oral argument, I will.

So I just want to -- what I want to communicate to you is I want to act on discovery disputes quickly and -- so that it doesn't interfere with your discovery schedule. If I find you're inundating me with discovery disputes, I may invoke a provision in the scheduling order that will authorize a fee

shifting on behalf of the party that prevails in future discovery disputes.  So I say that because I don't want you to take my approach as an invitation to use me as a discovery referee.  I don't want to do that.

If summary judgment motions don't fully resolve the case, what I'll typically do is I'll set a trial setting conference by separate order, and that is a real trial setting conference.  So come here, be prepared to talk about the length of the trial, the -- and proposed dates.  Get information from your experts about their availability and your key witnesses beforehand because we're not going to do an exercise where I give you date ranges and you go back and see what works for your people and then we finalize it later.  It's going to be set at that trial setting conference.

I think that's all I'd like to go -- I wanted to go over with you.  Is there anything that any of you have, you either want to bring to my attention or ask for clarification on?

MR. KILLORIN:  Nothing further from lead plaintiff, Your Honor.

MS. LOCKER:  No, thank you, Your Honor.

THE COURT:  Okay, counsel.  Well, thank you.  Thanks for coming out.  Nice to see you all.

Court is adjourned.

(Proceedings adjourned at 4:47 p.m.)

UNITED STATES DISTRICT COURT

C E R T I F I C A T E

I, BARBARA H. STOCKFORD, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 15th day of October 2021.

/s/ Barbara H. Stockford
Barbara H. Stockford, RMR, CRR, CRC

UNITED STATES DISTRICT COURT