Gary F. Urman (AZ 11748)
gurman@dmyl.com
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 500
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585

*Attorneys for Lead Plaintiff DeKalb County
Pension Fund and Liaison Counsel for the Class*

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
       rkillorin@faruqilaw.com
       jwilson@faruqilaw.com

*Attorneys for Lead Plaintiff DeKalb County
Pension Fund and Lead Counsel for the Class*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>V.<br><br>Mesa Air Group, Inc.; Jonathan G. Ornstein; Michael J. Lotz; Daniel J. Altobello; Ellen N. Artist; Mitchell Gordon; Dana J. Lockhart; G. Grant Lyon; Giacomo Picco; Harvey Schiller; Don Skiados; Raymond James & Associates, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Cowen and Company, LLC; Stifel, Nicolaus & Company, Incorporated; and Imperial Capital, LLC,<br><br>Defendants. | No. 20-00648-PHX-MTL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MESA DEFENDANTS' MOTION FOR LEAVE TO FILE AN EARLY MOTION FOR SUMMARY JUDGMENT**<br><br><u>CLASS ACTION</u> |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL BACKGROUND .......................... 4

ARGUMENT ................................................................................................................... 6

I.    Applicable Law ................................................................................................... 6

II.    Legal Standard ..................................................................................................... 8

III.    Defendants' Request For Leave To File A Motion For Early Summary
        Judgment Rests On A Mischaracterization Of Plaintiff's Remaining Claims
        And The Law ........................................................................................................ 9

              A.    Defendants Mischaracterize Plaintiff's Remaining Claims ............. 10

              B.    Defendants Mischaracterize the Law ............................................... 11

IV.    Defendants Should Not Be Permitted To File Two Motions For Summary
        Judgment .............................................................................................................. 14

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

*AAA Flag & Banner Mfg. Co, Inc. v. Flynn Signs and Graphics, Inc.*,
No. CV 09-2053 ODW, 2010 WL 11463632 (C.D. Cal. Mar. 15, 2010) ........... 8, 9, 14

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................................. 6, 7

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) ........................................................................ 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................. 8

*Convertino v. DOJ*,
684 F.3d 93 (D.C. Cir. 2012) ................................................................................... 8

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017) ...................................................................................... 6

*Freeland v. Iridium World Commc'ns, Ltd.*,
No. 99-1002, 2006 WL 8427320 (D.C. Sept. 15, 2006)............................................ 11

*Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*,
296 F.3d 982 (10th Cir. 2002) ................................................................................. 14

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) ................................................................................... 7

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
252 F. Supp. 2d 1005 (C.D. Cal. 2003) .................................................................... 12

*Jackson v. Goord*,
No. 06-CV-6172 CJS, 2013 WL 1560204 (W.D.N.Y. Apr. 10, 2013) ....................... 14

*Katz v. China Century Dragon Media, Inc.*,
No. LA CV11-02769 JAK (SSx), 2011 WL 6047093 (C.D. Cal. Nov. 30, 2011)...... 11

*Levine v. Atricure, Inc.*,
508 F. Supp. 2d 268 (S.D.N.Y. 2007) ...................................................................... 7

*Mallen v. Alphatec Holdings, Inc.*,
861 F. Supp. 2d 1111 (S.D. Cal. 2012)..................................................................... 7

ii

*In re Metro. Sec. Litig.*,
    No. CV-04-25-FVS, 2010 WL 11474098 (E.D. Wash. Jan. 22, 2010) ................... 7, 11

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) .................................................................. 7, 11

*Petrie v. Elec. Game Card, Inc.*,
    308 F.R.D. 336 (C.D. Cal. 2015) .......................................................................... 12, 13

*Santan Crossing Professional Plaza Condominium Association v. Westfield Insurance
    Co.*,
    No CV-20-00792-PHX-SPL, 2020 WL 7042841 (D. Ariz. Oct. 30, 2020) ................ 13

*Smilovits v. First Solar Inc.*,
    119 F. Supp. 3d 978 (D. Ariz. 2015) .......................................................................... 13

*Trenz v. On-Line Administrators, Inc.*,
    No. 2:15-cv-08356-JLS-KS, 2018 WL 6427367 (C.D. Cal. Nov. 1, 2018) ................ 14

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ..................................................................................................... 8

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ..................................................................................... 9

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 Civ.3288 DLC, 2005 WL 375314 (S.D.N.Y. Feb. 17, 2015) ........................... 7

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ..................................................................................... 11

**Other Authorities**

Rule 16(b)(4) ....................................................................................................................... 14

Fed. R. Civ. P. 56 ............................................................................................................. 6, 8

iii

Lead Plaintiff, DeKalb County Pension Fund ("Plaintiff"), by and through its counsel, hereby files its response in opposition to the Mesa Defendants' Motion For Leave To File An Early Motion For Summary Judgment ("Motion"), Doc. 109, and the Underwriter Defendants' Joinder In The Mesa Defendants' Motion For Leave To File An Early Motion For Summary Judgment, Doc. 110.[1]

**INTRODUCTION**

Relying on mischaracterizations of both the law and Plaintiff's claims, Defendants attempt to avoid their discovery obligations by seeking leave to file a premature motion for summary judgment on their negative causation defense, while reserving the right to file an additional motion for summary judgment at the end of discovery. Section 11 contains a provision for statutory damages based on the loss of value of the stock after the IPO. The calculation is formulaic and damages automatically attach when there is a violation of Section 11 unless Defendants can meet a heavy burden to make a factual showing of negative causation. *See* Ex. A (declaration of highly respected economist, and well-vetted expert witness, Dr. Steve Feinstein ("Feinstein Decl.")) at ¶ 13.[2] Negative causation is an affirmative defense included in the language of Section 11 that precludes recovery only for those statutory losses that Defendants can prove were not attributable to defendants' misrepresentations or omissions. As the Ninth Circuit has recognized, Defendants face a "heavy burden" when seeking to establish this defense.

---

[1]    Unless otherwise stated: (1) all capitalized terms herein have the same meaning as those in the Amended Class Action Complaint for Violations of the Federal Securities Laws ("AC"), Doc. 52; (2) "Defendants" refers to: (a) the Underwriter Defendants (Raymond James & Associates, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Cowen and Company, LLC, Stifel, Nicolaus & Company, Incorporated, Imperial Capital, LLC); and (b) the Mesa Defendants, which consist of Mesa Air Group, Inc. ("Mesa" or the "Company"), as well as the Individual Defendants Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados; (3) all emphases are added; and (4) all internal citations and quotation marks are omitted.
[2]    The Feinstein Decl. is attached as Exhibit A to the Declaration of James M. Wilson, Jr. in Opposition to Mesa Defendants' Motion For Leave To File An Early Motion For Summary Judgment, submitted herewith.

1

Defendants do not even attempt to meet this heavy burden.  Tellingly, Defendants ***do not cite a single case*** in which an early summary judgment motion on negative causation was granted—nor could they.  As numerous courts have found, negative causation is a fact-intensive inquiry—not the "purely legal issue" that Defendants misrepresent it to be.

This fact-intensive issue requires ***fact*** discovery, which experts often consider as part of their analysis of causation, and is not properly addressed before any meaningful discovery has occurred.  *See* Feinstein Decl. ¶15.  Indeed, Plaintiff is still seeking —but has not yet obtained—documents and testimony from Defendants regarding the affirmative defense of negative loss causation as well as documents and testimony regarding the statements and claims that remain at issue in this case.

Permitting Defendants to file an early summary judgment motion will waste the Court's—and the parties'—resources and would be highly prejudicial to Plaintiff unless full discovery regarding the merits of the claims is allowed.  The Court has already entered an order allowing that, along with a scheduled time for expert reports and expert discovery following the close of fact discovery.  Defendants' current Motion is essentially an ill-founded motion for reconsideration of the Court's scheduling order, that would again open motion practice on the proper schedule for discovery.  Defendants' suggestion that only "expert discovery" is necessary to adjudicate their negative causation defense is indefensible, as is more fully shown below.  And, as Plaintiff has explained repeatedly, *see* Docs. 90, 96, the surviving allegations are based on more than just a shortage of mechanics.  Indeed, in its order denying in part Defendants' motion to dismiss ("MTD Order"), Doc. 81, the Court found a **group** of statements pertaining to aircraft maintenance actionable, including those concerning the cost of maintenance operations:

> As to aircraft maintenance, the Amended Complaint alleges that **three statements are materially false or misleading:**

2

(1)    Low-Cost Operator. We believe that we are among the lowest cost operators of regional jet service in the United States. There are several key elements that contribute to our cost efficiencies:

- Efficient Fleet Composition. . . . Larger regional aircraft require less fuel and crew resources per passenger carried, and may also have maintenance cost efficiencies.

* * *

- Competitive Procurement of Certain Operating Functions. We have long-term maintenance agreements . . . to provide parts procurement, inventory and engine, airframe and component overhaul services. We expect that our long-term agreements with these and other strategic vendors will provide predictable high-quality and cost-effective solutions for most maintenance categories over the next several years. In prior periods, we also invested in long-term engine overhauls on certain aircraft, which we believe will reduce related maintenance obligations in future periods.

(2)    Maintain Low-Cost Structure. . . . We intend to continue our disciplined cost control approach through responsible outsourcing of certain operating functions, by flying large regional aircraft with associated lower maintenance costs . . . . These efficiencies, coupled with the low average seniority of our pilots, has enabled us to compete aggressively on price in our capacity purchase agreement negotiations.

(3)    As of March 31, 2018, we employed approximately . . . 411 mechanics . . . . Our continued success is partly dependent on our ability to continue to attract and retain qualified personnel.

*See* MTD Order 19-22 (stating that "[t]he Court therefore rejects Defendants' argument that the **statements** at issue are non-actionable opinions").  These statements clearly put more than just the mechanic shortage into play, despite Defendants' attempts to limit Plaintiff's claims to that issue.

Thus, even assuming *arguendo* that Defendants succeeded on their motion for

3

summary judgment based on a single narrow claim,[3] it would not end this case—the parties would still need to litigate the remaining statements and associated claims, which would undoubtedly lead to more summary judgment motion practice after the close of discovery.

Governing law, due process, this Court's prior holdings, and considerations of judicial economy all weigh in favor of denying Defendants' Motion. For these reasons, and those explained below, Plaintiff respectfully requests that Defendants' Motion be denied.

### FACTUAL BACKGROUND AND PROCEDURAL BACKGROUND

Plaintiff filed the AC on August 17, 2020, alleging that Mesa's registration statement for its initial public offering ("IPO") contained material misstatements and omissions in violation of Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2), 77o), and violations of Items 303 (17 C.F.R. § 229.303(b)(2)(ii)) and 503 (17 C.F.R. § 229.503(c)). AC ¶¶ 1, 76, 86.

On October 1, 2020, Defendants moved to dismiss. *See* Docs. 56 to 59. Following oral argument on Defendants' motion to dismiss, on July 22, 2021 this Court sustained Plaintiff's claims that were premised on statements concerning Mesa's aircraft maintenance. *See* MTD Order 19-24. The Court dismissed Plaintiff's claims regarding statements concerning its business relationship and CPA with American and statements concerning Mesa Air's quantity of spare aircraft. *See id.* at 11-19.

The aircraft maintenance ("Aircraft Maintenance") statements that were sustained are set forth above. *See* Introduction, *supra*. Plaintiff alleges that these statements were false and/or misleading and that soon after the IPO, Mesa disclosed materially adverse

---

[3]    One iteration of the single claim Defendants attempt to address in their proposed motion for summary judgment is as follows: "Instead, **the question** is whether any of the decline in Mesa's stock price following the IPO resulted from the omission of the alleged shortage of qualified maintenance personnel from Mesa's Registration Statement: *i.e.*, when did the market learn the truth and how did it react." Motion 5.

4

and previously existing but undisclosed conditions, trends, uncertainties, and risks at the Company, including a shortage of qualified mechanics and maintenance personnel to properly and timely service its aircraft. AC ¶¶ 6-7, 11; *see also* MTD Order 19-24.  Due to the undisclosed shortage of qualified mechanics and maintenance personnel, adverse conditions, risks, trends, and uncertainties leading to increased maintenance expenses, decreased revenues, and weak earnings, the Company's common stock price plummeted and lost 75% of its value from its Offering price, closing at $3.03 per share on April 1, 2020.  AC ¶ 14.

Since the Court entered the MTD Order, Defendants have devoted substantial effort to inventing novel ways to seek a premature ruling on their negative causation defense.  In the Joint Proposed Case Management Report ("Joint Report") filed on August 30, 2021, Defendants sought to bifurcate discovery into two phases: the first phase for class certification discovery and the second phase for merits discovery.  Doc. 90.  Defendants claimed their basis for bifurcating in this manner was their assumption that Plaintiff would not be able to demonstrate either damages or injury-in-fact, and therefore would not be able to rebut Defendants' affirmative defense of negative loss causation.  *Id.* at 10.  These conclusions were based on their misguided belief that only the May 10, 2019 disclosure remained relevant in the case. *See id.* at 10-11.  As Plaintiff explained in the Joint Report, Defendants should not be permitted to prove an affirmative defense of negative causation while simultaneously prohibiting Plaintiff from obtaining the discovery needed to refute it.  *Id.* at 8.  Following the September 21, 2021 scheduling conference, the Court issued a minute order denying Defendants' proposed bifurcation plan, which stated that "Defendants grossly overstate the cited authorities in the context of Article III standing and class action litigation."  Doc. 93.

The parties then returned for a second scheduling conference on October 14, 2021, during which Defendants requested to build into the schedule allotted time for the same motion for summary judgment they are now seeking leave to file.  Doc. 105.  The Court

denied Defendants' request, stating the following:

> THE COURT: Here's the way I'm going to approach the summary judgment issue. Each side gets one summary judgment motion. It's going to be in the order.  Defendants, if you want to file an early summary judgment motion, you're going to need to seek leave of Court to do it. So you could file a motion seeking leave of Court with your proposed early summary judgment motion, but I just want you to know I'm going to scrutinize that because I don't want to get reversed by the Ninth Circuit on an issue where I didn't allow plaintiffs to conduct the discovery that they need. So that's something I'm going to be looking for. And that's really all I want to say about it at this point, okay.

*Id.* at 25:23-25, 26:1-9.

The Court's Scheduling Order was subsequently issued on October 15, 2021. *See* Doc. 101.  Consistent with the Court's statements during the scheduling conference and the principles embodied in Rule 56, the Order set March 13, 2023 as the deadline for dispositive motions—24 days after the close of discovery.[4]  Despite Defendants' insistence that the Scheduling Order include an early motion for summary judgment on negative causation, the order specifically provides that each side gets only one summary judgment motion:

> No party or parties represented by at least one of the same counsel shall file more than one motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure without leave of the Court.

*Id.* at ¶ 7.b.  Defendants thereafter filed the present Motion.

**ARGUMENT**

### I.    Applicable Law

"Once a plaintiff establishes a prima facie case under the Securities Act, loss causation is presumed."  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234-35 (5th Cir. 2009); *see also Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 153-56 (2d Cir. 2017) ("Given that Defendants

---

[4]    The close of discovery is scheduled for February 17, 2023—the deadline for expert depositions.  *Id.* at ¶ 4.f.  Rule 56(b) contemplates that motions for summary judgment will be filed 30 days after the close of discovery.  *See* Fed. R. Civ. P. 56(b).

6

bore the burden of proof on [loss causation], the court correctly began with the presumption that any decline in value was caused by the [] misrepresentation[s]"). Section 11(e) of the Securities Act provides Section 11 defendants with a means of rebutting that presumption if they can establish the affirmative defense of negative causation, which prevents plaintiffs from recovering losses that the defendant proves are not attributable to the challenged misrepresentations or omissions. *See In re New Century*, 588 F. Supp. 2d 1206, 1236 (C.D. Cal. 2008) (citing 15 U.S.C. § 77k(e)). Numerous courts have described a Section 11 defendants' burden of proving "negative causation" as the "mirror image" of a Section 10(b) plaintiff's burden of proving "loss causation." *See, e.g., In re Metro. Sec. Litig.*, No. CV-04-25-FVS, 2010 WL 11474098, at *2 (E.D. Wash. Jan. 22, 2010); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ.3288 DLC, 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2015).

As the Ninth Circuit has recognized, Defendants have the "burden of proof on this defense, and bear[] a heavy burden." *See Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013); *see also Flowserve*, 572 F.3d at 234 (explaining that the heavy burden "arises out of Congress' desire to allocate the risk of uncertainty to the defendants in these cases[]"). To establish this defense, Defendants "must show that the depreciation in value of a plaintiff's stock resulted from factors other than the alleged material misstatement." *Hildes*, 734 F.3d at 860.

Negative causation raises questions that are inherently factual in nature. *See Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1131 (S.D. Cal. 2012) ("Because an analysis of causation is often fact-intensive,"—*i.e.*, requiring fact discovery and expert analysis—"negative causation is generally established by a defendant on a motion for summary judgment or at trial."); Feinstein Decl. at ¶¶13, 15. Accordingly, courts often deny motions for summary judgment on the basis of negative causation. *See Levine v. Atricure, Inc.*, 508 F. Supp. 2d 268, 272-73 (S.D.N.Y. 2007) ("As an affirmative defense, the burden of disproving loss causation falls on defendants,

reflecting Congress's 'desire to allocate the risk of uncertainty to the defendants . . . Because an analysis of causation is often fact-intensive, negative causation is generally established by a defendant on a motion for summary judgment or at trial . . . On a summary judgment motion or at trial, of course, the plaintiff may come forward with evidence suggesting that the price decline, despite first appearances, did in fact result from the alleged nondisclosure." (citing *Akerman v. Oryx Commc'ns*, 810 F.2d 336, 343 (2d Cir. 1987); *Beecher v. Able*, 435 F. Supp. 397, 407 (S.D.N.Y. 1975)).

## II.    Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Generally, "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'"** *Convertino v. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).  Accordingly, Rule 56(b) sets the default deadline for filing a motion for summary judgment at "30 days after the close of all discovery." Fed. R. Civ. P. 56(b).  Rule 56(d) protects parties from being ambushed before the completion of discovery by permitting a court to defer or deny a motion for summary judgment if the non-movant can show it cannot present facts "essential to justify its opposition" without further discovery.  Fed. R. Civ. P. 56(d). This is because due process requires courts to "afford the parties a full opportunity to present their respective cases" before ruling on the merits.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Parties are usually limited to filing only one motion for summary judgment. *AAA Flag & Banner Mfg. Co, Inc. v. Flynn Signs and Graphics, Inc.*, No. CV 09-2053 ODW

(VBKx), 2010 WL 11463632, at *2 (C.D. Cal. Mar. 15, 2010) ("Although successive motions for summary judgment are not categorically barred, they are generally disfavored in federal court.").

**III.    Defendants' Request For Leave To File A Motion For Early Summary Judgment Rests On A Mischaracterization Of Plaintiff's Remaining Claims And The Law**

In the MTD Order, the Court divided Plaintiff's claims into four categories of statements: statements about the American CPA, statements about operational performance, statements about spare aircraft, and statements about Aircraft Maintenance. MTD Order 11-23.  The Court dismissed claims pertaining to the first three categories, and sustained Plaintiff's claims pertaining to Aircraft Maintenance issues under Sections 11 and 15, and Items 303 and 503.  *See id.* at 25-26.

Defendants argue: (1) that the Aircraft Maintenance claims were sustained based on a single omission—the failure to disclose an alleged shortage of mechanics at the time of the IPO, which was first revealed to the public by Defendant Jonathan G. Ornstein ("Ornstein") on May 10, 2019 when he stated that Mesa was "hamstrung" by a lack of mechanics (*see* Motion 1-2; AC ¶ 99); (2) that there were no other actionable statements or omissions concerning Mesa Air's maintenance solutions identified either by Plaintiff in the AC or in the Court's MTD Order (Motion 1); (3) that the challenged maintenance statements were not false or misleading at the time of the IPO; (4) and even if the statements were false or misleading, there was no statistically significant stock drop on or shortly after May 10, 2019, and therefore no damages (Motion 4).  Defendants argue that the omission of the information regarding mechanic shortages did not cause any losses because once Mesa allegedly admitted it was "hamstrung" by a lack of mechanics preceding the IPO, the market did not react.  Motion 3-4.  Defendants believe this affords them "an absolute negative causation defense."  Motion 1.  Defendants also argue that any reference by Plaintiff to subsequent stock drops, specifically drops in August 2019, is improper because such statements were dismissed by the Court when it dismissed

9

Plaintiff's claims regarding the American CPA and spare aircrafts. Motion 5.

Based on the foregoing, Defendants contend that summary judgment on negative causation is appropriately determined at this early juncture because (1) they can show that following Defendant Ornstein's "hamstrung" comment, there was no statistically significant price movement and therefore the omission of the mechanic shortages did not cause Plaintiff's loss; and (2) this can be determined "conclusively as a matter of law through expert analysis of undisputed facts and information in the public domain." Motion 1-2. Not so.

**A.    Defendants Mischaracterize Plaintiff's Remaining Claims**

Defendants are incorrect that "Plaintiff's only remaining basis for liability concerns its allegation that, prior to the August 2018 IPO and through May 2019, Mesa was 'hamstrung' by a 'shortage of qualified mechanics.'" Motion 3. First, as Plaintiff has explained repeatedly in this Action, its claims are not limited to the omission of Mesa's mechanic shortage. *See* Docs. 90, 96. Defendants' continued efforts to limit Plaintiff's allegations to a single omission conflicts with the clear and plain language of the Amended Complaint and this Court's MTD Order and therefore should be rejected.

Second, Plaintiff has stated multiple times, including during both Scheduling Conferences on September 9, 2021 and October 14, 2021, that it contends there are multiple corrective disclosures that were clearly related to maintenance issues after Ornstein's May 10, 2019 statements, and therefore multiple stock drops for which itself and class members may recover. *See id.* For example, the August 8, 2019 third quarter financial and operating results revealed to the public, for the first time, the lower operating revenues and increased maintenance expenses caused by the mechanics shortage and failure to meet performance standards. *Id.* ¶ 12. Following that disclosure, the stock price fell from $10.77 on July 24, 2019 to $5.84 on August 12, 2019. AC ¶ 13. Thus, Plaintiff's theory of liability is fully "in sync" with its theory of recovery, unlike the plaintiff in *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021). Motion 6.

10

Defendants' false claim that there is only one relevant disclosure is itself a factual issue, and one that necessitates discovery.  This fact negates Defendants' claimed basis for an early motion for summary judgment.

### B.    Defendants Mischaracterize the Law

As explained above, in raising the negative causation affirmative defense (the "mirror image" of loss causation), "the defendant has a heavy burden of proving that the decline in stock price was caused by factors other than the misstatement(s) in the registration statement." *New Century*, 588 F. Supp. 2d at 1238; *see also Katz v. China Century Dragon Media, Inc.*, No. LA CV11-02769 JAK (SSx), 2011 WL 6047093, at *5 (C.D. Cal. Nov. 30, 2011).

Defendants argue that the negative causation defense can be disposed of, ***without any fact discovery***, at this early juncture through "expert analysis of undisputed facts and information in the public domain" because it "is a purely legal issue."  Motion 2.  They are incorrect.  *See* Feinstein Decl. ¶ 15 ("The quantification of Section 11 damages will depend on what the evidence ultimately indicates was known or concealed by the company.").

First, as explained in § I, *supra*, negative causation is a fact-intensive issue, not a purely legal issue.  Accordingly, Courts routinely deny motions for summary judgment based on this defense.  *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1423 (9th Cir. 1994) ("[T]he auditor clearly did not overcome, as matter of law, Congress' desire to allocate to the defendants the risk of uncertainty in [section 11(e) ] cases. We therefore reverse the district court's holding that Deloitte established a 'loss causation' defense as a matter of law and remand for a trial on the merits of (1) whether the 1987 financial statements were in fact misleading…and (2) whether Deloitte can affirmatively establish a loss causation defense."); *Metro.*, 2010 WL 11474098, at *2, *6 (denying parties' cross-motions for summary judgment on negative causation); *Freeland v. Iridium World Commc'ns, Ltd.*, No. 99-1002, 2006 WL 8427320, at *3 (D.C. Sept. 15, 2006)

("Viewing all evidence in the light most favorable to Mandelbaum, the Court concludes that a reasonable juror could find that the truth of Iridium's misrepresentations began to permeate the market well before May 13, 1999, lowering the price of Iridium stock before Mandelbaum sold his shares. As the Underwriters have failed to meet their burden to show negative causation as a matter of law, summary judgment on their affirmative defense must be denied.").

Second, expert analysis on causation issues is not limited to "information in the public domain." Motion 2. Defendants proffer an event study from their expert, Dr. David Tabak, based solely on public information to support their proposed motion, and describe it as "a statistical analysis of undisputed publicly available information[.]" Motion 4. As an initial matter, there are no "undisputed" facts in this case. Plaintiff has neither stipulated to nor admitted any facts. Indeed, Defendants have not made any requests for admissions. Discovery has barely begun, and is not scheduled to close until over a year from now. Doc. 101 ¶ 4(f). In any event, while "event studies are by far the most common test for a causal connection," *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 352 (C.D. Cal. 2015), experts are not limited to considering only publicly available information when conducting an event study. By way of background, "[a]n event study is a statistical regression analysis that examines the effect of an event on a dependent variable, such as a corporation's stock price." *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003).

As the *Petrie* court explained:

> An event study typically partition[s] a company's security price movement on each trading day in the class period into three parts: the movement caused by market-wide factors, or the "market effect"; the movement caused by industry-wide factors, or the "industry effect"; and the movement caused by "firm-specific effect." Once the factors are partitioned and firm-specific effects are isolated to determine if the market reacts efficiently to disclosures, the court is generally presented empirical evidence showing whether the firm-specific abnormal returns or returns in excess of what is predicted by the statistical model are statistically significant. The court examines those days throughout the class period when either, (a) there appear to be material or statistically significant firm-specific abnormal

12

returns, and to determine whether there are associated disclosures, or conversely (b) there are material or corrective disclosures, and to determine whether there are associated material or statistically significant firm-specific abnormal returns.

*Id.* at 352.

Experts and parties will often rely on nonpublic information—such as internal documents produced in discovery—when opposing summary judgment on causation. *See* Feinstein Decl. ¶ 15 ("Evaluation of a negative loss causation analysis, and the analysis to actually calculate damages often requires full development of the record."); *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 995 (D. Ariz. 2015) (denying defendants' motion for summary judgment on loss causation where, *inter alia*, an internal email "noted investor concerns and recognized that the LPM defect caused the stock drop"); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 905-06 (S.D. Cal. 2019) (holding that the expert's "use of internal information, as one factor in his analysis, does not justify exclusion of his testimony" and stating that other courts "have approved loss causation analysis premised in part on internal company documents.").

Unsurprisingly, Defendants have not cited a single case granting a movant leave to file an early motion for summary judgment based on negative causation. The only case they do cite for the proposition that early summary judgment is appropriate, *Santan Crossing Professional Plaza Condominium Association v. Westfield Insurance Co.*, No CV-20-00792-PHX-SPL, 2020 WL 7042841 (D. Ariz. Oct. 30, 2020), is completely inapposite. There, the question for the court was whether the construction defect claims at issue fell within an insurance company's policy coverage—an issue that the Ninth Circuit has found to be a question of law. *Id.* at *2. As a result, the court granted defendant leave to file an early motion for summary judgment on the coverage issues, and noted that "[t]he underlying construction defect claims . . . have already been fully litigated, and the facts have already been fully borne out[.]" *Id.* at 4. That is not the case here.

13

**IV.    Defendants Should Not Be Permitted To File Two Motions For Summary Judgment**

While Rule 56 does not explicitly limit the number of motions for summary judgment a party may file, "[i]t is well established that federal district courts possess the power to administer their dockets in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases[.]" *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002).  District Courts have this authority in order to promote judicial efficiency.  *See Trenz v. On-Line Administrators, Inc.*, No. 2:15-cv-08356-JLS-KS, 2018 WL 6427367, at *1 (C.D. Cal. Nov. 1, 2018) ("[T]he purpose of the Court's rule allowing a single motion for summary judgment is not simply to deter frivolous or repetitive motions − which can be addressed through sanctions or by restrictions on disguised motions for reconsideration – but rather to avoid piecemeal motions, inefficient use of the Court's and litigants' time, and gamesmanship regarding page limits.").  District Courts also retain this authority in order to deter piecemeal motion practice.  *See Jackson v. Goord*, No. 06-CV-6172 CJS, 2013 WL 1560204, at *5 (W.D.N.Y. Apr. 10, 2013) (parties are not allowed to "treat their initial summary judgment motions as a 'dry run' which they would have an opportunity to redo or supplement—at considerable additional cost to opposing parties and at a considerable drain to scarce judicial resources—via a new Rule 56 motion later on to correct any deficiencies identified by opposing counsel or the court in processing the initial motion.").

As noted above, the Court's Scheduling Order provides that each side may only file one motion for summary judgment.  Doc. No. 101 at ¶7.b.  Notwithstanding, Defendants ask the court to grant their request to file an early motion for summary judgment, "without prejudice to filing a subsequent dispositive motion on any ground following the close of discovery."  Motion 1.  *See* Rule 16(b)(4) (providing that a scheduling order "may be modified only for good cause and with the judge's consent); *AAA Flag & Banner*, 2010 WL 11463632, at *2 (explaining that "successive motions for

14

summary judgment . . . are generally disfavored in federal court,[,] but may be considered in light of certain circumstances, such as: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) the need to correct a clear error or prevent manifest injustice").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion For Leave To File An Early Motion For Summary Judgment.

Dated: January 19, 2022

By: /s/ James M. Wilson, Jr.
James M. Wilson, Jr.

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
rkillorin@faruqilaw.com
jwilson@faruqilaw.com

*Attorneys for Lead Plaintiff DeKalb County Pension Fund and Lead Counsel for the Class*

Gary F. Urman
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 500
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585
Email: gurman@dmyl.com

*Attorneys for Lead Plaintiff DeKalb County Pension Fund and Liaison Counsel for the Class*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *James M. Wilson, Jr.*
James M. Wilson, Jr.

16