# EXHIBIT A

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually And On Behalf Of All Others Similarly Situated,<br><br>    Plaintiff,<br>  V.<br>Mesa Air Group, Inc.; Jonathan G. Ornstein; Michael J. Lotz; Daniel J. Altobello; Ellen N. Artist; Mitchell Gordon; Dana J. Lockhart; G. Grant Lyon; Giacomo Picco; Harvey Schiller; Don Skiados; Raymond James & Associates, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Cowen and Company, LLC; Stifel, Nicolaus & Company, Incorporated; and Imperial Capital, LLC,<br>            Defendants. | Case No. 2:20-cv-00648-MTL<br><br><br>CLASS ACTION |

DECLARATION OF

PROFESSOR STEVEN P. FEINSTEIN, PH.D., CFA

JANUARY 19, 2022

Pursuant to 28 U.S.C. § 1746, I, Steven P. Feinstein, Ph.D., CFA, hereby declare as follows:

## I.    Qualifications

1. I, Steven P. Feinstein, am an Associate Professor of Finance at Babson College, and the president of Crowninshield Financial Research, Inc., a financial economics consulting firm.

2. I hold a Ph.D. in Economics from Yale University, a Master of Philosophy degree in Economics from Yale University, a Master of Arts in Economics from Yale University, and a Bachelor of Arts degree in Economics from Pomona College. I also hold the Chartered Financial Analyst ("CFA") designation, granted by the CFA Institute.

3. At Babson College I have taught undergraduate and MBA level courses in Valuation, Capital Markets, Investments, Equity Analysis, Fixed Income Analysis, Financial Management, Risk Management, and Quantitative Methods. I have also taught executive courses on investments and corporate financial management for numerous corporations. I have published peer reviewed articles in the field of finance, and on the topic of securities damages specifically.

4. Prior to my joining the faculty at Babson College, I taught finance at Boston University. Previously, I was an Economist at the Federal Reserve Bank of Atlanta where my primary responsibilities were to monitor financial markets, analyze proposed regulation, and advise the Bank President in preparation for his participation in meetings of the Federal Open Market Committee – the government body responsible for monetary policy in the United States.

5. I am a member of the American Finance Association, the Financial Management Association, the North American Case Research Association, the National Association of Forensic Economics, the CFA Institute, and the CFA Society Boston, where I have served as a member of the education committee and ethics subcommittee. I also served on the Fixed Income Specialization Examination Committee of the CFA Institute.

6. The CFA designation is the premier credential for financial analysts worldwide. In order to receive this credential, applicants must pass a series of three exams covering such topics as economics, equity analysis, financial valuation, business analysis, quantitative

methods, investment analysis, portfolio management, risk management, financial accounting, and ethical and professional standards. For over ten years I taught in the Boston University CFA Review Program and the Boston Security Analysts Society CFA Review Program – two of the leading review programs that prepared candidates for the CFA exams. In both of these programs I taught candidates at the most advanced level.

7.    In addition to my teaching, research, CFA, and academic community responsibilities, I practice extensively as a financial consultant. Past and present clients include the United States Securities and Exchange Commission, the Internal Revenue Service, the Attorney General of the State of Illinois, and the National Association of Securities Dealers. As a financial consultant, I have conducted analyses and presented opinions related to markets, valuation, and damages in over 150 cases. My curriculum vitae is attached hereto.

## II.    Scope of Declaration

8.    I was asked by Faruqi & Faruqi, LLP, counsel for the Lead Plaintiff, to explain in an affidavit how loss causation is assessed and damages are computed in a case alleging liability under Section 11 of the Securities Act of 1933 (the "Securities Act"). Specifically, I was asked to explain the economic analysis applied to determine loss causation, evaluate negative causation, and compute Section 11 damages.

## III.    Section 11 Loss Causation and Damages

9.    It is my understanding that Section 11 addresses liability for losses sustained by investors who purchased or acquired securities pursuant or traceable to a registration statement that contained untrue statements or omissions of material facts. According to Section 11 of the Securities Act, damages to investors are measured as follows:

> "[T]he difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price

2

at which the security was offered to the public) and the value thereof as of the time such suit was brought."
**15 U.S.C. § 77k(e).**

10. As detailed in the excerpt from the statute above, Section 11 damages for any particular investor depend on several factors that can be determined in the claims process, including: (i) when the stock was purchased or acquired; (ii) the price at the time of purchase; (iii) whether the stock was sold, and if so, when it was sold and for how much; and/or (iv) if held on the date of suit, the value of the stock on that date.

11. For any individual class member, the recoverable loss under the statutory formula is, for each share purchased, the difference between the lesser of (A) the investor's (i) actual purchase price of the share or (ii) the price of the offering, and (B) (i) the value of the shares on the day suit was brought if the investor continued to hold the shares on the day suit was brought, or (ii) the actual sale price if the shares were sold prior to the date of suit, or (iii) the actual sale price if the shares were sold after the date of suit but before judgment, if the sale price was less than the price of the offering and greater than the value on the date of suit.

12. It is my understanding that defendants may seek to prove that factors unrelated to the alleged misrepresentations and omissions caused all or some of the subject security's price decline. That is, defendants may seek to provide a basis for a "negative causation" argument in accordance with Section 11 of the Securities Act. As stated in the statute:

> "[I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable."
> **15 U.S.C. § 77k(e).**

13. It is my understanding that it is defendants' burden according to Section 11 of the Securities Act to prove negative causation, and that it cannot simply be assumed or surmised. It is my understanding that in order for defendants' expert to prove that there was no loss caused by the alleged untrue statements or omissions of material facts, they must establish affirmatively either that the alleged misrepresentation and omissions

3

caused no portion of the decline in the stock price from the date of issuance to the date of suit, or alternatively that non-allegation-related factors caused all of the decline.

14. As the Second Circuit Court of Appeals set forth in *In Re: Barclays Bank PLC Securities Litigation*, establishing negative causation is a "heavy burden":

> "Unlike a securities fraud plaintiff proceeding under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), a section 11 plaintiff need not demonstrate 'scienter, reliance, or loss causation.' *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). Nevertheless, a defendant in a section 11 action will not be liable if it can prove 'negative loss causation'—that is, if it can demonstrate that the alleged misstatement or omission did not lead to a decline in its share price. *See* 15 U.S.C. § 77k(e) ('[I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from [the alleged misstatement or omission], such portion of or all such damages shall not be recoverable.'). To sustain this defense, a defendant must establish that 'the risk that caused the losses was not within the zone of risk concealed by the misrepresentations and omissions,' or that 'the subject of the misstatements and omissions was not the cause of the actual loss suffered.' *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 154 (2d Cir. 2017) (alterations and internal quotation marks omitted). Because section 11 'allocate[s] the risk of uncertainty to the defendants,' we have described rebutting loss causation as a 'heavy burden.' *Akerman v. Oryx Commc'ns, Inc.,* 810 F.2d 336, 341 (2d Cir. 1987)."
>
> **In Re: Barclays Bank PLC Securities Litigation, 756 F. App'x 41, 45 (2d Cir. 2018).**

15. Evaluating a negative causation argument or analysis requires intensive analysis of the facts of the case, coupled with the application of financial analytic testing. Often the necessary facts and data become available only via case discovery. Evaluation of a negative loss causation analysis, and the analysis to actually calculate damages often requires full development of the record. The quantification of Section 11 damages will depend on what the evidence ultimately indicates was known or concealed by the company. The precise damage computations depend on what company data and documents become available and what they show. In the absence of a showing by defendants of negative causation, the full measure of damages would be applied to all shares acquired traceable or pursuant to the offering.

This declaration is furnished solely for the purpose of court proceedings in the above-referenced matter and may not be used or referred to for any other purpose. The analysis and opinions contained in this report are based on information available as of the date of the declaration. I reserve the right to amend, refine, or supplement this report in the event that I become aware of additional information, evidence, arguments, or analyses which bear on my work on this matter.

I declare, under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of January 2022 at Brookline, MA.


Steven P. Feinstein, Ph.D., CFA

5

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**


Babson College
Finance Division
Babson Park, MA 02457
781-239-5275
Feinstein@Babson.edu


## EDUCATION

1989   YALE UNIVERSITY
Ph.D. in Economics (Concentration in Finance)

1986   YALE UNIVERSITY
M.Phil. in Economics

1983   YALE UNIVERSITY
M.A. in Economics

1981   POMONA COLLEGE
B.A. in Economics (Phi Beta Kappa, *cum laude*)


## TEACHING EXPERIENCE

1996 - present        BABSON COLLEGE
Babson Park, MA
Full-time Faculty, Finance Division
Associate Professor (2000-present)
Donald P. Babson Chair in Applied Investments (2002-2010)
Faculty Director of the Babson College Fund (2002-2009)
Director of the Stephen D. Cutler Investment Management Center
(2002-2007)
Assistant Professor (1996-2000)

1990 - 1995        BOSTON UNIVERSITY SCHOOL OF MANAGEMENT
Boston, MA
Full-time Faculty, Department of Finance

1993 - 1994        WASHINGTON UNIVERSITY, OLIN SCHOOL OF BUSINESS
St. Louis, MO
Visiting Assistant Professor, Department of Finance

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**

## BUSINESS EXPERIENCE

| | |
|---|---|
| 2008 - present | CROWNINSHIELD FINANCIAL RESEARCH, INC.<br>Brookline, MA<br>President and Senior Expert |
| 1996 - 2008 | THE MICHEL-SHAKED GROUP<br>Boston, MA<br>Senior Expert (2001 - 2008)<br>Affiliated Expert (1996 - 2001) |
| 1987 - 1990 | FEDERAL RESERVE BANK OF ATLANTA<br>Economist |

## PROFESSIONAL DESIGNATIONS

1998   Awarded the Chartered Financial Analyst designation by the Association for Investment Management and Research.

## RESEARCH AWARDS

1999   Greater Boston Real Estate Board/Real Estate Finance Association – Research Grant and Featured Speaker at Real Estate Finance Association Meetings.

## PAPERS AND PUBLICATIONS

"Stock Price Reactivity to Earnings Announcements: The Role of the Cammer/ Krogman Factors," (with Miguel Villanueva) *Review of Quantitative Finance and Accounting*, 2021, Vol. 57, 203-234.

"What A Solar Eclipse Has To Do With Market Efficiency," (with Daniel Bettencourt) *Law360.com*, 2017.

"Underestimation of Securities Fraud Aggregate Damages Due to Inter-Fund Trades," (with Gang Hu, Mark Marcus, and Zann Ali) *Journal of Forensic Economics*, September 2013, Vol. 24, No. 2, 161-173.

"Lehman Equity Research Tipping: Evidence in the Stock Price Data," Working paper, March 2010. Cited in *New York Times* May 19, 2012, and made available on the *New York Times* website.

"Distortion in Corporate Valuation: Implications of Capital Structure Changes," (with Allen Michel and Jacob Oded) *Managerial Finance*, 2011, Vol. 37(8), 681-696.

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**

"Market Signals of Investment Unsuitability," (with Alexander Liss and Steven Achatz) Law360.com, June 3, 2010. Available from http://www.law360.com/articles/170690.

"Planning Capital Expenditure," in *The Portable MBA in Financing and Accounting*, J. L. Livingstone and T. Grossman, editors, New York: Wiley, 3rd edition 2001, and 4th edition 2009.

"Financial Management of Risks," in *The Portable MBA in Financing and Accounting*, J. L. Livingstone and T. Grossman, editors, New York: Wiley, 2nd edition 1997, 3rd edition 2001, and 4th edition 2009.

"Fraud-on-the-Market Theory: Is a Market Efficient?" (with Allen Michel and Israel Shaked) *American Bankruptcy Institute Journal*, May 2005.

"Valuation of Credit Guarantees," (with Allen J. Michel and Israel Shaked). *Journal of Forensic Economics* 17(1), pp. 17-37, 2005.

"A Better Understanding of why NPV Undervalues Managerial Flexibility," (with Diane Lander) in *The Engineering Economist*, 2002, Volume 47, Number 4.

"Teaching the Strong-Form Efficient Market Hypothesis: A Classroom Experiment," *Journal of Financial Education*, fall 2000.

*A Future for Real Estate Futures: Potential Applications of Derivatives in Real Estate Investment and Finance* (with Linda Stoller). Monograph. Boston: Real Estate Finance Association / Greater Boston Real Estate Board, May 2000.

"The Risk Budget: Using Your Human Resources," (with John Marthinsen and John Edmunds) *Risk Management*, April 2000.

"Scenario Learning: A Powerful Tool for the 21st Century Planner," (with Jeffrey Ellis and Dennis Stearns) *The Journal of Financial Planning*, April 2000.

"Protecting Future Product Liability Claimants in the Case of Bankruptcy," (with Allen Michel and Israel Shaked) *American Bankruptcy Institute Journal*, January 2000.

"Measuring Risk with the Bodie Put When Stocks Exhibit Mean Reversion," *The Journal of Risk*, Vol. 1, No. 3, 1999.

"Just-in-Time Mathematics: Integrating the Teaching of Finance Theory and Mathematics," (with Gordon Prichett) *Primus*, Vol. IX, No. 2, June 1999.

*Atlanta Park Medical Center v. Hamlin Asset Management.* (with Natalie Taylor). Babson Case Collection, Harvard Business School Press, 1998.

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**

"Dealing with Delta," *Derivatives Week*, VII, No. 44, November 2, 1998.

"Expected Return in Option Pricing: A Non-Mathematical Explanation," *Derivatives Week*, VII, No. 35, August 31, 1998.

"When Hedges Fail: The Put Paradox and its Solution," *Derivatives Quarterly*, Vol. 4, No. 2, Winter 1997.

*Finance and Accounting for Project Management*. New York: American Management Association, 1996.

"International Investing," in *Irwin's Directory of Emerging Market Brokerages*.  New York: Irwin, 1996.

"The Hull and White Implied Volatility," Boston University Working Paper #92-51, 1992.

"Immunizing Against Interest Rate Risk Using the Macaulay Duration Statistic: An Assessment," (with Don Smith) in *Financial Systems and Risk Management*, the proceedings of the US-Japan Forum on Financial Strategy in the 1990s, sponsored by Osaka Foundation of International Exchange and Boston University, August 1991.

"Covered Call Options: A Proposal to Ease LDC Debt," (with Peter Abken) *Federal Reserve Bank of Atlanta Economic Review*, March/April 1990. Reprinted in *Financial Derivatives: New Instruments and Their Uses*. Atlanta: Federal Reserve Bank.

"Forecasting Stock-Market Volatility Using Options on Index Futures," *Federal Reserve Bank of Atlanta Economic Review*, May/June 1989. Reprinted in *Financial Derivatives: New Instruments and Their Uses*. Atlanta: Federal Reserve Bank.

"The Black-Scholes Formula is Nearly Linear in Sigma for At-the-Money Options; Therefore Implied Volatilities from At-the-Money Options are Virtually Unbiased," Federal Reserve Bank of Atlanta Working Paper #88-9, December 1988.

"The Effect of the 'Triple Witching Hour' on Stock Market Volatility," (with William Goetzmann) *Federal Reserve Bank of Atlanta Economic Review*, September/October 1988. Reprinted in *Financial Derivatives: New Instruments and Their Uses*. Atlanta: Federal Reserve Bank.

"Stock Market Volatility," *Federal Reserve Bank of Atlanta Economic Review*, November/December 1987.

9

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**

Book review of *In Who's Interest: International Banking and American Foreign Policy*, by Benjamin J. Cohen, Yale University Press, in *Federal Reserve Bank of Atlanta Economic Review*, Summer 1987.

**PRESENTATIONS**

"Stock Price Reactivity to Earnings Announcements: A Cross-Sectional Analysis of the *Cammer/Krogman* Factors," (with Miguel Villanueva) at the Boston Area Finance Symposium, April 2018.

"Stock Price Reactivity to Earnings Announcements: A Cross-Sectional Analysis of the *Cammer/Krogman* Factors," (with Miguel Villanueva) at the Eastern Finance Association Conference, April 2018.

"Determining the Defendant's Ability to Pay," at Taxpayers Against Fraud Education Fund Conference, October 2010.

"The Computation of Damages in Securities Fraud Cases," at the Grant and Eisenhofer Institutional Investor Conference, December 2002.

"The Role of the Financial Expert in Complex Litigation," at the Financial Management Association Conference, October 2000.

"Entrepreneurial Incentives and Resource Allocation Among Corporate Venturing Initiatives," (with Joel Shulman and U. Srinivasa Rangan), Babson Entrepreneurship Research Conference, May 2000.

"Application of Real Options in Purchasing Strategies," (with Juan Orozco), presented at the International Applied Business Research Conference, March 2000.

"A Future for Real Estate Futures," (with Linda Stoller) at the Fairfield County chapter of the Real Estate Finance Association, November 1999, and at the Greater Boston Real Estate Board, November 2000.

"Atlanta Park Medical Center v. Hamlin Asset Management," (with Natalie Taylor) at the 1999 convention of the North American Case Research Association.

"Using Future Worlds™ in the Financial Planning Process," (with Jeffrey Ellis) at the Institute of Certified Financial Planners Masters Retreat, October 1999.

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**

"Toward a Better Understanding of Real Options: A Weighted Average Discount Rate Approach," at the 1999 Financial Management Association Conference, the 1999 European Financial Management Association Conference, and the 1999 Multinational Finance Society Conference.

"Just-In-Time Mathematics: Integrating the Teaching of Finance Theory and Mathematics," (with Gordon Prichett) at the 1999 Financial Management Association Conference.

"Alternative Dow Investments for the Individual Investor: Diamonds, Synthetics, and the Real Thing," at the 1999 Academy of Financial Services Convention.
"Evidence of Yield Burning in Municipal Refundings," at Financial Management Association Convention, October 1997; Government Finance Officers Association, 1997; and Northeast Regional Convention of the National Association of State Treasurers, 1997.

"Teaching the Strong-Form Efficient Market Hypothesis," at Conference on Classroom Experiments in the Teaching of Economics at University of Virginia, September 1995.

"Efficient Consolidation of Implied Standard Deviations," (with Shaikh Hamid) at Midwest Finance Association, March 1995.

"A Test of Intertemporal Averaging of Implied Volatilities," (with Shaikh Hamid) at Eastern Finance Association, April 1995.

"Taking Advantage of Volatility: Non-linear Forecasting and Options Strategies," (with Hassan Ahmed) at Chicago Board of Trade / Chicago Board Options Exchange Conference on Risk Management, February 1992.

"Immunizing Against Interest Rate Risk Using the Macaulay Duration Statistic: An Assessment," (with Don Smith) at Japan-U.S. Conference on Financial Strategies in the 1990s, Osaka, Japan, August 1991.

"The Hull and White Implied Volatility," at American Finance Association Convention, December 1990.

**REVIEWED ARTICLES AND BOOKS FOR:**

Harvard Business School Publishing
Elsevier
Journal of Economic Education
Journal of Forensic Economics
Journal of Risk

11

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**

Financial Review
North American Case Research Association
Financial Management
Journal of Business
Journal of Money, Credit and Banking
Quarterly Review of Economics and Finance
Blackwell
Prentice Hall
Southwestern Publishing

## COURSES TAUGHT

Advanced Derivative Securities (MBA)
Babson College Fund (Undergraduate and MBA)
Capital Markets
Continuous-Time Finance (Doctoral)
Corporate Finance (MBA and Executive)
Corporate Financial Strategy (MBA)
Cross-Functional Management (Integrated curriculum, Undergraduate)
Equity Markets (MBA)
Financial Reporting and Corporate Finance (MBA)
Financial Management (MBA)
Fixed Income Analysis (Undergraduate and MBA)
Introduction to Derivative Securities (Executive)
International Finance (Executive)
Integrated Management (Undergraduate)
Investments (MBA and Executive)
Mod B: Decision Making and Applications, Finance stream (MBA)
Options and Futures (Undergraduate)
Risk Management  (MBA)
Portfolio Theory / Management Information Systems (Executive)
Quantitative Methods for Investment Management (Undergraduate and MBA)
Security Valuation (MBA)

## TEACHING AWARDS

Reid Teaching Award, Washington University, Olin School of Business, 1993-94.

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**

**SELECT LIST OF MEDIA CITATIONS**

"Is Insider Trading Part of the Fabric?" by Gretchen Morgenson, *The New York Times*, May 19, 2012.

"Bankers Rigging Municipal Contract Bids Admit to Cover-Up Lies," by William Selway and Martin Z. Braun, *Bloomberg Markets Magazine*, November 24, 2010.

"Hospital Move Presents Buy-Out Groups with New Risks," by Francesco Guerra, Christopher Bowe, and Rebecca Knight, *Financial Times*, July 15, 2006.

"Funds of Knowledge Add Value," by Rebecca Knight, *Financial Times*, March 12, 2006.

"City's Financial Picture Worse Than Ever, Sanders Says," by Matthew T. Hall, *San Diego Union-Tribune*, January 7, 2006.

"Downer: Stock Market Takes Another Dive," by John Chesto, *Boston Herald*, July 23, 2002.

"Banks, Developers, Are Main Beneficiaries," [editorial column] by Steven Feinstein, *The Boston Globe*, March 31, 2002, p. C4.

"Washington Investing: What Michael Saylor is Really Worth," by Jerry Knight, *The Washington Post*, March 6, 2000.

"IBM Retools Pensions," by Stephanie Armour, *USA Today*, May 4, 1999.

"L.A. MTA's Law Firm Says Lissack Strategy Will be a Replay," by Andrea Figler, *Bond Buyer,* September 30, 1998.

"Fed Key Player in Rescue of Floundering Hedge Fund," by Andrew Fraser, Associated Press, September 25, 1998.

"Top Banks Plan Bailout for Fund," by Andrew Fraser, Associated Press, September 24, 1998.

"Clarion Call to the Small Investor," by Jo-Ann Johnston, *The Boston Globe,* March 4, 1998.

"L.A. Authority Study Shows Rampant Yield Burning Abuse," by Michael Stanton, *The Bond Buyer*, April 22, 1997.

13

**Curriculum Vitae**
**Steven P. Feinstein, Ph.D., CFA**

"Dispute Over Yield Burning Dominates GFOA Session," by Michael Stanton, *The Bond Buyer*, January 29, 1997.

"Men Behaving Badly (Yield Burning)," *Grants Municipal Bond Observer*, January 24, 1997.

"Municipal Bond Dealers Face Scrutiny," by Peter Truell, *The New York Times*, December 17, 1996.

"Iowa Market Takes Stock of Presidential Candidates," by Stanley W. Angrist, *The Wall Street Journal*, August 28, 1995.

"Looking for Clues in Options Prices," by Sylvia Nasar, *The New York Times*, July 18, 1991.

"For Fed, A New Set of Tea Leaves," by Sylvia Nasar, *The New York Times*, July 5, 1991.


**MEMBERSHIP IN PROFESSIONAL SOCIETIES**

American Finance Association
CFA Society Boston
Chartered Financial Analyst Institute
Financial Management Association
Foundation for Advancement of Research in Financial Economics (founding member)
National Association of Forensic Economics
North American Case Research Association