**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
NINA F. LOCKER (*pro hac vice*)
nlocker@wsgr.com
LAURIE B. SMILAN (*pro hac vice*)
lsmilan@wsgr.com
CHARLES A. TALPAS (*pro hac vice*)
ctalpas@wsgr.com
DOUGLAS W. MCMANAWAY (*pro hac vice*)
dmcmanaway@wsgr.com
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300

**SACKS, RICKETTS & CASE LLP**
CYNTHIA A. RICKETTS (AZ 012668)
cricketts@srclaw.com
2800 N. Central Avenue, Suite 1920
Phoenix, Arizona 85004
Telephone: (602) 385-3370

*Attorneys for Defendants Mesa Air Group,*
*Inc., Jonathan G. Ornstein, Michael J. Lotz,*
*Daniel J. Altobello, Ellen N. Artist, Mitchell*
*Gordon, Dana J. Lockhart, G. Grant Lyon,*
*Giacomo Picco, Harvey Schiller and Don*
*Skiados*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Mesa Air Group, Incorporated, *et al.*, <br><br> Defendants. | Case No. 2:20-cv-00648-MTL <br><br> **MESA DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AN EARLY MOTION FOR SUMMARY JUDGMENT** |

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT.......................................................................................................................2

1.    Neither the Actually Alleged Nor Newly Minted "Corrective Disclosures" Caused Any Cognizable Loss Under Section 11 .....................3

2.    Fact Discovery is Not Needed and In Fact Should Not Be Considered .........................................................................................................6

3.    The Proposed Motion is Appropriate at this Juncture as it Will "Promote the Efficient and Comprehensive Disposition" of the Case........10

CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilar v. Int'l Longshoremen's Union Local No. 10,*
    966 F.2d 443 (9th Cir. 1992) ...................................................................................9

*Akerman v. Oryx Commc'ns, Inc.,*
    810 F.2d 336 (2d Cir. 1987) ....................................................................................8

*Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.,*
    2021 U.S. Dist. LEXIS 128773 (S.D.N.Y. July 9, 2021)........................................8

*Baker v. SeaWorld Ent., Inc.,*
    423 F. Supp. 3d 878 (S.D. Cal. 2019) ................................................................8, 9

*Boluka Garment Co. v. Canaan Inc.,*
    2021 U.S. Dist. LEXIS 127490 (S.D.N.Y. July 8, 2021)........................................6

*Cai v. Switch, Inc.,*
    2020 U.S. Dist. LEXIS 122593 (D. Nev. July 10, 2020) ........................................6

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...............................................................................................10

*Harstel Springs Ranch of Colo., Inc. v. Bluegreen Corp.,*
    296 F.3d 982 (10th Cir. 2002) ...............................................................................10

*In re Apple Inc. Sec. Litig.,*
    2020 U.S. Dist. LEXIS 96953 (N.D. Cal. June 2, 2020)..........................................7

*In re Atossa Genetics Inc. Sec. Litig.,*
    868 F.3d 784 (9th Cir. 2017) ...................................................................................7

*In re Barclays Bank PLC Sec. Litig.,*
    756 F. App'x 41 (2d Cir. 2018) ...............................................................................8

*In re BofI Holding, Inc. Sec. Litig.,*
    977 F.3d 781 (9th Cir. 2020) ...................................................................................3

*In re Fortune Sys. Sec. Litig.,*
    680 F. Supp. 1360 (N.D. Cal. 1987)............................................................ 5, 6, 8, 11

*Santan Crossing Pro. Plaza Condominium Assoc. v. Westfield Ins. Co.,*
    2020 U.S. Dist. LEXIS 226339 (D. Ariz. Oct. 30, 2020) .....................................11

*Smilovits v. First Solar Inc.,*
    119 F. Supp. 3d 978 (D. Ariz. 2015), *aff'd sub nom.*
    *Mineworkers' Pension Scheme v. First Solar Inc.,*
    881 F.3d 750 (9th Cir. 2018) ...........................................................................5, 8, 9

**RULES**

Fed. R. Civ. P. 26...................................................................................................6

Fed. R. Civ. P. 56.........................................................................................2, 10, 11

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| "AC" or "¶" | Amended Class Action Complaint for Violations of the Federal Securities Laws, filed August 17, 2020, ECF No. 52 |
| "American" | American Airlines, Inc. |
| "CPA" | Capacity Purchase Agreement |
| "Defendants" | Mesa Air Group, Inc. Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados |
| "Ex. A" | Exhibit A to the Motion for Leave to File Early Motion for Summary Judgment, ECF No. 109-1 |
| "Ex. B" | Exhibit B to the Motion for Leave to File Early Motion for Summary Judgment, ECF No. 109-2 |
| "Feinstein Decl." | Declaration of Prof. Steven P. Feinstein, ECF No. 112-1 |
| "Individual Defendants" | Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados |
| "IPO" | Initial Public Offering |
| "Mesa" or "Company" | Mesa Air Group, Inc. |
| "Mot." or "Motion for Leave" | Mesa Defendants' Motion for Leave to File Early Motion for Summary Judgment, ECF No. 109 |
| "Opp." or "Opposition" | Plaintiff's Opposition to Mesa Defendants' Motion for Leave to File Early Motion for Summary Judgment, ECF No. 111 |
| "Order" | Order Granting in Part and Denying in Part the Mesa Defendants' Motion to Dismiss, filed July 22, 2021, ECF No. 81 |
| "Talpas Decl." | Declaration of Charles A. Talpas in Support of Mesa Defendants' Reply in Support of Motion for Leave to File Early Motion for Summary Judgment |

iv

**INTRODUCTION**

Defendants' proposed motion for summary judgment on their negative loss causation defense is dispositive of the only claims remaining in this case, i.e., that the statements in Mesa's Registration Statement regarding the Company's maintenance solutions were misleading because of a single alleged omission: the failure to disclose an alleged shortage of qualified mechanics at the time of the IPO.  Ex. A at 1-2, 14-24; Order at 21-24.  Although Plaintiff repeatedly asserts that its "claims are not limited to … a single omission" (Opp. at 2, 10), nowhere does it identify any omission other than the alleged mechanic shortage that purportedly rendered Mesa's maintenance-related statements misleading.  *Id.*  Nor did the Court when denying the motion to dismiss on this limited basis.  Order at 21-24.

Plaintiff's AC alleges that the omission regarding mechanics was corrected by Mr. Ornstein's May 10, 2019 statement (the "May 10, 2019 Corrective Disclosure) which revealed, for the first time, that the Company experienced mechanics shortages during periods before and after the IPO.  Ex. A at 3-5, 14-15; Order at 21-24.  Because there are no alleged curative disclosures prior to May 10, 2019, losses prior to that date cannot be attributed to any misstatement or omission in the offering documents.  Ex. A at 14-15.  Because the May 10, 2019 Corrective Disclosure did not result in any statistically significant decline in Mesa's stock price, it did not result in any cognizable loss.  *Id.* at 4, 15-20.  In its Opposition, Plaintiff does not dispute either proposition, essentially conceding that Defendants are entitled to summary judgment on these negative loss causation issues.

While Plaintiff now seeks to "amend" its pleading in its Opposition, pointing to the fact that Mesa incurred increased maintenance costs *a year after the IPO* (under the newly-operative elevated performance standards of the post-IPO American CPA Amendment), neither Mesa nor the market (nor the Complaint) linked those costs to an alleged shortage of qualified mechanics (or any other maintenance issue) *existing at the time of the IPO—* the only basis for a Section 11 claim.  Ex. A at 22-24.  In the absence of any such link by the *market,* there is no basis to conclude that any stock price decline in August 2019 was

caused by any misstatement or omission of facts in the Registration Statement. The *only* such "link" is Plaintiff's unpled, implausible, wholly unsupported, rank speculation. This is insufficient to overcome Defendants' negative causation defense. *Id.* at 24.

Plaintiff's other efforts to evade or at least to delay this inevitable, dispositive conclusion, including by arguing that they require unspecified discovery to try to identify some basis for their claims are unavailing. Courts regularly decide negative loss causation issues at the pleading stage and/or solely on the basis of expert analysis of publicly available information—the company's disclosures, stock price movements, and market analysts' commentary—the *only* information courts deem relevant to the adjudication of a negative causation defense. In any event, discovery is not stayed, expert discovery can proceed, and any non-expert discovery Plaintiff can actually *show* is required to respond to the proposed motion (which should be none) can be addressed by a proper motion under Rule 56(d). Thus, the Court should grant Defendants' motion for leave to file their summary judgment motion which will resolve the remains of this case.

## ARGUMENT

As this Court recognized in ruling on the Motion to Dismiss, Plaintiff alleges a single corrective disclosure concerning the alleged shortage of qualified mechanics at the time of the IPO: Mesa's May 10, 2019 Corrective Disclosure revealing that Mesa experienced mechanics shortages in periods before and after the offering. Ex. A at 1, 5, 14-15. Because Plaintiff alleges that the May 10, 2019 Corrective Disclosure was the "first" time this information was revealed, losses prior to that date are not attributable to the alleged maintenance-related misstatements in the Registration Statement. *Id.* at 1, 15. Plaintiff's Opposition does not contest that Defendants are entitled to summary judgment with respect to any pre-May 10, 2019 losses or that it requires any discovery to address this issue. *Id.* at 14-15.

Following the May 10, 2019 Corrective Disclosure, there was no statistically significant price decline and, thus, no cognizable losses, as demonstrated by Defendants' expert's event study and report. *Id.* at 15. Neither Plaintiff nor its expert challenge

2

Defendants' expert's event study or his conclusions. Nor does Plaintiff argue that it needs any discovery to address this dispositive issue.

The post-May 10, 2019 corrective disclosures identified in the AC are only alleged to have been corrective of the now-dismissed, non-maintenance related claims. That is with good reason: none references anything about the (by-then-allegedly-corrected) status of Mesa's maintenance solutions *at the time of the IPO*. *Id.* at 14, 20-24; *infra* pp. 4-6.

All of the foregoing conclusively establishes Defendants' negative causation defense. *Id.* Plaintiff's efforts to evade this conclusion by means of several tactics which will only delay the inevitable are unavailing.

**1.      Neither the Actually Alleged Nor Newly Minted "Corrective Disclosures" Caused Any Cognizable Loss Under Section 11**

Recognizing that the May 10, 2019 disclosure did not result in any statistically significant stock price decline, Plaintiff attempts to "amend" its allegations in its Opposition now "contend[ing] [that] there are multiple corrective disclosures that were clearly related to maintenance issues after Ornstein's May 10, 2019 statements, and therefore multiple stock drops for which itself and class members may recover." Opp. at 10. These phantom "multiple" additional disclosures and stock drops are not alleged and only one—the August 2019 earnings announcement—has ever even been identified, either in the Opposition or Plaintiff's blunderbuss, "See the Complaint" non-responsive responses to Defendants' contention interrogatories.[1] Incredibly, despite the fact that a disclosure must be *public*—i.e., disseminated to the market—to be corrective for purposes of loss causation (*In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020)), and that a plaintiff is presumed to know the basis for its claims, Plaintiff even goes so far as to suggest that its determination as to whether there was more than "one relevant

---

[1] *See* Talpas Decl. ¶¶ 7-10. Despite Plaintiff's prior agreement to supplement its response to Mesa's Interrogatory No. 4—asking Plaintiff to identify any disclosure of corrective information regarding the challenged statements for which Plaintiff intends to pursue damages—Plaintiff has not supplemented its response to identify the corrective disclosures it contends relate to its challenged statements. *Id.* ¶¶ 8-14.

disclosure is itself a factual issue, and one that necessitates discovery."[2]  Opp. at 11. Plaintiff cannot identify these supposed multiple, necessarily public disclosures—which it nonetheless claims were corrective—and also, not surprisingly, cannot identify what discovery (other than a public database) it might need to "find" them.

The only additional disclosure and the only additional stock drop Plaintiff has ever actually identified is Mesa's "August 8, 2019 [disclosure of its] third quarter financial and operating results."  Opp. at 10.  While the AC only alleges that this negative news announcement was corrective of the now-dismissed operational performance and spare aircraft claims (¶¶ 75(c), 85(c)), Plaintiff now claims this disclosure, made a *year after the IPO*, "revealed to the public, for the first time, the lower operating revenues and increased maintenance expenses caused by the mechanics shortage and failure to meet performance standards."  Opp. at 10 (citing ¶ 12).  There are multiple problems with this unpled allegation.  First, as noted, the claims relating to Mesa's "failure to meet performance standards" has been dismissed.  Second, paragraph 12 of the AC contains no reference to a mechanics shortage and only alleges Mesa's August 2019 disclosures were corrective of Plaintiff's now-dismissed claim regarding the American CPA and spare aircrafts.  Third, the August 8, 2019 disclosures say nothing about mechanics shortages (instead attributing the increased expenses to *overstaffing* to meet the newly effective, post-IPO Amended CPA's heightened requirements) and certainly say nothing or nothing new about the by-then disclosed mechanics shortages that allegedly existed in periods before or at the time of the IPO. Ex. A at 23.  Finally, Plaintiff's speculation that the  increased costs in 2019 were linked to shortages a year earlier is wholly unsupported: neither Mesa nor any market analyst attributed Mesa's increased maintenance costs and disappointing results in August

---

[2] Plaintiff misstates Defendants' argument concerning the August 2019 stock drop: Defendants never argued that reference to the August 2019 stock drop "is improper because … the Court … dismissed Plaintiff's claims regarding the American CPA and spare aircrafts." Opp. at 9-10 (citing Mot. at 5).  Instead, Defendants merely pointed out that the AC only alleged that the August disclosures corrected these now-dismissed claims, not the maintenance-related claims.  *See* Mot. at 5; Ex. A at 23.  Defendants further argued that the Court correctly understood the August statements to be referring to the then-current state of affairs, not anything related to the time of or before the IPO.  *See* Ex. A at 23.

4

2019 to any shortage of mechanics existing at the time of the IPO.  Ex. A at 22-24.

The lack of any link between Mesa's alleged pre-IPO challenges and one-year-post IPO maintenance-related costs, a temporal and causal gap which Plaintiff tries to bridge with impermissible speculation, dooms its attempt to rely on the August 2019 disclosures to overcome Defendants' negative causation defense.  *See In re Fortune Sys. Sec. Litig.*, 680 F. Supp. 1360, 1368 (N.D. Cal. 1987) (granting partial summary judgment on negative causation grounds, "refus[ing] to allow speculation, unfounded opinions, and misleading comparisons to create a genuine issue of material fact . . . on the issue of loss causation").

In *First Solar*, a case Plaintiff cites, Judge Campbell granted partial summary judgment for defendants, finding that loss causation cannot be established where an alleged corrective disclosure "caused the stock price to drop [but] did not include any information about the ['very facts' defendants allegedly omitted]." *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 997 (D. Ariz. 2015), *aff'd sub nom. Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018).  In so holding, Judge Campbell "reject[ed] Plaintiffs' argument that a jury could simply infer a connection between [the announcement] and the alleged fraud," finding that "any such inference would be based on pure speculation."  *Id.*[3]  This is exactly the situation here and Plaintiff does not, and of course cannot, identify any fact discovery it needs to determine if the August 2019 disclosures "include[d] any information" about an alleged shortage of mechanics at the time of the IPO.  *Id.*

In sum, other than the May 10, 2019 Corrective Disclosure (which did not cause a statistically significant stock price decline), Plaintiff cannot and does not allege or even point to a single statement, by the Company or any market analyst, that ever attributed any losses after the IPO to a continuing shortage of mechanics—or any other persistent maintenance deficiencies shown to have existed *at the time of the IPO*.  Plaintiff's

---

[3] The *First Solar* plaintiffs' other claims survived summary judgment only where contemporaneous or subsequent corrective disclosures and/or analyst commentary *specifically* attributed the Company's problems and consequent stock price declines to the "very facts" allegedly omitted by Defendants.  *Id.* at 989-90.

speculation does not suffice.  Because Plaintiff cannot establish that any statistically significant stock price decline was causally linked to "the very facts" it claims were misstated or omitted in the Registration Statement, it has no Section 11 claim.

### 2.    Fact Discovery is Not Needed and In Fact Should Not Be Considered

Although Plaintiff has failed to pursue discovery,[4] it now seeks to use its delay as an excuse to avoid early resolution of this matter.  Opp. at 1.  However, Plaintiff's lack of diligence should and need not be rewarded because any fact discovery that could be obtained from Defendants is not conceivably relevant to their negative causation defense.  Mot. at 5.  As all of the cases cited by *both* parties confirm, loss is measured by market price movements and focuses on the nature of the information that caused the market reaction, all of which is entirely in the public domain.

Consistent with these principles, numerous courts in this Circuit and elsewhere have granted motions to dismiss and on the pleadings on negative loss causation grounds— demonstrating that while Defendants' burden with respect to negative causation is "heavy" (Opp. at 1-2) "it is not insurmountable" (*Fortune Sys.*, 680 F. Supp. at 1364) and can and often is resolved *without fact discovery*.  *E.g.*, *Cai v. Switch, Inc.*, 2020 U.S. Dist. LEXIS 122593, at *10-11 (D. Nev. July 10, 2020) (judgment on the pleadings); *Boluka Garment Co. v. Canaan Inc.*, 2021 U.S. Dist. LEXIS 127490, at *12-13 (S.D.N.Y. July 8, 2021) (motion to dismiss); Ex. A at 10.  Here, as with a motion to dismiss or on the pleadings, discovery is not required because Defendants' proposed summary judgment motion

---

[4] Although discovery was permitted immediately after the parties' Rule 26(f) conference on August 23, 2021, *see* Fed. R. Civ. P. 26(d)(1), Plaintiff did not serve document requests or interrogatories until October 18, 2021.  Talpas Decl. ¶ 4.  Defendants timely responded to Plaintiff's document requests on November 24, 2021 and offered to meet and confer with Plaintiff concerning their objections.  *Id.* ¶ 5.  All Defendants also responded to all of Plaintiff's interrogatories, again offering to meet and confer.  *Id.*  Plaintiff has yet to respond or to schedule a meet and confer and has taken no action whatsoever with respect to seeking discovery beyond serving these initial document requests and interrogatories.  Accordingly, its complaint that "Plaintiff is still seeking—but has not yet obtained—documents and testimony from Defendants regarding the affirmative defense of negative loss causation as well as documents and testimony regarding the statements and claims that remain at issue in this case" and that Defendants are attempting to avoid their discovery obligations (Opp. at 2) is disingenuous at best.

*assumes*, arguendo, that Plaintiff's allegations are true, i.e., that the challenged maintenance-related statements in Mesa's IPO Registration Statement were rendered misleading by Mesa's failure to disclose that it was experiencing a shortage of qualified mechanics at the time of the IPO. Ex. A at 16-18. The only issue then is whether revelation of these presumed facts resulted in a decline in the Company's stock price. Internal documents (which cannot have affected the market) are irrelevant. All that is required is an analysis of market reactions to the purportedly corrective disclosure, addressing two questions based entirely on indisputable publicly-available information:[5] (1) did the stock price experience a statistically significant decline as a result of the disclosure? and, if so, (2) did the Company acknowledge or did market analysts conclude that any such decline was attributable to the "very facts" about which Mesa allegedly lied, i.e., deficiencies in Mesa's maintenance solutions *at the time of the IPO*?

This same approach—assessing market reactions based on stock price movements, company disclosures and analyst commentary while assuming that, or disregarding whether, allegations of falsity were true—characterizes *every one* of the decisions granting summary judgment on negative causation grounds that Defendants cite. Ex. A at 14-16, 20-21. While Plaintiff and its expert point out that summary judgment with respect to negative causation was granted in these cases after discovery was complete, an economist should know that correlation does not imply causation: not a single one of the decisions cited by Defendants considered *any* internal documents in analyzing negative loss causation. Indeed, in *Fortune Systems*, the court properly refused to consider internal documents, because "the market *could not* react to the omissions until they were actually learned of, and there is no evidence that the market learned of the omissions prior to [the

---

[5] While Plaintiff retorts that there is no undisputed information in this case (Opp. at 12), a public company's historical stock prices are judicially noticeable, because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017). Courts also "routinely take judicial notice of analyst reports" "to determine 'whether and when certain information was provided to the market.'" *In re Apple Inc. Sec. Litig.*, 2020 U.S. Dist. LEXIS 96953, at *18 (N.D. Cal. June 2, 2020) (citations omitted).

first alleged corrective disclosure]." 680 F. Supp. at 1366-68 (internal citation omitted). Instead, *Fortune Systems* and all the other cases cited by Defendants relied solely on expert event studies analyzing market prices and publicly disclosed information, i.e., the corporate disclosures at issue and market analysts' and news reports. *Id.*; *see also In re Barclays Bank PLC Sec. Litig.*, 756 F. App'x 41, 47 (2d Cir. 2018) (relying solely on an event study, finding that "whether or not Barclays might have had … a duty [to disclose], … Barclays resoundingly established its affirmative defense of negative loss causation … entitling it to summary judgment in its favor"); *Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.*, 2021 U.S. Dist. LEXIS 128773, at *9 (S.D.N.Y. July 9, 2021) (relying solely on event study, granting "summary judgment on the grounds that, even if [Defendants] omitted material information from the Registration Statement, the negative loss causation defense bars [Plaintiff's] claims"); *Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 342-43 (2d Cir. 1987) (rejecting Plaintiff's speculative "leakage" theory, affirming summary judgment on negative causation solely on the basis of Defendants' event study, which plaintiffs' flawed event studies failed to rebut).

Plaintiff's cases in which experts each made passing reference to a *single* internal document in connection with their *event-study and market information-based analyses* are not to the contrary and do not, as Plaintiff suggests, support that internal documents are required, or even properly considered, in determining loss causation issues.[6] Opp. at 13; *see Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 898-99 (S.D. Cal. 2019) (declining to *exclude* expert's report based on an event study and analysis of public disclosures and *hundreds* of market analyst reports merely *because* the expert referenced a single internal document solely for purposes of *disaggregating and eliminating* non-recoverable losses

---

[6] Indeed, *SeaWorld* and *First Solar* only serve to demonstrate the deficiencies of Plaintiff's claims here. Here, unlike those cases, neither the Company nor a single analyst report (far from *hundreds*) attributed any of the Company's negative news in August 2019 to a lack of mechanics or any other maintenance issue *existing at the time of the IPO*. Unless Plaintiff gets past step one (rebutting defendants' showing of negative causation with a market-based event study), (Mot. at 5) step two—possible consideration of internal documents for purposes of disaggregation of non-recoverable losses as in *SeaWorld*—is unnecessary.

attributable to non-germane factors cited in one corrective disclosure); *First Solar*, 119 F. Supp. 3d at 993-1000 (expert relied on stock price reactions, nearly 100 of the company's public statements, and the substantial universe of market analyst reports over a four year period, merely noting with respect to a *single* disclosure, that a *single* internal email confirmed multiple market analysts' assessments—an observation that was not the basis of the expert's conclusion or the opinion of the court).

Indeed, Plaintiff and its expert concede that "event studies are by far the most common test for a causal connection." Opp. at 12 (citation omitted); *see also* Ex. B at 24:13-14 ("We would have to have a responsive event study."). While Plaintiff contends that fact discovery is required because "[t]he quantification of Section 11 damages will depend on what the evidence ultimately indicates was known or concealed by the company," (Opp. at 11 (quoting Feinstein Decl. ¶ 15)), this motion is about *causation* not *damages*, and therefore depends on expert analysis about *what was known and revealed to the market*, <u>not</u> what was <u>not</u> disclosed.[7]

While offering no such expert causation analysis himself, Plaintiff's expert presumes to play lawyer (which he is not) and improperly usurp the province of this Court, offering his non-expert opinion as to how and when legal issues concerning negative causation should be decided (and confusing them with damages)—in his opinion, after discovery in a single summary judgment motion. Feinstein Decl. ¶ 15. Such "legal advice" is properly disregarded—as Plaintiff's expert himself conceded in the very case he cites, testifying that "an economist shouldn't be making—shouldn't be drawing legal conclusions. The economist can draw economic conclusions." *SeaWorld*, 423 F. Supp. 3d at 898 (citing *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (it is well-known that matters of law are generally "inappropriate subjects for expert testimony")).

The only discovery that may be necessary to resolve the proposed motion is expert

---

[7] Such an inquiry also goes to falsity, which for purposes of this motion is presumed.

discovery, which Defendants have offered to expedite. Mot. at 6. Moreover, if Plaintiff presents a proper Rule 56(d) motion identifying specific information they can actually show is necessary to the resolution of Defendants' negative loss causation defense (which is unlikely), it can obtain any such information or testimony ahead of ongoing discovery—which, thus far, it has largely failed to pursue. Talpas Decl. ¶¶ 4, 5; *see supra* note 4. In short, there is no reason to delay resolution of Defendants' dispositive proposed motion until expensive and almost certain-to-be unnecessary discovery is complete.

### 3. The Proposed Motion is Appropriate at this Juncture as it Will "Promote the Efficient and Comprehensive Disposition" of the Case.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted). While acknowledging that "Rule 56 does not explicitly limit the number of motions for summary judgment a party may file," and that "[i]t is well established that federal district courts possess the power to administer their dockets in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases," Plaintiff nonetheless exhorts the Court to wait because early summary judgment motions are not the norm. Opp. at 14 (quoting *Harstel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)).

Here, there can be no question that an early summary judgment motion on a purely legal issue that is dispositive of the remnants of Plaintiff's claims will "conserve[] scarce judicial [and party] resources and promote[] the efficient and comprehensive disposition of [this] case[]." *Harstel Springs Ranch*, 296 F.3d at 985. As Defendants showed, other courts in this District have held that resolution of a "purely legal issue" "on summary judgment before and separately from the other claims" is appropriate "when the outcome of the . . . [early motion] may inform how the parties proceed" even where, unlike here, the "Court made clear in its case management order that the parties shall only file one summary judgment motion." *Santan Crossing Pro. Plaza Condominium Assoc. v. Westfield Ins.*

*Co.*, 2020 U.S. Dist. LEXIS 226339, at *5-6 (D. Ariz. Oct. 30, 2020).[8]  Such an early dispositive motion is particularly appropriate here given that neither fact discovery nor the resolution of other aspects of the case is relevant or necessary to resolve the motion which may be dispositive of all or significant portions of the case.  *Supra* at 9-10. Consistent with these principles, other courts in this Circuit have decided negative causation at the pleading stage (*supra* pp. 6-7) and others have considered and granted *partial* summary judgment on negative loss causation grounds—even though other factual aspects of Plaintiff's case remained to be resolved.  *First Solar Inc.*, 119 F. Supp. 3d at 997; *Fortune Sys.*, 680 F. Supp. at 1363-68.  Here, where the negative loss causation defense is dispositive of all remaining claims, this Court should do the same.

### CONCLUSION

The Mesa Defendants request that the Court allow leave to file an early motion for summary judgment, in the form attached as Ex. A to Defendants' opening brief, and order the parties to meet and confer regarding a briefing schedule that allows for the completion of any expert discovery required by the parties to support or oppose such a motion.

Dated:  February 1, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  */s/ Nina F. Locker*
　　　　NINA F. LOCKER

*Attorneys for the Mesa Defendants*

---

[8] Contrary to the Opposition's retelling (Opp. at 2), during the October 14, 2021 Scheduling Conference (ECF No. 100), the Court indicated its willingness to consider a motion by the Mesa Defendants "seeking leave of Court" to file an "early summary judgment motion" on negative loss causation grounds.  Ex. B at 25:23-26:9.  Indeed, Plaintiff cites that portion of the transcript.  Opp. at 6.  The Court's Scheduling Order provides that no party "shall file more than one motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure *without leave of the Court*."  ECF No. 101 ¶ 7(b) (emphasis added). Plaintiff's Opposition omits the emphasized portions, which permit Defendants to seek leave to file the Proposed Motion.  Opp. at 14.