Gary F. Urman (AZ 11748)
gurman@dmyl.com
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 500
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585

*Attorneys for Class Representative DeKalb County*
*Pension Fund and Liaison Counsel for the Class*

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
        rkillorin@faruqilaw.com
        jwilson@faruqilaw.com

*Attorneys for Class Representative DeKalb County*
*Pension Fund and Lead Counsel for the Class*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually And On Behalf Of All Others Similarly Situated,<br><br>                Plaintiff,<br>      V.<br>Mesa Air Group, Inc.; Jonathan G. Ornstein; Michael J. Lotz; Daniel J. Altobello; Ellen N. Artist; Mitchell Gordon; Dana J. Lockhart; G. Grant Lyon; Giacomo Picco; Harvey Schiller; Don Skiados; Raymond James & Associates, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Cowen and Company, LLC; Stifel, Nicolaus & Company, Incorporated; and Imperial Capital, LLC,<br>                Defendants. | No. 20-00648-PHX-MTL<br><br>**CLASS REPRESENTATIVE'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br><u>CLASS ACTION</u> |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 2

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

I.      PROCEDURAL HISTORY OF THE CASE ................................................. 2

II.     NEGOTIATION OF THE PROPOSED SETTLEMENT ............................. 5

ARGUMENT .............................................................................................................. 6

I.      STANDARDS FOR PRELIMINARY APPROVAL OF THE SETTLEMENT ..... 6

II.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .................... 7

        A.      The Class Has Been Adequately Represented ............................... 7

        B.      The Settlement Was Negotiated at Arm's-length .......................... 8

        C.      The Relief Provided by the Settlement Is Adequate ..................... 8

                1.      The Costs, Risks, and Delay of Trial and Appeal.................. 8

                2.      The Proposed Method for Distributing Relief Is Effective... 12

                3.      The Terms and Timing of Attorney's Fees Are Reasonable 12

                4.      Related Agreements ............................................................. 13

        D.      Settlement Class Members Are Treated Equitably ...................... 14

        E.      The Extent of Discovery Completed and the Stage of Proceedings .......... 14

        F.      Risk of Maintaining Class Action Status Through Trial............................ 15

        G.      The Experience and Views of Counsel ....................................... 15

III.    THE NOTICE PROGRAM SHOULD BE APPROVED ....................................... 16

CONCLUSION .......................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Banc of Cal. Sec. Litig.*,
No. SACV 17-00118 AG (DFMx), 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019)........ 8

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
No. 11-6460, 2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) ....................... 12

*In re Celera Corp. Sec. Litig.*,
No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)................. 6

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015)........................................ 13

*Ciuffitelli v. Deloitte & Touche LLP*,
No. 3:16-cv-00580-AC, 2019 WL 1441634 (D. Or. Mar. 19, 2019) ................... 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................ 9

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)............. 9, 12, 14

*Hosey v. Costolo*,
No. 16-CIV-02228 (Cal. Sup. Ct. San Mateo Cty. Aug. 16, 2018)........................ 11

*In re HP Sec. Litig.*,
No. 3:12-cv-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015)................. 16

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)........................................ 16

*Julian v. Swift Transp. Co.*,
No. CV-16-00576-PHX-ROS, 2020 WL 6063293 (D. Ariz. Oct. 14, 2020) ............. 13

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ........................................ 16

*Lo v. Oxnard Eur. Motors, LLC*,
No. 11CV1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011)............. 11

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................ 15

*In re New Century*,
   588 F. Supp. 2d 1206 (C.D. Cal. 2008) ........................................................... 3

*In re NVIDIA Corp. Derivative Litig.*,
   No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .............. 8

*Oh v. Chan*,
   No. 07-04891 DDP (C.D. Cal. Sept. 24, 2009), ECF No. 100 .................................... 12

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................... 8, 16

*Reid v. I.C. Sys. Inc.*,
   No. CV-12-02661-PHX-ROS, 2018 WL 11352039 (D. Ariz. July 26, 2018) .............. 6

*Rieckborn v. Velti PLC*,
   No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ........................ 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................... 13

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 ....................................................................................... 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   MDL No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ......... 14, 15

*Wood v. Ionatron, Inc.*,
   No. CV 06-354-TUC-CKJ, 2009 WL 10673479 (D. Ariz. Sept. 28, 2009) ................ 6

*In re Worldspace, Inc. Sec. Litig.*,
   No. 07 Civ 02252 (RMB) (S.D.N.Y. June 3, 2013), ECF No. 107 ........................... 11

*Xuechen Yang v. Focus Media Holding Ltd.*,
   No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............. 8

**Statutes**

15 U.S.C. § 77z-1(a) ........................................................................... 14, 17

**Other Authorities**

Rule 23 ................................................................................... *passim*

Rule 23(e)(2) advisory committee's note to 2018 amendments ........................................ 6

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

Class Representative DeKalb County Pension Fund ("Plaintiff" or "DeKalb") on behalf of itself and the proposed Settlement Class, respectfully moves this Court for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rules") preliminarily approving the $5,000,000 all cash settlement ("Settlement") it has reached with Defendants Mesa Air Group, Inc. ("Mesa" or the "Company"), Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados (collectively, the "Mesa Defendants"), Raymond James & Associates, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Cowen and Company, LLC, Stifel, Nicolaus & Company, Incorporated, and Imperial Capital, LLC (collectively, the "Underwriter Defendants," together with the Mesa Defendants, the "Defendants") in the Action.[1]  The Settlement is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected mediator.  In addition to the discovery conducted prior to the Settlement, as part of the Settlement, Lead Counsel negotiated the production of approximately 72,164 pages of documents for review and obtained responses to additional questions regarding Plaintiff's claims to confirm that the proposed Settlement is fair, reasonable, and adequate.

This Memorandum sets out the parameters of the Settlement and the basis for the Court to grant preliminary approval.  Defendants support preliminary approval of the Settlement and do not oppose this motion.

This motion is based on the accompanying Memorandum of Points and Authorities and the Declaration of James M. Wilson, Jr., dated May 6, 2022 ("Wilson Decl."), with annexed Exhibits 1-9 filed herewith.

---

[1]  All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated as of May 6, 2022 (the "Stipulation" or the "Stip."), filed concurrently herewith.  All internal quotation marks and citations are omitted and all emphases are added unless otherwise noted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### FACTUAL AND PROCEDURAL BACKGROUND

## I.   PROCEDURAL HISTORY OF THE CASE

The initial federal complaint in this action was filed on April 1, 2020.  ECF No. 1.[2] On June 22, 2020, the Court appointed DeKalb as Lead Plaintiff, Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel, and DeConcini McDonald Yetwin & Lacy, P.C. (the "DeConcini Firm") as Liaison Counsel.  ECF No. 33 at 4.

Following appointment, Lead Counsel conducted further investigation into Defendants' alleged wrongful acts to file an amended operative complaint ("AC") (ECF No. 52), which included, among other things: (1) reviewing and analyzing Mesa's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, and research reports prepared by securities and financial analysts, and (c) other publicly available material related to the Company; (2) retaining a private investigator to conduct interviews with witnesses, two of whom provided information included in the AC; and (3) working with damages, loss causation, and accounting experts.

Plaintiff filed the AC on August 17, 2020, alleging that Mesa's Registration Statement for its IPO contained material misstatements and omissions in violation of Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), 77o). ECF No. 52.  The Section 11 and 12(a)(2) claims also alleged that Defendants violated Items 303 (17 C.F.R. § 229.303(a)(3)(ii)) and 503 (17 C.F.R. § 229.503(c)) by omitting adverse trends and risks from the Registration Statement.  AC ¶¶ 1, 76, 86. On October 1, 2020, Defendants moved to dismiss. *See* ECF Nos. 56 to 59.  The Court heard in-person oral argument on July 15, 2021.  ECF No. 75.  On July 22, 2021, the Court denied the motion to dismiss in part and granted it in part.  ECF No. 81 ("Motion to Dismiss Order"

---

[2]   Shortly before that complaint was filed, a similar securities class action was filed in Arizona state court in *City of Pittsburgh Comprehensive Municipal Pension Trust Fund, et al. v. Mesa Air Group, Inc., et al.*, Civ. No. CV2020-003927 (Superior Court of Arizona in and for the County of Maricopa, filed March 24, 2020).

or "MTD Order").  The Court upheld Plaintiff's claims that were premised on statements concerning Mesa's aircraft maintenance.  *See id.* at 19-25.

Thereafter, the Parties engaged in numerous meet and confer sessions pursuant to Rule 26(f) and this Court's rules.  These sessions resulted in the exchange of numerous drafts of the proposed case management order due to the Parties' disagreement over how the litigation should proceed.  The main disagreement was whether Defendants should be permitted to file two motions for summary judgment, one of which would be filed early on the basis of negative causation while limiting unrelated merits discovery during the motion's pendency.  Negative causation is an affirmative defense to a Section 11 case that prevents recovery for losses that the defendant proves are not attributable to the challenged misrepresentations or omissions.  *See In re New Century*, 588 F. Supp. 2d 1206, 1236 (C.D. Cal. 2008) (citing 15 U.S.C. § 77k(e)).  In Defendants' view, the only remaining relevant corrective disclosure event was the May 10, 2019 announcement that Mesa was "hamstrung" by a lack of mechanics.  Defendants argued that there was no statistically significant stock drop on May 10, 2019 and therefore Plaintiff would not be able to demonstrate either damages or injury-in-fact.  Plaintiff disagreed with Defendants' characterization of the remaining claims as well as Defendants' characterization of the applicable law.

The Parties' respective positions were eventually set forth in the Joint Proposed Case Management Report ("Joint Report") filed on August 30, 2021, in which Defendants sought to bifurcate discovery into two phases: the first phase for class certification discovery and discovery related to Defendants' negative causation defense; the second phase for broader merits discovery.  ECF No. 90 at 10-13, 20.  Defendants claimed that their basis for bifurcating in this manner was that Plaintiff would not be able to demonstrate either damages or injury-in-fact.  *Id.* at 10.  Plaintiff opposed Defendants' attempted bifurcation, explaining in the Joint Report that Defendants should not be permitted to prove an affirmative defense of negative causation while simultaneously

1    prohibiting Plaintiff from obtaining the discovery needed to refute it.  *Id.* at 8.  The

2    Parties vigorously defended their respective positions during the September 9, 2021

3    scheduling conference.  ECF No. 97. The Court thereafter issued a minute order denying

4    Defendants' proposed bifurcation plan, ordering that the case proceed on a customary

5    class action track, and directing the Parties to meet and confer and file a supplemental

6    Rule 26(f) report.  ECF No. 93.

7           Pursuant to the Court's order, the Parties met and conferred and exchanged drafts

8    of the supplemental Rule 26(f) report disagreeing once again on the propriety of

9    Defendants' filing an early motion for partial summary judgment on negative loss

10   causation.  After filing the Supplemental Rule 26(f) Report (ECF No. 96), the Parties

11   returned for a second scheduling conference on October 14, 2021, during which

12   Defendants requested to build into the schedule allotted time to file their early summary

13   judgment motion.  ECF No. 100.  The Court denied Defendants' request, and issued the

14   Scheduling Order on October 15, 2021.  ECF No. 101.

15          Thereafter, the Parties engaged in discovery, which included the exchange of Rule

16   26 initial disclosures, and the service of interrogatories and document demands.  The

17   Parties also negotiated a protective order (ECF No. 106) and a proposed order to govern

18   the production of electronically stored information (ECF No. 106-1).  The Parties also

19   negotiated a stipulation to certify the Action as a class action rather than engage in

20   motion practice. On December 31, 2021, the parties entered into a Joint Stipulation

21   regarding Class Certification (ECF No. 108), which was adopted by the Court on January

22   24, 2022.  ECF No. 113.  The class includes all individuals and entities that purchased or

23   otherwise acquired Mesa securities pursuant and/or traceable to the Company's IPO

24   commenced on or around August 9, 2018 and were damaged thereby.  *See id.* at 2-3.

25          On January 5, 2022, Defendants filed a Motion for Leave to File an Early Motion

26   for Summary Judgment based on negative causation ("Motion for Leave"), which

27   Plaintiff opposed on January 19, 2022.  *See* ECF Nos. 109 to 112.  Defendants filed their

28

4

1    replies on February 1, 2022.  *See* ECF Nos. 116 to 118.  Both sides engaged expert

2    witnesses and submitted expert reports regarding loss causation and the affirmative

3    defense of negative causation.  On March 1, 2022, the Court entered an Order denying

4    Defendants' Motion for Leave without prejudice to a later filing after discovery.  ECF

5    No. 120.

6    **II.     NEGOTIATION OF THE PROPOSED SETTLEMENT**

7            In early 2022, Plaintiff and Defendants began exploring the possibility of a

8    settlement, and engaged Jed D. Melnick (the "Mediator") of JAMS Mediation Services, a

9    well-respected and highly experienced mediator, to assist them in a potential negotiated

10   resolution of the claims against Defendants.  While engaging in discovery, the Parties

11   exchanged detailed opening and reply mediation statements.  The Parties each engaged

12   experts to conduct a preliminary analysis of damages.  On March 2, 2022, the Parties

13   engaged in a full-day mediation session before the Mediator.  During the mediation, the

14   Parties were able to reach an agreement in principle to settle the claims against

15   Defendants, subject to Defendants providing Plaintiff with confirmatory discovery.

16           The Parties conferred and, with the assistance of the Mediator, agreed that

17   Defendants would produce a set of documents that are reasonably necessary for Plaintiff

18   to confirm and determine in good faith that the Settlement is fair, reasonable, and

19   adequate to the Settlement Class.  After Defendants produced and Lead Counsel

20   reviewed the mutually agreed set of documents, and the Mesa Defendants responded to a

21   set of additional questions raised by Plaintiff and provided further documentation in

22   response to Plaintiff's inquires, the Parties negotiated the terms of the Stipulation, which

23   sets forth the final terms and conditions of the Settlement, including, among other things,

24   a release of all claims asserted against Defendants in the Action and related claims

25   ("Released Claims"), in return for a cash payment by Mesa and/or the Mesa Defendants'

26   insurers of $5,000,000 (the "Settlement Amount") for the Class's benefit.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.    STANDARDS FOR PRELIMINARY APPROVAL OF THE SETTLEMENT**

As a matter of public policy, settlement is strongly favored, "particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) (similar).

Rule 23(e) requires court approval for any class action settlement.  Approval of class action settlements involves a two-step process: "(1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class."  *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015).  The issue at the preliminary approval stage is whether "the court will ***likely*** be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Rule 23(e)(1)(B). Rule 23(e)(2) requires the court to take into account whether: (a) the class was adequately represented; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate; and (d) the proposal treats class members equitably. Rule 23(e)(2)'s new factors, however, do not displace the factors that the Ninth Circuit previously used to determine whether a settlement is "fair, reasonable, and adequate." *See* Rule 23(e)(2) advisory committee's note to 2018 amendments.  The Ninth Circuit traditionally uses the following factors, many of which overlap with Rule 23(e)(2)'s factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining a class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."  *Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL 11352039, at *1 (D. Ariz. July 26, 2018).  As discussed below, the proposed Settlement

6

1    readily satisfies the relevant factors such that the Settlement should be preliminarily

2    approved and Notice should be sent to the Settlement Class.

3    **II.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

4            **A.    The Class Has Been Adequately Represented**

5            DeKalb was appointed Lead Plaintiff over other movants after a finding that it was

6    the most adequate plaintiff to represent the putative class.  ECF No. 33.  Plaintiff is a

7    sophisticated institutional investor who has substantial experience leading numerous

8    securities class actions.  Throughout the Action, Plaintiff also benefited from the advice

9    of knowledgeable counsel well-versed in securities class action litigation.  The Faruqi

10   Firm is an experienced and skilled firm in the securities litigation field, and has a long

11   and successful track record prosecuting such cases.  *See* Ex. 1, Faruqi Firm Resume.

12           Plaintiff's Counsel vigorously litigated the Action since its inception including::

13   (i) conducting a thorough investigation that included the review of publicly available

14   information regarding the Company, as well as engaging a private investigator who

15   conducted an investigation that involved interviewing former Mesa employees and third

16   parties; (ii) preparing an amended complaint; (iii) opposing a motion to dismiss and

17   requests for judicial notice; (iv) attending two contested scheduling conferences in

18   person; (v) preparing multiple case management reports addressing Defendants'

19   argument in support of bifurcating discovery and a supplemental report in response to the

20   Court's ruling on September 10, 2021 (ECF No. 93) denying Defendants' request to

21   bifurcate discovery; (vi) began to conduct written discovery; (vii) opposing Defendant's

22   Motion for Leave (ECF No. 111); (viii) engaging an expert to conduct a preliminary

23   analysis of damages and loss causation; (ix) preparing mediation statements; and (x)

24   analyzing Defendants' mediation statements.  Prior to, and over the course of the

25   litigation, Plaintiff's Counsel explored the strengths and weaknesses of the claims and

26   defenses and developed a deep understanding of the merits of the claims.

27           The Settlement was reached only after mediated negotiations between counsel

28

7

with expertise litigating securities class actions.  At the conclusion of this process, Lead Counsel believes that the Settlement is fair, reasonable, and adequate.  *See, e.g., In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

## B.   The Settlement Was Negotiated at Arm's-length

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations."  *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007).  The use of an experienced mediator is an "important factor" supporting a finding that this requirement is satisfied.  *See In re Banc of Cal. Sec. Litig.*, No. SACV 17-00118 AG (DFMx), 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Xuechen Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("Mr. Melnick's role in the settlement negotiations overcomes any hesitation this court might have about approving a settlement reached prior to any discovery.").  Here, Plaintiff and Lead Counsel agreed to settle only after engaging in hard-fought litigation and engaging in a mediation process overseen by a highly regarded and experienced mediator.

## C.   The Relief Provided by the Settlement Is Adequate

Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the Class is adequate, taking the following four considerations into account: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of distributing relief to the class; (3) the terms and timing of attorneys' fees; and (4) any related agreements.  Fed. R. Civ. P. 23(e)(2)(C).  Each of these considerations is addressed below, along with the Ninth Circuit factors that overlap with them.

### 1.   The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i)'s requirement that the Court consider whether the Settlement

is adequate when considering the costs, risks, and delay of trial and appeal overlaps with the following Ninth Circuit factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation;" and "the amount offered in settlement." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Here, the $5 million Settlement Amount provides the Class with an immediate benefit and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after protracted litigation. While Plaintiff believes that the claims asserted in the Action are meritorious and that the information developed to date supports those claims, the continued prosecution of the Action poses significant risks and additional costs. "[S]ecurities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018).

Defendants have raised numerous challenges and continue to deny any wrongdoing. *See* Stip. § O. While Plaintiff alleged three categories of statements in the AC, only statements pertaining to aircraft maintenance survived Defendants' motion to dismiss. *See* ECF No. 81 at 25-26. Defendants have argued at multiple points during this litigation that there was only one maintenance-related corrective disclosure, the May 10, 2019 disclosure regarding a mechanic shortage, and that disclosure did not affect Mesa's stock price. ECF No. 109 at 3-4. As a result, Defendants maintain that they have a complete negative causation defense under Section 11(e) of the Securities Act. *Id.* at 4-5. If Defendants successfully asserted this defense at summary judgment, or trial, the Class would have no damages. Although the Court denied Defendants' request for leave to file an early motion for summary judgment on this defense, this ruling was based on the fact that an early motion might cause the parties and the Court to "expend[] resources needlessly," ECF No. 120 at 2, not because Defendants have no chance of prevailing on this defense at the proper time. While Plaintiff believes that it would be able to overcome

Defendants' negative causation defense and establish each element of the alleged claims, there is no guarantee that the Settlement Class would prevail and, even if they did, how the Court's rulings would affect damages or how the case would be presented to the jury.

The confirmatory discovery following the mediation provided further evidence of the risks facing continued litigation. Defendants produced and Lead Counsel reviewed 8,167 documents (totaling approximately 72,164 pages). The documents included, but were not limited to: Board and Board committees' meeting minutes and materials, pre-filing briefing on the IPO, pre-IPO financial statements, maintenance support agreements, aircraft service agreements, internal emails concerning maintenance staffing and operations, organizational charts, and analyst reports.

Defendants also produced additional information in response to questions Lead Counsel had after reviewing the documents, which included, *inter alia*: internal maintenance-related labor cost increases reported by Mesa on August 9, 2019, including the amount and reason for each increase; increases in maintenance and higher internal labor costs and outside labor support costs reported by Mesa on August 9, 2019 and the reasons for such increases; documents reflecting the reasons for increased maintenance costs during Q3 2019; documents evidencing increased costs due to the hiring of third-party contractors to help with maintenance; documents reflecting events unrelated to the maintenance-related challenged statements that impacted Mesa's performance during Q3 2019 and projections of lost revenue as a result of penalties imposed by American Airlines that were reported by Mesa on August 9, 2019.

Taken together, the confirmatory discovery produced to Plaintiff supports Plaintiff's decision to settle and confirms the Settlement's fairness, adequacy, and reasonableness. Most significantly, the information produced confirms that it would be difficult for Plaintiff to tie the maintenance issues it alleged existed at the time of the IPO, which are the basis for the remaining claims, to the stock price declines in August 2019. That is, it underscored the significance of the risk that Plaintiff may be unable to

1  overcome Defendants' negative causation defense, either at summary judgment or trial.

2        These risks aside, additional discovery would have been protracted and the trial of

3  Plaintiff's claims would inevitably be long and complex, and even a favorable verdict

4  could spur a lengthy post-trial and appellate process.  *See, e.g., Lo v. Oxnard Eur.*

5  *Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15,

6  2011) (stating that "'[c]onsidering the potential risks and expenses associated with

7  continued prosecution . . . the probability of appeals, the certainty of delay, and the

8  ultimate uncertainty of recovery through continued litigation,' the Court finds that, on

9  balance, the proposed settlement is fair, reasonable, and adequate"). Thus, the Settlement

10 Amount of $5,000,000 is well within the range of reasonableness under the

11 circumstances.  It represents approximately 5.3% of the $93.9 million in maximum

12 possible statutory damages estimated by Plaintiff's damages consultant before taking into

13 account Defendants' defense of negative causation, and approximately 16.6% of the $30

14 million in maximum damages estimated by Defendants if Plaintiff was able to overcome

15 Defendants' negative causation defense not premised on lack of stock price reaction.

16        Since the passage of the Private Securities Litigation Reform Act of 1995

17 ("PSLRA"), courts have approved settlements that recovered a similar or even smaller

18 percentage of maximum estimated damages.  *See* Ex. 3, *Hosey v. Costolo*, No. 16-CIV-

19 02228 (Cal. Sup. Ct. San Mateo Cty. Aug. 16, 2018) (granting final approval to $2.5

20 million settlement in action alleging claims under §of the Securities Act that purportedly

21 recovered 5.8% of "estimated aggregate damages"[3] ; Ex. 5, *In re Worldspace, Inc. Sec.*

22 *Litig.*, No. 07 Civ 02252 (RMB) (S.D.N.Y. June 3, 2013), ECF No. 107 (granting final

23 approval of $2,375,000 settlement in an action alleging claims under §§11, 12(a)(2), and

24

25 [3]    Because information concerning the settlement amounts, damages estimates, and
   Securities Act sections at issue are not always clear in the final approval orders cited in this
26 paragraph, Plaintiff submits the following papers for clarity, annexed to the Wilson Decl.:
   Ex. 4, brief in support of final approval in *Hosey* (*see* p. 11); Ex. 6, declaration in support of
27 final approval in *Worldspace* (*see* ¶¶2, 24); Ex. 8, brief in support of final approval in *Oh*
   (*see* pp. 3, 12).

28
                                            11

15, which purportedly represented approximately 3.3-5% of the Class's maximum provable damages)); Ex. 7, *Oh v. Chan*, No. 07-04891 DDP (AJWx) (C.D. Cal. Sept. 24, 2009), ECF No. 100 (approving a $1.2 million settlement in an action alleging §§11 and 15 claims, which purportedly represented approximately 2.6% of estimated damages).

### 2. The Proposed Method for Distributing Relief Is Effective

The Settlement will be effectuated with the assistance of an experienced claims administrator. The Claims Administrator will employ a well-established protocol for the processing of claims in a securities class action. Potential class members will submit, either by mail or email, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Loss" based on the Court-approved Plan of Allocation. *See* Stip. ¶ 25. Under the proposed Plan, which was developed with the assistance of a damages consultant, Class Members who are entitled to a distribution of at least $10 will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations. *See* Stip. Ex. 1 at 8. Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination.

Plaintiff respectfully submits that this method of distribution and claims processing is effective. *See Hefler*, 2018 WL 6619983, at *7, *12 (finding a similar method of distribution and claims processing to be effective); *Becker v. Bank of New York Mellon Trust Co., N.A.*, No. 11-6460, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (finding that the "methods of distributing relief to the class and of processing class-member claims are fair[]" where class members were required to submit a proof of claim listing their relevant holdings and provide documentation to substantiate their holdings).

### 3. The Terms and Timing of Attorney's Fees Are Reasonable

As set forth in the Notice, Lead Counsel intends to request attorneys' fees of no

12

1    more than 25% of the Settlement Fund, litigation expenses of no more than $80,000, and

2    will apply for an award of up to $10,000 for Plaintiff pursuant to the PSLRA.  A fee

3    request of 25% is the "benchmark" within the Ninth Circuit, and would be consistent

4    with other settlements approved in the Ninth Circuit.  *See Staton v. Boeing Co.*, 327 F.3d

5    938, 968 (9th Cir. 2003); *Julian v. Swift Transp. Co.*, No. CV-16-00576-PHX-ROS, 2020

6    WL 6063293, at *3 (D. Ariz. Oct. 14, 2020);.

7         The basis of Lead Counsel's fee and expense request will be detailed in

8    their upcoming motion requesting fees and expenses.  The Stipulation provides that the

9    fees are to be paid to Lead Counsel "immediately after the Court executes an order

10   awarding such fees and expenses notwithstanding any objection thereto[,]" subject to the

11   obligation to repay as described therein.  Stip. ¶¶ 13-20.  The timing of payment is

12   standard in class action cases and typically approved.  *See, e.g., In re China*

13   *MediaExpress Holdings, Inc. S'holder Litig.*, 2015 WL 13639423, at *2 (S.D.N.Y. Sept.

14   18, 2015).  Lead Counsel respectfully submits that the contemplated attorneys' fee award

15   and the timing of payment are reasonable and do not weigh against preliminary approval.

16            **4.    Related Agreements**

17        Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's

18   adequacy in light of any agreements made in connection with it.  The only agreements

19   here are the Confidential Supplemental Agreement Regarding Requests for Exclusion

20   ("Supplemental Agreement") and the escrow agreement. The Supplemental Agreement

21   sets forth certain conditions under which Defendants shall have the sole option to

22   terminate the Settlement and render the Stipulation null and void should requests for

23   exclusion from the Settlement Class exceed certain agreed-upon criteria (the "Opt-Out

24   Threshold").  The Parties agree to maintain the confidentiality of the Supplemental

25   Agreement, which shall not be filed with the Court unless a dispute arises as to its terms,

26   or as otherwise ordered by the Court.  If submission of the Supplemental Agreement is

27   required for resolution of a dispute or is otherwise ordered by the Court, in which case

28

                                        13

the Parties will undertake to have the Opt-Out Threshold submitted to the Court *in camera* or under seal.  This type of agreement is common in class actions and does not render a settlement unfair.  *See Hefler*, 2018 WL 6619983, at *7.  The escrow agreement is between Lead Counsel and the proposed Escrow Agent, which governs the deposit, investment, and disbursement of the Settlement Fund consistent with the Stipulation.

**D.      Settlement Class Members Are Treated Equitably**

The Plan of Allocation, drafted with the assistance of Plaintiff's damages expert, is a fair and reasonable method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D).  Each Authorized Claimant, including Plaintiff, will receive a distribution pursuant to the Plan, and Plaintiff will be subject to the same formula for distribution of the Settlement as other class members.  *See Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-00580-AC, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses").The fact that Lead Counsel will seek an award of up to $10,000 for Plaintiff's time, reasonable costs and expenses directly relating to its representation of the class, as allowed by the PSLRA, 15 U.S.C. § 77z-1(a)(4), does not render the Settlement unfair.

**E.      The Extent of Discovery Completed and the Stage of Proceedings**

The Ninth Circuit also looks to the extent of discovery completed and the stage of proceedings in evaluating a class action settlement to determine whether the parties had sufficient information before entering into the settlement.  Formal discovery "is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL

14

6248426, at *13-14 (N.D. Cal. Oct. 25, 2016).  Although the Settlement was achieved relatively early in the litigation it was reached after extensive and hard-fought negotiations that involved multiple expert reports, as described above.  *See* §§ Factual and Procedural Background I-II; Argument II.A, II.C.1, *supra*.

Plaintiff and Lead Counsel had sufficient information to make an informed assessment of the Action's strengths and weaknesses and the Settlement's fairness.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-59 (9th Cir. 2000), as amended (June 19, 2000) (affirming district court's approval of $1.725 million settlement where no discovery took place, noting "the district court's conclusion that the Plaintiffs had sufficient information to make an informed decision about the Settlement is not clearly erroneous[]"); *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law[,]" even though settlement was reached before the filing of a motion to dismiss).

## F.    Risk of Maintaining Class Action Status Through Trial

The Class was certified on January 24, 2022.  ECF. No. 113.  There is always a risk that the Class could be decertified later.  *See* Rule 23(c)(1).

## G.    The Experience and Views of Counsel

As set forth in detail in the Faruqi Firm's resume, Lead Counsel is a nationally-recognized law firm that has substantial experience litigating securities class action lawsuits and has negotiated many substantial recoveries for classes across the country. *See* Ex. 1.  Liaison Counsel also has significant experience litigating securities class action lawsuits and assisted Lead Counsel in its representation of the class.  *See* Ex. 2. Defendants were also represented by highly reputable firms.  Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these

claims, the risk, expense, and duration of continued litigation, and the likelihood of subsequent appellate proceedings even if Plaintiff were to prevail at trial, concluded that the settlement here is an excellent result for the Class.  Thus, since "[b]oth Parties are represented by experienced counsel[,] . . . their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to [a] great deal of weight."  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

## III.    THE NOTICE PROGRAM SHOULD BE APPROVED

Rule 23(c)(2)(B) requires notice of the pendency of a class action to be "the best notice that is practicable under the circumstances."  Notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).  Due process requires the same. *See id* at 824.  Lead Counsel proposes to provide Settlement Class Members notice by mailing the long-form Notice and Claim Form, addressed to all Class Members who can reasonably be identified and located, and publishing the Summary Notice in *Investor's Business Daily* and on *Globe Newswire*. *See* Stip., Ex. A, 1-3; *In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding that the procedures for notice, including mailing individual notice and publication notice satisfy Rule 23, the PSLRA, and constitute the best notice practicable).  The Notice will also be accessible on the Settlement website.

This manner of providing notice represents the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See, e.g., In re Portal Software*, 2007 WL 1991529, at *7 (approving notice by mail and publication to all reasonably identifiable class members as best practicable).  As such, the Court should find that the notices and the procedure for dissemination of the notices are reasonably calculated, under the circumstances, to provide notice of the Settlement to Class Members.

In addition to the proposed methods of providing notice, the form and substance of

the notice program is sufficient.  The proposed forms of notice describe the terms of the Settlement; the considerations that caused Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for requesting exclusion from the Settlement Class, objecting, and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.  *See* Stip. Exs. 1 and 3.

The long-form Notice also satisfies the PSLRA by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties disagree on the amount of damages; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses (and the amounts of such fees and expenses determined on an average per share basis) on behalf of all Plaintiff's Counsel, and that such application will seek an award for Plaintiff pursuant to the PSLRA; (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; and (v) the reasons why the Parties are proposing the Settlement.  *See* 15 U.S.C. § 77z-1(a)(7)(A)-(F); Stip. Ex. 1.

In connection with preliminary approval of the Settlement, the Court must set a Settlement Hearing date, dates for mailing the Notice and publishing Summary Notice, and deadlines for requesting exclusion from the Settlement Class, objecting, filing motions in support of final approval and attorneys' fees and expenses, and submission of Claim Forms.  A proposed schedule of events is attached hereto as Exhibit 9.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement; (ii) approving the proposed form and manner of providing notice; (iii) setting a date for the Settlement Hearing; and (iv) granting such other and further relief as may be required.

Dated: May 6, 2022                              By: */s/ James M. Wilson, Jr.*

James M. Wilson, Jr.

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
        rkillorin@faruqilaw.com
        jwilson@faruqilaw.com

*Attorneys for Class Representative DeKalb
County Pension Fund and Lead Counsel for the
Class*

Gary F. Urman
**DECONCINI MCDONALD YETWIN &
LACY, P.C.**
2525 East Broadway, Suite 500
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585
Email: gurman@dmyl.com

*Attorneys for Class Representative DeKalb
County Pension Fund and Liaison Counsel for
the Class*