# EXHIBIT 4

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Attorneys for Plaintiff*
[Additional Counsel Appear on Signature Page]

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

| | |
|---|---|
| JOHNNY HOSEY, individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>                 v.<br><br>RICHARD COSTOLO, MIKE GUPTA, LUCA BARATTA, JACK DORSEY, PETER CHERNIN, PETER CURRIE, PETER FENTON, DAVID ROSENBLATT, EVAN WILLIAMS, and TWITTER, INC.,<br><br>                 Defendants. | Case No. 16-CIV-02228<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Assigned for All Purposes to<br>Hon. Marie S. Weiner, Dept. 2<br><br>Hearing Date:   August 16, 2018<br>Hearing Time:   9:00 a.m.<br>Hearing Judge:  Hon. Marie S. Weiner<br>Hearing Dept:   Dept. 2<br><br>Date Action Filed:  Nov. 4, 2016<br>Trial Date:        Not Set |

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................1

II.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL .........................2

        A.      The *Dunk* Presumption of Fairness Applies Here ....................................................3

        B.      Each of the Applicable *Dunk* Factors Supports Final Approval ...........................3

                1.      The Strength of Plaintiff's Case Favors Approval ......................................3

                2.      The Substantial Risks and Expenses Associated With Continued
                        Litigation Favor Approval ...............................................................................6

                3.      The Stage of the Proceedings Favors Approval .........................................9

                4.      The Settlement Amount Favors Approval...................................................10

                5.      The Experience and Views of Plaintiff's Counsel Favor Approval .........11

                6.      The Reaction of the Settlement Class Favors Approval...........................13

III.    THE PROPOSED PLAN OF ALLOCATION WARRANTS APPROVAL BECAUSE
        IT IS FAIR, REASONABLE, AND ADEQUATE...........................................................14

IV.     THE COURT SHOULD AFFIRM ITS CERTIFICATION OF THE CLASS ................16

V.      CONCLUSION .............................................................................................................17

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.,*
   (2000) 85 Cal.App.4th 1135 ...................................................................................................2

*Clark v. Am. Residential Services LLC,*
   (2009)175 Cal.App.4th 785 ....................................................................................................4

*Cyan, Inc. v. Beaver Cty. Emp'ees Ret. Fund,*
   No. 15-1439, 85 U.S.L.W. 3594, 2016 WL 3040512 (U.S. June 27, 2017) ......................5, 6

*Dunk v. Ford Motor Co.,*
   (1996) 48 Cal.App.4th 1794 .................................................................................................3, 6

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980)..............................................................................................12

*Ganino v. Citizens Utilities Co.,*
   228 F.3d 154 (2d Cir. 2000) ...............................................................................................8, 12

*Hildes v. Arthur Andersen LLP,*
   734 F.3d 854 (9th Cir. 2013) ...................................................................................................3

*In re Alloy, Inc. Sec. Litig.,*
   No. 03 Civ. 1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004), .............................................8

*In re Am. Apparel S'holder Litig.,*
   No. CV 10-06352 MMM (JCGX), 2014 WL 10212865 (C.D. Cal. July 28, 2014).......8, 11,13

*In re AOL Time Warner, Inc.,*
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................14

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.,*
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..............................................................................13, 17

*In re Datatec Sys., Inc. Sec. Litig.,*
   Master File No. 04–CV–525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) .................14

*In re Gen. Instrument Sec. Litig.,*
   209 F. Supp. 2d 423 (E.D. Pa. 2001)....................................................................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................................11

*In re Heritage Bond Litig.,*
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..........................7, 12, 15

*In re OCA, Inc. Sec. & Deriv. Litig.,*
   Civil Action No. 05–2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) .................................8

-ii-

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................................11, 13, 14

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................................................................................12

*In re Portal Software, Inc. Sec. Litig.*,
No. C–03–5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................................6

*In re Rambus Inc. Deriv. Litig.*,
No. C 06–3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)...............................13

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)...................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB(JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .........................10, 11, 13

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................................14

*Knight v. Red Door Salons, Inc.*,
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...............................................10

*Kullar v. Foot Locker Retail, Inc.*,
(2008) 168 Cal.App.4th 116 ...................................................................................................11

*McPhail v. First Command Fin. Planning, Inc.*,
No. 05cv179-IEG-J MA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................................13

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*
(2010) 186 Cal. App. 4th 399 ................................................................................................15

*Nobles v. MBNA Corp.*,
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ......................................7

*Nguyen v. Radient Pharmaceuticals Corp.*,
No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014)...............15

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .................................................................................................10

*Redwen v. Sino Clean Energy, Inc.*,
No. CV11—3936 PA (SSx), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ...........................3

*Riker v. Gibbons*,
No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010)...........................12, 15

*Rubio-Delgado v. Aerotek, Inc.*,
No. 13-cv-03105-SC, 2015 WL 3623627 (N.D. Cal. June 10, 2015) ...................................24

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) .....................................................................................8

-iii-

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ................................11

*Wershba v. Apple Computer, Inc.*,
(2001) 91 Cal.App.4th 224 ........................................................................................................10

**Statutes**

15 U.S.C. 77k(e) ..........................................................................................................................5

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

## I.    INTRODUCTION

Plaintiff Johnny Hosey ("Plaintiff"), respectfully submits this Memorandum of Points and Authorities in support of his motion for final approval of settlement.[1] The Settlement proposes to resolve the claims against Twitter Inc. ("Twitter" or the "Company") and certain officers and directors of Twitter in exchange for a cash payment of $2.5 million.  Since the Settlement is fair, reasonable, and adequate, it warrants final approval.

The Settlement is informed by Plaintiff's Counsel's thorough understanding of the strengths and weaknesses of the claims set forth in the Complaint, as well as of the risks and expenses that they would likely confront or incur were they to proceed further with the litigation. By the time that the Parties had reached an agreement in principle to settle this case, Plaintiff's Counsel had, among other things: (a) conducted an investigation of the claims, including a detailed review of SEC filings, press releases, analyst reports, news reports, and other public information, and consultation with loss causation and damages experts; (b) prepared a detailed Complaint based on this investigation; (c) successfully opposed Twitter's demurrer seeking dismissal of the Complaint; (d) after the Court's denial of Twitter's demurrer, conducted substantial discovery, which included negotiating for the production of more than 10,000 documents, consisting of approximately 100,000 pages, followed by analysis of such documents; (e) successfully opposed Twitter's motion for summary judgment on Twitter's statute-of-limitations defense; (f) prepared for and defended the deposition of Plaintiff, Johnny Hosey and Plaintiff's expert witness; and, (f) engaged in a mediation process that involved the exchange of detailed written submissions concerning liability and damages followed by a full-day formal mediation session.

While Plaintiff and his counsel believe the claims asserted are strong, the Settlement is fair, reasonable, and provides an excellent result for the Settlement Class, particularly in light of the substantial risks and costs of prosecuting this litigation through trial and likely appeals.

---

[1] Unless otherwise set forth, this Memorandum incorporates by reference the definitions in the Stipulation and Agreement of Settlement (the "Stipulation"), filed in connection with Plaintiff's Unopposed Motion for Preliminary Certification of Settlement Class and for Preliminary Approval of Settlement.

Plaintiff's Counsel were rightly concerned that continued prosecution might result in either a much smaller recovery than Plaintiff sought or no recovery at all. Defendants presented strong evidence that this action was untimely based on the applicable statute of limitations. Defendants also intended to mount a vigorous defense at trial based on the absence of a legal duty to disclose the omitted details of Twitter's stock-based compensation system.

Even were Plaintiff and his counsel successful in overcoming these defenses, they faced the prospect of total estimated damages being limited to just a small fraction of Plaintiff's original estimate of approximately $43.2 million. Plaintiff also faced the risk that damages could be reduced even further based on Defendants' negative causation defense: that other negative information about Twitter caused the drops in the Company's stock prices on the dates in question. And hovering ominously above any and all discussions of the strength of Plaintiff's case was the specter that the U.S. Supreme Court might issue a decision, in a then-pending case involving the jurisdiction of state courts over Securities Act claims, that would effectively and immediately deprive this Court of jurisdiction over the case.

In light of all of these risks, and the significant expenses Plaintiff's Counsel were certain to incur were litigation to proceed further, the Settlement of $2.5 million represents an excellent result for the Class and lies well above the median percentage of investor losses recovered in similar securities class action settlements. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

## II.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Whether to grant final approval of a class action settlement is within the Court's discretion. *7-Eleven Owners for Fair Franchising v. Southland Corp.,* 85 Cal.App.4th 1135, 1145 (2000). In exercising such discretion, however, the Court must avoid substituting its judgment for that of counsel who negotiated the settlement:

> Due regard should be given to what is otherwise a private consensual agreement between the parties. The inquiry must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

-2-

> collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Dunk v. Ford Motor Co.* 48 Cal.App.4th 1794, 1801 (1996).

### A.  The *Dunk* **Presumption of Fairness Applies Here**

In determining whether a settlement is "fair, reasonable and adequate to all concerned," this Court should consider a non-exhaustive list of factors, including "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Dunk*, 48 Cal.App.4th at 1801. In considering these factors, which amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice,'" *Id* (citation omitted), this Court should apply a presumption of fairness if the following conditions are met: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel [are] experienced in similar litigation; and (4) the percentage of objectors [is] small." *Id.* at 1802.

### B.  **Each of the Applicable** *Dunk* **Factors Supports Final Approval**

The Court's evaluation of each of the relevant *Dunk* considerations confirms that the Settlement is fair, adequate, and reasonable.

#### 1.  **The Strength of Plaintiff's Case Favors Approval**

While it may be true that a plaintiff "need only show a material misstatement or omission to establish his *prima facie* case," *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013), "[c]ourts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'" *Redwen v. Sino Clean Energy, Inc.*, No. CV11—3936 PA (SSx), 2013 WL 12303367, at *6 (C.D. Cal.

-3-

July 9, 2013) (citation omitted). In light of such difficulty, a court will find that the strength of the plaintiff's case favors approval if it determines that "a legitimate controversy exists on a legal point, if that legal point significantly affects the valuation of the case for settlement purposes." *Clark v. Am. Residential Services LLC* (2009)175 Cal.App.4th 785, 803.

This Court should find that such a "legitimate controversy" existed between the Parties with respect to several issues on which Plaintiff would be required to prevail at trial. First, Defendants argued—both in their demurrer and their motion for summary judgment—that Plaintiff's claims are untimely and, hence, barred by the applicable statute of limitations. Although the Court disagreed with Defendants, denying both their demurrer and their summary-judgment motion based on Defendants' failure to establish such defense *as a matter of law*, the Court acknowledged, in denying summary judgment, that "Defendants have submitted evidence that would support a decision by the trier of fact in favor of Defendants on the affirmative defense of statute of limitations." Opinion, dated Oct. 13, 2017, at 3. Were Plaintiff to proceed to trial on this issue, a jury could easily conclude that Defendants are not liable.

Second, Defendants argued in their demurrer that Twitter had no duty to disclose the omitted information regarding its employee stock-based compensation system. Although Plaintiff was able to show in opposition to Defendants' demurrer that Twitter had such a duty when all reasonable inferences are drawn from his allegations in a light most favorable to him, Plaintiff would not be able to take advantage of such a legal presumption at trial. Rather, at trial, the Court may determine that the evidence does not support the existence of a duty on the part of Twitter to disclose the details of its stock-based compensation system.

Third, Defendants dispute Plaintiff's claim that the estimated damages in this case are approximately $43.2 million based upon the statutory damages calculation. Defendants have argued that damages are limited to only those traceable to Twitter's issuance of the IPO

-4-

Registration Statement. According to Defendants, as soon as any shares not issued pursuant to the Registration Statement were traded publicly, traceability ceased to exist. Defendants presented information supporting the conclusion that traceability ceased as early as February 15, 2014, which, if established at trial, would place a substantial cap on damages to which Plaintiff would be entitled. Assuming Plaintiff were able to establish all elements of his claims, Defendants argued that, after adjusting for traceability being lost upon the commingling of registered and unregistered shares, Plaintiff's maximum damages would fall from the roughly $43.2 million to no more than $11 million. From that $11 million damages ceiling, Defendants then argued that once their negative causation defense is taken into account, Plaintiff's damages are zero.

Fourth, Defendants have argued that they can establish that the damages alleged here were caused, either in whole or in part, by something other than the omissions regarding Twitter's stock-based compensation system. *See* 15 U.S.C. 77k(e) ("[I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, . . . such portion of or all such damages shall not be recoverable"). Defendants have suggested, among other things, that some portion of the drops in Twitter's stock prices on the dates of the corrective disclosures were caused by larger trends in the general market and that negative information other than the corrective disclosures, such as high-profile departures by Twitter executives. Were Defendants to persuade the Court of their position at trial, Plaintiff's damages would be reduced substantially.

Fifth, on June 27, 2017, the Supreme Court granted certiorari in *Cyan, Inc. v. Beaver Cty. Emp'ees Ret. Fund,* No. 15-1439, 85 U.S.L.W. 3594, 2016 WL 3040512 (U.S. June 27, 2017), on the question of "whether state courts lack subject-matter jurisdiction over…class actions…that allege only claims under the Securities Act of 1933." Just a few days later, Defendants requested

-5-

that this Court stay this action in light of *Cyan* because "[i]f the Supreme Court agrees with Cyan, it will find that this Court lacks subject matter jurisdiction to hear Securities Act cases." Defs.' Ltr. to Court, dated 6/30/17. From Plaintiff's Counsel's perspective, *Cyan* represented an existential risk to this case in that *Cyan* could potentially deprive the Court of subject matter jurisdiction. Indeed, the risk posed by *Cyan* was so significant that the Parties sought to ensure that the Settlement would survive regardless of the Supreme Court's decision by agreeing upon a specific written provision that removed any potential impact *Cyan* might have on this action.[2] Joint Declaration of Laurence Rosen and Ronen Sarraf in Support of Final Approval of Settlement ("Joint Decl." or "Joint Declaration"), filed herewith, ¶44.

Based on the existence of the foregoing "legitimate controversies" between the Parties, the Court should conclude that the strength of Plaintiff's case favors approval of the Settlement. *See In re Portal Software, Inc. Sec. Litig.,* No. C–03–5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("Factor (1), the strength of plaintiffs' case, somewhat favors settlement because plaintiffs' remaining claims are tenuous. Plaintiffs assert that establishing liability and damages at trial would be difficult because of the uncertainties associated with proving its claims, which are 'exacerbated by the unpredictability of a lengthy and complex jury trial' ").

### 2. The Substantial Risks and Expenses Associated With Continued Litigation Favor Approval

In *Dunk,* the Court of Appeal cited the risks arising from plaintiffs' belief that "there were statute of limitation and other potential problems that would negatively impact the chances of recovery" as favoring approval of the settlement. 48 Cal.App.4th at 1802. Similarly here, the considerable risk posed by Defendants' statute of limitations defense, when combined with the

---

[2] Just prior to the Parties' finalization of the Settlement papers, the Supreme Court resolved *Cyan* by holding that state courts have jurisdiction over certain Securities Act claims, as here. The Parties thereafter removed the provisions in the Settlement papers relating to *Cyan*.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

significant risks and expenses associated with the continued litigation of the issues concerning Defendant's duty to disclose the details of Twitter's compensation system, the potential cap on damages asserted by Defendants, and Defendants' defense of negative causation, all counseled Plaintiff and his attorneys to consider carefully the merits of their case before proceeding with discovery, trial, and likely appeals, despite the perceived strength of Plaintiff's case.

Beyond these specific concerns, Plaintiff and his counsel also considered the general risks and the expensive nature of further litigation in determining whether to continue with their prosecution of this case. It is well known that class action litigation is inherently complex. *See, e.g.*, *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at \*2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). Courts recognize that securities class actions, in particular, are typically complex and expensive to prosecute. *See, e.g.*, *In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403, at \*6 (C.D. Cal. June 10, 2005). This Action is no exception.

Prior to reaching agreement on the proposed Settlement, Plaintiff's Counsel had already expended substantial efforts in litigating this Action. Plaintiff's Counsel had investigated the Settlement Class's claims thoroughly, successfully defeated Defendants' demurrer and summary judgment, reviewed and analyzed approximately 100,000 pages of documents, consulted with experts on loss causation and damages, and prepared a detailed mediation statement. Joint Decl. ¶7. Had the Action continued, Plaintiff's Counsel would have had to continue to expend significant time and resources in litigating Plaintiff's claims. These efforts would have included conducting further factual discovery, conducting expert discovery, likely engaging in motions to compel discovery, filing a motion for class certification and a reply to Defendants' opposition thereto, responding to likely motions for summary judgment on the merits of the claims, litigating *Daubert* motions, and proving Plaintiff's claims at trial. Throughout these efforts, Plaintiff's

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

Counsel would have faced a vigorous defense from Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig*., No. 03 Civ. 1597, 2004 WL 2750089, at \*2 (S.D.N.Y. Dec. 2, 2004) (noting that securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties").

Even if Plaintiff and Plaintiff's Counsel were to successfully navigate the above hazards and obtained a significant judgment at trial, any recovery would likely be delayed for years through post-trial motions and appeals. *See In re Am. Apparel S'holder Litig.,* No. CV 10-06352 MMM (JCGX), 2014 WL 10212865, at \*10 (C.D. Cal. July 28, 2014) ("Because both parties would have had to engage in extensive, expensive summary judgment and pretrial activities, because both faced the prospect that they would not prevail, and because any outcome would likely have been appealed, this factor supports approval of the settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig*., No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at \*6 (S.D.N.Y. May 1, 2008) ("Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all"); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

The Settlement eliminates the inevitable risks of continued litigation and allows the Settlement Class to recover now. This factor therefore weighs heavily in favor of approval of the Settlement.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

### 3.   The Stage of the Proceedings Favors Approval

In determining whether the stage of the proceedings here favors approval, "the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it." *In re OCA, Inc. Sec. & Deriv. Litig.,* 2009 WL 512081, at \*12 (E.D. La. Mar. 2, 2009). "[I]f the settlement proponents have taken affirmative steps to gather data on the claims at issue and the terms of the settlement are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *In re OCA, Inc. Sec. & Deriv. Litig.,* Civil Action No. 05–2165, 2009 WL 512081, at \*12 (E.D. La. Mar. 2, 2009).

When the parties agreed to settle, Plaintiff and his Counsel had a thorough understanding of the strengths and weaknesses of their claims and the defenses asserted by Defendants, and could make an informed appraisal regarding their chances of success. By the time the parties convened for their mediation, Plaintiff's Counsel had expended significant time and resources litigating the Action, which included, among other things: (a) conducting an extensive investigation of the claims asserted in the Action, including a detailed review of SEC filings, press releases, analyst reports, news reports, and other public information, and consultation with loss causation and damages experts; (b) preparing a detailed Complaint based on this investigation; (c) successfully opposing Twitter's demurrer seeking dismissal of the Complaint; (d) after the Court's denial of Twitter's demurrer, conducting substantial discovery, which included negotiating the production of more than 10,000 documents, consisting of approximately 100,000 pages, by Twitter, followed by analysis of such documents; (e) successfully opposing Twitter's motion for summary judgment on Twitter's statute-of-limitations defense; (f) preparing for and

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

defending the deposition of Plaintiff, Johnny Hosey; and, (f) engaging in a mediation process overseen by Jed Melnick, Esq., of JAMS, which involved the exchange of detailed written submissions concerning liability and damages followed by a full-day formal mediation session. Joint Decl. ¶7.

In addition to performing the above tasks in connection with the litigation of this Action, Plaintiff and his counsel also considered the Court's written decision on Defendants' summary judgment motion and an independent, experienced mediator's feedback regarding the strengths and weaknesses of Plaintiff's claims. In short, the record before this Court supports the conclusion that "the parties carefully investigated the claims before reaching a resolution." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* No. 2672 CRB(JSC), 2016 WL 6248426, at \*13 (N.D. Cal. Oct. 25, 2016).

The stage of the proceedings, therefore, favors approval of the Settlement.

### 4. The Settlement Amount Favors Approval

"A settlement need not obtain 100 percent of the damages sought in order to be fair and reasonable." *Wershba v. Apple Computer, Inc*. (2001) 91 Cal.App.4th 224, 250, *disapproved of on other grounds by Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260. Even if "the proposed settlement is only a small percentage of the total expected recovery at trial, 'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.' " *Rubio-Delgado v. Aerotek, Inc.,* No. 13-cv-03105-SC, 2015 WL 3623627, at \*9 (N.D. Cal. June 10, 2015).[3]

---

[3] *See also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at \*3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case").

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

Under the Settlement, Defendants will pay $2.5 million, which represents approximately 5.8% of the roughly $43.2 million in terms of Plaintiff's estimated aggregate damages. As a percentage of Plaintiff's total estimated damages, the Settlement Amount is well above the median percentage of investor losses recovered recovery level in securities class action settlements. *See In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages) (citing *Heritage Bond*, 2005 WL 1594403, at *8–9 (average recovery between 2-3% of maximum damages)).[4] When viewed from Defendants' "best case" damages scenario, of course, the Settlement Amount fares even better. Assuming Plaintiff were able to establish all elements of his claims, Defendants argued that, after adjusting for traceability being lost upon the commingling of registered and unregistered shares, Plaintiff's maximum damages would fall from the roughly $43.2 million to no more than $11 million. From that $11 million damages ceiling, Defendants then argued that once their negative causation defense is taken into account, Plaintiff's damages are zero.

The Court should therefore conclude that the reasonableness of the Settlement Amount favors approval of the Settlement.

### 5.  The Experience and Views of Plaintiff's Counsel Favor Approval

Both state and federal courts in California place "great weight" upon the recommendation of counsel when considering the fairness of a settlement. *See, e.g., Kullar v. Foot Locker Retail, Inc.,* (2008) 168 Cal.App.4th 116, 129 (the "court undoubtedly should give considerable weight to the competency and integrity of counsel" when evaluating a settlement); *In re Volkswagen*

---

[4] *See also, e.g., Vaccaro v. New Source Energy Partners L.P.,* No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) ("Co-Lead Plaintiffs estimate that the maximum recoverable damages would be approximately $44,000,000. The $2,850,000 settlement represents 6.5% of the maximum recoverable damages. This settlement amount is reasonable and in line with other settlements in securities class actions"); *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 162-63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses").

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

*"Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("[c]ourts afford 'great weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation' "); *Am. Apparel,* 2014 WL 10212865, at *14 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness" because they are "better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation").

Plaintiff's Counsel have many years of experience in litigating securities class actions throughout the country – including within this State in particular – and in assessing the respective merits of each side's case. Joint Decl., Exs. 1-A & 2-A (Plaintiff's Counsel's firm resumes). Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by very skilled and highly respected counsel, Simpson Thacher & Bartlett LLP, one of the largest and most respected law firms in the world. Defendants' counsel brought considerable experience and expertise to bear and vigorously defended this Action.

In the face of this knowledgeable and formidable defense, Plaintiff's Counsel was nonetheless able to develop a case that was strong enough to persuade Defendants to settle on terms that are favorable to the Class. Indeed, "the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980); *see also Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining"). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at *9, and "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d

-12-

373, 378 (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage*, 2005 WL 1594403, at *9. The Court should apply the presumption in favor of counsel's judgment here.

### 6. The Reaction of the Settlement Class Favors Approval

The reaction of the Class to the Settlement is another factor in determining the adequacy of the Settlement. *See Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Deriv. Litig.*, No. C 06–3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"). "In order to gauge the reaction of the other class members, it is appropriate to evaluate the number of requests for exclusion, as well as the objections submitted." *Am. Apparel*, 2014 WL 10212865, at *15.

The deadline to file objections to the Settlement is July 13, 2018, and the deadline to request exclusion from the settlement is July 5, 2018. To date, there have been no objections and only 9 requests for exclusion received, 5 of which are invalid. Declaration of Sarah Evans Concerning the Mailing of the Notice of Postcard Notice of Proposed Settlement of Class Action, Publication of Summary Notice, Exclusion Requests Received, and Objections Submitted ("Evans Decl.") (Ex. 3 to Joint Decl.), filed herewith, at ¶¶11-12. If necessary, Plaintiff will address any objections in his reply.

Generally, a court will find that this factor strongly favors final approval if the record establishes a high claims rate accompanied by low opt-out and objection rates. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB(JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("Given the high claim rate and the low opt-out and objection rates, this factor strongly favors final approval"); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-J MA, 2009 WL 839841, at *6 (S.D. Cal. Mar. 30, 2009)

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

(when over 207,000 notices were sent and five class members objected and 56 opted-out, the court concluded that "presence of a small minority of objectors strongly supports a finding that the settlement is fair, reasonable, and adequate"); *In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.,* 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("Given the absence of significant exclusion or objection—the rate of exclusion is 5.1% and the rate of objection is less than 1%—this factor weighs strongly in favor of approval."); *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (finding that the "small number of objectors and low percentage of opt-outs strongly favor the Settlement").

Based on the claims, exclusion, and objection rates demonstrated to date, the reaction of the Class strongly supports approval of the Settlement.

### III. THE PROPOSED PLAN OF ALLOCATION WARRANTS APPROVAL BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan of Allocation. Plaintiff now requests that the Court grant final approval of the Plan of Allocation, for the purpose of administering the Settlement. The proposed Plan of Allocation was fully described in the Notice. *See* Joint Decl., Ex. 5.

Assessment of the adequacy of a plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. As a result, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common" and generally warrant approval. *In re Datatec Sys., Inc. Sec. Litig.*, Master File No. 04–CV–525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also*

-14-

*In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock" as "even handed").

" 'A plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.' " *Heritage Bond*, 2005 WL 1594403, at \*11. Here, the proposed Plan of Allocation distributes the settlement proceeds on a *pro rata* basis, calculating a Claimant's relative loss proximately caused by Defendants' alleged false and misleading statements and material omissions, based on factors such as when and at what prices the Claimant purchased and sold shares of Twitter common stock. This approach is reasonable under the law. *See Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal. App. 4th 399, 412 n.8 (upholding approval of settlement that provided each claimant with proportionate share of settlement fund).

The reasonableness of the Plan finds further support in its development by Plaintiff's experienced counsel in consultation with a damages expert. "With respect to the formula used in a Plan, courts recognize that '[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.' " *Nguyen v. Radient Pharmaceuticals Corp.,* No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293, at \*5 (C.D. Cal. May 6, 2014). As explained in the Joint Declaration, Plaintiff engaged a damages expert to assist in developing a plan to allocate the Settlement proceeds among Claimants. Joint Decl. ¶¶41, 56. The Plan of Allocation was formulated by Plaintiff's Counsel, in consultation with a damages expert, with the goal of reimbursing Class members in a fair and reasonable manner. *Id*.; *see also*

*Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

For these reasons, the Court should approve the Plan of Allocation.

## IV.    THE COURT SHOULD AFFIRM ITS CERTIFICATION OF THE CLASS

On May 3, 2018, this Court issued its Preliminary Approval Order, in which it preliminarily certified the following Class: "all persons or entities ("Persons") that purchased or otherwise acquired Twitter, Inc. ("Twitter") common stock between November 7, 2013 and February 18, 2014, inclusive, pursuant or traceable to the Registration Statement for Twitter's November 7, 2013 Initial Public Offering (the "IPO") (the "Class")."[5] The Court also found, for purposes of the Settlement only, that:

> (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of Plaintiff are typical of the claims of the Class he seeks to represent; (d) Plaintiff and Plaintiff's Counsel will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

---

[5] The Preliminary Approval Order further provided as follows: "The Class is limited to Persons who purchased or otherwise acquired Twitter common stock before February 19, 2014 because Twitter stock that was not issued pursuant to the Registration Statement was publicly trading by February 19, 2014, making it difficult or impossible for persons who purchased on or after February 19, 2014 to trace their stock to the Registration Statement, as required for the Section 11 claim in the Action.  Also excluded from the Class are (i) Twitter, (ii) the Individual Defendants, (iii) any current or former officers and directors of Twitter, (iv) the Underwriters, and (v) all such excluded Persons' immediate family members, legal representatives, heirs, parents, wholly-owned subsidiaries, successors, and assigns.  Notwithstanding the foregoing sentence, the Class shall include any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which the Underwriters, or any of them, have, has or may have a direct or indirect interest, or as to which any Underwriter's affiliates may act as an investment advisor, but as to which any Underwriter alone or together with any of its respective affiliates is neither a majority owner nor the holder of a majority beneficial interest.  Also excluded from the Class are Persons otherwise meeting the definition of the Class who submit valid and timely requests for exclusion from the Settlement." Preliminary Approval Order ¶1.

Preliminary Approval Order ¶2.

Since the issuance of the Preliminary Approval Order, there have been no material changes that would call into question the propriety of the Court's preliminary findings. Therefore, the Court should affirm its preliminary findings, and, for purposes of the Settlement only, certify the Class and appoint Plaintiff as Class Representative and Plaintiff's Counsel as Lead Counsel for the Class. *See In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.,* 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (granting final certification of class "[s]ince there have been no material changes to alter the propriety of these findings regarding the Settlement Class").

## V.    CONCLUSION

For reasons set forth above and in the declarations submitted in conjunction with this motion, the Court should grant Lead Plaintiff's Unopposed Motion for Final Approval of Settlement, approve the Plan of Allocation, and finally certify the Class.

Dated: July 3, 2018                    **THE ROSEN LAW FIRM, P.A**

By: 
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel.:    (213) 785-2610
Fax:    (213) 226-4684
Email:  lrosen@rosenlegal.com

Keith R. Lorenze (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel.:    (215) 600-2815
Fax:    (212) 202-3827
Email:  klorenze@rosenlegal.com

and

-17-

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT Case No.: 16-CIV-02228

**SARRAF GENTILE LLP**
Ronen Sarraf (*pro hac vice*)
Joseph Gentile (*pro hac vice*)
14 Bond Street, Suite 212
Great Neck, New York
Tel.:    (516) 699-8890
Fax:    (516) 699-8968
Email:  ronen@sarrafgentile.com
          joseph@sarrafgentile.com

*Attorneys for Plaintiff*

-18-