# EXHIBIT 8

LIONEL Z. GLANCY #134180
PETER A. BINKOW   #173848
ANDY SOHRN #241388
KATHERINE C. DEN BLEYKER # 257187
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160
E-mail:      info@glancylaw.com

LAURENCE ROSEN #219683
ROSEN LAW FIRM
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone:   (212) 686-1060
Facsimile:   (212) 202-3827
E-mail:      lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| VIVIAN OH, MICHAEL PFEIFFER, ABHILASH RAO, AND MARC MASONER, Individually and on Behalf of All Others Similarly Situated,<br><br>                                        Plaintiffs,<br><br>       vs.<br><br>MAX CHAN, HIMAX TECHNOLOGIES, INC., BIING-SENG WU, JORDAN WU, JUNG-CHUN LIN, AND CHI MEI OPTOELECTRONICS CORP.,<br><br>                                        Defendants. | Case No.  07-04891 DDP (AJWx)<br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**<br><br><u>Hearing:</u><br>Date: July 27, 2009<br>Time: 10:00 a.m.<br>Ctrm: Hon. Dean D. Pregerson |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL HISTORY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  THE SETTLEMENT PROCESS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   BENEFITS OF THE PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . . . 5

V.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT
      AS FAIR, REASONABLE, AND ADEQUATE TO THE CLASS . . . . . . . 6

      A.   The Standards Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.   All Of The Relevant Considerations Employed By Courts In This
           Circuit Favor Approval Of The Proposed Settlement  . . . . . . . . . . . 8

           1.   Strength of Plaintiffs' Case . . . . . . . . . . . . . . . . . . . . . . . . . 8

           2.   The Risk, Expense, Complexity, and Likely Duration of Further
                Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           3.   The Amount Offered in Settlement  . . . . . . . . . . . . . . . . . . 12

           4.   Risk of Maintaining a Class Action  . . . . . . . . . . . . . . . . . . 14

           5.   Stage of the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . 14

           6.   Experienced Counsel Concur that the Settlement, Which was
                Negotiated in Good Faith and at Arm's-Length, is Fair,
                Reasonable, and Adequate  . . . . . . . . . . . . . . . . . . . . . . . . 15

           7.   The Reaction of the Class Members to the Settlement . . . . . . 16

VI.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION
      AS FAIR AND ADEQUATE TO CLASS MEMBERS . . . . . . . . . . . . . . 17

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

i

# TABLE OF AUTHORITIES

**CASES**

*Anixter v. Home-Stake Prod. Co.*
    77 F.3d 1215 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Backman v. Polaroid Corp.*
    910 F.2d 10 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980)
    *aff'd.,* 661 F.2d 939 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

*Evans v. Jeff D.*
    475 U.S. 717 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gold v. Morrice*
    2008 WL 467619 (C.D. Cal. Jan. 31, 2008) . . . . . . . . . . . . . . . . . . . . . . . 9

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 17

*In re Cendant Corp. Sec. Litig.*
    109 F.Supp. 2d 235 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Gulf Oil/Cities Service Tender Offer Litig.*
    142 F.R.D. 588 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Heritage Bond Litig.*
    2005 WL 1594403 (C.D. Cal. June 10, 2005) . . . . . . . . . . . 10, 13, 14, 17

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 15, 17

*In re MicroStrategy, Inc. Sec. Litig.*
    148 F. Supp. 2d 654 (E.D. Va. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Nasdaq Market-Makers Antitrust Litig.*
    187 F.R.D. 465 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Oracle Sec. Litig.*
    1994 WL 502054 (N.D. Cal. June 18, 1994) . . . . . . . . . . . . . . . . . . . . . 17

*In re Painewebber Ltd. P'ships Litig.*
    171 F.R.D. 104 (S.D.N.Y.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Rite Aid Corp. Sec. Litig.*
    146 F. Supp. 2d 706 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

*In re Shoretel Inc. Sec. Litig.*
   2009 WL 248326 (C.D. Cal. Feb. 2, 2009) . . . . . . . . . . . . . . . . . . . . . 9, 10

*In re Stac Elecs. Sec. Litig.*
   89 F.3d 1399 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Sumitomo Cooper Litig.*
   189 F.R.D. 274 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Warner Comm. Sec. Litig.*
   618 F. Supp. 735 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . 10, 11, 15

*Linney v. Cellular Alaska P'ship*
   151 F.3d 1234 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*National Rural Telecom. Coop. v. DIRECTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Officers for Justice v. Civil Serv. Comm'n.*
   688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Robbins v. Koger Prop.*
   116 F.3d 1441 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Stoetzner v. U.S. Steel Corp.*
   897 F.2d 115 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Viscaino v. U.S. District Court*
   173 F.3d 713 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*West Virginia v. Chas. Pfizer & Co.*
   314 F. Supp. 710 (S.D.N.Y. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES AND RULES**

15 U.S.C. § 77k(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 77k(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

Fed. R. Civ. P. 4(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

iii

**OTHER AUTHORITIES**

John Eastwood and Eve Chen
   *"Enforcing Foreign Court Judgments in Taiwan"* . . . . . . . . . . . . . . . . . . . 12

Manual for Complex Litigation
   (Third) § 30.42 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Philip R. Weens,
   Guidelines for Enforcing Money Judgments Abroad
   *International Business Lawyer*, Vol. 21, No. 11 . . . . . . . . . . . . . . . . . . . 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

iv

## I.   **<u>PRELIMINARY STATEMENT</u>**

Pursuant to Fed. R. Civ. P. 23(e), court-appointed Lead Plaintiffs Vivian Oh, Michael Pfeiffer, Abhilash Rao and Marc Masoner ("Plaintiffs" or "Lead Plaintiffs") seek an Order of this Court certifying the Settlement Class and approving the Settlement of this action, as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), filed February 6, 2009 between the parties, as fair, reasonable and adequate.[1]  This action has been settled for $1,200,000 cash, in addition to accrued interest, and has come about due to Plaintiffs' counsel's diligent and vigorous prosecution of the case over a term of approximately two years.

This action involves claims brought on behalf of a Settlement Class defined as persons who purchased, or otherwise acquired, the securities of Himax Technologies, Inc. ("Himax") pursuant and/or traceable to Himax's initial public offering which took place on or about March 30, 2006 (the "IPO") from the time of the IPO through and including November 6, 2006 (the "Class Period") and were damaged thereby.  Lead Plaintiffs filed an Amended Class Action Complaint on February 25, 2008 (the "Complaint"), alleging violations of Section 11 of the Securities Act of 1933 (the "Securities Act") against Defendants Himax, Biing-Seng Wu, Jordan Wu, Jung-Chun Lin and Max Chan and violations of Section 15 of the Securities Act against Defendants Biing-Seng Wu, Jordan Wu, Lin and Chi Mei Optoelectronics Corporation ("CMO").[2]  The Complaint generally alleges that Defendants negligently failed to exercise the required due diligence

---

[1]   Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation.

[2]  Defendants Himax, Max Chan, Jordan Wu, Biing-Seng Wu, Jung-Chun Lin and CMO are referred to collectively herein as "Defendants."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

1

from which they would have found out that immediately prior to Himax's IPO, its main customer, CMO, reversed course and began a program to accumulate inventory in excess of market demand. The Complaint alleges that, due to Defendants' failure to disclose this fact, the market was not informed of the facts contributing to the increased volatility of Himax's sales to CMO or the imminent prospect that CMO would adjust its inventory level to reflect true market demand.

In December, 2008 – while Defendants' motion to dismiss was pending before this Court – the parties engaged in successful arm's-length settlement negotiations and resolved the matter in principle. On April 23, 2009, this Court entered an order preliminarily approving the Settlement as within the range of approval and directed that notice be provided to the Settlement Class, informing them of, *inter alia*, the existence of the Action, the general terms of the proposed Settlement, Settlement Class Members' rights to participate in or opt out of the Settlement, and to attend or participate in the final approval hearing, including the right (and manner by which) to object to the Settlement (the "Notice Order").

To date, 17,542 Claim Packets, including the detailed "Notice of Pendency and Settlement of Class Action" (or "Notice") and a "Proof of Claim and Release Form," have been sent by first-class mail to potential Settlement Class Members, and a Summary Notice has been published in *Investor's Business Daily* and through *Marketwire*. *See* Declaration of Paul Mulholland CPA CVA Concerning Mailing of Notice of Pendency and Settlement of Class Action and Proof of Claim and Release Form ("Mulholland Decl."), ¶¶5, 7 (attached as Exhibit 1 to the Declaration of Peter A. Binkow in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and for Award of Attorneys' Fees and for Reimbursement of Expenses ("Binkow Decl.")). To date, there have been no requests for exclusion, no objections to the amount of attorneys' fees or expenses,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

2

and no objections to the Settlement.  Mulholland Decl., ¶9.

As set forth below, in light of many factors – including potentially strong defenses to Plaintiffs' substantive allegations, and the real possibility that Plaintiffs will be unable to collect a judgment from Defendants in Taiwan – the Court should approve the Settlement as fair, reasonable and adequate.

## II.    PROCEDURAL HISTORY

On July 30, 2007, Plaintiff Vivian Oh filed a Class Action Complaint alleging violations of federal securities laws, captioned *Vivian Oh v. Max Chan*, Case No, 2:07-cv-04891-DDP (AJWx) (the "First Action") in the United States District Court for the Central District of California, Western Division.

On August 21, 2007, Plaintiff Michael Pfeiffer filed a Class Action Complaint alleging violations of federal securities laws, captioned *Pfeiffer v. Himax Technologies, Inc.*, CV 07-05468 DDP (AGRx) (the "Related Action") in the United States District Court for the Central District of California, Western Division.

By Order dated February 4, 2008, the Court consolidated the First Action with the Related Action; the consolidated action was captioned *Vivian Oh v. Max Chan*, Case No, 2:07-cv-04891-DDP (AJWx) (hereinafter, the "Litigation" or the "Action") and appointed: (i) The Himax Investor Group as Lead Plaintiffs; and (ii) The Rosen Law Firm, P.A. and Glancy Binkow & Goldberg LLP as Co-Lead Counsel for Lead Plaintiffs (collectively referred to herein as "Co-Lead Counsel" or "Plaintiffs' Counsel").

Plaintiffs filed an Amended Class Action Complaint on February 25, 2008, alleging violations of Section 11 of the Securities Act against Defendants Himax, Biing-Seng Wu, Jordan Wu, Jung-Chun Lin and Max Chan and violations of Section 15 of the Securities Act against Defendants Biing-Seng Wu, Jordan Wu,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

3

Lin and CMO.

On March 20, 2008 Defendants Himax, Chan and Jordan Wu filed a Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(5) and 4(m) (the "12(b)(5) Motion"). The Court denied the Motion to Dismiss by Order dated June 18, 2008.

On July 22, 2008 Defendant Himax filed a Petition for Writ of Mandamus with the United States Court of Appeals for the Ninth Circuit to vacate this Court's order denying the Fed. R. Civ. P. 12(b)(5) motion to dismiss. On November 5, 2008 an Order from the Ninth Circuit Court of Appeals was entered in this Court denying the Writ of Mandamus.

On August 4, 2008 Defendants Himax, Chan and Jordan Wu filed a Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) (the "12(b)(6) Motion"). On October 7, 2008, Plaintiffs filed their opposition to the 12(b)(6) Motion. On November 3, 2008, Defendants Himax, Chan and Jordan Wu filed their Reply Memorandum in further support of their 12(b)(6) Motion. On November 24, 2008, the Court heard oral argument on the 12(b)(6) Motion and took the matter under submission.

## III.   THE SETTLEMENT PROCESS

While the 12(b)(6) Motion was under submission, the parties had initial discussions regarding the possibility of settlement. On or about December 9, 2008, the parties filed a Joint Status Report with this Court stating that the parties had reached an agreement in principle to settle the Action for $1,200,000 in cash on behalf of a settlement class (the "Settlement Class") defined as persons who purchased, or otherwise acquired, the Securities of Himax pursuant and/or traceable to Himax's initial public offering ("IPO") on or about March 30, 2006

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

through and including November 6, 2006 (the "Class Period").[3]  Settlement negotiations were at all times conducted at arm's-length.  The salient terms of the Settlement were set forth in a Memorandum of Understanding dated December 19, 2008.  Subsequent negotiations ensued over the next several weeks, which resulted in the Stipulation. The Court entered an Order on April 23, 2009 preliminarily approving the settlement, providing for Notice, and setting the date of the Settlement Hearing.

## IV.    BENEFITS OF THE PROPOSED SETTLEMENT

The Litigation has been hard-fought from the start. Defendants, who are represented by national law firms with a wealth of experience defending securities class actions, gave every indication that they would battle Lead Plaintiffs through class certification, discovery, and, in all likelihood, would file a motion for summary judgement. Additionally, should the matter have continued to trial, Defendants likely would have presented extensive expert testimony to demonstrate that, regardless of their conduct, other factors caused the Class Members to lose money on their Himax securities.

In response, Lead Plaintiffs would have had to meet a substantial burden in establishing liability, showing that Defendants knew or should have known about

---

[3] Excluded from the Settlement Class are the Defendants; members of Defendants' immediate families; all individuals who are either current officers and/or directors, or who served as officers and directors at the time of Himax's IPO, in each case; any of the Defendants or their subsidiaries; any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or any entity that is related to or affiliated with any Defendant and the legal representatives, agents, affiliates, heirs, successors and assigns of any such excluded persons.  Also excluded from the Class are those persons who file valid and timely requests for exclusion in accordance with the Court's Order of Preliminary Approval of Settlement ("Preliminary Approval Order").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

5

CMO's inventory stockpiling program, and that Defendants were under a duty to disclose that information to the investing public. Even if Plaintiffs were able to show this, Lead Plaintiffs would have also incurred substantial time and expense to match Defendants "expert for expert" before a jury, to demonstrate both loss causation and damages, with no guarantee of a successful outcome. By resolving the matter now, the class will receive a substantial benefit, without the risk of nonpayment, a judgment at trial being reversed after a lengthy appeal, or not being able to collect any judgment obtained from Defendants located in Taiwan.

In addition to the certainty and immediacy of recovery offered by a settlement at this juncture, Lead Plaintiffs and their counsel believe that the proposed Settlement is fair, reasonable and adequate based upon their extensive experience with securities class actions (*see* Exhibits 4 and 5 attached to the Binkow Decl.) and a substantial investigation of the claims asserted in the Litigation.  This investigation included, *inter alia*: (1) reviewing and analyzing Himax's public filings, annual reports, press releases, and other public statements; (2) factual investigation concerning the relationship between Himax and CMO; (3) factual investigation concerning the semiconductor industry; (4) research of the applicable law with respect to the claims asserted in the complaints filed in the Litigation, and the potential defenses thereto; (5) consultation with a financial consultant; and (6) research of the applicable law with respect to the collection and enforcement of U.S. monetary judgments in Taiwan. Defendants and their counsel also believe they have undertaken a through investigation of the claims and allegations asserted herein and their potential defenses thereto.

## V.   THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE TO THE CLASS

### A.   The Standards Of Review

Federal Rule of Civil Procedure 23(e) provides that "[t]he court must

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

6

Case 2:20-cv-00649-MTJW Document 125-9 Filed 05/06/22 Page 13 of 27
Case 2:07-cv-04891-DDP-AJW Document 91-5 Filed 07/20/09 Page 12 of 26 Page ID
#:1080

approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses." In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Consequently, in making its assessment pursuant to Rule 23(e), the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, the ultimate decision is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *see also Hanlon*, 150 F.3d at 1011, 1025. However, to avoid excessive intrusion into the parties' compromise, the court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *Officers for Justice*, 688 F.2d at 628. Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

7

reached in arm's length [sic] negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Alaska Cellular P'ship*, No. C-96-3008, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd.*, 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd.*, 661 F.2d 939 (9th Cir. 1981).

As explained below, the Settlement was reached after over two years of investigation and litigation by experienced counsel on both sides, and then only after protracted arms-length negotiations. Under these circumstances, the Settlement should be afforded the presumption of fairness.

**B.    All Of The Relevant Considerations Employed By Courts In This Circuit Favor Approval Of The Proposed Settlement**

To determine whether a proposed settlement is fair, reasonable, and adequate, a court must examine the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242; *Hanlon*, 150 F.3d at 1026. While these factors need to be explored comprehensively when a settlement is reached prior to formal class certification, *Mego*, 214 F.3d at 458, as applied to the instant action, these factors all point toward approval of the proposed Settlement.

**1.    Strength of Plaintiffs' Case**

To succeed at trial, Plaintiffs would have to prevail on each and every element of their claims. To prove their Section 11 claims, Plaintiffs "must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material; that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

8

is, it would have misled a reasonable investor about the nature of his or her investment." *Gold v. Morrice*, No. CV 07-00931 DDP (JTLx), 2008 WL 467619, *2 (C.D. Cal. Jan. 31, 2008) (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403-04 (9th Cir. 1996)). Based upon the arguments raised in the 12(b)(6) Motion, the following issues would likely be hotly contested:

Materiality: Defendants would undoubtedly assert that none of the alleged misrepresentations and omissions concerning CMO's excessive inventory build-up and the demand for Himax's products was material;

Omissions or Misrepresentations: Defendants would undoubtedly assert that they adequately disclosed in the registration statement all risk factors concerning the relationship between Himax and its main customer, CMO, or that Defendants had no duty to disclose the inventory policies of its customers;

Loss Causation: At the pleading stage in a Section 11 case, "plaintiffs need not allege loss causation, that is, the plaintiffs need not allege that the misrepresentations in the registration statement caused the plaintiffs' loss." *In re Shoretel Inc. Sec. Litig.*, No. C 08-00271 CRB, 2009 WL 248326, *4 (C.D. Cal. Feb. 2, 2009). "[I]nstead, *the defendants* may prove as an affirmative defense that the plaintiffs' loss, or some portion thereof, was not caused by the alleged misstatements or omissions. . . [and] such portion or all of such damages shall not be recoverable" *Id.* (emphasis in original) (citing 15 U.S.C. § 77k(e)). Had the Litigation continued, Defendants could have tried to demonstrate that a variety of other factors caused Himax's share price to decline during the Class Period.

Damages: To ultimately succeed, Plaintiffs would have had to navigate successfully through the complex waters of damages calculations and expert opinions concerning the relative effects of multiple factors on the price of Himax's shares.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

9

Case 2:20-cv-00649-MTJW Document 125-9 Filed 05/06/22 Page 16 of 27
Case 2:07-cv-04891-DDP-AJW Document 91-5 Filed 07/20/09 Page 16 of 26 Page ID
#:1083

While Lead Plaintiffs believe they have arguments and evidence to counter each one of Defendants' positions, and are confident that their presentation would have carried the burden of proof at trial, there is no way to guarantee that a jury would agree. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at * 7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.")(quoting *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)). Accordingly, this factor weighs in favor of the Settlement.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

A review of the critical issues listed above reveals that further litigation would be both expensive and complex. Under the claims alleged pursuant to the Securities Act, damages not caused by the Defendants' misconduct are not recoverable. *See Shoretel*, 2009 WL 248326 at *4. Therefore, Defendants would have attempted to demonstrate, through experts, that variables such as market fluctuations had a greater role to play with respect to the price of Himax's shares than their alleged misconduct. Expert discovery and trial preparation would be expensive and complex. While certainly attainable, victory in such a complex trial is hardly assured:

> In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985); *see also Heritage*, 2005 WL 1594403 at *6 (noting that class actions have a well-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

10

deserved reputation as being the most complex) (citation omitted); *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (same).

Additionally, other serious risks include the possibilities that, even if Lead Plaintiffs prevailed at trial: 1) the victory could be reversed on appeal;[4] 2) the risk that Himax's insurance coverage would be depleted; and 3) the ability of the Company to pay a judgment once its appeals were exhausted. In *Linney*, 151 F.3d at 1242, the Ninth Circuit explained that the financial condition of a defendant, alone, can be determinative with respect to settlement approval. Even if none of these risks materialized, it would be quite some time before discovery, trial, and all appeals were completed. *See Warner Comm.*, 618 F. Supp. at 745 (delay itself is a consideration).

Moreover, even if Plaintiffs were successful at the trial and appellate levels – and even if money remained to pay Plaintiffs' judgment – because all Defendants in this case are located in Taiwan, Plaintiffs would be presented with additional difficulty, expense, and delay when attempting to collect a judgment from Defendants. Because Taiwan is not a party to either of the multilateral treaties governing international service of process that the United States is a party to,[5]

---

[4] *See, e.g., Robbins v. Koger Prop.*, 116 F.3d 1441 (11th Cir. 1997)(loss causation not proved, judgment for plaintiffs reversed and entered for defendants); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)(substantial jury verdict and JNOV motion denied; on appeal, judgment was reversed and the case dismissed – after 11 years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis on the basis of a 1994 Supreme Court opinion).

[5] As stated in a U.S. State Department circular, "[t]he United States is a party to two multilateral treaties on service of process, the Hague Service Convention and the Inter-American Service Convention." http://travel.state.gov/law/info/judicial/judicial_680.html. Taiwan is not a signatory to either treaty. *See*

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

serving Defendants has already proven difficult, time-consuming, and expensive in this case. Counsel for Plaintiffs believes that enforcement of a judgment could similarly prove time-consuming and expensive. Moreover, because Defendants in this case were served via alternative means, pursuant to this Court's September 16, 2008 Order, it is very possible that the Taiwan courts would refuse to recognize or enforce a judgment in Plaintiffs' favor for jurisdictional reasons. *See* Philip R. Weens, "Guidelines for Enforcing Money Judgments Abroad," *International Business Lawyer*, Vol. 21, No. 11, pp. 509-12, *available at* http://www.kslaw.com/library/pdf/guidelines.pdf; John Eastwood and Eve Chen, "Enforcing Foreign Court Judgments in Taiwan," *available at* http://www.mondaq.com/article.asp?articleid=28813.

Thus, additional litigation would be time-consuming, expensive, and would carry the real risk that a judgment in Plaintiffs' favor would either be overturned on appeal or would not be enforceable in Taiwan. Accordingly, this factor weighs in favor of the Settlement.

### 3. The Amount Offered in Settlement

Defendants' payment of $1,200,000 to the Class will provide a very fair and reasonable recovery under the circumstances. According to Plaintiffs' calculation, Class Members' estimated damages in this case are approximately $46,215,102. Binkow Decl. at ¶39. Thus, the gross recovery for Class Members will be approximately 2.6% of their damages under a rescissory measure of losses.

---

http://travel.state.gov/law/info/judicial/judicial_686.html (list of signatories to Hague Convention); http://travel.state.gov/law/info/judicial/judicial_687.html (list of signatories to Inter-American Service Convention). *See also* http://travel.state.gov/law/info/judicial/judicial_669.html (U.S. State Department circular entitled "Taiwan Judicial Assistance" makes no mention of any international agreement between the U.S. and Taiwan governing service of process).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

12

Settlements with similar percentages have been approved. *See* Stephanie Plancich et al., "2008 Trends: Subprime and Auction-Rate Cases Continue to Drive Filings, and Large Settlements Keep Averages High," at pp. 22-23, *available at* www.nera.com, (July 2008) (noting that "the median annual ratio of settlement size to investor losses has fallen from 7.1% in 1996 to the 2.2% to 3.2% range since 2002"); *In re Cendant Corp. Sec. Litig.*, 109 F.Supp. 2d 235, 245 (D.N.J. 2000)(citing: (1) study of 377 securities class action settlements which found that the average settlement comprises between 9% and 14% of claimed damages and (2) cases which settled for 1.6% - 10% of claimed damages). Furthermore, the settlement amount is fair, adequate and reasonable given the standard for evaluating settlement amounts in this Circuit. *See, e.g., Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.").

Moreover, Lead Plaintiffs' estimated recovery figure is based upon Plaintiffs' calculation of provable damages, and does not take into account the various defenses described above. If a jury chose to credit Defendants' expert over Lead Plaintiffs' expert, in whole or in part, with respect to whether a significant portion of the share price decline was causally related to Defendants' alleged misrepresentations and omissions, this could have substantially reduced the total amount of damages. Consequently, had the case been tried, there was a fair possibility that the damages ultimately proved could have been lower. *See, e.g., Heritage*, 2005 WL 1594403, at *7 (citing *In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999), where the court recounted several instances where settlement was rejected by a court only to have the recovery generated by continued litigation ultimately be less than the proposed settlement). The

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

Settlement amount of $1,200,000.00 is very fair and reasonable under the circumstances.

### 4.    Risk of Maintaining a Class Action

Even were a class to be certified outside the settlement proceedings herein, such an order would be conditional.  Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment."  *See, e.g., Viscaino v. U.S. District Court*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "before the decision on the merits").  Consequently, whereas maintaining a class action to judgment is an expensive and risky enterprise, a fair and reasonable settlement is preferable to years of uncertainty.  *See Heritage*, 2005 WL 1594403 at *6 ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.")(citing *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)(internal quotation omitted)).  Similarly, because the scope of a classwide judgment is a greater detriment to Defendants than an individual action, even after an adjudication on the merits, the risk of ultimately not prevailing remains high.  *See, e.g., National Rural*, 221 F.R.D. at 527 (if a class action obtains a successful judgment, an appeal is likely to follow); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997)(jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal). Accordingly, this factor supports approval of the Settlement.

### 5.    Stage of the Proceedings

At the time a settlement agreement in principle was reached, the Litigation had been active for approximately a year and a half.  In addition to reviewing a wide range of information about Himax and its products available from a variety of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

14

Case 2:20-cv-00649-MTJW   Document 125-9   Filed 05/06/22   Page 21 of 27
Case 2:07-cv-04891-DDP-AJW   Document 91-5   Filed 07/20/09   Page 20 of 26   Page ID
#:1088

public sources, such as SEC filings and analyst reports, Plaintiffs also consulted experts concerning the method for ascertaining the correct measure of damages. Binkow Decl. at ¶39. The parties had also engaged in substantial motion practice, including the 12(b)(5) Motion, Plaintiffs' Motion for Authorization of Alternative Service Pursuant to Fed. R. Civ. P. 4(f)(3) and 4(h)(2), and the 12(b)(6) Motion. Thus, the Litigation had proceeded to the point where both Lead Plaintiffs and Defendants "certainly ha[d] a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F. Supp. at 745.

While it is true that the Litigation settled relatively early – after oral arguments on the 12(b)(6) Motion, but before the Court had ruled on that motion – "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Mego*, 213 F.3d at 459 (internal quotations omitted); *see also In re Gulf Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588, 591 (S.D.N.Y. 1992) ("The stage of the proceedings is such that the facts have been substantially developed and it is possible to form an intelligent judgment about the likely success of class plaintiffs' case.  The compromise reached by Class Counsel has been neither arbitrary nor premature, but formed after careful investigation and weighing of facts...."). Accordingly, this factor weighs in favor of the Settlement.

### 6. Experienced Counsel Concur that the Settlement, Which was Negotiated in Good Faith and at Arm's-Length, is Fair, Reasonable, and Adequate

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis*, 87 F.R.D. at 18; *see also National Rural*, 221 F.R.D. at 528 ("'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation'") (quoting *In re Painewebber Ltd. P'ships*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

15

*Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.1997)). And "a presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Manual for Complex Litigation* (Third) § 30.42 (1995).

The Action has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in this area of litigation. On or about December 9, 2008, the parties submitted a Joint Status Report to this Court stating that they had reached an agreement in principle to settle the Action. The salient terms of the Settlement were set forth in a Memorandum of Understanding dated December 19, 2008. Furthermore, it took weeks of subsequent arm's-length negotiations for the parties to finalize and execute the Stipulation and Agreement of Settlement. Binkow Decl. at ¶5, 19. It is the view of counsel, based on their knowledge of the law and their investigation and consultation with damages experts, that the Settlement is a favorable result which is in the best interests of the Settlement Class. Accordingly, this factor weighs in favor of the Settlement.

**7.    The Reaction of the Class Members to the Settlement**

The Summary Notice of the Settlement was published in *Investor's Business Daily* and electronically disseminated over *Marketwire* on May 7, 2009, and 17,542 Claim Packets, including a detailed Notice describing the Settlement and Proof of Claim form, were sent to potential Class Members. Mulholland Decl., ¶¶5, 7. The date for filing objections to the Settlement or requests for exclusion was July 6, 2009; Preliminary Approval Order at ¶¶12, 17. To Plaintiffs' knowledge, there have been no objections or requests for exclusion filed. Mulholland Decl., ¶9.

In light of the widespread dissemination of the Notice of Settlement, the existence of no objectors and no current "opt-outs" clearly suggests that, under the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

16

Case 2:20-cv-00649-MTJW Document 125-9 Filed 05/06/22 Page 23 of 27
Case 2:07-cv-04891-DDP-AJW Document 91-5 Filed 07/20/09 Page 22 of 26 Page ID
#:1090

circumstances, the class perceives the proposed Settlement as fair, reasonable, and adequate. *See Hanlon*, 150 F.3d at 1027 (that the "overwhelming majority" stayed in the class is "objective positive commentary as to its fairness"); *Mego*, 213 F.3d at 459 (district court did not err in approving a settlement where there was a handful of objectors and one opt-out in a 5,400 member class); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (Twenty-nine objections out of 281 class members "strongly favors settlement").

## VI. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION AS FAIR AND ADEQUATE TO CLASS MEMBERS

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at \*11 (citing *Class Plaintiffs*, 955 F.2d at 1284 (internal citation omitted)). "To warrant approval, the plan of allocation must also meet the standards by which the...settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001)(citing *Class Plaintiffs*, 955 F.2d at 1284-85; *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at \*1 (N.D. Cal. June 18, 1994)). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *Oracle*, 1994 WL 502054, at \*1. Therefore, as noted in *MicroStrategy*, 148 F. Supp. 2d at 669:

> "a plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."

The proposed Plan of Allocation herein was fully described in the Notice

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

17

Case 2:20-cv-00648-MTJW   Document 125-9   Filed 05/06/22   Page 24 of 27   Page ID
Case 2:07-cv-04891-DDP-AJW   Document 91-5   Filed 07/20/09   Page 23 of 26   Page ID
#:1091

sent to the Class, at Paragraph 7 thereof. *See* Mulholland Decl., ¶7, Ex. C. It was formulated by Co-Lead Counsel, in consultation with an independent damages expert, with the goal of reimbursing Class members in a fair and reasonable manner. Each similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, $1.2 million plus interest, less attorneys' fees and expenses), with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants. Since the Plan of Allocation treats all Class Members' losses in the same manner, and there have been no objections raised to the Plan of Allocation, the Court should approve the plan as fair and adequate to the Class.

## VII.   CONCLUSION

Whereas both the Settlement and the Plan of Allocation are fair, reasonable, and adequate, Lead Plaintiffs respectfully request that each be approved by this Court.

Dated: July 20, 2009                  Respectfully submitted,

GLANCY BINKOW & GOLDBERG LLP

By: ***S/Peter A. Binkow***

Lionel Z. Glancy
Peter A. Binkow
Andy Sohrn
Katherine C. Den Bleyker
1801 Avenue of the Stars, Suite 311
Los Angeles, California  90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

ROSEN LAW FIRM
Laurence Rosen
350 Fifth Avenue, Suite 5508
New York, NY 10118

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION

Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827

*Co-Lead Counsel for Plaintiffs*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

19

## PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 08-02 AND UPON NON-REGISTERED ENTITIES

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On July 20, 2009, I caused to be served the following documents:

| 1 | PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
|---|---|
| 2 | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION |
| 3 | DECLARATION OF PETER A. BINKOW IN SUPPORT OF PLAINTIFFS' COUNSEL'S APPLICATION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND FOR REIMBURSEMENT OF EXPENSES |
| 4 | [PROPOSED] ORDER AND FINAL JUDGMENT |

By posting this document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically, or by such other means of service as indicated herein below:

### SEE SERVICE LIST

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 20, 2009, at Los Angeles, California.

*S/Sasha A. Radcliffe*
Sasha A. Radcliffe

**SERVICE LIST**

Peter A Binkow     pbinkow@glancylaw.com

Brian Danitz     bdanitz@wsgr.com

Lionel Z Glancy     lglancy@glancylaw.com

Michael M Goldberg     mmgoldberg@glancylaw.com, info@glancylaw.com

Katherine L Henderson     khenderson@wsgr.com

Laurence M Rosen     lrosen@rosenlegal.com

William F Salle     wfslaw@yahoo.com

Andy Sohrn     asohrn@glancylaw.com

Robert M Zabb     rzabb@glancylaw.com

Notice has been effected as follows on non-ECF participants via U.S. mail:

Harry Mittleman
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

CERTIFICATE OF SERVICE

Page 2