Gary F. Urman (AZ 11748)
gurman@dmyl.com
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 200
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585

*Attorneys for Class Representative DeKalb County*
*Pension Fund and Liaison Counsel for the Class*

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
        rkillorin@faruqilaw.com
        jwilson@faruqilaw.com

*Attorneys for Class Representative DeKalb County*
*Pension Fund and Lead Counsel for the Class*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br>V.<br><br>Mesa Air Group, Inc.; Jonathan G. Ornstein; Michael J. Lotz; Daniel J. Altobello; Ellen N. Artist; Mitchell Gordon; Dana J. Lockhart; G. Grant Lyon; Giacomo Picco; Harvey Schiller; Don Skiados; Raymond James & Associates, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Cowen and Company, LLC; Stifel, Nicolaus & Company, Incorporated; and Imperial Capital, LLC,<br>Defendants. | No. CV-20-00648-PHX-MTL<br><br>**CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>CLASS ACTION |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 3

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 3

ARGUMENT ......................................................................................................... 5

I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ..................... 5

   A.    The Proposed Settlement Is Not The Result of Collusion ........................... 5

   B.    The Proposed Settlement is Fair, Adequate, And Reasonable ..................... 6

      1.    The Class Has Been Adequately Represented ................................... 7

      2.    The Proposed Settlement Was Negotiated at Arm's Length ............. 7

      3.    The Relief Provided for the Class Is Adequate ................................. 8

         a.    The Costs, Risks, and Delay of Trial and Appeal .................. 8

         b.    The Proposed Method for Distributing Relief Is Effective ... 10

         c.    Terms of Attorney's Fees and Timing of Payment ............... 11

         d.    Related Agreements .............................................................. 12

      4.    The Settlement Treats Class Members Equitably ........................... 12

      5.    Stage of the Proceedings and Extent of Discovery Completed ....... 13

      6.    The Risks of Maintaining the Class Action Through Trial.............. 13

      7.    The Experience and Views of Counsel ........................................... 13

      8.    The Reaction of the Class ................................................................ 14

II.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE 15

III.  THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE
      PROCESS ................................................................................................. 16

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*In re Am. Apparel, Inc. S'holder Litig.*,
    No. CV 10-06352 MMM, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ................ 15

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011) ....................................................................... 5, 6

*In re Celera Corp. Sec. Litig.*,
    No. 5:10-cv-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ......... 9, 14, 17

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ...................... 7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ......................................................................... 8

*DeStefano v. Zynga, Inc.*,
    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............... 5, 13, 15

*In re GSE Bonds Antitrust Litig.*,
    No. 19-cv-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ....................... 7

*Hayes v. MagnaChip Semiconductor Corp.*,
    No.14-cv-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ....................... 5

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................... 5, 16

*In re High-Tech Emp. Antitrust Litig.*,
    No. 11-CV-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ................... 15

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007).......................................................... 14

*Johansson-Dohrmann v. Cbr Sys., Inc.*,
    No. 12-cv-1115-MMA (BGS), 2013 WL 3864341 (S.D. Cal. July 24, 2013)............. 9

*Klee v. Nissan N. Am., Inc.*,
    No. CV 12-08238 AWT, 2015 WL 4538426 (C.D. Cal. July 7, 2015)....................... 6

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ....................................................................... 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 13

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .................. 8

*Nobles v. MBNA Corp.*,
   No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ...................... 5, 10

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ................................................................... 9

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 14

*Patel v. Axesstel, Inc.*,
   No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) .......... 16

*Ramirez v. Ghilotti Bros. Inc.*,
   No. C 12-04590 CRB, 2014 WL 1607448 (N.D. Cal. Apr. 21, 2014) ...................... 13

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA, 2013 WL 12303367 (C.D. Cal. July 9, 2013) .......................... 11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   No. 3:17-cv-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............. 12

*Rieckborn v. Velti PLC*,
   No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...................... 13

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................... 8

*Villegas v. J.P. Morgan Chase & Co.*,
   No. CV 09-00261 SBA (EMC),
   2012 WL 58783907 (N.D. Cal. Nov. 21, 2012). ........................................... 11

**Statutes**

15 U.S.C. § 77z-1(a)(4) ................................................................................. 12

**Other Authorities**

Rule 23 ................................................................................................... *passim*

iii

**PRELIMINARY STATEMENT**

Class Representative DeKalb County Pension Fund ("Plaintiff" or "DeKalb") on behalf of itself and the putative Class, respectfully moves this Court for an Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (a) granting final approval of the proposed Settlement of the above-captioned securities class action (the "Action") on the terms set forth in the Stipulation; (b) finding that the form and manner of giving notice of the Settlement to the Class satisfied due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (c) granting final approval of the proposed Plan of Allocation.

As discussed in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion" or "PA Motion"), Doc. 125, Plaintiff, on behalf of itself, and the putative Class, and Defendants Mesa Air Group, Inc. ("Mesa" or the "Company"), Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, Don Skiados (collectively, the "Mesa Defendants"), Raymond James & Associates, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Cowen and Company, LLC, Stifel, Nicolaus & Company, Incorporated, and Imperial Capital, LLC (collectively, the "Underwriter Defendants," together with the Mesa Defendants, the "Defendants"), have reached a proposed Settlement for $5,000,000 that, if given final approval, will resolve all claims in this Action.[1]  The Settlement represents a favorable result for the class in light of the significant risk that a smaller recovery—or no recovery at all—might be achieved after further litigation, particularly in light of the risks posed by continued litigation.

---

[1]   All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated May 6, 2022 (the "Stipulation" or "Stip."), Doc. 124.  "Settlement" refers to the settlement set forth in the Stipulation.  All internal quotations marks and citations are omitted and all emphases are added unless otherwise noted.

1

1    The Settlement was reached only after nearly two years of hard-fought litigation

2  and resulted from arm's length negotiations with an accomplished mediator among

3  experienced and capable counsel with a comprehensive understanding of the merits and

4  value of the claims asserted.

5    The Class's reaction to the Settlement and Plan of Allocation has been positive to

6  date.  Pursuant to the Order preliminarily approving the settlement ("Preliminary

7  Approval Order" or "PA Order") (Doc. 137), the Court-approved Claims Administrator,

8  A.B. Data, Ltd., has, *inter alia*, mailed over 9,000 copies of the Notice of Pendency and

9  Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release

10  form ("Claim Form") to potential Class Members and nominees, posted the requisite

11  documents to the Action's settlement website, and caused the Summary Notice to be

12  published in Investor's Business Daily and transmitted over GlobeNewswire.  Wilson

13  Decl. ¶¶ 52-56.[2]  Although the deadline for Class Members to object to the Settlement or

14  request exclusion has not yet passed, thus far no requests for exclusion or objections have

15  been received.  *Id.* ¶¶ 57-59.

16    In light of the considerations discussed herein, Plaintiff and Lead Counsel submit

17  that the Settlement is fair, reasonable, and adequate; satisfies the standards of Rule 23,

18  the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 77z-1,

19  the local rules of the District of Arizona, and due process; and provides a favorable

20  recovery for the Settlement Class.  Plaintiff accordingly requests that the Court grant the

21  relief requested herein.

22    This motion is based upon the below memorandum of points and authorities; the

23  Wilson Declaration, with attached exhibits, filed herewith; the Declaration of Jack

24  Ewashko Regarding: (A) Mailing of the Notice Packet; (B) Publication of the Summary

25  Notice; and (C) Report on Requests for Exclusion and Objections Received, with

26

27  [2]    "Wilson Declaration" or "Wilson Decl." refers to the Declaration of James M.
Wilson, Jr., with attached exhibits, filed herewith

28

1   attached exhibits, filed herewith; the Affidavit of Gary Urman ("Urman Aff."), with

2   attached exhibits, filed herewith; the pleadings and records on file in this Action, and

3   other such matters and argument as the Court may consider at the Settlement Hearing.

4   **MEMORANDUM OF POINTS AND AUTHORITIES**

5   **FACTUAL AND PROCEDURAL BACKGROUND**

6        To avoid undue repetition, Plaintiff respectfully refers the Court to its Motion for

7   Preliminary Approval of Settlement and the Wilson Declaration for a more detailed

8   description of Plaintiff's claims and the prosecution of this Action. *See* Doc. 125 and

9   Wilson Decl. ¶¶ 11-49.

10        Briefly, the initial federal complaint in this action was filed on April 1, 2020. Doc.

11   1.[3] On June 22, 2020, the Court appointed DeKalb as Lead Plaintiff, the Faruqi Firm as

12   Lead Counsel, and the DeConcini Firm as Liaison Counsel. Doc. 33 at 4.

13        Following appointment, Plaintiff filed an amended operative complaint ("AC") on

14   August 17, 2020, alleging that Mesa's Registration Statement for its IPO contained

15   material misstatements and omissions in violation of Sections 11, 12(a)(2), and 15 of the

16   Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), 77o), as well as violations of Items 303 (17

17   C.F.R. § 229.303(a)(3)(ii)) and 503 (17 C.F.R. § 229.503(c)) by omitting adverse trends

18   and risks from the Registration Statement. Doc. 52. On October 1, 2020, Defendants

19   moved to dismiss the AC, and submitted a Notice of Incorporation by Reference and

20   Request for Judicial Notice ("Request for Judicial Notice" or "RJN") in connection

21   therewith. *See* Docs. 56 to 59. The Court heard in-person oral argument on July 15,

22   2021. Doc. 75. On July 22, 2021, the Court denied the motion to dismiss in part and

23   granted it in part, and granted the RJN in part. Doc. 81 ("Motion to Dismiss Order" or

24   "MTD Order"). After vigorous negotiations over the schedule in this case, necessitating

25

26   [3]     Shortly before that complaint was filed, a similar securities class action was filed in
Arizona state court in *City of Pittsburgh Comprehensive Municipal Pension Trust Fund v.*

27   *Mesa Air Group, Inc., et al.*, Case No. CV2020-003927 (Superior Court of Arizona in and
for the County of Maricopa, filed March 24, 2020).

28

3

1   the filing of a Joint Proposed Case Management Report, a supplemental Rule 26(f)

2   report, and argument in two scheduling conferences, the Court issued its Scheduling

3   Order on October 15, 2021.  Doc. 101.

4          Thereafter, the Parties engaged in discovery, which included the exchange of Rule

5   26 initial disclosures, and the service of interrogatories and document demands.  Wilson

6   Decl. ¶ 26.  On December 31, 2021, the parties entered into a Joint Stipulation regarding

7   Class Certification (Doc. 108), which was adopted by the Court on January 24, 2022.

8   Doc. 113.  On January 5, 2022, Defendants filed a Motion for Leave to File an Early

9   Motion for Summary Judgment based on negative causation ("Motion for Leave"), which

10  Plaintiff opposed.  *See* Docs. 109 to 112 and 116 to 118.  On March 1, 2022, the Court

11  entered an Order denying Defendants' Motion for Leave, without prejudice.  Doc. 120.

12         On March 2, 2022, the Parties engaged in a mediation session before Jed D.

13  Melnick, Esq., of JAMS Mediation Services, a highly experienced securities litigation

14  mediator.  Wilson Decl. ¶ 32.  The mediation was preceded by submission of confidential

15  mediation statements and exhibits.  *Id.*  The Parties came to an agreement in principle

16  during the mediation session and thereafter Lead Counsel reviewed over 70,000 pages of

17  confirmatory discovery to ensure that the Settlement was fair, reasonable, and adequate.

18  *Id.*  The complete terms of the Settlement negotiated by the Parties are set forth in the

19  Stipulation and are subject to final approval by the Court.  *Id.* ¶¶ 45-49.

20         On May 6, 2022, Plaintiff filed the Preliminary Approval Motion.  Doc. 125.

21  Following a hearing on October 28, 2022, the Court issued the Preliminary Approval

22  Order on October 28, 2022, which approved the form and manner of providing notice to

23  the Settlement Class and set a hearing date for the Final Approval Hearing, as well as

24  deadlines related thereto.  Doc. 137.  The details of the notice program's progress to date

25  is explained in further detail below.

26

27

28

**ARGUMENT**

**I.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

Rule 23(e) provides that a class action settlement must receive court approval.  A court should approve a class action settlement if it determines that the settlement is "fair, reasonable, and adequate[.]"  Rule 23(e)(2).  While the authority to grant such approval lies within the court's discretion, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).  Indeed, as one court has explained, "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *1 (N.D. Cal. June 29, 2009).  Thus, when deciding whether to approve a settlement, the court must ensure that: (1) "the settlement is not the product of collusion among the negotiating parties" and (2) that the "settlement is fundamentally fair, adequate, and reasonable."  *Hayes v. MagnaChip Semiconductor Corp.*, No.14-cv-01160-JST, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

**A.      The Proposed Settlement Is Not The Result of Collusion**

As the Ninth Circuit explained in *In re Bluetooth Headset Products Liability Litigation*, the court must analyze whether the settlement was reached as a result of collusion between the parties.  *DeStefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016) (citing *Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011)).  As Plaintiff explained throughout its Preliminary Approval Motion, there was no collusion here.  Plaintiff and Lead Counsel agreed to settle only after engaging in hard-fought litigation and in a mediation process overseen by an experienced mediator.  Doc. No. 125 at 7-11.

Additionally, none of the subtle factors indicating collusion are present either.  *See Bluetooth*, 654 F.3d at 947 (identifying three subtle signs of collusion: (1) when class counsel receives a disproportionate percentage of the settlement; (2) when the parties negotiate a "clear sailing" agreement separate from the settlement fund; and (3) when the parties arrange for fees not paid to revert to defendants).  Lead Counsel is requesting an award of attorneys' fees equal to 25% of the Settlement Fund, which is based on the benchmark in this Circuit and often awarded in similar actions, thus weighing against a finding of collusion. *See* § I.B.3.c, *infra*.  There is also no "clear sailing" agreement—*i.e.*, an "arrangement providing for the payment of attorneys' fees separate and apart from class funds[.]"  *Bluetooth*, 654 F.3d at 947.  The attorneys' fees are to be paid only out of the Settlement Fund, at a rate approved by the Court, and any fees requested but denied by the Court would remain in the Class's Settlement Fund.  *See* Stip. ¶¶ 13-20.  Even if there were such an agreement, "the absence of a 'kicker provision' stating that all fees not awarded would revert to defendants, weighs against a finding of collusion."  *Klee v. Nissan N. Am., Inc*., No. CV 12-08238 AWT (PJWx), 2015 WL 4538426, at *10 (C.D. Cal. July 7, 2015).

## B.   The Proposed Settlement is Fair, Adequate, And Reasonable

To determine whether a proposed settlement is fair, adequate, and reasonable, courts consider the factors in recently amended Rule 23(e)(2), which provides that a court may grant final approval of a settlement only after a hearing and only on finding that it is fair, reasonable, and adequate after considering the factors set forth therein.  *See* PA Mot. 6.  Amended Rule 23(e)(2)'s factors do not displace the factors that the Ninth Circuit previously used to determine whether the settlement is fair, reasonable, and adequate, several of which overlap with Rule 23(e)(2)'s factors.  *See id.*

As explained in the Preliminary Approval Motion, all of the requirements imposed by Rule 23(e)(2) and the relevant Ninth Circuit factors have been met.  Courts that have analyzed proposed settlements following the amendments to Rule 23 have found that the

factors are usually satisfied where little has changed between preliminary and final approval.  *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the conclusions the court made in granting preliminary approval "stand and counsel equally in favor of final approval now"); *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) (stating that the Court's previous orders granting preliminary approval of the settlements at issue already detailed why the relevant factors support approval, readopting that analysis at the final approval stage, and focusing only on "those few developments since" preliminary approval that impact the analysis).  Nevertheless, the factors are briefly analyzed below.

### 1.    The Class Has Been Adequately Represented

Rule 23(e)(2)(A) is satisfied because Plaintiff and Plaintiff's Counsel have adequately represented the Class throughout the litigation and will continue to do so through the Settlement administration process.  Plaintiff's interests are directly aligned with those of other Class members, as it claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants.  *See* PA Mot. 7-8 (explaining Plaintiff's adequacy).  Additionally, Plaintiff has actively overseen the litigation every step of the way, having, among other things, reviewed filings in this Action, communicated with counsel about all aspects of the case, responded to discovery requests, and authorized the proposed settlement.  *See* Wilson Decl., Ex. 6 (Plaintiff's declaration).  Furthermore, Plaintiff's Counsel has zealously represented the Class at all times.  *See generally* Wilson Decl.; *see also* PA Mot. 7-8, 15-16 (explaining counsels' adequacy).

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the result of arm's length negotiations between Lead Counsel and Defendants' counsel.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive,

negotiated resolution" in approving a class action settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) (finding the fact that the settlement "was a product of arm's length negotiation before a mediator" relevant to its decision to grant final approval).

As described in the Preliminary Approval Motion and the Wilson Declaration, the Settlement is the product of extensive arm's length negotiations among counsel with significant experience in securities class action litigation, and was reached following mediation with an experienced mediator.  *See* Wilson Decl. ¶¶ 31-37.  Lead Counsel thoroughly investigated the facts and law, drafted the AC, and vigorously opposed Defendants' motion to dismiss and RJN, plan for bifurcation of discovery, and Motion for Leave.  *Id.* ¶¶14-30.  After submitting mediation statements and exhibits, the Parties engaged in a mediation session with the assistance of Jed Melnick, a well-respected mediator.  *See id*. ¶¶ 31-32.  After debating their positions during the mediation session, the Parties reached an agreement in principle to settle the Action and, following extensive confirmatory discovery, came to a final agreement on the full terms of the Settlement. *See id.* ¶¶ 33-37.  Thus, the Settlement was plainly the result of hard-fought, arm's length negotiations among the parties.

### 3. The Relief Provided for the Class Is Adequate

#### a. The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal.  This inquiry overlaps with the following Ninth Circuit factors: "the strength of the plaintiffs' case;" "the risk, expense, complexity, and likely duration of further litigation;" and "the amount offered in settlement[.]"  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).

As the Ninth Circuit has noted, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. . . ."; rather, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F.2d 615, 624-25 (9th Cir. 1982) . Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). When determining the reasonableness of the settlement, "the Court must balance against the continuing risks of litigation (including the strengths and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12-cv-1115-MMA (BGS), 2013 WL 3864341, at *4 (S.D. Cal. July 24, 2013).  While "there is no particular formula by which the outcome must be tested" when "assessing the strength of a plaintiff's case," "[t]he court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 WL 7351449, at *5 (N.D. Cal. Nov. 20, 2015).

As explained in the Preliminary Approval Motion, the $5,000,000 Settlement provides an immediate benefit to the class and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after protracted litigation.  Plaintiff has always believed that its claims have merit and would be proven through fact discovery.  *See* Wilson Decl. ¶ 38.  Despite this confidence, Plaintiff is aware of the substantial risks and expenses that would be presented by further litigation based on its work to date.  *Id.* ¶¶ 38-39.  For example, Defendants have maintained that they have a complete negative causation defense under Section 11(e) of the Securities Act.  *See id.*

1 ¶ 40; PA Mot. 9.  If Defendants successfully asserted this defense at summary judgment,

2 or trial, the Class would have no damages.  *See* Wilson Decl. ¶ 40.

3       It is well known that class action litigation is inherently complex, *see Nobles*, 2009

4 WL 1854965, at *2, and this case is no exception.  As explained in the Preliminary

5 Approval Motion and the Wilson Declaration, the motion practice surrounding case

6 management and the Motion for Leave plainly demonstrates the cost, risks, and delay

7 present in this Action.  There is no doubt that Defendants would continue to aggressively

8 litigate were this Action to continue.  *See* Wilson Decl. ¶¶ 39-40.  Thus, even after the

9 considerable time and expense of additional discovery, which would span many more

10 months, there is a chance Plaintiff's claims could be dismissed at summary judgment.  *Id.*

11 Even if Plaintiff's claims survived summary judgment, a trial in the Action would be time

12 consuming, expensive, and expend judicial resources.  *Id.*

13       In light of the foregoing, the Settlement Amount of $5,000,000 provides a

14 favorable result for the Class and is well within the range of reasonableness.  *Id.* ¶¶ 45-

15 49, 70.  It represents approximately 5.3% of the $93.9 million in maximum possible

16 statutory damages estimated by Plaintiff's damages consultant before taking into account

17 Defendants' defense of negative causation, and approximately 16.6% of the $30 million

18 in maximum damages estimated by Defendants if Plaintiff was able to overcome

19 Defendants' negative causation defense not premised on lack of stock price reaction.  *See*

20 *id.* ¶ 70; PA Mot. 11.  This is well within the range of typical recoveries in complex

21 securities litigation such as this.  *See* PA Mot. 11-12 (citing caselaw); Docs. 125-4 to

22 125-9 (caselaw submitted with PA Motion).

23       **b.**    **The Proposed Method for Distributing Relief Is Effective**

24       Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of

25 distributing relief to the class is effective, including the processing of class members'

26 claims.  The method used in this Action is traditionally used in securities class actions.

27

28

10

1    Beginning on November 18, 2022, copies of the Notice and Claim Form were

2    mailed to potential Class Members and nominees, and the Summary Notice was

3    published in Investor's Business Daily and transmitted over GlobeNewswire on

4    November 28, 2022. Wilson Decl. ¶¶ 52-53, 55. Class Members who want to object to

5    the Settlement or request exclusion from the Class are required to do so by March 17,

6    2023. *See id.*, Ex. 1 (PA Order) at ¶ 18. Although the time for objections and exclusions

7    has not yet expired, no requests for exclusion or objections to the Settlement have been

8    received. *See* Wilson Decl. ¶¶ 57-58. Thus, the reaction of the Class so far confirms the

9    adequacy of the Settlement. *See Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA

10   (SSx), 2013 WL 12303367, at *8 (C.D. Cal. July 9, 2013) (explaining that "[i]f only a

11   small number of objections are received, that fact can be viewed as indicative of the

12   adequacy of the settlement[]" and finding that the class's reaction was "overall positive"

13   where there were five requests for exclusion and one objection).

14   Additionally, the Settlement's claims process is similar to the process commonly

15   used in securities class action settlements. The claims process provides for cash

16   payments to eligible class members based on their pro rata share of the recovery as

17   established by the trading information eligible Class Members provide. *See* PA Motion

18   12. This factor supports final approval for the same reason that it supported preliminary

19   approval.

20                    **c.    Terms of Attorney's Fees and Timing of Payment**

21   Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed

22   award of attorney's fees, including timing of payment[.]" Consistent with the Notice, and

23   as discussed in the Fee Motion, Lead Counsel seeks an award of attorneys' fees in an

24   amount of 25% of the Settlement Fund, which is the benchmark award in this Circuit.

25   *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL

26   5878390, at *7 (N.D. Cal. Nov. 21, 2012). This amount is supported by Plaintiff's

27   Counsel's lodestar, which is $1,257,537 based on 1,838.1 hours of attorney and

28

11

1  professional staff time and results in a negative multiplier.  *See* Wilson Decl. ¶¶ 73-74.

2      As explained in the Preliminary Approval Motion, the Stipulation provides that

3  attorney's fees are to be paid "immediately after the Court executes an order awarding

4  such fees and expenses notwithstanding any objection thereto[,]" subject to the obligation

5  to repay as described therein. Stip. ¶¶ 13-20.  The timing of payment is standard in class

6  action cases and typically approved.  *See* PA Motion 13.  Lead Counsel respectfully

7  submits that the contemplated attorneys' fee award and the timing of payment are

8  reasonable and do not weigh against final approval.

9                      **d.      Related Agreements**

10     Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's

11  adequacy in light of any agreements made in connection with it.  As disclosed in the

12  Preliminary Approval Motion, the only such agreements here are the Confidential

13  Supplemental Agreement Regarding Requests for Exclusion ("Supplemental

14  Agreement") and the escrow agreement.  *See* PA Motion 13-14.

15          **4.      The Settlement Treats Class Members Equitably**

16     Rule 23(e)(2)(D) requires the court to consider whether "the proposal treats class

17  members equitably relative to each other."  The Plan of Allocation does just that,

18  calculating each Authorized Claimant's losses based on the timing of their purchases and

19  sales of Mesa securities and providing that each Authorized Claimant shall receive their

20  pro rata share of the Net Settlement Fund based on their recognized losses.  Plaintiff's

21  request for an award of $5,382.18 pursuant to 15 U.S.C. § 77z-1(a)(4) is reasonable, as

22  explained in the accompanying Fee Motion,[4] and does not change this conclusion.  *See*

23  Fee Motion at 2, 14-15; *see In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-cv-182-

24  BTM-RBB, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020) (finding that a reasonable

25

26  ――――――――――――――
    [4]    "Fee Motion" refers to Lead Counsel's Motion for an Award of Attorneys' Fees,
27  Reimbursement of Expenses, and an Award for Lead Plaintiff, filed contemporaneously
    herewith.

28
                                 12

service award to lead plaintiff "does not constitute inequitable treatment of class

members").

**5.**        **Stage of the Proceedings and Extent of Discovery Completed**

When determining whether the stage of the proceedings and extent of discovery

completed supports settlement, "the court focuses on whether the parties carefully

investigated the claims before reaching a resolution." *Zynga*, 2016 WL 537946, at *12.

While the litigation settled in its early stages, the Parties garnered substantial information

related to the Action and their respective claims and defenses prior to engaging in

settlement negotiations, and Lead Counsel reviewed over 70,000 pages of confirmatory

discovery to ensure that the Settlement was fair, reasonable, and adequate before entering

into the Stipulation.  Wilson Decl. ¶¶ 31-44.  Thus, the parties had sufficient information

to make an informed assessment of the Action's strengths and weaknesses and the

Settlement's fairness.  *See Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL

468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding that "[d]espite reaching settlement

relatively early in the life span of this case, the Settling Parties have shown that their

decision to settle was made on the basis of a thorough understanding of the relevant facts

and law[,]" even though settlement was reached before the filing of a motion to dismiss).

Thus, this factor supports final approval.

**6.**        **The Risks of Maintaining the Class Action Through Trial**

As explained in the Preliminary Approval Motion, the Class was certified on

January 24, 2022, although there is always a risk that the Class could be decertified later.

*See* Rule 23(c)(1)(C).

**7.**        **The Experience and Views of Counsel**

"Great weight is accorded to the recommendation of counsel, who are most

closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms.*

*Coop. v.  DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also Ramirez v.*

*Ghilotti Bros. Inc.*, No. C 12-04590 CRB, 2014 WL 1607448, at *1 (N.D. Cal. Apr. 21,

2014) (finding that experienced class counsel's support for the settlement, which "was reached after arm's length negotiations," weighed in favor of settlement).

As set forth in detail in the Faruqi Firm's resume, Lead Counsel is a national law firm that has substantial experience litigating securities class action lawsuits. *See* Wilson Decl., Ex. 2. Likewise, the DeConcini Firm has substantial complex litigation experience and has served the Class ably as Liaison Counsel. *See* Urman Aff. ¶ 2. Defendants were also represented by highly reputable firms. Lead Counsel, having carefully considered and evaluated the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likelihood of subsequent appellate proceedings even if Plaintiff prevailed at trial, concluded that settlement here is a favorable result for the Class. *See* Wilson Decl. ¶¶ 38-44. Thus, since "[b]oth Parties are represented by experienced counsel[,] . . . their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to [a] great deal of weight." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

### 8.   The Reaction of the Class

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class [action settlement] are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). "[T]he willingness of the overwhelming majority of the class to approve the offer and remain part of the class presents at least some objective positive commentary as to its fairness." *Celera*, 2015 WL 7351449, at *7. To date, a total of 9,661 copies of the Notice and Claim Form have been mailed to potential Class members and nominees, and the Summary Notice was published in Investor's Business Daily and transmitted over GlobeNewswire on November 28, 2022. *See* Wilson Decl. ¶¶ 53-55. Despite this large number of potential Class Members, no objections or requests for exclusion have been received. Thus, although the time for

14

1    objections and exclusions has not yet expired, the reaction of the Class so far confirms

2    the adequacy of the Settlement.  *See id.* ¶¶ 57-58; *see also Zynga*, 2016 WL 537946, at

3    *14 (stating that a low number of exclusions supports a settlement's reasonableness).[5]

4    **II.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
          ADEQUATE**

5

6          The Court has broad discretion in approving a plan of allocation.  "Approval of a

7    plan of allocation of settlement proceeds in a class action under FRCP 23 is governed by

8    the same standards of review applicable to approval of the settlement as a whole: the plan

9    must be fair, reasonable, and adequate."  *In re Am. Apparel, Inc. S'holder Litig.*, No. CV

10   10-06352 MMM (JCGx), 2014 WL 10212865, at *18 (C.D. Cal. July 28, 2014).  "A plan

11   of allocation that reimburses class members based on the extent of their injuries is

12   generally reasonable."  *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK,

13   2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015).

14         In developing the Plan of Allocation, Plaintiff enlisted the help of a damages

15   consultant who is familiar with the damage issues in this Action, as well as the help of the

16   Claims Administrator which has experience implementing plans of allocation in

17   securities class actions.  *See* Wilson Decl. ¶ 64.  The Plan of Allocation's objective is to

18   distribute a pro rata share of the Net Settlement Fund to Authorized Claimants based

19   upon their claimed losses consistent with the AC's allegations.  *See id*. ¶ 62.  Specifically,

20   after Authorized Claimants submit their Claim Forms and supporting documentation, the

21   Claims Administrator will calculate their Recognized Loss according to a formula that

22   will take into account when and at what price they purchased Mesa securities.  *See id*. ¶

23   63.

24

25

26   [5]    One of the Ninth Circuit factors used to determine whether a settlement if fair,
        reasonable, and adequate—the "presence of a governmental participant"—is irrelevant

27   because there is no governmental entity involved.  *Zynga*, 2016 WL 537946, at *8.

28

Thus, "the plan allocates the settlement fund proportional to the actual injury of each class member.  Accordingly, the plan of allocation is fair, reasonable and adequate." *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015); *see also Heritage*, 2005 WL 1594403, at *11 ("[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

The terms of the Plan of Allocation were fully disclosed in the Notice that was mailed to 9,661 potential Class Members and nominees and posted on the settlement website.  *See* Wilson Decl. ¶¶ 53, 55.  While Class Members have until March 17, 2023 to object, there have been no objections to the Plan to date.  *See id.* ¶ 57-58, 65.  Thus, Plaintiff respectfully requests that the Court approve the Plan of Allocation as fair, reasonable, and adequate.

## III.  THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS

Notice of a class action settlement must meet the requirements of Rule 23, the PSLRA, and the due process clause of the United States Constitution.  Rules 23(c)(2)(B) and 23(e)(1)(B) require that the Court direct to class members "the best notice that is practicable under the circumstances" and "in a reasonable manner[.]"  The PSLRA and the due process clause impose similar requirements.  *See* PA Mot. 16.

The Court preliminarily approved the form, content, and method of dissemination of the notices provided to potential Class Members.  *See* PA Order ¶ 5.  Pursuant to the Preliminary Approval Order, the Notice and Proof of Claim Form have been mailed to 9,661 potential Class Members and nominees beginning on November 18, 2022.  *See* Wilson Decl. ¶ 53.

As described in the Preliminary Approval Motion, the Notice included the information required by Rule 23, the due process clause, and the PSLRA.  *See* PA Motion 16-17.  Courts in this Circuit have routinely found that this method of mailing, publication, and Internet notice satisfies the applicable notice standards in similar class actions.  This manner of providing notice represents the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See, e.g., Celera*, 2015 WL 7351449, at *5 (finding a similar notice plan appropriate).

Thus, Plaintiff respectfully requests that the Court find the notice program satisfies the requirements of Rule 23, the PSLRA, and due process.

**CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that the Court: (a) grant final approval of the proposed Settlement; (b) find that the form and manner of giving notice of the Settlement to the Class satisfied due process, Rule 23, and the PSLRA; and (c) grant approval of the Plan of Allocation.

Dated: February 10, 2023                         By: */s/ James M. Wilson, Jr.*
                                                          James M. Wilson, Jr.

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
              rkillorin@faruqilaw.com
              jwilson@faruqilaw.com

*Attorneys for Class Representative DeKalb County Pension Fund and Lead Counsel for the Class*

Gary F. Urman
**DECONCINI MCDONALD YETWIN & LACY, P.C.**

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2525 East Broadway, Suite 200
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585
Email: gurman@dmyl.com

*Attorneys for Class Representative DeKalb
County Pension Fund and Liaison Counsel for
the Class*