1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gary F. Urman (AZ 11748)
gurman@dmyl.com
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 200
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585

*Attorneys for Class Representative DeKalb County*
*Pension Fund and Liaison Counsel for the Class*

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
         rkillorin@faruqilaw.com
         jwilson@faruqilaw.com

*Attorneys for Class Representative DeKalb County*
*Pension Fund and Lead Counsel for the Class*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br>V.<br>Mesa Air Group, Inc.; Jonathan G. Ornstein; Michael J. Lotz; Daniel J. Altobello; Ellen N. Artist; Mitchell Gordon; Dana J. Lockhart; G. Grant Lyon; Giacomo Picco; Harvey Schiller; Don Skiados; Raymond James & Associates, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Cowen and Company, LLC; Stifel, Nicolaus & Company, Incorporated; and Imperial Capital, LLC,<br>Defendants. | No. CV-20-00648-PHX-MTL<br><br>**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AN AWARD TO LEAD PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>CLASS ACTION |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

FACTUAL AND PROCEDURAL BACKGROUND .............................................. 2

ARGUMENT ............................................................................................................... 3

I.      ELIGIBILITY ................................................................................................... 3

II.     ENTITLEMENT ............................................................................................... 3

III.    REASONABLENESS OF REQUESTED AWARD ...................................... 3

        A.      Percentage Of the Fund Is The Preferred Method ...................... 3

        B.      The Requested Fee of 25% is Reasonable ................................... 4

                1.      Plaintiff's Counsel Obtained a Favorable Result for the Class.................. 4

                2.      Litigation of this Action Involved Significant Risks ................................. 6

                3.      Plaintiff's Counsel Provided Quality Representation ................................ 6

                4.      Plaintiff's Counsel Took on a Financial Burden........................................ 8

                5.      The Fee Is In Line With the Customary Fee in Similar Actions ............... 9

                6.      The Requested Fee is Reasonable Under the Lodestar Cross-Check ....... 10

                7.      Information Required By Local Rule 54.2(c)(3) ...................................... 12

IV.     THE LITIGATION EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED ................................................................. 13

V.      THE REQUESTED AWARD FOR PLAINTIFF IS REASONABLE.................. 14

CONCLUSION ................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                  **Page(s)**

3

*In re Am. Apparel, Inc. S'holder Litig.,*
    No. CV 10-06352 MMM, 2014 WL 10212865 (C.D. Cal. July 28, 2014) .............. 7, 9

4

5

*In re Amgen Inc. Sec. Litig.,*
    No. CV 7-2536 PSG, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...................... 15

6

7

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ............................................................................ 4, 11

8

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................................... 3

9

10

*In re CV Therapeutics, Inc., Sec. Litig.,*
    No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ........................... 9, 14

11

12

*DeStefano v. Zynga, Inc.,*
    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........ 4, 6, 9, 10, 13

13

14

*In re DJ Orthopedics, Inc. Sec. Litig.,*
    No. 01-CV-2238KRBB, 2004 WL 1445101 (S.D. Cal. June 21, 2004) ...................... 9

15

*Fischel v. Equitable Life Assur. Soc'y of the U.S.,*
    307 F.3d 997 (9th Cir. 2002) ................................................................................. 3

16

17

*Greene v. Jacob Transp. Servs., LLC,*
    No. 2:09-cv-00466-GMN-CWH, 2018 WL 11424176 (D. Nev. Aug. 29, 2018) ....... 11

18

19

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ................................................................................... 13

20

21

*HCL Partners Ltd. P'ship v. Lead Wireless Int'l, Inc.,*
    No. 07 CV 2245 MMA, 2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ...................... 7

22

23

*Hefler v. Wells Fargo & Co.,*
    No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................... 11

24

25

*In re Heritage Bond Litig.,*
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .............. 8, 10, 13

26

*In re Hewlett-Packard Co. Sec. Litig.,*
    No. SACV 11-1404-AG, 2014 WL 12656737 (C.D. Cal. Sept. 15, 2014) ................ 13

27

28

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................. 10, 14

*Kui Zhu v. Taronis Techs. Inc.*,
    No. CV-19-04529-PHX-GMS, 2021 WL 871775 (D. Ariz. Mar. 9, 2021) ................. 3

*Lopez v. Youngblood*,
    No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011).................... 4

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................... 8

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................... 9

*In re Mercury Interactive Corp. Sec. Litig.*,
    No. 5:05-cv-03395-JF, 2011 WL 826797 (N.D. Cal. Mar. 3, 2011) .......................... 11

*In re Nuvelo, Inc. Sec. Litig.*,
    No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011)........................... 9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 4, 8, 9, 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ................................................................................... 3

*Ramsey v. MRV Commc'ns Inc.*,
    No. CV 08-04561 GAF, 2010 WL 11596641 (C.D. Cal. Nov. 16, 2010)................... 14

*Rieckborn v. Velti PLC*,
    No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015)........................ 13

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ................................................................................... 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................ 4, 9

*Vizicano v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................................... 10, 11

*In re Vocera Commn'cs, Inc., Sec. Litig.*,
    No. 3:13-cv-03567 EMC, 2016 WL 8201593 (N.D. Cal. July 29, 2016) ................. 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*,
    MDL No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ............. 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................. 3, 4

*Wietzke v. CoStar Realty Info., Inc.*,
    No. 09cv2743 MMA (WVG), 2011 WL 817438 (S.D. Cal. Mar. 2, 2011) ................. 6

**Statutes**

15 U.S.C. § 77z-1(a)(4) ...................................................... 14

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730................... 14

1

**PRELIMINARY STATEMENT**

2      Class Representative DeKalb County Pension Fund ("Plaintiff" or "DeKalb") on

3    behalf of itself and the proposed Settlement Class, respectfully moves this Court for an

4    Order pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, the Private

5    Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1, and Local Rule of Civil

6    Procedure ("Local Rule") 54.2: (a) awarding attorneys' fees in the amount of 25% of the

7    Settlement Fund, or $1,250,000 plus accrued interest; (b) reimbursing expenses in the

8    amount of $95,089.47, plus accrued interest; and (c) authorizing an award for Plaintiff in

9    the amount of $5,382.18 pursuant to 15 U.S.C. §77z-1(a)(4).[1]

10     As discussed in Plaintiff's Unopposed Motion for Preliminary Approval of Class

11   Action Settlement ("Preliminary Approval Motion" or "PA Mot."), Doc. 125, Plaintiff,

12   on behalf of itself and the proposed Settlement Class, as well as Defendants Mesa Air

13   Group, Inc. ("Mesa" or the "Company"), Jonathan G. Ornstein, Michael J. Lotz, Daniel J.

14   Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo

15   Picco, Harvey Schiller, Don Skiados (collectively, the "Mesa Defendants"), Raymond

16   James & Associates, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Cowen

17   and Company, LLC, Stifel, Nicolaus & Company, Incorporated, and Imperial Capital,

18   LLC (collectively, the "Underwriter Defendants," together with the Mesa Defendants, the

19   "Defendants"), have reached a proposed Settlement for $5,000,000 that, if given final

20   approval, will resolve all claims in this Action.  The Settlement is the result of zealous

21   prosecution by Plaintiff's Counsel and Plaintiff.  It is a favorable result for the Class

22   considering the risks that a smaller recovery, or no recovery at all, might be achieved

23   after further litigation.

24

25   _____

[1]      All capitalized terms not otherwise defined herein have the same meaning as those in
26   the Stipulation and Agreement of Settlement, dated May 6, 2022 (the "Stipulation" or
     "Stip."), Doc. 124.  "Settlement" refers to the settlement set forth in the Stipulation.  All
27   internal quotations marks and citations are omitted and all emphases are added unless
     otherwise noted.

28

1

1    In connection with the Settlement, Lead Counsel, Faruqi & Faruqi, LLP (the

2 "Faruqi Firm"), on behalf of Plaintiff's Counsel, respectfully seeks approval of an award

3 of attorneys' fees in the amount of 25% of the Settlement Fund, and reimbursement of

4 $95,089.47 in expenses reasonably incurred during the course of the Action, plus interest

5 accrued on both amounts.

6    As detailed below, the requested fee is fair and reasonable in light of the obstacles

7 Plaintiff's Counsel has faced during prosecution of this action, Lead Counsel's skill and

8 expertise in litigating securities class actions, the favorable result obtained for the Class,

9 as well as the factors listed in Local Rule 54.2(c)(3).  In recognition of the risks

10 undertaken and the effort expended by counsel in contingency fee cases, courts in this

11 Circuit and throughout the United States routinely award fees of this size in complex

12 securities cases with comparable recoveries.  Lead Counsel also requests that Plaintiff be

13 granted an award of $5,382.18 pursuant to 15 U.S.C. § 77z-1(a)(4) for the time and effort

14 that it devoted to representing the Class in this Action.

15    Accordingly, Lead Counsel respectfully submits that the requested attorneys' fees,

16 reimbursement of expenses, and award for Plaintiff should be granted.

17    This motion is based upon the memorandum of points and authorities set forth

18 below; the Declaration of James M. Wilson, Jr., ("Wilson Declaration" or "Wilson

19 Decl."), with attached exhibits, filed herewith; the Affidavit of Gary Urman ("Urman

20 Affidavit" or "Urman Aff."), with attached exhibits, filed herewith; the pleadings and

21 records on file in the above-captioned action (the "Action"), and other such matters and

22 argument as the Court may consider at the hearing of this motion.

23    **MEMORANDUM OF POINTS AND AUTHORITIES**

24    **FACTUAL AND PROCEDURAL BACKGROUND**

25    To avoid undue repetition, Lead Counsel respectfully refers the Court to the

26 Wilson Declaration for a detailed description of Plaintiff's claims and the prosecution of

27 this Action.  *See* Wilson Decl. ¶¶ 11-37.

28

2

**ARGUMENT**

## I.   ELIGIBILITY

As stated above, counsel seeks an award of attorneys' fees and related expenses pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1, and Local Rule 54.2. Additionally, counsel seeks an award for Plaintiff pursuant to 15 U.S.C. § 77z-1(a)(4).

## II.   ENTITLEMENT

Lead Counsel is entitled to the fee and expenses award under the Common Fund Doctrine, an equitable theory used to prevent unjust enrichment such that a party in litigation who creates, discovers, magnifies, or protects a common fund for others may be entitled to recover litigation costs and attorney's fees from that fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271-72 (9th Cir. 1989); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").  This is true in securities class actions as well. *See, e.g., Kui Zhu v. Taronis Techs. Inc.*, No. CV-19-04529-PHX-GMS, 2021 WL 871775, at *2 (D. Ariz. Mar. 9, 2021) (granting Class Counsel in securities class action's request for attorney's fees of 25% of the common fund and reimbursement of expenses). The reasonableness of the fee and expense award requested from the common fund in this action is set forth below.

## III.   REASONABLENESS OF REQUESTED AWARD

### A.   Percentage Of the Fund Is The Preferred Method

It is well established in the Ninth Circuit that, in a common fund case, the court has discretion to apply either the percentage of the fund method or the lodestar method in calculating a fee award.  *See Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("*WPPSS*").  However, "use of the percentage method in

common fund cases appears to be dominant" in this Circuit and its "advantages . . . have been described thoroughly by other courts." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). For example, the percentage of the fund method incentivizes attorneys to obtain the maximum possible recovery for the class in the most efficient manner. *See Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *3 (E.D. Cal. Sept. 2, 2011) ("[T]he percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner.").

### B.     The Requested Fee of 25% is Reasonable

While the ultimate determination of the appropriate amount of attorneys' fees to be awarded in each case rests within the sound discretion of the district court, *see Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012), "[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees" *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). The benchmark is a starting point, as "the district court should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Thus, in assessing whether a fee in line with the 25% benchmark is fair and reasonable in a particular case, or whether the fee should be adjusted upwards or downwards, courts generally consider the following factors: (1) the results achieved; (2) the risk the litigation posed; (3) the skill required and the quality of work performed; (4) the contingent nature of the fee and the financial burden; and (5) awards made in similar cases. *See DeStefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016). All of the factors support the requested fee.

#### 1.     Plaintiff's Counsel Obtained a Favorable Result for the Class

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046; *In re Bluetooth*

4

*Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations . . . is the benefit obtained for the class.").

The recovery achieved in this Action, $5,000,000 in cash, is a favorable result that will provide the Class with an immediate and certain benefit.  As explained in the Preliminary Approval Motion, the Settlement Amount represents approximately 5.3% of the $93.9 million in maximum possible statutory damages estimated by Plaintiff's damages consultant before taking into account Defendants' defense of negative causation, and approximately 16.6% of the $30 million in maximum damages estimated by Defendants if Plaintiff was able to overcome Defendants' negative causation defense not premised on lack of stock price reaction.  PA Mot. 11; *see also* Wilson Decl. ¶ 70.  This amount is well within the range of court-approved recoveries in complex securities class actions such as this.  *See* PA Mot. 11-12.

Furthermore, when negotiating the Settlement, Lead Counsel carefully examined the continued time and expense of additional litigation, Plaintiff's likelihood of success on the merits, the maximum provable damages, Defendants' likelihood of success on their negative causation defense, and the likelihood of obtaining a larger settlement after continued litigation.  *See* Wilson Decl. ¶¶ 38-44.  Lead Counsel determined that, in light of these issues, the Settlement Amount was a favorable result for the Class.  *See id*.  Specifically, in order to continue to develop the claims in the operative complaint, the continued fact discovery process would require, among other things: meeting and conferring about the Parties' respective discovery obligations and possible motion practice about the same; reviewing thousands more pages of documents; taking numerous depositions; serving and attempting to enforce third party subpoenas against former Mesa employees, Mesa third-party contractors, and the Federal Aviation Administration; and retaining expert witnesses regarding aircraft maintenance.  .  Even after putting in the considerable time and incurring the additional expenses that further discovery would require, there is a chance that Plaintiff's claims could be dismissed at summary judgment,

possibly on the negative causation defense that Defendants intend to assert at the earliest

possible time, or following an expensive and resource-consuming trial.  *See id.* ¶¶ 40-43.

Thus, "the result achieved for the Class—especially at this early stage—is favorable

considering the potential vulnerabilities of Lead Plaintiff's case."  *Zynga*, 2016 WL

537946, at *17.

### 2.  Litigation of this Action Involved Significant Risks

"The risk that further litigation might result in Plaintiffs not recovering at all,

particularly [in] a case involving complicated legal issues, is a significant factor in the

award of fees."  *Wietzke v. CoStar Realty Info., Inc.*, No. 09cv2743 MMA (WVG), 2011

WL 817438, at *6 (S.D. Cal. Mar. 2, 2011).

Plaintiff and Plaintiff's Counsel continue to believe that the claims asserted in the

Action are meritorious and that the evidence developed to date supports those claims.

While Plaintiff believes that its claims would have survived summary judgment and trial,

this result was far from guaranteed.  *See* Wilson Decl. ¶¶ 38-41.  Defendants have raised

numerous challenges and adamantly deny any wrongdoing.  *See* Stip. 3-4.  Notably,

Defendants repeatedly asserted a negative causation defense, and were prepared to argue

that the stock price was not negatively impacted in the days following the alleged

disclosure on May 10, 2019, and that the Class cannot recover for the stock drop on

August 9, 2019, either.  *See* PA Mot. 3-5, 9-11.  There is no doubt that they would have

continued to aggressively pursue this defense if litigation of this Action continued.  *See*

Wilson Decl. ¶¶ 39-40.  Thus, after investing years of time litigating this Action,

Plaintiff's Counsel could be left with no compensation for their efforts.

### 3.  Plaintiff's Counsel Provided Quality Representation

"The prosecution and management of a complex national class action requires

unique legal skills and abilities."  *Zynga*, 2016 WL 537946, at *17.  The quality of the

representation that Plaintiff's Counsel provided supports the reasonableness of the

requested fee. Lead Counsel is a national law firm with extensive experience representing

investors in complex securities class actions.  *See* Wilson Decl. ¶¶ 1-3, Ex. 2 (Faruqi
Firm resume).  Likewise, DeConcini McDonald Yetwin & Lacy, P.C. (the "DeConcini
Firm") has substantial complex litigation experience and has served the Class ably as
Liaison Counsel.  *See* Urman Decl. ¶ 2 & the DeConcini Firm Resume submitted
therewith.

Plaintiff's Counsel's experience and skill were demonstrated by the zealous and
effective prosecution of this Action.  For example, Lead Counsel conducted an extensive
factual investigation and engaged in significant legal research in connection with, *inter
alia*, drafting the amended complaint; responding to Defendants' motion to dismiss and
Request for Judicial Notice; preparing for and attending two contested scheduling
conferences; conducting substantial legal research regarding Defendants' purported
negative causation defense and working closely with damages consultants to better assess
Defendants' likelihood of success on this issue; responding to Defendants' Motion for
Leave to File an Early Motion for Summary Judgment ("Motion for Leave"); and
reviewing over 70,000 pages of confirmatory discovery.  Wilson Decl. ¶ 73.

"In addition to the difficulty of the legal and factual issues raised, the court should
also consider the quality of opposing counsel as a measure of the skill required to litigate
the case successfully."  *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM
(JCGx), 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014).  Defendants' counsel,
Wilson Sonsini Goodrich & Rosati, Ricketts & Case LLP, Shearman & Sterling LLP, and
Lewis Roca Rothgerber Christie LLP, are skilled litigators.  The attorneys who
represented Defendants in this matter were formidable opponents who zealously
represented their clients and mounted strong defenses.  *See id*.  To match defense
counsel, Lead Counsel was required to litigate at a very high level of skill, efficiency, and
professionalism at every stage of the proceedings.  *See id.; HCL Partners Ltd. P'ship v.
Lead Wireless Int'l, Inc.*, No. 07 CV 2245 MMA, 2010 WL 4156342, at *2 (S.D. Cal.
Oct. 15, 2010) (considering the quality of opposing counsel in approving the requested

7

attorneys' fees).  Indeed, this litigation was hard fought by both sides at every stage, as evidenced by the difficulties surrounding scheduling and the early motion practice regarding Defendants' negative causation defense.

Despite the formidable opposition faced throughout the litigation, Lead Counsel was able to reach an agreement with Defendants relatively early in the litigation on terms favorable to the Class.  *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("A prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice.").

### 4.    Plaintiff's Counsel Took on a Financial Burden

In addition to the risks associated with complex litigation, "the risk of non-payment or reimbursement of expenses [in cases undertaken on a contingent basis] is a factor in determining the appropriateness of counsel's fee award."  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005). Courts in this Circuit have found that "[t]he importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."  *Omnivision*, 559 F. Supp. 2d at 1047.

When Plaintiff's Counsel undertook representation of Plaintiff in this Action, it was aware that it was embarking on a complex securities class action that posed a significant risk of non-payment after many years of litigation.  *See* Wilson Decl. ¶¶ 66, 69.  Despite this risk, Plaintiff's Counsel prosecuted this Action on a contingent fee basis and has not received any compensation for its services or reimbursement for the expenses it has incurred.  *Id.*  In order to reach the Settlement for the benefit of the Class, Plaintiff's Counsel has had to work thoroughly and diligently, investing a significant amount of time and energy into the litigation of this Action.  Through these efforts, Plaintiff's Counsel has incurred 1,838.1 hours of attorney and staff time and $95,089.47

in expenses without reimbursement.  *See id.* ¶¶ 73-74, Exs. 3-4; Urman Aff. ¶¶ 4-5.
"This type of substantial outlay, when there is a risk that [no money] will be recovered,
further supports the award of the requested fees."  *Am. Apparel*, 2014 WL 10212865, at
*22; *see also In re DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238KRBB, 2004 WL
1445101, at *7 (S.D. Cal. June 21, 2004) (finding requested fee of 25% of the settlement
fund reasonable when counsel litigated the case on a contingency fee basis because, *inter
alia*, "Plaintiffs' counsel conducted all of these activities with no guarantee of
compensation for the investment of time and resources[]").  Furthermore, although
working on this case did not outright preclude Plaintiff's Counsel from taking on other
matters, the time spent litigating this matter is time that it could have devoted to working
on other matters.  .

> **5.**     **The Fee Is In Line With the Customary Fee in Similar Actions**

"This circuit has established 25% of the common fund as a benchmark award for
attorney fees."  *Boeing*, 327 F.3d at 968.  In regard to the fees awarded in similar actions,
"several other courts . . . have concluded that a 25 percent award was appropriate in
complex securities class actions. . . . Indeed, in many securities class actions, the award
has exceeded the 25[%] benchmark."  *Zynga*, 2016 WL 537946, at *18; *see, e.g., In re
Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming a fee
award of 33.33% of the $1.725 million fund); *Omnivision*, 559 F. Supp. 2d at 1047-48
(approving a 28% fee award); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011
WL 2650592, at *3 (N.D. Cal. July 6, 2011) (approving a 30% fee); *In re CV
Therapeutics, Inc., Sec. Litig.*, No. C 03-3709 SI, 2007 WL 1033478, at *1 (N.D. Cal.
Apr. 4, 2007) (same).

Accordingly, it is respectfully submitted that the attorneys' fees requested here are
well within the range of fees awarded in this Circuit and in other securities class actions.

1

     **6.**     **The Requested Fee is Reasonable Under the Lodestar Cross-Check**

2
     The "lodestar, which measures the lawyers' investment of time in the litigation,

3
provides a check on the reasonableness of the percentage award." *In re Immune*

4
*Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007). As the Court in

5
*Vizcaino v. Microsoft Corp.* explained:

6

7
     Where such investment [of time] is minimal, as in the case of an early
     settlement, the lodestar calculation may convince a court that a lower

8
     percentage is reasonable. Similarly, the lodestar calculation can be helpful
     in suggesting a higher percentage when litigation has been protracted.

9
     Thus, while the primary basis of the fee award remains the percentage
     method, the lodestar may provide a useful perspective on the

10
     reasonableness of a given percentage award.

11

12
290 F.3d 1043, 1050 (9th Cir. 2002). "The lodestar is calculated by multiplying the

13
number of hours . . . reasonably expended on the litigation by a reasonable hourly rate."

14
*Zynga*, 2016 WL 537946, at *18. "In securities class actions, it is common for a

15
counsel's lo[de]star figure to be adjusted upward by some multiplier reflecting a variety

16
of factors such as the effort expended by counsel, the complexity of the case, and the

17
risks assumed by counsel." *Heritage*, 2005 WL 1594403, at *22.

18
     Lead Counsel devoted a significant amount of time to the prosecution of this case

19
to protect the Class's interests. Much of this time was spent on investigating the claims

20
in the action, negotiating, researching, and briefing the motion to dismiss, issues of

21
bifurcation of discovery, and negative causation. *See* Wilson Decl., Ex. 3. As set forth in

22
the time reports submitted herewith, Plaintiffs' Counsel has expended 1,838.1 hours on

23
this litigation (excluding time spent in connection with this fee motion). *See* Wilson

24
Decl. ¶ 73.

25
     Partners rates are $350 to $950 per hour, associates' rates range from $425 to $550

26
per hour, and paralegals' rates range from $250-425 per hour. *See* Wilson Decl. ¶ 76;

27
Urman Aff. ¶ 3. These are "reasonable hourly rate[s] for the region and for the

28

experience of the lawyer[,]"[2] *Bluetooth*, 654 F.3d at 941, and when multiplied by the number of hours expended, result in a lodestar of $1,257,537.  Wilson Decl. ¶ 74.  When the lodestar is compared to the fee of approximately $1,250,000 requested by Plaintiff's Counsel, it results in a negative multiplier.  *See id.*  Courts in this Circuit regularly approve fees that result in positive lodestar multipliers "ranging between 1 and 4." *Omnivision*, 559 F. Supp. 2d at 1048; *Vizcaino*, 290 F.3d at 1050-51 (approving fee representing a multiple of 3.65 times counsel's lodestar); *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-cv-03395-JF, 2011 WL 826797, at *2 (N.D. Cal. Mar. 3, 2011) (lodestar cross-check multiplier of 3.08 "is within the acceptable range").  Therefore, the negative lodestar multiplier in this case results in no windfall to Plaintiff's Counsel and shows that the requested fee is more than reasonable in light of the substantial time and energy Lead Counsel has invested in this Action.

Plaintiff's Counsel will also devote additional hours and resources to this Action on an ongoing basis.  For example, Plaintiff's Counsel will need to prepare for and participate in the Settlement Hearing; assist potential Class Members with the completion and submission of their Proof of Claim forms; monitor the claims process; correspond with the Claims Administrator; file a motion for distribution of the Net Settlement Fund and supervise that distribution to Settlement Class Members.  Thus, the lodestar multiplier will decrease during the next phases of this Action, as Plaintiff's Counsel will not seek any additional compensation for the time spent going forward.

---

[2]  *See, e.g.*, *Greene v. Jacob Transp. Servs., LLC*, No. 2:09-cv-00466-GMN-CWH, 2018 WL 11424176, at *2 (D. Nev. Aug. 29, 2018) (finding attorneys' hourly rates of $390-$800 reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding lodestar cross-check supported the reasonableness of the requested fee award where "[t]he blended average hourly billing rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals[]"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding reasonable plaintiffs' counsel's rates that ranged from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals).

### 7.     Information Required By Local Rule 54.2(c)(3)

This District's Local Rule 54.2(c)(3) provides that certain information must be included in a request for attorneys' fees.  Lead Counsel respectfully submits that most of the information required by this rule is addressed above: the time and labor required of counsel; the novelty and difficulty of the questions presented; the skill requisite to perform the legal service properly; the customary fee charged in matters of the type involved; whether the fee contracted between the attorney and the client is fixed or contingent; the amount of money involved and the results obtained; the experience, reputation, and ability of counsel; and awards in similar actions.  A reasonable itemization and description of the work performed and the costs incurred can be found in the Wilson Declaration (¶¶ 73-46, Exs. 3 and 3-A) and the Urman Affidavit (¶ 4 and the DeConcini Time Report submitted therewith).  The remaining information is provided below:

*The preclusion of other employment by counsel because of the acceptance of the action*.  While Plaintiff's Counsel was not outright precluded from taking on any additional cases, the amount of time this case required was something Plaintiff's Counsel took into account when considering whether to take on other work.

*The time limitations imposed by the client or the circumstances*.  The time limitations in this case were nothing out of the ordinary for securities litigation.

*The undesirability of the case, if any*.  There was nothing undesirable about this case.

*The nature and length of the professional relationship with the client.*  Plaintiff has been a client of the Faruqi Firm for about six years.  The Faruqi Firm has monitored DeKalb's investment portfolio since 2017 and represents DeKalb in this and other securities class actions, including *In re Allergan plc Sec. Litig.*, No. 18 Civ. 12089 (CM)(GWG) (S.D.N.Y.).  Mr. Wilson and Mr. Killorin have represented DeKalb in multiple securities litigations since 2007.

1
2

## IV.    THE LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED

3

4   Lead Counsel also respectfully requests reimbursement, on behalf of Plaintiff's

5   Counsel, of $95,089.47, plus accrued interest, for expenses reasonably incurred in

6   prosecuting this Action.  *See* Wilson Decl. ¶ 78, Ex. 4.  "There is no doubt that an

7   attorney who has created a common fund for the benefit of the class is entitled to

8   reimbursement of reasonable litigation expenses from that fund."  *Heritage*, 2005 WL

9   1594403, at *23.  The appropriate analysis to apply in deciding whether expenses are

10   compensable in a common fund case is whether the particular costs are of the type

11   typically billed by attorneys to paying clients in the marketplace.  *See Harris v.*

12   *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of

13   attorneys' fees those out-of-pocket expenses that would normally be charged to a fee

14   paying client.").  "To that end, courts throughout the Ninth Circuit regularly award

15   litigation costs and expenses—including photocopying, printing, postage, court costs,

16   research on online databases, experts and consultants, and reasonable travel expenses—in

17   securities class actions, as attorneys routinely bill private clients for such expenses in

18   non-contingent litigation."  *Zynga*, 2016 WL 537946, at *22 (approving expense request

19   for, *inter alia*, "copying, court costs, computer research, delivery fees, expert and

20   investigator fees, mediation, telephone, and travel costs[]"); *Rieckborn v. Velti PLC*, No.

21   13-cv-03889-WHO, 2015 WL 468329, at *22 (N.D. Cal. Feb. 3, 2015) (approving

22   $219,469.67 in expenses for primarily "experts, consultants, and investigators" and

23   "computerized factual and legal research and [] travel expenses").  Courts often award

24   interest on expense requests as well.  *See In re Vocera Commn'cs, Inc., Sec. Litig.*, No.

25   3:13-cv-03567 EMC, 2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (awarding

26   "payment of litigation expenses in the amount of $382,010.861, plus interest at the same

27   rate earned by the Settlement Fund"); *In re Hewlett-Packard Co. Sec. Litig.*, No. SACV

28   11-1404-AG (RNBx), 2014 WL 12656737, at *1 (C.D. Cal. Sept. 15, 2014) (similar).

1      Lead Counsel has itemized the categories of expenses it incurred and attests to

2  their accuracy.  *See* Wilson Decl. ¶¶ 78-84, Ex. 4;.  Plaintiff's Counsel's expenses include

3  investigator's fees, damages consultant fees, mediation fees, filing fees, electronic

4  research, eDiscovery storage, postage, travel, and meals, all of which Plaintiff's Counsel

5  believes were reasonable and necessary to adequately prosecute the claims in this Action.

6  *See id*.  Thus, Lead Counsel respectfully requests an award of $95,089.47, plus accrued

7  interest, for Plaintiff's Counsel as reimbursement for these reasonable expenses.

8  **V.      THE REQUESTED AWARD FOR PLAINTIFF IS REASONABLE**

9      Finally, Lead Counsel seeks an award in the amount of $5,382.18 for Plaintiff's

10  reasonable costs and expenses pursuant to the PSLRA, 15 U.S.C. § 77z-1(a)(4). The

11  PSLRA limits a class representative's recovery to an amount "equal, on a per share basis,

12  to the portion of the final judgment or settlement awarded to all other members of the

13  class[,]" but explicitly provides that "[n]othing in this paragraph shall be construed to

14  limit the award of reasonable costs and expenses (including lost wages) directly relating

15  to the representation of the class to any representative party serving on behalf of a class."

16  15 U.S.C. § 77z-1(a)(4).  Congress acknowledged "that lead plaintiffs should be

17  reimbursed for reasonable costs and expenses associated with service as lead plaintiff,

18  including lost wages, and grants the courts discretion to award fees accordingly."  H.R.

19  Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

20      Many courts have construed 15 U.S.C. § 77z-1(a)(4) (and its analogue under the

21  Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(4)) to include as compensable

22  "costs" or "expenses" the amount of time a lead plaintiff or class representative spent on

23  the litigation.  *See Ramsey v. MRV Commc'ns Inc.*, No. CV 08-04561 GAF (RCx), 2010

24  WL 11596641, at *8-9 (C.D. Cal. Nov. 16, 2010) (awarding the lead plaintiff $11,000 for

25  35.75 hours he spent working on the case at the hourly rate of $300 an hour); *Immune*

26  *Response*, 497 F. Supp. 2d at 1173-74 (awarding lead plaintiff $40,000 based on his

27  hourly rate of $200 as CEO); *CV Therapeutics*, 2007 WL 1033478, at *2 ("[P]ursuant to

28

15 U.S.C. § 78u-4(a)(4), the Court awards lead plaintiff [] the amount of $26,000.00 for reimbursement of time and expenses incurred in representing the class."); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *10 (C.D. Cal. Oct. 25, 2016) (explaining that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigation on behalf of the class[]" and awarding the class representative, an institutional investor, $30,983.99 for "reimbursement for the time" spent on the litigation).

Plaintiff's request here is justified for similar reasons.  Plaintiff played an integral role in this action, complying with the numerous demands on its time and attention that arose during the past two years of litigation.  *See* Wilson Decl. ¶¶ 85-87.  As set forth in its declaration accompanying this motion, Plaintiff estimates that its employees spent 54 hours of their time in work directly related to the representation of the Class.  Wilson Decl., Ex. 5 ¶ 11.  Plaintiff's work on behalf of the Class included: (1) engaging in communications with Lead Counsel; (2) reviewing documents filed and/or prepared in the Action; (3) reviewing and responding to discovery; (4) providing input on the mediation and settlement negotiations and authorizing the Settlement; and (5) attending and participating in the mediation.  *Id.* at ¶ 6.  Plaintiff submits that the time it devoted to this litigation should be valued at the rates set forth in its declaration.  *Id.* at ¶ 11.  This is time that Plaintiff would have devoted to other matters on behalf of DeKalb, and thus, represented a cost to DeKalb.  Accordingly, Lead Counsel, on behalf of Plaintiff, respectfully requests that the Court reimburse Plaintiff $5,382.18 for its reasonable costs and expenses pursuant to 15 U.S.C. § 77z-1(a)(4).

## CONCLUSION

For the reasons stated above, Lead Counsel respectfully requests that the Court award: (a) attorneys' fees of 25% of the Settlement Fund, or $1,250,000 plus accrued interest; (b) reimbursement of litigation expenses in the amount of $95,089.47, plus

15

accrued interest; and (c) an award to Plaintiff pursuant to 15 U.S.C. § 77z-1(a)(4) in the amount of $5,382.18.

Dated: February 10, 2023

By: */s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
rkillorin@faruqilaw.com
jwilson@faruqilaw.com

*Attorneys for Class Representative DeKalb County Pension Fund and Lead Counsel for the Class*

Gary F. Urman
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 200
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585
Email: gurman@dmyl.com

*Attorneys for Class Representative DeKalb County Pension Fund and Liaison Counsel for the Class*