Gary F. Urman (AZ 11748)
gurman@dmyl.com
**DECONCINI MCDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 500
Tucson, Arizona 85716
Telephone:520-322-5000
Facsimile: 520-322-5585

*Attorneys for Class Representative DeKalb County
Pension Fund and Liaison Counsel for the Class*

Lubna Faruqi (*Admitted pro hac vice*)
Robert W. Killorin (*Admitted pro hac vice*)
James M. Wilson, Jr. (*Admitted pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: lfaruqi@faruqilaw.com
 rkillorin@faruqilaw.com
 jwilson@faruqilaw.com

*Attorneys for Class Representative DeKalb County
Pension Fund and Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Lowthorp, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br> V. <br><br> Mesa Air Group, Inc.; Jonathan G. Ornstein; Michael J. Lotz; Daniel J. Altobello; Ellen N. Artist; Mitchell Gordon; Dana J. Lockhart; G. Grant Lyon; Giacomo Picco; Harvey Schiller; Don Skiados; Raymond James & Associates, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Cowen and Company, LLC; Stifel, Nicolaus & Company, Incorporated; and Imperial Capital, LLC, <br><br> Defendants. | No. 20-00648-PHX-MTL <br><br> **DECLARATION OF JAMES M. WILSON, JR. IN SUPPORT OF CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AN AWARD TO LEAD PLAINTIFF** |

I, James M. Wilson, Jr., declare as follows:

1.    I am a member in good standing of the bar of the State of New York and am admitted *pro hac vice* in this Court.  I am a partner in the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm" or "Lead Counsel"), which represents Class Representative DeKalb County Pension Fund ("Class Representative," "Lead Plaintiff," or "DeKalb") and the putative Class in the above-captioned securities class action pending in this Court (the "Action").[1]  I have been actively involved in the prosecution of this Action and have personal knowledge of the matters set forth herein based upon my close supervision and participation in the Action.  If called upon, I could and would competently testify that the following facts are true and correct to the best of my knowledge.

## I.    PRELIMINARY STATEMENT

2.    I respectfully submit this Declaration in support of Class Representative's Motion for Final Approval of the Class Action Settlement ("Final Approval Motion" or "FA Mot."), as well as Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Award to Lead Plaintiff ("Fee Motion" or "Fee Mot.").  Both motions are filed concurrently herewith.

3.    Lead Plaintiff, on behalf of itself, and the putative Class, and Defendants Mesa Air Group, Inc. ("Mesa" or the "Company"), Jonathan G. Ornstein, Michael J. Lotz, Daniel J. Altobello, Ellen N. Artist, Mitchell Gordon, Dana J. Lockhart, G. Grant Lyon, Giacomo Picco, Harvey Schiller, and Don Skiados (collectively, the "Mesa Defendants"), Raymond James & Associates, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Cowen and Company, LLC, Stifel, Nicolaus & Company, Incorporated, and Imperial Capital, LLC (collectively, the "Underwriter Defendants," together with the Mesa Defendants, the "Defendants") have

---

[1]    Unless otherwise noted, the following conventions are used herein: (i) all emphases are added; (ii) all internal citations and quotations are omitted; (iii) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated May 6, 2022 ("Stipulation" or "Stip."), Doc. 124; (iv) "Rule(s)" refers to the Federal Rules of Civil Procedure; (v) "Settlement" refers to the settlement set forth in the Stipulation; and (vi) all references to the "Ewashko Declaration" or "Ewashko Decl." are to the Declaration of Jack Ewashko Regarding (A) Mailing of the Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received, filed herewith.

reached a proposed settlement of this Action for $5,000,000 in cash that, if approved, will resolve all claims in the Action.

4.    The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily approved the Stipulation by its Order dated October 28, 2022 ("Preliminary Approval Order"), Doc. 137, a true and correct copy of which is attached hereto as *Exhibit 1.*

5.    This declaration sets forth the nature of the claims asserted, the procedural history of the Action, and the methods by which the Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and the Plan of Allocation are fair, reasonable, and adequate, and why Lead Counsel's application for attorneys' fees, reimbursement of expenses, and an award for Lead Plaintiff should be approved.

6.    While Lead Counsel believes that the allegations in the Action have substantial merit, Lead Counsel respectfully submits that the Settlement represents a favorable result for the Class.

7.    The Settlement is the result of extensive arm's-length and contentious settlement negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  With the assistance of an experienced mediator, counsel met for a mediation session to vigorously debate the strengths and weaknesses of the claims and defenses in the Action.  The parties came to an agreement in principle during the mediation session.  Thereafter, Lead Counsel reviewed over 70,000 pages of confirmatory discovery and obtained responses to additional questions raised by Lead Counsel to confirm in good faith that the Settlement is fair, reasonable, and adequate to the Settlement Class.  After the completion of this confirmatory discovery, the Parties engaged in negotiations over the following months to finalize the terms of the Stipulation.  Lead Counsel's ability to come to a compromise in light of the many complex issues present in this Action evidenced the skill of representation and the quality of the results.

8.    Pursuant to the Preliminary Approval Order, beginning on November 18, 2022, the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), and Proof of Claim and Release Form ("Claim Form") (collectively, the "Notice Packet") were mailed to

9,661 potential Class Members and nominees, and were made available on the designated settlement website, http://mesasecuritiesclassaction.com/, along with the Stipulation and Preliminary Approval Order. *See* Ewashko Decl. ¶¶ 2, 7, 9. The Summary Notice was timely posted by *GlobeNewswire* and published in *Investor's Business Daily* on November 28, 2022. *See id*. ¶ 8.

9.    For over two years, Lead Counsel has successfully overcome the significant obstacles that this Action has presented and adeptly navigated the complicated issues of law and fact inherent to a securities class action. The Settlement provides an immediate and certain benefit to the Class considering the significant risks that a smaller recovery—or, indeed, no recovery at all—might be achieved after a trial and the likely appeals that would follow, which could prolong the Action for years and incur significant additional expenses. For these, reasons, and those set forth more fully below, Lead Counsel respectfully submits that the Settlement is in the best interests of the Class and should be approved as fair, reasonable, and adequate.

10.    Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of $1,250,000, plus accrued interest, and reimbursement of expenses in the amount of $95,089.47, plus accrued interest. The fee award constitutes 25% of the Settlement Fund, which is in line with the amount of attorneys' fees awarded by courts in this Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the risks of representing the Class in this Action. The expenses incurred by Plaintiff's Counsel were reasonable and necessary to prosecute this Action and to reach this favorable result for the Class.

## II.    SUMMARY OF LEAD PLAINTIFF'S CLAIMS

11.    This Action arises out of Defendants' allegedly misleading statements and omissions that are alleged to violate Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. *See, e.g.*, Amended Class Action Complaint for Violations of the Federal Securities Laws ("AC"), Doc. 52.

12. Briefly, the AC alleges that Defendants made misleading statements and omissions in the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with Mesa Air's Initial Public Offering ("IPO") that was commenced on or around August 9, 2018. *See id.* ¶¶ 1, 5-6.[2]

13. Defendants have denied and continue to deny each and all of the claims alleged by Lead Plaintiff and the Class in the Action. *See* Doc. 124 at 3-4.

**III.    RELEVANT PROCEDURAL HISTORY**

14. This Action began on April 1, 2020, when the initial federal complaint was filed. Doc. 1.

15. Shortly before that complaint was filed, a securities class action was filed in Arizona state court against the same defendants on behalf of the same class of investors. *See City of Pittsburgh Comprehensive Municipal Pension Trust Fund, et al. v. Mesa Air Group, Inc., et al.*, Civ. No. CV2020-003927 (Ariz. Sup. Ct., Maricopa Cnty.) ("State Court Action").

16. On June 22, 2020, the Court appointed DeKalb as Lead Plaintiff, Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel, and DeConcini McDonald Yetwin & Lacy, P.C. (the "DeConcini Firm") as Liaison Counsel. Doc. 33 at 4.

17. Plaintiff filed the AC on August 17, 2020, alleging that Mesa's Registration Statement for its IPO contained material misstatements and omissions in violation of Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), 77o). Doc. 52. The Section 11 and 12(a)(2) claims also alleged that Defendants violated Items 303 (17 C.F.R. § 229.303(a)(3)(ii)) and 503 (17 C.F.R. § 229.503(c)) by omitting adverse trends and risks from the Registration Statement. AC ¶¶ 1, 76, 86.

18. On October 1, 2020, Defendants moved to dismiss the AC and, in connection therewith, submitted a Notice of Incorporation by Reference and Request for Judicial Notice ("Request for Judicial Notice" or "RJN"). *See* Docs. 56-59. Lead Plaintiff responded in opposition to the motion to dismiss and RJN on November 16, 2020. Docs. 60-62. Defendants filed replies in support of their motion to dismiss and RJN on December 16, 2020.

---

[2]    Unless otherwise noted, all "¶___" references are to the AC.

Docs. 63-65.  Both parties filed notices of supplemental authority in support of their respective positions on March 18, March 22, and April 22, 2021.  Docs. 66-68.

19.    The Court heard in-person oral argument on Defendants' Motion to Dismiss and Request for Judicial Notice on July 15, 2021.  Doc. 75.

20.    On July 22, 2021, the Court issued an Order denying and granting in part Defendants' motion to dismiss, and granting in part Defendants' RJN to the extent described therein.  Doc. 81 ("Motion to Dismiss Order" or "MTD Order").  The Court upheld Plaintiff's claims that were premised on statements concerning Mesa's aircraft maintenance.  *See id.* at 19-25.  On the same date, the Court also set a Scheduling Conference for September 9, 2021.  Doc. 82.

21.    On August 30, 2021, the parties filed a Joint Proposed Case Management Report.  Doc. 90.  To prepare this Report, the Parties met and conferred numerous times, pursuant to Rule 26(f) and this Court's rules.  These sessions resulted in the exchange of numerous drafts due to the Parties' disagreement over how the litigation should proceed.  The main disagreement was whether Defendants should be permitted to file two motions for summary judgment, one of which would be filed early on the basis of negative causation and simultaneously limit discovery during the motion's pendency.  Specifically, Plaintiff argued that Defendants sought to bifurcate discovery into two phases: the first phase for class certification discovery and discovery related to Defendants' negative causation defense; the second phase for broader merits discovery.  Doc. 90 at 10-13, 20.  Plaintiff opposed Defendants' attempted bifurcation plan.  *See id.* at 16-19.

22.    The scheduling conference set by the Court was held on September 9, 2021, during which the parties argued their points contained in the Joint Case Management Report.  Doc. 92.  The Court thereafter issued a minute order denying Defendants' proposed bifurcation plan, ordering that the case proceed on a customary class action track, and directing the Parties to meet and confer and file a supplemental Rule 26(f) report.  Doc. 93.

23.    The Parties filed a Supplemental Rule 26(f) Report on September 24, 2021.  Doc. 96.  To prepare this supplemental report, the Parties once again met, conferred, and exchanged

5

drafts of it, as they still disagreed on the propriety of Defendants' filing an early motion for summary judgment. *See id*. at 12, 16, 21.

24. A second Scheduling Conference was held on October 14, 2021, during which Defendants requested to build into the schedule allotted time to file their early summary judgment motion. Doc. 100.

25. The Court ultimately denied Defendants' request and issued the Scheduling Order on October 15, 2021. Doc. 101. Thereafter, the Parties began to engage in discovery, which included the exchange of Rule 26 initial disclosures, and the service of interrogatories and document demands.

26. The Parties also negotiated a Joint Stipulation regarding Class Certification, which was filed on December 31, 2021. Doc. 108.

27. Defendants subsequently filed a Motion for Leave to File an Early Motion for Summary Judgment based on negative causation ("Motion for Leave") on January 5, 2022, Docs. 109-10, which Lead Plaintiff opposed on January 19, 2022, Docs. 111-12.

28. On January 24, 2022, the Court granted the parties Joint Stipulation on Class Certification, and ordered that this action was certified to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and shall consist of a "Class" of all individuals and entities that purchased or otherwise acquired Mesa's securities pursuant and/or traceable to the Company's initial public offering commenced on or around August 9, 2018, and were damaged thereby. Doc. 113.

29. On February 1, 2022, Defendants filed a Reply in support of their Motion for Leave. Docs. 116-18.

30. On March 1, 2022, The Court denied Defendant's Motion for Leave. Doc. 120.

## IV.    THE SETTLEMENT

### A.    Settlement Negotiations

31. From the outset, Plaintiff's Counsel has tirelessly navigated the complicated issues present in the Action. Prior to engaging in settlement negotiations, Plaintiff's Counsel spent considerable time evaluating the facts and argument by thoroughly investigating the

relevant facts and law; drafting the AC; vigorously opposing Defendants' Motion to Dismiss and related briefing; vigorously opposing Defendant's bifurcation of discovery plan and related briefing; vigorously opposing Defendant's Motion for Leave to File an Early Motion for Summary Judgment and related briefing; serving discovery on Defendants and reviewing the discovery Defendants produced; negotiating and reaching an agreement on class certification; and preparing mediation statements and exhibits.  With the benefit of this extensive investigation and comprehensive analysis of the factual and legal issues in this Action, the Parties entered settlement negotiations well-informed of the strengths and weaknesses of the claims and defenses asserted in this Action.

32.    On March 2, 2022, the parties engaged in a mediation session before Jed D. Melnick of JAMS Mediation Services, a highly experienced securities litigation mediator, for an arm's-length mediation session.  The mediation was part of an effort to explore possibilities for settlement.

33.    The parties debated their positions and came to an agreement in principle during the mediation session, subject to Defendants providing Plaintiff with confirmatory discovery.

34.    The confirmatory discovery following the mediation provided further evidence of the risks facing continued litigation.  Defendants produced and Lead Counsel reviewed 8,167 documents (totaling approximately 72,164 pages).  The documents included, but were not limited to: Board and Board committees' meeting minutes and materials, prefiling materials for the IPO, pre-IPO financial statements, maintenance support agreements, aircraft service agreements, internal emails concerning maintenance staffing and operations, organizational charts, and analyst reports.

35.    Defendants also produced additional information in response to questions Lead Counsel had after reviewing the documents, which included, *inter alia*: internal maintenance-related labor cost increases reported by Mesa on August 9, 2019, including the amount and reason for each increase; increases in maintenance and higher internal labor costs and outside labor support costs reported by Mesa on August 9, 2019 and the reasons for such increases; documents reflecting the reasons for increased maintenance costs during Q3 2019; documents

evidencing increased costs due to the hiring of third-party contractors to help with maintenance; documents reflecting events unrelated to the maintenance-related challenged statements that impacted Mesa's performance during Q3 2019 and projections of lost revenue as a result of penalties imposed by American Airlines that were reported by Mesa on August 9, 2019.

36.    Taken together, the confirmatory discovery produced to Plaintiff supports Plaintiff's decision to settle and confirms the Settlement's fairness, adequacy, and reasonableness.  Most significantly, the information produced confirms that it would be difficult for Plaintiff to tie the maintenance issues it alleged existed at the time of the IPO, which are the basis for the remaining claims, to the stock price declines in August 2019.  That is, it underscored the significance of the risk that Plaintiff may be unable to overcome Defendants' negative causation defense, either at summary judgment or trial.

37.    Following Lead Counsel's review of this confirmatory discovery, the Parties were able to negotiate the complete terms of the Settlement, which are memorialized in the Stipulation.

### B.    Reasons for Settlement

38.    Although Lead Plaintiff and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and that the evidence developed to date supports them, they recognize and acknowledge the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action.  Lead Plaintiff and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the possible defenses to the claims asserted in this Action, as well as the uncertainties presented by complex litigation.

39.    Lead Plaintiff also acknowledges that, notwithstanding his ability to further develop factual support for his claims, there is a significant risk that the Court would rule in Defendants' favor on these issues at the summary judgment stage.  Defendants have denied, and continue to deny, Lead Plaintiff's allegations, and would undoubtedly continue to vigorously oppose the Action and mount strong defenses were the Action to continue.  The

information gleaned from the confirmatory discovery described above supports the decision to settle.

40.     Defendants have maintained that they have a complete negative causation defense under Section 11(e) of the Securities Act.  If Defendants successfully asserted this defense at summary judgment, or trial, the Class would have no damages.  While Plaintiff believes that it would be able to overcome Defendants' negative causation defense, there is no guarantee that the Settlement Class would prevail and, even if it did, how the Court's rulings on this issue would affect damages.

41.     Even if Lead Plaintiff's claims were to survive summary judgment, there is also a risk that the jury might be swayed by Defendants' theory of the case at trial, leaving the Class with very little recovery, or no recovery at all.

42.     While Lead Plaintiff is prepared to prove the complex factual and legal issues in this Action at trial, there is a substantial risk that the jury would not have agreed with its theory of the case.  For example, the parties fundamentally disagree about the amount of damages in this case should Plaintiff prove its claims, as made abundantly clear by all of the ink spilled over Defendants' negative causation defense.  Damages are often reduced to a "battle of the experts," and a jury's reaction to conflicting expert testimony is unpredictable.  Lead Plaintiff recognized the possibility that a jury could have been swayed by Defendants' experts and awarded little to no damages.  Even if Lead Plaintiff were to prevail at trial, Defendants might have appealed the decision.  The appeals process can go on for months or even years, significantly prolonging the Action and jeopardizing any recovery awarded to the Class at trial should Defendants be victorious.

43.     Notwithstanding the risks to recovery posed by a trial in this Action, the trial process is lengthy, complicated, and would be taxing on the Court and the attorneys involved.

44.     In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Class.  Lead Counsel, having evaluated the substantial risk, time, and expenses required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a favorable result for the Class.

**C.     The Settlement Terms**

45.     The Settlement, which the Court preliminarily approved, provides for the gross payment of $5,000,000 to secure a settlement of the claims asserted in the Action against Defendants.  If approved, the Settlement will finally resolve Lead Plaintiff's allegations against Defendants and release all Released Claims against them in the Action.

46.     Defendants have denied liability and any wrongdoing as part of the Settlement, and they vigorously maintain that they are not liable to the Class.

47.     All eligible Class Members who timely submit a valid Claim Form and are eligible to receive at least $10.00 will receive a distribution from the Net Settlement Fund, which is the Settlement Fund minus administration expenses, Plaintiff's Counsel's fees and expenses, an award to Lead Plaintiff, and any Taxes and Tax Expenses.  The Court will be asked to approve the distribution of the Net Settlement Fund at a future date, once the administration is completed.

48.     The Settlement provides an immediate and favorable recovery to the Class, who faced a significant risk of a much smaller recovery or no recovery at all.  Given the complexities of the issues involved in the Action, Lead Plaintiff's entitlement to recovery would be correspondingly uncertain.  Moreover, there is still a considerable dispute between the Settling Parties over whether Defendants violated the securities laws at all.  This dispute would have resulted in further proceedings before the Court and would have required the expenditure of substantial additional judicial resources, time, and expenses.  Given these and other difficulties facing the Class at this point in the litigation, the Settlement provides a favorable guaranteed recovery.

49.     Based on this declaration and for the reasons set forth in the accompanying memoranda, Lead Plaintiff respectfully submits that the terms of the Settlement and the Plan of Allocation are fair, reasonable, and adequate.

## V.   THE COURT'S PRELIMINARY APPROVAL ORDER AND LEAD PLAINTIFF'S DISSEMINATION OF NOTICE

### A.   Preliminary Approval Order

50.   On May 6, 2022, Lead Plaintiff filed the Preliminary Approval Motion, seeking preliminary approval of the Settlement, approval of the manner and content of the proposed notice, and scheduling of the Settlement Hearing.  *See* Doc. 125.

51.   On October 28, 2022, the Court issued the Preliminary Approval Order, (Doc. 137) which:

a)   Granted preliminary approval of the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Hearing;

b)   Scheduled a Settlement Hearing for April 6, 2023 at 9:00 a.m. to determine whether: (1) the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; (2) the proposed final Judgment as provided in the Stipulation should be entered; (3) the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (4) to consider Lead Counsel's application for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff; and (5) to rule upon such other matters as the Court may deem appropriate;

c)   Appointed A.B. Data, Ltd., ("A.B. Data") as the Claims Administrator to supervise and administer the notice procedure as well as the processing of the claims, and appointed Huntington National Bank or its successor as the Escrow Agent to manage and administer the Settlement Fund for the benefit of the Class;

d)   Approved the form and content of the Notice, Summary Notice, and Claim Form, and approved the plan for mailing, distribution, and/or publication of these documents;

e)   Directed A.B. Data to cause a copy of the Notice and Claim Form to be

11

mailed by first class mail to the list of record holders of Mesa Air securities provided by the Company no later than November 18, 2022;

f) Directed A.B. Data to cause copies of the Stipulation and its exhibits, the Preliminary Approval Order, the Notice, and the Claim Form, to be posted on the Settlement's website no later than November 18, 2022;

g) Directed A.B. Data to cause the Summary Notice to be posted by *GlobeNewswire* and published in *Investor's Business Daily* no later than December 2, 2022;

h) Directed Lead Counsel to serve on Defendants' Counsel and file with the Court proof of such mailing and publication no later than March 30, 2023;

i) Established procedures and deadlines for Class Members to object to the Settlement, Plan of Allocation, award of attorneys' fees, expenses, or Lead Plaintiff's award and to appear at the Settlement Hearing; and

j) Established procedures and deadlines for Class Members to submit Claim Forms or seek exclusion.

**B.    Notice**

52.    Pursuant to the Preliminary Approval Order, Lead Counsel is serving on Defendants' Counsel and filing with the Court the Ewashko Declaration, concurrently herewith.  The Ewashko Declaration sets forth the efforts undertaken by A.B. Data to mail the Notice and Claim Form to Class Members, publish the Summary Notice, and establish the website and toll-free telephone line.

53.    As detailed in the Ewashko Declaration, beginning on November 18, 2022, A.B. Data mailed or caused to be mailed a total of 9,661 Notice Packets to potential Class Members and nominees.  *See* Ewashko Decl. ¶¶ 2, 7.  The Summary Notice was posted by *GlobeNewswire* and published in *Investor's Business Daily* on November 28, 2022.  *See id.* ¶ 8.

54.    Additionally, A.B. Data established a telephone helpline to accommodate potential Class Members who have questions about the Settlement.  *See id.* ¶ 10.

55.     A.B. Data also set up the website, http://mesasecuritiesclassaction.com/, to provide information about the proposed Settlement to Class Members and others.  *See id.* ¶ 9. The website makes available for viewing and downloading important documents, including the Notice, Claim Form, Preliminary Approval Order, and the Stipulation.  *See id.*  The website also lists the exclusion, objection, and claim filing deadlines as well as the date and time of the Settlement Hearing.  *See id.*

56.     As required by Rule 23 of the Federal Rules of Civil Procedure, due process, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Notice: (a) described the nature of the claims asserted in the Action; (b) included the case caption; (c) included a definition of the Settlement Class; (d) summarized the Parties' reasons for entering into the Settlement; (e) listed the name, telephone number, and address for Lead Counsel; (f) disclosed that Lead Counsel intends to seek attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of expenses not to exceed $100,000, and an award to Lead Plaintiff not to exceed $10,000; (g) provided the date, time, and location of the Settlement Hearing; (h) advised Settlement Class Members of their right to appear at the Settlement Hearing and instructed them that the date may change; (i) advised Class Members of their right to exclude themselves from the Class and the binding effect of doing so; (j) provided the deadline and procedure for opting out of or opposing the Settlement, Plan of Allocation, or award of attorneys' fees and expenses; (k) explained the consequences of remaining in the Settlement Class; (l) provided the manner in which to obtain more information, including the address for the designated website; and (m) explained how to access the case docket at the courthouse or on PACER.  *See* Ewashko Decl., Ex. A at 4-13.

## C.     Reaction of the Class

57.     The Notice provides that objections to the Settlement, Plan of Allocation, and/or the application for attorneys' fees, expenses, and award for Lead Plaintiff must be received no later than March 17, 2023.  *See* Ewashko Decl., Ex. A at 9.

58.     Although 9,661 Notices have been mailed to potential Class Members and nominees (*see* Ewashko Decl. ¶ 7), as of this filing, no requests for exclusion or objections to

the Settlement have been received.  Additionally, no objections to the Plan of Allocation, the attorneys' fee award, Lead Plaintiff's award, or the requested reimbursement of expenses have yet been received.  *See id.* ¶¶ 8-9.

59.     If any objections or requests for exclusion are received, they will be addressed in Lead Plaintiff's reply papers.

**D.      Plan of Allocation**

60.     Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Class Members who wish to participate in the Settlement must submit a Claim Form with supporting documentation to A.B. Data so that it is postmarked or submitted electronically no later than March 7, 2023.  *See* Ewashko Decl., Ex. A at 6.

61.     As set forth in the Notice, all Class Members who timely file a valid Claim Form and whose *pro rata* share of the Net Settlement Fund amounts to $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of, *inter alia*, attorneys' fees and expenses and taxes incurred on the Settlement Fund.  *See id*. at 11-13.  The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice. *See id*.

62.     The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged misconduct as opposed to losses caused by market or industry factors not related to the allegations.  *See id*.

63.     Under the Plan of Allocation, the Claims Administrator will calculate each Authorized Claimant's Recognized Loss, as explained in the Notice.  *See id*.  The calculation of a Recognized Loss will depend upon several factors, including when Mesa shares were purchased, for what price, and, if sold, when.  *See id*.  In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have held through the date of the corrective disclosure, August 9, 2019.  *See id*.  The Claims Administrator will use the Recognized Loss formula to determine each Authorized Claimant's *pro rata* share to proportionately allocate the Net Settlement Fund among the Authorized Claimants.  *See id*.

14

64.    The Plan of Allocation was formulated with the assistance of Lead Plaintiff's damages consultant, and it tracks the theory of damages alleged in the AC.  It was also reviewed and approved by A.B. Data, a claims administrator with substantial experience in claims administration.

65.    The terms of the Plan of Allocation were fully disclosed in the Notice which was mailed to thousands of potential Class Members and nominees and made available on the Action's designated website beginning on November 18, 2022.  *See* Ewashko Decl. ¶¶ 2, 7, 9. To date, there have been no objections to the Plan of Allocation; and thus, Lead Plaintiff respectfully submits that it is fair, reasonable, and adequate and should be approved by the Court.

## VI.    LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### A.    Attorneys' Fees

66.    Plaintiff's Counsel has represented the Class on a wholly contingent basis for over two years.  Plaintiff's Counsel has received no payment for its services or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement. Throughout this time, Plaintiff's Counsel's dedication to recovering a favorable result for the Class has been expensive and challenging.

67.    The Notice informed Class Members that Lead Counsel will apply for an award of attorneys' fees up to 25% of the Settlement Fund and reimbursement of expenses not to exceed $100,000.  *See* Ewashko Decl., Ex. A at 3.

68.    Lead Counsel requests that the Court award a fee of 25% of the Settlement Fund, or $1,250,000 plus accrued interest.[3]

69.    As discussed in the Fee Motion, filed concurrently herewith, the requested fee is in line with the Ninth Circuit's benchmark for fee awards of 25% of the common fund and is

---

[3]    Lead Counsel's request for interest accrued on the fee and expense amounts is limited to the interest or income earned on those amounts between the time the Settlement Amount was deposited into the Escrow Account to the time the fees and expenses are permitted to be disbursed.

fair, adequate, and reasonable in this Action.  In light of the favorable result achieved for the Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis, Lead Counsel respectfully submits that a fee of 25% of the Settlement Fund is justified and should be approved.

70.    Based on Lead Plaintiff's consulting damages expert's analysis, it is estimated that if Class Members submit claims for 100% of the shares eligible for distribution, the average distribution per share of common stock will be approximately $0.51 before deduction of Court-approved fees and expenses.  Based on the Class's maximum losses arising from Defendants' alleged misconduct, the damages per share of common stock would be approximately $9.58.  Thus, the $5,000,000 Settlement Amount will recover approximately 5.3% of the maximum potential damages available in this Action (assuming all claims and damages were proven), and approximately 16.6% of the maximum potential damages if Plaintiff was able to overcome Defendants' negative causation defense not premised on lack of stock price reaction.  As explained in the Final Approval and Fee Motions, this is well within the range of court-approved recoveries in complex securities class actions such as this.  Based on Defendants' adamant denial of any liability, as well as the substantial time and expense of continued litigation, this Settlement Amount represents a favorable recovery for the Class.

71.    Lead Counsel's expertise and persistence have been vital to obtaining this result for the Class.  As set forth in its firm resume, attached as *Exhibit 2* hereto, the Faruqi Firm is a nationally-recognized class action firm with extensive experience litigating and negotiating settlements as lead or co-lead counsel in complex securities class actions.

72.    In order to reach a successful resolution of this Action, Lead Counsel was required to litigate at a high skill level because Defendants were also represented by highly reputable firms, Wilson Sonsini Goodrich & Rosati, Ricketts & Case LLP, Shearman & Sterling LLP, and Lewis Roca Rothgerber Christie LLP.  Defense counsel fought vigorously for its clients throughout the Action and were formidable opponents.

73.    As evidenced by the Faruqi Time Report, a true and correct copy of which is attached hereto as *Exhibit 3*, and the DeConcini Time Report, which is attached to the Urman

Declaration,[4] Plaintiff's Counsel have committed thousands of hours to litigating this Action for more than two years, from the initial investigations to this final resolution.  Specifically, Plaintiff's Counsel have devoted 1,838.1 hours to this Action, which includes time spent, *inter alia*: (1) conducting an extensive investigation into the facts alleged in the Action, including thoroughly reviewing relevant publicly available information regarding the Company, as well as retaining a private investigator to conduct an investigation that involved interviewing former Mesa employees as third parties; (2) conducting research for and briefing the lead plaintiff motion, as required by the PSLRA; (3) preparing a detailed amended complaint; (4) conducting complex legal research in connection with opposing the motion to dismiss and Request for Judicial Notice; (5) drafting briefs in opposition to the Motion to Dismiss; (6) negotiating and drafting the Joint Case Management Report and Supplemental Rule 26(f) Report, including researching and responding to Defendants' efforts to bifurcate discovery and to seek an early summary judgment motion on the sole issue of negative loss causation while reserving the right to move for another summary judgment motion later in the case on other merits issues; (7) preparing for and attending the hearing on the motion to dismiss and two contested scheduling conferences; (8) drafting briefs in opposition to Defendant's Motion for Leave to File an Early Motion for Summary Judgment; (8) consulting with damages experts; (9) drafting discovery requests to Defendants; (10) reviewing the discovery Defendants produced; (11) communicating with Lead Plaintiff throughout the Action; (12) preparing for the settlement negotiations, including drafting detailed mediation statements; (13) engaging in a mediation session; (14) reviewing confirmatory discovery thereafter and following up with Defendants to obtain additional information to ensure that the Settlement is fair, reasonable, and adequate; (15) negotiating with Defendants after the session to finalize the Stipulation; (16) drafting the settlement Stipulation, Notice, and related materials; (17) drafting the preliminary approval motion papers and attending the preliminary approval hearing; and (18) drafting the Final Approval Motion papers.

---

[4]   The "Urman Declaration" refers to the Declaration of Gary Urman in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, filed herewith.

74.     Based upon the hours expended by Plaintiff's Counsel and the current billing rates for Plaintiff's Counsel's professionals, the total lodestar is $1,257,537.  The lodestar results in a negative multiplier where the fee requested by Lead Counsel on behalf of Plaintiff's Counsel in the amount of $1,250,000 (plus accrued interest) is lower than Plaintiff's Counsel's lodestar.

75.     Lead Counsel's time, set forth in *Exhibit 3*, is taken from daily time records regularly prepared and maintained by the Faruqi Firm in the ordinary course of business.  I reviewed the firm's time records in connection with the preparation of this declaration.  The purpose of this review was to confirm the accuracy, necessity for, and reasonableness of, the time committed to the litigation.  As a result of this review, reductions were made to the time report in the exercise of billing judgment to eliminate time deemed duplicative, excessive, or inadequately described, or time that pertained to the Fee Motion.  As a result of this review, I believe that the time reflected in the Faruqi Firm's lodestar calculation is reasonable and was necessary for the effective and efficient prosecution and resolution of the litigation.  Lead Counsel's task-based itemized statement of attorneys' fees sought required by Local Rule 54.2(d) is also submitted herewith as *Exhibit 3-A*, which Lead Counsel is requesting to file under seal for the reasons explained in the accompanying motion to seal.

76.     The total number of hours reasonably and necessarily spent by Lead Counsel in this Action is 1,776.10 hours.  Lead Counsel's hourly billing rates range from $575 to $950 for partners, $425 to $550 for associates, and $250 to $425 for paralegals.  The total lodestar amount for attorney and support staff time, based on the Faruqi Firm's current rates, is $1,234,662.50.  The hourly rates for attorneys and support staff in the Faruqi Firm, included in *Exhibit 3*, are reasonable for the region and the expertise of the attorneys.

77.     Pursuant to Local Rule 54.2(d)(4)(a), a brief description of the relevant qualifications and experience for each attorney for whom fees are claimed is set forth below. The case-related contributions of each attorney is illustrated on page 1 of *Exhibit 3*, as it sets forth how much time each attorney spent on each part of the litigation.

          a.     Nadeem Faruqi: Mr. Faruqi is a Managing Partner of the Faruqi Firm and

oversees all aspects of the firm's practice areas.  He has over 30 years of experience in civil litigation, and has served as sole or co-lead counsel in many notable securities cases. Additional information about Mr. Faruqi's qualifications and experience is set forth in the Faruqi Firm Resume.  *See **Exhibit 2** at 13.*

b.    James M. Wilson, Jr.: Mr. Wilson is a Partner of the Faruqi Firm and Co-Chair of the firm's Securities Litigation Practice Group.  He has over 20 years of experience in civil litigation and substantial experience representing investors in securities class actions in particular.  Additional information about Mr. Wilson's qualifications and experience is set forth in the Faruqi Firm Resume.  *See **Exhibit 2** at 17-18.*

c.    Robert W. Killorin: Mr. Killorin is a Partner of the Faruqi Firm, Co-Chair of the firm's Securities Litigation Practice Group, and a member of the firm's Institutional Investor Practice Group.  He has over 20 years of experience in civil litigation, and has focused much of his career representing investors in shareholder merger and securities litigation. Additional information about Mr. Killorin's qualifications and experience is set forth in the Faruqi Firm Resume.  *See **Exhibit 2** at 18-19.*

d.    Katherine M. Lenahan: Ms. Lenahan is a Partner of the Faruqi Firm.  She has over 9 years of experience representing investors in securities class action litigation. Additional information about Ms. Lenahan's qualifications and experience is set forth in the Faruqi Firm Resume.  *See **Exhibit 2** at 23.*

e.    Thomas Papain: Mr. Papain is an associate of the Faruqi Firm, where he focuses his practice on securities litigation.  Mr. Papain has over 9 years of experience in civil litigation.  Additional information about Mr. Papain's qualifications and experience is set forth in the Faruqi Firm Resume. *See* Exhibit 2 at 27.

f.    Maxwell Michael: Mr. Michael was an associate of the Faruqi Firm during this Action's pendency.  He earned his J.D. from the University of Los Angeles School of Law in 2018 with specializations in Mergers and Acquisitions and Securities Regulation. During his time at the Faruqi Firm, Mr. Michael focused his practice on shareholder merger and securities litigation.

19

g.    Cristina Paneque: Ms. Paneque was an associate of the Faruqi Firm during this Action's pendency.  She earned her J.D. from Boston College Law School in 2016. During her time at the Faruqi Firm, Ms. Paneque focused her practice on securities litigation.

**B.    Costs and Expenses**

78.    The expenses incurred by Lead Counsel in the prosecution of this Action are set forth in the accompanying Expense Report from the Faruqi Firm, a true and correct copy of which is attached hereto as ***Exhibit 4***.  In total, Plaintiff's Counsel seeks an award of expenses in the amount of $95,089.47.

79.    The Faruqi Firm's Expense Report provides that Lead Counsel has incurred $93,089.47 in expenses, and estimates that it will incur another $2,000 in connection with transportation, lodging, and meals for the Settlement Hearing.

80.    The expenses in the Expense Report are taken from the books and records of the Faruqi Firm maintained in the ordinary course of business.  The books and records are prepared from expense vouchers, check records, and other such documents.  I reviewed the Faruqi Firm's expense records in connection with the preparation of this declaration.  The purpose of this review was to confirm the accuracy, necessity for, and reasonableness of, the litigation expenses and remove any expenses that did not meet these criteria.  As a result of this review, I believe that the expenses reflected in the Faruqi Firm's Expense Report are reasonable and were necessary for the effective and efficient prosecution and resolution of this Action and are the type that would normally be charged to a fee-paying client in the private legal marketplace.

81.    Lead Counsel seeks an award of $95,089.47 as reimbursement of expenses and charges incurred in connection with the prosecution of the Action, which includes $2,000 in expenses that Plaintiff's Counsel expects to incur in connection with travel for the Settlement Hearing.  In the event Plaintiff's Counsel incurs less than $2,000 in travel expenses, Plaintiff's Counsel will reduce its request for reimbursement accordingly.

82.    The following is additional information regarding certain of these expenses:

(a)  **Consultants**: $42,843

(i)    Crowninshield Financial Research, Inc. ("CFR"): $31,603.00. Lead Counsel retained the services of CFR, an economic consulting firm, including Dr. Steven P. Feinstein ("Dr. Feinstein"), to provide economic analysis.  Dr. Feinstein submitted a declaration that Lead Plaintiff filed with its opposition to Defendants' Motion for Leave to explain the economic analysis applied to determine loss causation, evaluate negative causation, and compute Section 11 damages.  Doc. 112.  Dr. Feinstein's credentials are set forth in his declaration, which can be found at Doc. 112-1.  CFR also provided a damages analysis in connection with the mediation, and helped to prepare the Plan of Allocation that is set forth in the Notice.  CFR's invoices can be found in *Exhibit 4-A* hereto.

(ii)    Stanford Consulting Group, Inc. ("SCG"): $7,040.  Lead Counsel retained SCG, a well-respected economic consulting firm, to provide preliminary economic analysis for this case.  SCG's invoice can be found in *Exhibit 4-A* hereto.

(iii)    Kevin Jewell: $4,200.  Lead Counsel retained Mr. Jewell, an economist, to provide preliminary economic analysis for this case.  Mr. Jewell's invoice can be found in *Exhibit 4-A* hereto.

(b)    **Investigator**: L.R. Hodges & Associates, Ltd. ("LRH&A"): $20,298.25. LRH&A provided investigative services to Lead Counsel, expending numerous hours researching, identifying, and confirming the employment status of prospective witnesses, and conducting interviews with third-party witnesses thought to have relevant information about key issues.  LRH&A also prepared thorough interview summaries and participated in several calls with Lead Counsel.  LRH&A's invoice can be found in *Exhibit 4-B* hereto.

(c)    **Mediation:** Jed D. Melnick of JAMS: $12,160.46.  The parties retained Mr. Melnick for the mediation, which in Lead Counsel's view was necessary to reach the Settlement.  JAMS invoices can be found in *Exhibit 4-C* hereto.

(d)    **Online Legal Research** (Bloomberg Law and Westlaw): $5,198.34.

(i.)    Bloomberg Law: $3,860. Lead Counsel primarily uses Bloomberg Law for docket searches and court document retrieval, company-specific news searches, and key-word searches in the SEC's Edgar database.  Bloomberg Law charges clients a set fee per

transaction. Prior to permitting any search that will incur a charge, Bloomberg Law prompts the user to input a case name to track the charge. The Faruqi Firm is able to generate the transaction history for each case to determine what charges were for a case. *Exhibit 4-D* attached hereto is a transaction chart listing the charges attributed to this matter.

(ii.)    Westlaw: $1,148.34. Lead Counsel primarily uses Westlaw for case law and statutory research. Lead Counsel has a monthly subscription with Westlaw whereby the Faruqi Firm pays a pre-negotiated fee each month for access to Westlaw's database. Prior to conducting any searches, Westlaw prompts the user to attribute the search to a specific case so that the searches may be tracked. When preparing the monthly subscription bill, Westlaw incudes the actual monetary charges for each case and then applies subscription-based discounts to those charges. The percentage of the discount applies varies by month based upon the amount of the gross monthly fees. The charges for this matter are set forth in *Exhibit 4-E*.

(e)    **Documents and Transcripts from the State Court Action**: $652.73. Lead Counsel followed the State Court Action closely because it involves the same proposed class of investors and allegations. Thus, any developments in that case could affect Plaintiff and the Class in this Action. As a result, Lead Counsel purchased certain documents and orders filed in the State Court Action, as well as transcripts of relevant hearings to determine whether there was any need for Plaintiff to, for example, intervene in the State Court Action to protect the Class's rights. Receipts for the documents and orders purchased are set forth in *Exhibit 4-F*, while the transcript purchases are listed along with other court reporting expenses in *Exhibit 4-H*.

83.    The remainder of Lead Counsel's expenses, $13,936.69, reflect routine and typical expenditures incurred during litigation, including other filing fees, court reporting fees, postage, travel, meals, and eDiscovery database hosting. All of these expenditures are the types of expenses incurred in similar class actions of this size and would be billed to a fee-paying client. *Exhibits 4-G, 4-H, 4-I, 4-J, and 4-K* describe these charges in further detail and contain the relevant invoices and receipts.

84.     The total expenses, $95,089.47, are less than the $100,000 in potential expenses that the Notice informed the Class may be incurred.  Lead Counsel respectfully submits that these expenses are reasonable in light of the pace and duration of the Action and were necessarily incurred for its successful resolution.  Lead Counsel understood that it might not recover any expenses in the event the Action was dismissed, and thus took steps to minimize costs wherever possible without jeopardizing its duty to zealously represent the Class.

**C.     Award for Lead Plaintiff**

85.     Lead Counsel also respectfully requests that the Court grant an award in the amount of $5,382.18 to Lead Plaintiff, to reimburse Lead Plaintiff for its service as representative of the Class in this Action.

86.     As set forth in the Declaration of Edmund J. Wall, attached hereto as ***Exhibit 5***, Lead Plaintiff has taken its role as representative of the Class very seriously.  Over the course of more than two years, most of which took place during a global pandemic, it has dedicated over 50 hours of its time to this Action by: (i) engaging in regular communications with Lead Counsel; (ii) reviewing documents filed and/or prepared in this Action; (iii) reviewing and responding to written discovery requests and producing discovery documents and information; and (iv) consulting with counsel and authorizing the settlement of this Action.  *See* Ex. 5.

87.     Thus, Lead Plaintiff has actively and effectively complied with the numerous demands that arose during the litigation and settlement of this Action.  The types of activities that Lead Plaintiff has engaged in are precisely the type of efforts that courts have found support an award to class representatives.  Because Lead Plaintiff has played an integral role in this Action, Lead Counsel respectfully submits that it should be reimbursed for the time and effort it has devoted to actively representing the Class in this Action.

88.     As required by Local Rule 54.2(c)(3)(K), Plaintiff has been a client of the Faruqi Firm for about six years.  The Faruqi Firm has monitored DeKalb's investment portfolio since 2017 and represents DeKalb in this and other securities class actions, including *In re Allergan plc Sec. Litig.*, No. 18 Civ. 12089 (CM)(GWG) (S.D.N.Y.).  Mr. Wilson and Mr. Killorin have represented DeKalb in multiple securities litigations since 2007.

## VII.    LIST OF EXHIBITS

89.    Attached hereto as *Exhibit 1* is a true and correct copy of the Court's Preliminary Approval Order dated October 28, 2022.

90.    Attached hereto as *Exhibit 2* is a true and correct copy of the Faruqi Firm's resume.

91.    Attached hereto as *Exhibit 3* is a true and correct copy of the Faruqi Firm's Time Report.

92.    Attached hereto as *Exhibit 3-A* is a true and correct copy of the Faruqi Firm's task-based itemized statement of attorneys' fees, which Lead Counsel seeks to file under seal for the reasons set forth in the accompanying motion to seal.

93.    Attached hereto as *Exhibit 4* is a true and correct copy of the Faruqi Firm's Expense Report.

94.    Attached hereto as *Exhibits 4-A through 4K* are further details of the expenses Lead Counsel incurred in this action, along with the relevant invoices and receipts.  Lead Counsel seeks to file certain of these exhibits under seal with redactions, for the reasons set forth in the accompanying motion to seal.

95.    Attached hereto as *Exhibit 5* is a true and correct copy of the Declaration of Edmund J. Wall, Representative and Chairman of the DeKalb County Pension Fund, in Support of: (I) Class Representative's Motion for Final Approval of Class Action Settlement; and (II) Lead Counsel's Motion for Attorneys' Fees, Expenses, and an Award to Lead Plaintiff.

96.    Attached hereto as *Exhibit 6* is the Statement of Consultation required by Local Civil Rule 54.2(d)(1).

97.    Attached hereto as *Exhibit 7* is a Statement of Fee Agreement required by Local Civil Rule 54.2(d)(2).

## VIII.    CONCLUSION

98.    Lead Counsel respectfully submits that the Settlement should be approved as fair, reasonable, and adequate; that the Plan of Allocation should be approved as fair, reasonable, and adequate; that attorneys' fees in the amount of 25% of the Settlement Fund, or $1,250,000

plus accrued interest, should be approved as fair and reasonable; that the expenses in the amount of $95,089.47 plus accrued interest, should be reimbursed in full; and that Lead Plaintiff should be granted an award in the amount of $5,382.18 for the time and effort it put forth representing the putative Class.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Dated:          February 10, 2023

/s/ James M. Wilson, Jr.
James M. Wilson, Jr.

25